UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL PHILLIPS, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COBHAM ADVANCED ELECTRONIC SOLUTIONS, INC., et al.,<br><br>Defendants. | Case No.   23-cv-03785-EJD<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>Re: ECF No. 36 |

Plaintiffs Michael Phillips, Brenda Paclik, and Crystal Franklin (collectively, "Plaintiffs") bring this putative class action against CAES Systems LLC ("CAES"); Cobham Advanced Electronic Solutions, Inc. ("CAES Inc." and, with CAES, the "Company"); the Board of Directors of CAES System LLC (the "CAES Board"); the Board of Directors of CAES Inc. (the "CAES Inc. Board" and, with the CAES Board, the "Board")  the 401(k) Plan Committee of CAES (the "CAES Committee"); and the 401(k) Plan Committee of CAES Inc. (the "CAES Inc. Committee" and, with the CAES Committee, the "Committee," and collectively with the Company and the Board, "Defendants") for alleged violations of Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*[1]  *See* Second Am. Class Action Compl. ("SAC"), ECF No. 35.  Plaintiffs allege that Defendants breached the fiduciary duties imposed by ERISA in their management of the 401(k) Plan sponsored by the Company (the "Plan").  *See generally id.*

---

[1] Unless otherwise indicated, all statutory citations will be to Title 29 of the United States Code.
Case No.: 23-cv-03785-EJD
ORDER GRANTING DEFTS.' MOT. DISMISS SECOND AM. COMPL.
1

Plaintiffs assert claims for (1) breach of the fiduciary duty of prudence by the Committee and (2) failure by the Company and the Board to adequately monitor other fiduciaries. *See id.*

Now pending before the Court is Defendants' Motion to Dismiss the SAC (the "Motion"). *See* Mot., ECF No. 36. The Court found the Motion suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b), and, for the following reasons, GRANTS the Motion with leave to amend.

## I. BACKGROUND

### A. Factual Allegations

#### 1. The Parties

Plaintiffs are former employees of the Company and former participants in the Plan. *See* SAC ¶¶ 15–17. They bring this action both individually and on behalf of similarly situated participants and beneficiaries of the Plan, as well as for the benefit of the Plan. *Id.* at 1 n.1.

Defendants are the Company (*i.e.*, CAES and CAES Inc.), the Board (the CAES Board and the CAES Inc. Board), and the Committee (the CAES Committee and the CAES Inc. Committee). *See id.* ¶ 1. Plaintiffs have sued both the CAES and CAES Inc. defendants because sponsorship of the Plan changed from CAES Inc. to CAES on January 1, 2023, and the Class Period—defined as July 28, 2017 through the date of judgment—spans both sponsorship eras. *See id.* ¶¶ 9, 20 n.8, 24 n.10.

#### 2. The Plan

The Plan is a "defined contribution" or "individual account" for ERISA purposes. SAC ¶ 39. As such, the Plan provides (1) for individual accounts for each participant and (2) for benefits based solely upon the amount contributed to those accounts, and any income, expense, gains and losses, and any forfeitures of accounts of the participants which may be allocated to such participant's account. *Id.* Retirement benefits provided by the Plan are thus based solely on the amounts allocated to each individual's account. *Id.* The Plan covers substantially all of the Company's eligible employees from the first day of employment. *Id.*

The Committee is responsible for determining the appropriateness of the Plan's investment

Case No.: 23-cv-03785-EJD
ORDER GRANTING DEFTS.' MOT. DISMISS SECOND AM. COMPL.
2

offerings and for monitoring investment performance. SAC ¶ 47. The Plan had over $746 million in assets under management in 2017, and over $930 million by the end of 2020. *Id.* ¶ 8. Plan assets were used to pay administrative expenses during the Class Period. *Id.* ¶ 50.

Plaintiffs allege that all Defendants were fiduciaries of the Plan. *See id.* ¶¶ 105, 116.

### 3. Target Date Funds

A target date fund ("TDF") is a suite of funds designed to provide a single diversified investment vehicle. *Id.* ¶ 61. A TDF portfolio includes multiple asset types—including equity (stock) and fixed income (bond) securities—and thus offer diversity and balanced exposure to a broad array of underlying securities. *See id.* ¶ 64. The target date refers to the participant's expected retirement year; for example, "target date 2030" funds are designed for participants who intend to retire in 2030. *Id.* ¶ 67. An investment in a single TDF can be attractive to a plan participants who does not want to actively manage her retirement savings. SAC ¶ 65. TDFs automatically rebalance their portfolios and manage asset allocation to become more conservative as the participant gets closer to retirement. *Id.* ¶¶ 65–66. This rebalancing occurs based on the fund's "glide path," which determines how the fund's target asset allocations across the underlying securities are expected to change and become more conservative as the target retirement date approaches. *Id.* ¶ 66.

Depending on its glide path, a TDF can be categorized as either a "to" or a "through" TDF. *See id.* ¶ 68. The former is designed to reach the most conservative asset allocation at the target year; the latter focuses instead on life expectancy, and thus reaches the most conservative asset allocation at some year subsequent to the target year. *Id.* However, the independent research database Morningstar does not categorize or index TDFs based on whether they use a "to" or "through" glide path. *Id.* ¶ 69.

For all TDFs, diversions from the glide path or significant changes in the underlying assets or asset allocations can have an extremely negative impact on wealth aggregation for investors; the impact can be particularly profound for participants in a 401(k) plan. *Id.* ¶ 71.

Case No.: 23-cv-03785-EJD
ORDER GRANTING DEFTS.' MOT. DISMISS SECOND AM. COMPL.
3

### 4. American Century TDFs

The only target date investing option offered by the Plan is what Plaintiffs term the American Century Target Date Series (*i.e.*, a series of TDFs by American Century for target years 2025, 2030, 2035, 2040, 2045, 2050, and 2055, or the "American Century TDFs")). *See* SAC ¶¶ 60, 69, 84; *id.* Exhs. A–C. The Plan uses its TDFs as the default investment option if a participant does not select a specific fund in which to invest assets. *Id.* ¶ 73. In 2020, the Plan held approximately $155 million dollars in the American Century TDFs. *Id.* ¶ 83.

Plaintiffs allege that the American Century TDFs consistently materially underperformed industry-accepted benchmarks for TDFs used by investment professionals. *Id.* ¶ 86. Plaintiffs further allege that a "prudent fiduciary should have used some or all of these benchmarks, or substantially similar benchmarks, to evaluate the performance of the American Century Target Date Series as early as the inception of the Class Period, or sooner, and on an ongoing basis, thereafter." *Id.* ¶ 91. Plaintiffs allege that Defendants did not engage in a prudent process in evaluating investment management fees and the prudence of the Plan's funds. *Id.* ¶ 59.

### 5. Comparator TDF Benchmarks

Plaintiffs allege that the T.Rowe Price Retirement TDF suite and the American Funds TDF suite (together, the "Comparator TDFs") are similar to the American Century TDFs and are thus suitable comparators. SAC ¶ 87. Morningstar, the most well-respected and accepted financial fund database, places all three funds in the US Fund Target-Date Category and/or the US SA Target Date Category (together, the "Target Date Category"), and compares those funds to how an average fund in that category should perform. *Id.* A fund in the Target Date Category "should concentrate its holdings in the large blend/risk return category." *See id.* ¶ 90. There are at least 200 other funds in the Target Date Category. *Id* ¶ 87. Morningstar created its categories "to help investors make meaningful comparisons between mutual funds," and makes its comparisons using the Morningstar Lifetime Moderate Index (the "Morningstar Index"). *See id.* ¶¶ 87, 89.

Morningstar places the two Comparator TDFs and the American Century Target Date Series in the Target Date Category because the underlying holdings of each fund match the risk

return profile of the category. *Id.* ¶ 90. Plaintiffs allege that the three funds share the characteristics of the Target Date Category, and are thus "accurate and suitable comparators along with the more than 200 funds that Morningstar has placed in the Target Date Category." *Id.* ¶ 90.

Plaintiffs use the American Century Target Date 2040 fund (the "2040 American Century TDF") as a sample fund to compare to other TDFs with the same target year. *See* SAC ¶ 93. The performance of the American Century TDFs lagged behind the performance of the Comparator Funds for many years before the inception of the Class Period. *Id.* ¶ 92. Plaintiffs allege that "in the years leading up to the Class Period, the American Century Target Date Series performed well below the Morningstar Index for several consecutive quarters and clearly should have been removed at that time or never have been included in the Plan." *Id.* ¶ 94. Then, in 2017, the 2040 American Century TDF ranked in the 95th percentile, meaning that it was ranked higher than only 12 of the 234 funds in that category in that year. *Id.* ¶ 96. The 2040 American Century TDF had some years where it ranked higher, but in 2019 it ranked in the 85th percentile, in 2021 it ranked in the 96th percentile, and as of November 2023, it ranked in the 91st percentile. *Id.*

One of the most important factors in modern portfolio theory ("MPT")—which investment professionals and plan fiduciaries use to evaluate whether investment strategies have been historically flawed for a given fund—is known as Beta. *See* SAC ¶¶ 98, 100. Morningstar defines Beta as "the measure of systemic risk with respect to the risk-free rate." *Id.* ¶ 100. Systemic risk is "the tendency of the value of the fund and the value of a benchmark (in this case, the risk free rate)." *Id.* "Beta is the ratio of what the excess return of the fund would be to the excess return of the risk free rate." *Id.* Plaintiffs allege that from 2011 to the end of 2022, using a 3-year average, the 2040 American Century TDF had one of the lowest Beta ratings in the Target Date Category. *Id.* ¶ 101. The Beta was especially low when compared to the two Comparator Funds, which Plaintiffs allege is "clearly indicative of a fund that failed to adapt to the better strategies utilized in the Target Date Category and has nothing to do with any intended positive result or strategy employed by the managers of the Series." *Id.*

Plaintiffs allege that Defendants' choice to include or continue to include the American

Century Target Date Series in the Plan—despite the Series's performance for many years prior to and during the Class Period and a poor Beta indicator—deprived Plan participants of meaningful returns and needlessly cost participants millions in retirement savings. *See* SAC ¶ 103.

### B. Procedural History

Plaintiffs filed this action on July 28, 2023. *See* Compl., ECF No. 1. Plaintiffs then filed an amended complaint on October 13, 2023. *See* Am. Compl., ECF No. 24. Defendants filed a motion to dismiss, *see* ECF No. 27, and Plaintiffs responded by filing the operative SAC. Defendants filed the instant Motion on January 12, 2024. *See* Mot. The Motion was fully briefed on February 23, 2024. *See* Opp'n, ECF No. 42; Reply, ECF No. 43. The Court took the Motion under submission on March 7, 2024. *See* ECF No. 47.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited jurisdiction and "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress thereto." *Couch v. Telescope Inc.*, 611 F.3d 629, 632 (9th Cir. 2010) (quoting Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986)). "Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies,'" meaning that the plaintiff must have "a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted). To establish Article III standing at the pleading stage, plaintiffs must sufficiently allege that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). As relevant here, the injury in fact element requires Plaintiffs to allege "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270 (9th Cir. 2019) (quoting *Lujan*, 504 U.S. at 560). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Ladlaw Env't Servs.*

Case No.: 23-cv-03785-EJD
ORDER GRANTING DEFTS.' MOT. DISMISS SECOND AM. COMPL.
6

*(TOC), Inc.*, 528 U.S. 167, 185 (2000) (citations omitted).

A party may assert a defense of lack of subject matter jurisdiction due to lack of Article III standing under Federal Rule of Civil Procedure 12(b)(1). A jurisdictional attack may be "facial," such that the defendant "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

### B.     Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8 requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Failure to meet this standard is grounds for dismissal pursuant to Federal Rule of Procedure 12(b)(6). Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a plaintiff must allege "more than a sheer possibility that a defendant has acted unlawfully," the plausibility standard "is not akin to a probability requirement." *Id.*; *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.").

Courts evaluating a Rule 12(b)(6) motion generally "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Courts need not, however, "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam). Further,

Case No.: 23-cv-03785-EJD
ORDER GRANTING DEFTS.' MOT. DISMISS SECOND AM. COMPL.
7

mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). Courts may also "look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Shaw v. Hahn*, 56 F.3d 1128, 1129 (9th Cir. 1995). On a motion to dismiss a complaint that asserts ERISA fiduciary-breach claims, courts evaluate a complaint's allegations "as a whole" and "must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022).

### III. REQUEST FOR JUDICIAL NOTICE

Defendants submit 10 exhibits in support of their Motion and request that the Court take judicial notice of each exhibit pursuant to Federal Rule of Evidence 201. *See* Req. Jud. Not. ("RJN"), ECF No. 37. Plaintiffs argue that it would be improper to take judicial notice of any of the documents. *See* Opp'n 11.

The doctrine of judicial notice, as codified in Federal Rule of Evidence 201, is one of the two mechanisms by which a district court may properly consider material outside the pleadings on a Rule 12(b)(6) motion; the other doctrine is that of incorporation by reference. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998, 1002 (9th Cir. 2018). Federal Rule of Evidence 201 provides that a court may judicially notice a fact "not subject to reasonable dispute," *i.e.*, a fact that is "generally known" or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* at 999 (quoting Fed. R. Evid. 201(b)(1)–(2)). However, "a court cannot take judicial notice of disputed facts" in otherwise judicially noticeable documents. *Id.* (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (2001)).

Here, Exhibits 1 and 2 are IRS Form 5500 filings with the Department of Labor for the Plan; Exhibit 3 is a Department of Labor document titled *Target Date Retirement Funds – Tips for ERISA Plan Fiduciaries*; Exhibits 4 through 6 are Morningstar reports; Exhibits 7 and 8 are Morningstar website summaries; Exhibit 9 is a Morningstar document titled *Morningstar Lifetime Allocation Indexes*; and Exhibit 10 is an American Century One Choice Target Date Portfolios

Case No.: 23-cv-03785-EJD
ORDER GRANTING DEFTS.' MOT. DISMISS SECOND AM. COMPL.
8

1  document titled *Quarterly Fund Fact Sheet*. *See* RJN 2–3.  Courts regularly take notice of

2  publicly available government records, Morningstar publications, and fund fact sheets such as

3  those submitted by Defendants.  *See, e.g.*, *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp.

4  3d 1133, 1145 (N.D. Cal. 2022) (taking notice of challenged TDF fact sheets, "Target Date

5  Retirement Funds—Tips for ERISA Plan Fiduciaries" document, U.S. Government Accountability

6  Report, and Morningstar publication); *White v. Chevron Corp.*, No. 16-cv-0793, 2017 WL

7  2352137, at *5 (N.D. Cal. May 31, 2017) (taking judicial notice of IRS Form 5500 filings and

8  Morningstar report).  The Court likewise finds that Exhibits 1 through 10 are judicially noticeable.

9  However, the Court does not take judicial notice of any fact that disputes any allegation in the

10  SAC.  *See Khoja*, 899 F.3d at 1002.

11      Plaintiffs also submit an exhibit in support of their opposition, *i.e.*, a copy of an order on a

12  motion to dismiss in *McNeilly v. Spectrum Health Sys.*, No. 20-cv-0870 (W.D. Mich. July 16,

13  2021).  *See* ECF No. 42-2.  The Court takes judicial notice of this document as a public court

14  record.  *See Khoja*, 899 F.3d at 1002.

15  **IV.     DISCUSSION**

16      This lawsuit is premised on Defendants' alleged violation of certain fiduciary duties they

17  owed to Plan participants pursuant to ERISA.  ERISA imposes four primary duties on fiduciaries:

18  (1) the duty of loyalty, § 1104(a)(1)(A); (2) the duty of prudence, § 1104(a)(1)(B); (3) the duty of

19  diversification, § 1104(a)(1)(C); and (4) the duty to follow the plan's documents, § 1104(a)(1)(D).

20  *See also Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1093–94 (9th Cir. 2004) ("ERISA

21  fiduciaries must 1) discharge their duties with 'prudence'; 2) diversify investments to 'minimize

22  the risk of large losses'; and 3) act 'solely in the interest of the participants' and for the 'exclusive

23  purpose' of providing benefits to those participants.").

24      As relevant here, the duty of prudence requires that fiduciaries discharge their duties "with

25  the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man

26  acting in a like capacity and familiar with such matters would use."  § 1104(a)(1)(B).  The duty of

27  prudence additionally includes a "continuing duty of some kind to monitor investments and

28  Case No.: 23-cv-03785-EJD
ORDER GRANTING DEFTS.' MOT. DISMISS SECOND AM. COMPL.
9

remove imprudent ones." *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015).  A claim for a fiduciary's breach of the duty of prudence may be stated through either direct allegations of the fiduciary's "knowledge, methods, or investigations at the relevant times" or "circumstantial factual allegations [from which the Court] may reasonably 'infer from what is alleged that the process was flawed.'"  *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013).  "If the complaint relies on circumstantial factual allegations to show a breach of fiduciary duties under ERISA, those allegations must give rise to a 'reasonable inference' that the defendant committed the alleged misconduct," and thus the facts alleged must be "suggestive of, rather than merely consistent with, a finding of misconduct."  *Id.* at 718–19 (internal brackets omitted).  The Supreme Court has noted that "the appropriate inquiry [into prudence] will necessarily be context specific," and that courts, in making that inquiry, "must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise," as "the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs."  *Hughes*, 595 U.S. at 177.

The SAC asserts two claims for breach of ERISA fiduciary duties.  Claim 1 asserts that the Committee, which is responsible for determining the appropriateness of the Plan's investment offerings and for monitoring investment performance, breached its primary duty of prudence by failing to "engage in an appropriate and prudent process" and thereby "saddling the Plan and its participants with poorly performing funds."  SAC ¶ 108.  Claim 2 asserts a derivative claim against the Board and the Company for failing to monitor the Committee.  *See id.* ¶¶ 104–18.

Defendants seek dismissal of both claims on the grounds that Plaintiffs have failed to state a claim for a breach of the primary duty of prudence, and that the derivative monitoring claim also fails because there is no underlying violation.  *See* Mot. 8–20.  Defendants additionally argue that Plaintiffs have not established constitutional standing to pursue their claims.  *See id.* at 20–23.  The Court first addresses the threshold standing issue before turning to Defendants' other arguments.

### A. Article III Standing

Defendants raise a facial challenge to standing under Federal Rule of Civil Procedure 12(b)(1). *See* Mot. 21 n.15. Defendants argue that Plaintiffs have not alleged a concrete and particularized injury in fact sufficient for Article III standing because they do not allege (1) which target year TDFs they invested in and (2) when they invested in any particular TDF. *See id.* at 20–23. Plaintiffs respond that they have standing here because they all allege that they invested in the American Century TDFs; they challenge the imprudence of the entire suite of funds; and their benefits were diminished by underperforming funds in the Plan. *See* Opp'n 22–24. Plaintiffs also argue that ERISA allows them to seek recovery on behalf of the entire Plan, even if they did not personally invest in every fund that caused injury. *Id.* at 22.

In *Thole v. U.S. Nat'l Bank N.A.*, 590 U.S. 538 (2020), the Supreme Court held that plaintiffs lacked standing to bring their putative ERISA class action because they were participants in a defined-benefit plan (as opposed to a defined-contribution plan), and thus received monthly pension payments from the defined-benefit plan and had suffered no concrete injury in fact. The nature of the defined-benefit plan was "[o]f decisive importance to this case" because retirees of such plans "receive a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions," whereas "in a defined-contribution plan, such as a 401(k) plan, the retirees' benefits are typically tied to the value of their accounts, and the benefits can turn on the plan fiduciaries' particular investment decisions." *Thole*, 590 U.S. at 540 (citations omitted).

Following the *Thole* decision, district courts across the country—including this Court—have held that plaintiffs lack standing to challenge the offering of a fund or suite of funds if they do not allege some personal investment in those funds or suites. *See In re LinkedIn ERISA Litig.*, No 20-cv-05704, 2021 WL 5331448, at *4 (N.D. Cal. Nov. 16, 2021) (finding plaintiffs failed to allege Article III standing for claim asserting imprudent offering of where "none of the Plaintiffs have alleged that they personally invested in the Freedom Active Suite or the AMCAP Fund—in fact, there is no information in the complaint about any of the Plaintiffs' investments"). And—

Case No.: 23-cv-03785-EJD
ORDER GRANTING DEFTS.' MOT. DISMISS SECOND AM. COMPL.
11

consistent with this approach—courts have held that plaintiffs have standing where they allege investment in at least one allegedly imprudently managed or selected fund. *See, e.g.*, *Boley v. Universal Health Servs., Inc.*, 498 F. Supp. 3d 715, 723 (E.D. Penn. 2020) (finding allegations that plaintiffs each invested in at least one fund in a suite sufficient to demonstrate individualized injury for standing); *McGowan v. Barnabas Health, Inc.*, No. 20-13119, 2021 WL 1399870, at *3 (D.N.J. Apr. 13, 2021) (rejecting argument that plaintiffs who had "invested in only some of the funds cited[] . . . lack[ed] standing to press claims based on the funds in which they did not invest").

Here, Plaintiffs allege that they all (1) "participated and invested in the options offered by the Plan"; (2) "specifically invested in the American Century target date series"; and (3) "suffered injury to [their] Plan account[s] by having to pay for [their] share of consulting fees to maintain any of the lower performing or expensive funds in the Plan." SAC ¶¶ 14–16. Plaintiffs also allege that the Plan is a defined contribution plan. *Id.* ¶ 39. The Court finds that these allegations sufficiently demonstrate individualized injury for Article III standing, as they show that each Plaintiff invested in at least one fund in the challenged American Century TDFs. And because Plaintiffs have alleged injury through investment in one or more funds in the American Century TDFs, Plaintiffs may "seek redress on behalf of the Plan for the broader injuries the Plan incurred." *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 156 (S.D.N.Y. 2017) (citing, *e.g.*, *Cryer v. Franklin Templeton Res., Inc.*, No. C 16-4265, 2017 WL 4023149, at *4 (N.D. Cal. July 26, 2017)); *see also Boley*, 498 F. Supp. 3d at 720 ("Once an ERISA plaintiff has alleged injury to her own account, she may seek relief under § 1132(a)(2) that sweeps beyond her own injury.") (internal quotation marks, punctuation, and citation omitted).

Accordingly, the Court finds that Plaintiffs have alleged facts sufficient to demonstrate Article III standing. Having resolved this threshold question, the Court turns to Defendants' remaining arguments regarding the sufficiency of Plaintiffs' claims.

### B. Claim 1: Breach of the Fiduciary Duty of Prudence (Against the Committee)

Plaintiffs' first claim asserts that the Committee—which was responsible for ensuring that

Case No.: 23-cv-03785-EJD
ORDER GRANTING DEFTS.' MOT. DISMISS SECOND AM. COMPL.

1    the investments available to Plan participants are appropriate, had no more expense than

2    reasonable and performed well as compared to their peers—breached the fiduciary duty of

3    prudence by retaining the American Century TDFs in the Plan.  *See* SAC ¶¶ 104–11.  Defendants

4    argue that this claim fails because (1) Plaintiffs allege only that the American Century TDFs

5    performed poorly, which may not be the basis for an ERISA claim for imprudence, *see* Mot. 9–12;

6    (2) Plaintiffs do not plausibly allege that the Comparator Funds are meaningful benchmarks for

7    the American Century TDFs' performance, *see id.* at 12–18; and (3) the facts about the suite of

8    American Century TDFs are not sufficiently specific because Plaintiffs only make allegations

9    regarding the 2040 vintage, *see id.* at 18–19.  The Court addresses these arguments in turn.

### 1.    Underperformance Allegations

The SAC alleges in great detail that the American Century TDFs underperformed comparable TDFs not only during the Class Period, but also for several years prior.  *See* SAC ¶¶ 81–103.  However, federal courts have "widely and consistently rejected attempts to impose ERISA liability where the claims are based solely on a fund's underperformance."  *Bracalente v. Cisco Sys., Inc.*, No. 22-cv-04417, 2023 WL 5184138, at *3 (N.D. Cal. Aug. 11, 2023) (citing cases); *see also, e.g.*, *White v. Chevron Corp.*, No. 16-cv-0793, 2017 WL 2352137, at *20 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453 (9th Cir. 2018) ("[P]oor performance, standing alone, is not sufficient to create a reasonable inference that plan fiduciaries failed to conduct an adequate investigation.").

Plaintiffs argue that the SAC alleges not only underperformance, but that Defendants "neglected to act on information available to them at the time of the underperformance." Opp'n 19.  But the sole allegation to which Plaintiffs point in support of this statement—SAC ¶ 103— does not discuss any information Defendants had except (1) "the Series' performance for many years prior to the Class Period and during the Class [P]eriod" and (2) the alleged fact that the Series "had one of the worst Beta rankings out of the more than 200 funds in the Target Data Category from 2011 to the present."  As Defendants note, *see* Mot. 11–12, Beta is itself a performance metric.  *See also* SAC ¶ 101 ("Had the Plan fiduciaries monitored the Beta of the

Case No.: 23-cv-03785-EJD
ORDER GRANTING DEFTS.' MOT. DISMISS SECOND AM. COMPL.
13

American Century Target Date Series, they would have seen clearly that the fund would deliver flat returns."). Thus, both pieces of "information" to which Plaintiffs point are mere restatements of the proposition that underperformance is a sufficient basis to find a breach of the duty of prudence. Plaintiffs lastly argue that the Court should find imprudence based on the sheer length of underperformance. *See* Opp'n 18–19. The Court can find no support for drawing such an inference without additional allegations of process failures. *See, e.g.*, *McNeilly v. Spectrum Health Sys.*, No. 20-cv-0870 (W.D. Mich. July 16, 2021), at 13 (denying motion to dismiss where "Plaintiffs [brought] allegations that the Committee failed for years to perform sufficient reviews or investigations into the Plan's performance"), ECF No. 42-2. Plaintiffs do not point to any process failure allegations beyond the conclusory and circular statement that "Defendants did not engage in a prudent process in evaluating investment management fees and the prudence of the Plan's funds," SAC ¶ 59, as evidenced by the poor performance of the funds.

Thus, "to the extent Plaintiffs attempt to state an ERISA claim for imprudence based solely on the [American Century] TDFs' underperformance, the Court cannot reasonably infer from underperformance alone that the . . . TDFs were imprudent investment[s]." *Bracalente*, 2023 WL 5184138, at *5. The Court will accordingly dismiss Plaintiffs' first claim with leave to amend to add allegations of Defendants' omissions or conduct, or other relevant information.

### 2. Defendants' Other Arguments

Because the Court finds that Plaintiffs have failed to allege facts beyond underperformance that support a reasonable inference that Defendants breached their fiduciary duty of prudence, it need not address Defendants' other arguments to dismiss Plaintiffs' first claim. However, the Court encourages Plaintiffs to add allegations as to the propriety of the Comparator Funds.

### C. Claim 2: Failure to Monitor (Against the Board and the Company)

Plaintiffs' second claim asserts that the Board and Company failed to adequately monitor the Committee to prevent the Committee's imprudence. *See* SAC ¶¶ 112–18. Plaintiffs' arguments as to the second claim rely on the sufficiency of the primary claim. *See* Opp'n 24–25. Because the primary claim does not survive, the monitoring claim must fail as well. *See*

Case No.: 23-cv-03785-EJD
ORDER GRANTING DEFTS.' MOT. DISMISS SECOND AM. COMPL.
14

*Bracalente*, 2023 WL 5184138, at *6; *Beldock v. Microsoft Corp.*, 2023 WL 3058016, at *4 (W.D. Wash. Apr. 24, 2023) (dismissing claims for "failure to monitor, co-fiduciary breaches, and knowing breaches of trust" where plaintiffs' arguments depend on having "sufficiently pleaded their claim for breach of the fiduciary duty of prudence").

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Plaintiffs' Second Amended Complaint. As the Court has not ruled on the sufficiency of any prior operative complaint in this action, it finds that amendment is not futile and the dismissal is thus with leave to amend. Any amended complaint is due within 14 days of the entry of this order.

**IT IS SO ORDERED.**

Dated: June 28, 2024

EDWARD J. DAVILA
United States District Judge