

1  **ROSMAN & GERMAIN APC**
2  Daniel L. Germain (Bar No. 143334)
   5959 Topanga Canyon Boulevard
3  Suite 360
   Woodland Hills, CA  91367-7503
4  Telephone: (818) 788-0877
5  Facsimile: (818) 788-0885
   E-Mail: Germain@Lalawyer.com
6
7  Counsel for Plaintiffs and the Putative Class

8
                **UNITED STATES DISTRICT COURT**
9               **NORTHERN DISTRICT OF CALIFORNIA**

10
11  MICHAEL PHILLIPS, BRENDA
    PACLIK and CRYSTAL FRANKLIN,
12  individually and on behalf of all others      CASE NO. 5:23-cv-03785-EJD
    similarly situated,
13
14              Plaintiffs,                       ~~THIRD~~ FOURTH AMENDED CLASS
                                                  ACTION COMPLAINT
15       v.

16  CAES SYSTEMS, LLC, THE BOARD
17  OF DIRECTORS OF CAES SYSTEMS,
    LLC, THE 401(K) PLAN COMMITTEE
18  OF CAES SYSTEMS, LLC, COBHAM
19  ADVANCED ELECTRONIC
    SOLUTIONS, INC., THE BOARD OF
20  DIRECTORS OF COBHAM
21  ADVANCED ELECTRONIC
    SOLUTIONS, INC., THE 401(K) PLAN
22  COMMITTEE OF COBHAM
23  ADVANCED ELECTRONIC
    SOLUTIONS, INC. and JOHN DOES 1-
24  50.

25              Defendants.
26
27
28

Plaintiffs, Michael Phillips, Brenda Paclik and Crystal Franklin ("Plaintiffs"), by and through their attorneys, on behalf of the CAES 401(k) Plan (the "Plan"),[1] themselves and all others similarly situated, state and allege as follows:

## I.    INTRODUCTION

1.    This is a class action brought pursuant to §§ 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109 and 1132, against the Plan's fiduciaries, which include CAES Systems, LLC and/or Cobham Advanced Electronic Solutions, Inc. ("Cobham" or the "Company")[2], the Board of Directors of CAES Systems, LLC and/or the Board of Directors of Cobham Advanced Electronic Solutions, Inc. and its members during the Class Period ("Board")[3], and the 401(k) Plan Committee of CAES Systems, LLC and/or the 401(k) Plan Committee of Cobham Advanced Electronic Solutions, Inc. and its members during the Class Period ("Committee")[4] for breaches of their fiduciary duties.

---

[1] Prior to January 1, 2023, the Plan was known as the Cobham United States 401(k) Plan. Because much of the conduct described herein occurred prior to January 1, 2023, the defined term "Plan" shall refer to both the Cobham United States 401(k) Plan during the time the Plan carried that name and the CAES 401(k) Plan from January 1, 2023 forward. The Plan is a legal entity that can sue and be sued. ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1). However, in a breach of fiduciary duty action such as this, the Plan is not a party. Rather, pursuant to ERISA § 409, and the law interpreting it, the relief requested in this action is for the benefit of the Plan and its participants.

[2] Prior to November 5, 2020, the Plan Sponsor was Cobham Management Services, Inc., ("Cobham Services"). For periods prior to November 5, 2020, Cobham or Company shall refer to Cobham Services and similarly for periods subsequent to November 5, 2020 up to January 1, 2023, the defined term Cobham or Company shall be used to refer to Cobham Advanced Electronic Solutions, Inc. In addition, for periods subsequent to January 1, 2023, the defined term Cobham or Company shall refer to CAES Systems, LLC who was the Plan Sponsor after that date.

[3] For periods prior to January 1, 2023, the defined term Board shall refer to the Board of Directors of Cobham Advanced Electronic Solutions, Inc. and for periods subsequent to January 1, 2023, the defined term Board shall refer to the Board of Directors of CAES Systems, LLC or a related entity having a board of directors that acts in that capacity or a similar capacity for CAES Systems, LLC.

[4] For periods prior to January 1, 2023, the defined term Committee shall refer to the 401(k) Plan Committee of Cobham Advanced Electronic Solutions, Inc. and for periods subsequent to January 1, 2023, the defined term Committee shall refer to the 401(k) Plan Committee of CAES Systems, LLC or similar entity exercising control over Plan assets. As will be discussed in more detail below, the Class Period is from July 28, 2017 through the date of judgment.

2.     To safeguard Plan participants and beneficiaries, ERISA imposes strict fiduciary duties of loyalty and prudence upon employers and other plan fiduciaries. 29 U.S.C. § 1104(a)(1). These twin fiduciary duties are "the highest known to the law." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. Dec. 30, 2016) (*en banc*).

3.     The Department of Labor has explicitly stated that employers are held to a "high standard of care and diligence" and must, among other duties, both "establish a prudent process for selecting investment options and service providers" and "monitor investment options and service providers once selected to see that they continue to be appropriate choices." *See,* "*A Look at 401(k) Plan Fees*," *supra*, at n.3; *see also Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1823 (2015) (reaffirming the ongoing fiduciary duty to monitor a plan's investment options).

4.     Under 29 U.S.C. § 1104(a)(1), a plan fiduciary must give substantial consideration to the cost of investment options. "Wasting beneficiaries' money is imprudent. In devising and implementing strategies for the investment and management of trust assets, trustees are obligated to minimize costs." Uniform Prudent Investor Act (the "UPIA"), § 7.

5.     "The Restatement … instructs that 'cost-conscious management is fundamental to prudence in the investment function,' and should be applied 'not only in making investments but also in monitoring and reviewing investments.'" *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197-98 (9th Cir. 2016) (*en banc*) (quoting Restatement (Third) of Trusts, § 90, cmt. b).[5]

6.     Additional fees of only 0.18% or 0.4% can have a large effect on a participant's investment results over time because "[b]eneficiaries subject to higher fees…lose not only money spent on higher fees, but also lost investment opportunity;

---

[5] *See also* U.S. Dep't of Labor, *A Look at 401(k) Plan Fees*, (Aug. 2013), at 2, available at https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/publications/a-lookat-401k-plan-fees.pdf (last visited February 21, 2020) ("You should be aware that your employer also has a specific obligation to consider the fees and expenses paid by your plan.").

~~THIRD~~ FOURTH AMENDED CLASS ACTION COMPLAINT

1    that is, the money that the portion of their investment spent on unnecessary fees would

2    have earned over time." *Tibble*, 843 F.3d at 1198 ("It is beyond dispute that the higher

3    the fees charged to a beneficiary, the more the beneficiary's investment shrinks.").

4        7.    The Supreme Court ~~recently~~has reiterated that interpreting "ERISA's duty

5    of prudence in light of the common law of trusts" a fiduciary "has a continuing duty of

6    some kind to monitor investments and remove imprudent ones" and a plaintiff may

7    allege that a fiduciary breached the duty of prudence by failing to properly monitor

8    investments and remove imprudent ones.  *Hughes v. Northwestern Univ.*, ~~-~~142 S.Ct.

9    737, 741 (2022).

10       8.    The Plan had over $746 million dollars in assets under management in

11   2017 and by the end of 2020 the Plan had grown to over $930 million in assets that

12   were/are entrusted to the care of the Plan's fiduciaries. The Plan's assets under

13   management qualifies it as a jumbo plan in the defined contribution plan marketplace,

14   and among the largest plans in the United States.   In 2017, only 0.1 percent (623 of

15   569,257) of 401(k) plans in the country had between $500 million and $1 billion in

16   assets under management.[6] This figure remained constant to the end of 2019~~, by~~. By

17   2019 only 0.1 percent (726 of 603,217) of 401(k) plans in the country had between

18   $500 million and $1 billion in assets under management.[7] As a jumbo plan, the Plan

19   had substantial bargaining power regarding the fees and expenses that were charged

20   against participants' investments.  Defendants, however, did not try to reduce the Plan's

21   expenses or exercise appropriate judgment to scrutinize each investment option that

22   was offered in the Plan to ensure it was prudent.

23

24   _____

25   [6] *See* The BrightScope/ICI Defined Contribution Plan Profile: A Close Look at 401(k) Plans, 2017
     at Ex. 1.2, p. 13., available at
26   ~~https://www.ici.org/system/files/attachments/20_ppr_dcplan_profile_401k.pdf.~~https://www.ici.org/s
     ystem/files/attachments/20_ppr_dcplan_profile_401k.pdf.
27

28   [7] *See* The BrightScope/ICI Defined Contribution Plan Profile: A Close Look at 401(k) Plans, 2019
     at Ex. 1.2, p. 7., available at https://www.ici.org/system/files/2022-09/22-ppr-dcplan-profile-
     401k.pdf

                              - 4 -
              ~~THIRD~~ FOURTH AMENDED CLASS ACTION COMPLAINT

1    9.    Plaintiffs allege that during the putative Class Period (July 28, 2017

2 through the date of judgment) Defendants, as "fiduciaries" of the Plan, as that term is

3 defined under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), breached the duties they

4 owed to the Plan, to Plaintiffs, and to the other participants of the Plan by, *inter alia*,

5 (1) failing to objectively and adequately review the Plan's investment portfolio with

6 due care to ensure that each investment option was prudent, in terms of cost and

7 performance;  and (2) maintaining certain funds in the Plan despite the availability of

8 identical or similar investment options with lower costs and/or better performance

9 histories.

10    10.    Defendants' mismanagement of the Plan, to the detriment of participants

11 and beneficiaries, constitutes a breach of the fiduciary duty of prudence, in violation of

12 29 U.S.C. § 1104.  Their actions were contrary to actions of a reasonable fiduciary and

13 cost the Plan and its participants millions of dollars.

14    11.    Based on this conduct, Plaintiffs assert claims against Defendants for

15 breach of the fiduciary duty of prudence (Count One) and failure to monitor fiduciaries

16 (Count Two).

17    12.    IV.    Plaintiffs also assert a claim under Count Three against the

18 Company, which is identified as the Plan administrator, for violation of 29 U.S.C. §

19 1132(c)(1) and 29 U.S.C. § 1024(b)(4), for failure to furnish the Plan's investment

20 policy statement within 30 days of plaintiff's April 28, 2022, written request.

21 **II.    JURISDICTION AND VENUE**

22    12.13.  This Court has subject matter jurisdiction over this action pursuant to 28

23 U.S.C. § 1331 because it is a civil action arising under the laws of the United States,

24 and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of

25 actions brought under Title I of ERISA, 29 U.S.C. § 1001, *et seq.*

26    13.14. This Court has personal jurisdiction over Defendants because they

27 transact business in this District, reside in this District, and/or have significant contacts

28 with this District, and because ERISA provides for nationwide service of process.

1   ~~14.~~15. Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C.

2   § 1132(e)(2), because some or all of the violations of ERISA occurred in this District

3   and Defendants reside and may be found in this District.  Venue is also proper in this

4   District pursuant to 28 U.S.C. § 1391 because Defendants do business in this District

5   and a substantial part of the events or omissions giving rise to the claims asserted herein

6   occurred within this District.

7   **III.** ~~V.~~    **PARTIES**

8       **A.**    **Plaintiffs**

9   ~~15.~~16. Plaintiff, Michael Phillips ("Phillips"), resides in Lansdale, Pennsylvania.

10  During his employment, Plaintiff Phillips participated and invested in the options

11  offered by the Plan that are challenged in this lawsuit. Plaintiff Phillips specifically

12  invested in the American Century target date series described herein. He suffered injury

13  to his Plan account from the underperformance and excessive expense of these funds.

14  In addition, Plaintiff Phillips suffered injury to his Plan account by having to pay for

15  ~~her~~his share of consulting fees to Precept Advisory Group to maintain any of the lower

16  performing or expensive funds in the Plan whether specifically identified herein or not,

17  as described below.

18  ~~16.~~17. Plaintiff, Brenda Paclik ("Paclik"), resides in Fort Worth, Texas. During

19  her employment, Plaintiff Paclik participated and invested in the options offered by the

20  Plan that are challenged in this lawsuit. She suffered injury to her Plan account from

21  the underperformance and excessive expense of these funds. Plaintiff Paclik

22  specifically invested in the American Century target date series described herein. In

23  addition, Plaintiff Paclik suffered injury to her Plan account by having to pay for her

24  share of consulting fees to Precept Advisory Group to maintain any of the lower

25  performing or expensive funds in the Plan whether specifically identified herein or not,

26  as described below.

27  ~~17.~~18. Plaintiff, Crystal Franklin ("Franklin"), resides in Acton, Massachusetts.

28  During her employment, Plaintiff Franklin participated and invested in the options

offered by the Plan that are challenged in this lawsuit. She suffered injury to her Plan account from the underperformance and excessive expense of these funds. Plaintiff Franklin specifically invested in the American Century target date series described herein. In addition, Plaintiff Franklin suffered injury to her Plan account by having to pay for her share of consulting fees to Precept Advisory Group to maintain any of the lower performing or expensive funds in the Plan whether specifically identified herein or not, as described below.

18.19. Plaintiffs have standing to bring this action on behalf of the Plan because they participated and invested in the Plan and were injured by Defendants' unlawful conduct.

19.20. Plaintiffs are entitled to receive benefits in the amount of the difference between the value of their accounts currently, or as of the time their accounts were distributed, and what their accounts are or would have been worth, but for Defendants' breaches of fiduciary duty as described herein.

20.21. Plaintiffs did not have knowledge of all material facts (including, among other things, what a competitive expense ratio is for funds in a retirement plan and how target date funds and other funds in a retirement plan should perform as compared to their peers and benchmarks) necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA until shortly before this suit was filed.

**B.    Defendants**

**Company Defendant**

21.22. Cobham is a named fiduciary and the, Plan Sponsor and Plan administrator for the Plan with a principal place of business at 5300 Hellyer Avenue, San Jose, California. The 2020 Form 5500 for the Cobham United States 401(k) Plan

("2020 5500") at 1.[8] According to its website, Cobham is a government contractor specializing in microwave and millimeter wave technologies for the aerospace and defense industries.[9] Cobham employs over 2,000 individuals in nine states throughout North America. *Id*

~~22.~~23. Cobham appointed the Committee to, among other things, ensure that the investments available to the Plan's participants are appropriate, had no more expense than reasonable and performed well as compared to their peers. Cobham Advanced Electronic Solution Inc., 401(k) Plan Committee Charter, dated October 23, 2020 ("Charter") at 1-2. As will be discussed below, the Committee fell well short of these fiduciary goals. Under ERISA, fiduciaries with the power to appoint have the concomitant fiduciary duty to monitor and supervise their appointees.

~~23.~~24. Accordingly, Cobham during the putative Class Period is/was a fiduciary of the Plan, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) because it had a duty to monitor the actions of the Committee.

**Board Defendants**

~~24.~~25. Cobham, acting through its Board[10], appointed the Committee. Accordingly, like the Company, the Board had a concomitant fiduciary duty to monitor and supervise the Committee.

~~25.~~26. Each member of the Board during the putative Class Period (referred to herein as John Does 1-10) is/was a fiduciary of the Plan, within the meaning of ERISA

---

[8] As discussed above, the defined term Cobham or Company refers to Cobham Management Services, Inc. who was the Plan Sponsor prior to November 5, 2020, Cobham Advanced Electronic Solutions, Inc. who was the Plan Sponsor between November 5, 2020 and December 31, 2022 and/or it may also refer to CAES Systems, LLC who was the Plan Sponsor subsequent to January 1, 2023.

[9] https://caes.com/about last accessed on June 21, 2023.

[10] As discussed above, for periods prior to January 1, 2023, the defined term Board shall refer to the Board of Directors of Cobham Advanced Electronic Solutions, Inc. and for periods subsequent to January 1, 2023, the defined term Board shall refer to the Board of Directors of CAES Systems, LLC or a related entity having a board of directors that acts in that capacity or a similar capacity for CAES Systems, LLC.

Section 3(21)(A), 29 U.S.C. § 1002(21)(A) because each had a duty to monitor the actions of the Committee.

26.27. The Board and the unnamed members of the Board during the Class Period (referred to herein as John Does 1-10), are collectively referred to herein as the "Board Defendants."

**Committee Defendants**

27.28. As discussed above, Cobham appointed the Committee[11] to, among other things, ensure that the investments available to the Plan's participants are appropriate, had no more expense than reasonable and performed well as compared to their peers. Charter at 3-6.

29.    According toAs directed in the Charter, "[t]he:

(a) The Committee shall...:

(i) adopt an Investment Policy for the Plan, review it periodically and update the Investment Policy when applicable;

(ii) review and monitor the investment performance of the Plan ..." and oversee compliance with the Investment Policy; and

(iii) select, appoint, monitor, and terminate investment advisor(s), investment manager(s), trustees and other Service Providers.

Charter at 2.

28.30. The Committee and each of its members were fiduciaries of the Plan during the Class Period, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) because each exercised discretionary authority over management or disposition of the Plans' assets.

---

[11] For periods prior to January 1, 2023, the defined term Committee shall refer to the 401(k) Plan Committee of Cobham Advanced Electronic Solutions, Inc. and for periods subsequent to January 1, 2023, the defined term Committee shall refer to the 401(k) Plan Committee of CAES Systems, LLC or similar entity exercising control over Plan assets.

1  ~~29.~~33. The Committee and unnamed members of the Committee during the Class
2  Period (referred to herein as John Does 11-20), are collectively referred to herein as the
3  "Committee Defendants."

4  **Additional John Doe Defendants**

5  ~~30.~~32. To the extent that there are additional officers, employees and/or
6  contractors of Cobham who are/were fiduciaries of the Plan during the Class Period, or
7  were hired as an investment manager or consultant for the Plan during the Class Period,
8  the identities of whom are currently unknown to Plaintiffs, Plaintiffs reserve the right,
9  once their identities are ascertained, to seek leave to join them to the instant action.
10 Thus, without limitation, unknown "John Doe" Defendants 21-30 include, but are not
11 limited to, Cobham officers, employees and/or contractors who are/were fiduciaries of
12 the Plans within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A)
13 during the Class Period.

14 ~~VII.~~**IV. CLASS ACTION ALLEGATIONS**[12]

15 ~~31.~~33. Plaintiffs bring this action as a class action pursuant to Rule 23 of the
16 Federal Rules of Civil Procedure on behalf of themselves and the following proposed
17 class ("Class"):[13]

18              All persons, except Defendants and their immediate
19              family members, who were participants in or
20              beneficiaries of the Plans, at any time between July
21              28, 2017 through the date of judgment (the "Class
                Period").

22

23 _____

24 [12] Although this is a proposed class action, the allegations in this complaint are alternatively pled in
25 derivative fashion on behalf of the Plan because class certification is not necessarily required for
   Plaintiffs to prosecute claims on behalf of the Plan and all participants. *See, e.g.*, *In re: Wilmington*
26 *Trust Corp.*, 2013 WL 4757843, at *3 (D. Del. Sept. 4, 2013) (granting plaintiffs' motion to proceed
   derivatively on behalf of all plan participants without class certification, because of the nature of such
27 claims). ERISA Section 502(a), 29 U.S.C. § 1132(a), authorizes pension plan participants to bring
   suit on behalf of a plan to recover losses to a plan.

28 [13] Plaintiffs reserve the right to propose other or additional classes or subclasses in their motion for
   class certification or subsequent pleadings in this action.

1    ~~32.~~34. The members of the Class are so numerous that joinder of all members is

2    impractical.  The 2020 Form 5500 lists 5,713 Plan "participants with account balances

3    as of the end of the plan year."  2020 Form 5500 at 2.

4    ~~33.~~35. Plaintiffs' claims are typical of the claims of the members of the Class.

5    Like other Class members, Plaintiffs participated in the Plan and have suffered injuries

6    as a result of Defendants' mismanagement of the Plan. Defendants treated Plaintiffs

7    consistently with other Class members and managed the Plan as a single entity.

8    Plaintiffs' claims and the claims of all Class members arise out of the same conduct,

9    policies, and practices of Defendants as alleged herein, and all members of the Class

10   have been similarly affected by Defendants' wrongful conduct.

11   ~~34.~~36. There are questions of law and fact common to the Class, and these

12   questions predominate over questions affecting only individual Class members.

13   Common legal and factual questions include, but are not limited to:

14          A.    Whether Defendants are/were fiduciaries of the Plan;

15          B.    Whether Defendants breached their fiduciary duty of

16                prudence by engaging in the conduct described herein;

17          C.    Whether Defendants failed to adequately monitor the Committee

18                and other fiduciaries to ensure the Plan was being managed in

19                compliance with ERISA;

20          D.    The proper form of equitable and injunctive relief; and

21          E.    The proper measure of monetary relief.

22   ~~35.~~37. Plaintiffs will fairly and adequately represent the Class and have retained

23   counsel experienced and competent in the prosecution of ERISA class action litigation.

24   Plaintiffs have no interests antagonistic to those of other members of the Class.

25   Plaintiffs are committed to the vigorous prosecution of this action and anticipate no

26   difficulty in the management of this litigation as a class action.

27   ~~36.~~38. This action may be properly certified under Rule 23(b)(1).  Class action

28   status in this action is warranted under Rule 23(b)(1)(A) because prosecution of

1  separate actions by the members of the Class would create a risk of establishing

2  incompatible standards of conduct for Defendants. Class action status is also warranted

3  under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the

4  Class would create a risk of adjudications with respect to individual members of the

5  Class that, as a practical matter, would be dispositive of the interests of other members

6  not parties to this action, or that would substantially impair or impede their ability to

7  protect their interests.

8      37.39. In the alternative, certification under Rule 23(b)(2) is warranted because

9  the Defendants have acted or refused to act on grounds generally applicable to the

10  Class, thereby making appropriate final injunctive, declaratory, or other appropriate

11  equitable relief with respect to the Class as a whole.

12          **VII.V.    THE PLAN**

13      38.40.  The Plan is a defined contribution plan covering substantially all eligible

14  employees of Cobham. 2020 Auditor Report for the Cobham United States 401(k) Plan

15  ("2020 Auditor Report") at 3. More specifically, the Plan is a "defined contribution"

16  or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. §

17  1002(34), in that the Plan provides for individual accounts for each participant and for

18  benefits based solely upon the amount contributed to those accounts, and any income,

19  expense, gains and losses, and any forfeitures of accounts of the participants which

20  may be allocated to such participant's account. *Id.* Consequently, retirement benefits

21  provided by the Plan are based solely on the amounts allocated to each individual's

22  account. *Id.*

23          ***Eligibility***

24      39.41. In general, the Plan covers substantially all employees of Cobham from

25  the first day of employment. *Id.*

26          ***Contributions***

27      40.42. There are several types of contributions that can be added to a participant's

28  account, including: an employee salary deferral contribution, an employee Roth 401(k)

1  contribution, an employee after-tax contribution, catch-up contributions for employees
2  aged 50 and over, rollover contributions, discretionary profit-sharing contributions and
3  employer matching contributions based on employee pre-tax, Roth 401(k), and
4  employee after-tax contributions. *Id.*

5      41.43. With regard to employee contributions, participants can elect to make
6  annual pre-tax and Roth contributions subject to Internal Revenue Service ('IRS')
7  limitations. *Id.* With regard to pre-tax contributions made by the employer, Cobham
8  matches half of the contribution made by each employee up to 2% of total
9  compensation. *Id.*

10     42.44. Like other companies that sponsor a 401(k) plan for their employees,
11  Cobham enjoys both direct and indirect benefits by providing matching contributions
12  to the Plan's participants.  Employers are generally permitted to take tax deductions for
13  their contributions to 401(k) plans at the time when the contributions are made. *See*
14  *generally,* https://www.irs.gov/retirement-plans/plan-sponsor/401k-plan-overview.

15     43.45. Cobham's employees benefit in other ways from the Plan's matching
16  program.  It is well-known that "[o]ffering retirement plans can help in employers'
17  efforts to attract new employees and reduce turnover." *See,*
18  https://www.paychex.com/articles/employee-benefits/employer-matching-401k-
19  benefits.

20     44.46. Given the size of the Plan, Cobham likely enjoyed a significant tax and
21  cost savings from offering a match.

22          ***Vesting***

23     45.47. Participants are automatically vested in any contributions they made to
24  their accounts themselves. 2020 Auditor Report at 4. However, matching contributions
25  made by Cobham, as of January 1, 2019, are considered immediately vested. *Id.*
26  Contributions made by Cobham after January 1, 2019 were subject to a three-year
27  vesting schedule. *Id.*

28          ***The Plan's Investments***

1   46.48. In theory, the Committee determines the appropriateness of the Plan's

2   investment offerings and monitors investment performance. Charter at 2(ii). As will be

3   discussed in more detail below, the Committee fell well short of these fiduciary goals.

4   47.49. Several funds were available to the Plan's participants for investment each

5   year during the putative Class Period.  Specifically, a participant may direct all

6   contributions to selected investments as made available and determined by the

7   Committee.

8   48.50. At the Plan's fiscal year end in 2020, the Plan had over $930 million in

9   assets under management that were/are entrusted to the care of the Plan's fiduciaries.

10  2020 Auditor Report at 2.

11  ***Payment of the Plan's Expenses***

12  49.51. During the Class Period, administrative expenses were paid by using Plan

13  assets. 2020 Auditor Report at 6.

14  ***The Advisor***

15  52.    Throughout the Class Period, Precept Advisory Group ("Precept") is/was

16  the "investment advisor." *See* 2017-2023 Forms 5500s.

17  53.    Precept's compensation was paid for by the participants via Plan assets.

18  *See Id.*

19  ***The Challenged American Century Target Date Series***

20  54.    Defendants included in the Plan's menu of investment offerings the

21  materially underperforming American Century target date suite whether it was the

22  mutual fund version or the collective investment trust version. Both had a nearly

23  identical asset portfolio and managers with the primary difference being expense

24  (hereinafter the entire series will be referred to as the "American Century Target Date

25  Series," when referred to collectively).

26  55.    The R6 version was in the Plan as early as 2015.

27  56.    The first CIT version of this series wasn't available until August of 2014

28  and not included in the Plan until 2016, before the start of the Class Period.

57.    The R6 version had a marketplace inception date of July 2013 while the next lowest share class, the I shares, came on the market in May of 2008. For this reason, where there is no historical data for the CIT version, older versions of the same mutual fund series is as an accurate comparator to the rest of the series because each version had identical managers and holdings to both the R6 and the CIT versions with nearly identical performance histories on a total return basis with fees excluded. This fact, combined with the Beta analysis below, makes the comparisons accurate with regards to which fund costs more or less.

58.    Indeed, using prior share classes of an investment to measure performance is standard practice. The fee disclosure for the Target Date Series provided to Plan participants states: "The analysis on these pages may be based, in part, on adjusted historical returns for periods prior to the [share] class's actual inception of 03/23/2018. The returns are provided by Morningstar and reflect the historical performance of the oldest, eligible share class of the Pool with reported expenses and an inception date of 08/15/2014." 2022 Disclosure at A4.

**VIIIVI. The Totality of the Circumstances Demonstrates that the Plan's Fiduciaries Failed to Administer the Plan in a Prudent Manner**

**A. Overview**

**B.A.   ERISA Fiduciaries Are Held to the Highest Standards Regarding Process and Methodology for Evaluating Investments**

50.59.  As described in the "Parties" section above, Defendants were fiduciaries of the Plan.

51.60.  ERISA "imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions and disposition of assets." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2467 (2014) (quotation omitted).  In addition to a duty to select prudent investments, under ERISA, a fiduciary "has a continuing duty to

1    monitor [plan] investments and remove imprudent ones" that exist "separate and apart
2    from the [fiduciary's] duty to exercise prudence in selecting investments." *Tibble I*,
3    135 S. Ct. at 1828; *see also Hughes*, 142 S.Ct. at 741.

4    61.    As stated by the DOL: ERISA "requires plan fiduciaries, when selecting
5    and monitoring service providers and plan investments, to act prudently and solely in
6    the interest of the plan's participants and beneficiaries. Responsible plan fiduciaries
7    also must ensure that arrangements with their service providers are 'reasonable' and
8    that only 'reasonable' compensation is paid for services…" DOL 408(b)(2) Regulation
9    Fact Sheet.

10    62.    The duty "…to act solely in the best interest of participants has been a key
11    tenet of ERISA since its passage." "Best Practices for Plan Fiduciaries," at 36,
12    published by Vanguard, 2019.[14]

13    63.    Acting in the sole interest of plan participants is all encompassing. A
14    fiduciary must monitor all investment options in a 401(k) plan as a prudent investment
15    professional. *See* the U.S. Department of Labor, Employee Benefits Security
16    Administration (EBSA)'s "Meeting Your Fiduciary Responsibilities," at 2 ("The duty
17    to act prudently is one of a fiduciary's central responsibilities under ERISA. It requires
18    expertise in a variety of areas, such as investments."), available at
19    https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-
20    center/publications/meeting-your-fiduciary-responsibilities.pdf.

21    52.64.  Plaintiffs did not have and do not have actual knowledge of the specifics
22    of Defendants' decision-making process with respect to the Plan, including
23    Defendants' processes (and execution of such) for selecting, monitoring, and removing
24    the Plan's investments because this information is solely within the possession of
25    Defendants prior to discovery. *See, Braden v. Wal-mart Stores, Inc.*, 588 F.3d 585,
26    598 (8th Cir. 2009) ("If Plaintiffs cannot state a claim without pleading facts which
27
28
_____
[14] Available at https://institutional.vanguard.com/iam/pdf/FBPBK.pdf?cbdForceDomain.

THIRD FOURTH AMENDED CLASS ACTION COMPLAINT

**Field Code Changed**

1   tend systematically to be in the sole possession of defendants, the remedial scheme of

2   [ERISA] will fail, and the crucial rights secured by ERISA will suffer.").

3       ~~53.~~65. In fact, in an attempt to discover the details of the Plan's mismanagement,

4   Plaintiffs wrote to the Plan administrator (Cobham) to request, among other things, "all

5   written instruments" governing or pertaining to the Plan, including "investment policy

6   statements and investment management contracts, or other instruments under which

7   the Plan was established or operated, and all amendments, exhibits, or appendices

8   thereto," as well as the Committee's meeting minutes. This request was made on April

9   28, 2022. *See* Exhibit A~~.~~ ("104(b) Letter").

10      ~~54.~~66. By letter dated May 26, 2022, Cobham responded providing: the Plan's

11  2020 Form 5500; the 2019 Summary Plan Description (2019 SPD); the Plan adoption

12  agreement and amendment, an IRS opinion letter, a trust amendment, and the 401(k)

13  Plan Committee Charter. ~~*See* Exhibit F. No~~B ("Cobham Response"). Cobham did not

14  produce an investment policy statement~~, to the extent~~ (IPS) which is inarguably a

15  governing plan document if it exists~~.~~. As alleged below, Cobham has recently admitted

16  to the existence of a Plan IPS and its refusal to disclose or ~~meeting minutes, to produce~~

17  the ~~extent they exist, were produced in response to Plaintiffs' request.~~ IPS is an ongoing

18  violation of ERISA.

19      ~~55.~~67. Reviewing an Investment Policy Statement ("IPS") and meeting minutes,

20  when they exist, is the bare minimum needed to peek into a fiduciary's monitoring

21  process. ~~But in most cases, even that is not sufficient.~~ For, "[w]hile the absence of a

22  deliberative process may be enough to demonstrate imprudence, the presence of a

23  deliberative process does not … suffice in every case to demonstrate prudence.

24  Deliberative processes can vary in quality or can be followed in bad faith. In assessing

25  whether a fiduciary fulfilled her duty of prudence, we ask 'whether a fiduciary

26  employed the *appropriate* methods to investigate and determine the merits of a

27  particular investment,' not merely whether there were any methods whatsoever."

28  *Sacerdote et al. v. New York Univ.*, 9 F.4th 95, 111 (2d Cir. 2021) (emphasis in original).

56.68. For the purposes of this Complaint, Plaintiffs have drawn reasonable inferences regarding these processes and methods based upon several factors as described below encompassed herein.

### B.    Evaluating Investments

57.1.    As stated by the DOL: ERISA "requires plan fiduciaries, when selecting and monitoring service providers and plan investments, to act prudently and solely in the interest of the plan's participants and beneficiaries.  Responsible plan fiduciaries also must ensure that arrangements with their service providers are 'reasonable' and that only 'reasonable' compensation is paid for services…" DOL 408(b)(2) Regulation Fact Sheet.

58.1.    The duty "…to act solely in the best interest of participants has been a key tenet of ERISA since its passage." "Best Practices for Plan Fiduciaries," at 36, published by Vanguard, 2019.[15]

59.1.    Acting in the sole interest of plan participants is all encompassing.  A fiduciary must monitor all investment options in a 401(k) plan as a prudent investment professional.  See the U.S. Department of Labor, Employee Benefits Security Administration (EBSA)'s "Meeting Your Fiduciary Responsibilities," at 2 ("The duty to act prudently is one of a fiduciary's central responsibilities under ERISA. It requires expertise in a variety of areas, such as investments."), available at https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/publications/meeting-your-fiduciary-responsibilities.pdf.

60.69. A prudent investment professional, and hence a fiduciary, must regularly evaluate a fund's performance history, the portfolio manager's experience and tenure, changes to the fund's investment strategy, changes to the underlying assets in the investment, total assets under management within the fund, fees, and other relevant factors.

---

[15] Available at https://institutional.vanguard.com/iam/pdf/FBPBK.pdf?cbdForceDomain.

Field Code Changed

70.    Industry experts have concluded that the three- and five-year period is the most appropriate timeframe for evaluating investment performance because it covers a full market cycle. *See* The PNC Financial Services Group, Inc., Assembling a Robust Investment Policy Statement for Endowments and Foundations, June 17, 2021 (a "fund's investment performance should be reviewed regularly, such as on an annual basis; however, the emphasis with regard to performance should be focused on results achieved over a full market cycle (typically a three-to-five year period)"). Available at: https://www.pnc.com/insights/corporate-institutional/manage-assets/assembling-a-robust-investment-policy-statement-for-endowments-foundations.html[16]

61.71. With respect to investment returns, diligent investment professionals monitor the performance of their selected investments using appropriate industry-recognized "benchmarks" and prudently managed equivalents.

62.72. The measurement of investments against prudently managed alternatives is critical given that these alternatives represent other investments available to a plan, which may increase the likelihood that participants reach/live their preferred lifestyle in retirement.

63.73. The specific methodologies used to select prudent investments are primarily data driven. Such data is provided by investment research companies like Morningstar, which is the most accepted source of investment performance information, as it has the most robust information on mutual funds, CITs, and other types of investments. Indeed, Morningstar is used and trusted by virtually all financial professionals and fiduciaries, including those professional relevant to the Plan's fiduciaries who agree Morningstar's data is reliablePlan.

64.74. The Cobham United States 401(k) Plan, Important Plan and Investment-Related Information, dated May 9, 2022 ("2022 Disclosure") (Exhibit B) C) acknowledges that the Plan's Target Date "returns are provided by Morningstar...."

---

[16] Last accessed September 5, 2024.

1  *Id.* at A4. ~~It further states, "[g]enerally, data on Fidelity mutual funds is provided by~~
2  ~~FMR LLC, data on non-Fidelity mutual funds [like the Target Date series] is provided~~
3  ~~by Morningstar, LLC, and data on non-mutual fund products is provided by~~
4  ~~Morningstar, LLC, the product's investment manager or trustee, the plan sponsor~~
5  ~~whose plan is offering the product to participants, or other third party. Although~~
6  ~~Fidelity believes data gathered from these third party sources is *reliable*, it does not~~
7  ~~review such information and cannot warrant it to be accurate, complete, or timely."...."~~
8  2022 Disclosure at B19 ~~(emphasis added)~~.  Fidelity Investments is the Plan's
9  recordkeeper.  2019 SPD at 3.

10   75.   Morningstar is used by the Plan's advisor, Precept, and Morningstar is
11  used by American Century in the American Century Target Date Series' "Statement of
12  Additional Information" supplementing the Prospectuses.[17]

13   ~~65.~~76. Whether a plan fiduciary enlists the assistance of an investment manager,
14  consultant, or advisor, the plan's fiduciaries are not relieved of fiduciary liability for
15  selecting and monitoring the plan's investment options.

16   ~~66.~~77. It is black letter law that a fiduciary's duty to conduct an "independent
17  investigation into the merits of a particular investment," is the "most basic of ERISA's
18  investment fiduciary duties." *In re Unisys Savings Plan Litigation*, 74 F.3d 420, 435
19  (3d Circ. 1996). *Hughes*, 142 S.Ct. at 738 (noting ERISA fiduciaries are required to
20  "conduct their own independent evaluation to determine which investments may by
21  prudently included in the plan's menu of options.")

22   ~~67.~~78. Lastly, to the extent plan fiduciaries have adopted an investment policy
23  statement, ~~which does not appear to be the case here,~~ those fiduciaries "must comply
24  with the plan's written statements of investment policy, insofar as those written
25  statements are consistent with the provisions of ERISA."   *Lauderdale v. NFP*

26
27  _____

28  [17] *See* https://www.preceptadvisory.com/Services.htm ;
    https://www.sec.gov/Archives/edgar/data/1293210/000129321020000124/acaapocp2065catchupsai.
    htm

*Retirement, Inc.*, 2022 WL 17260510, at * 10 (S.D. Cal. Nov. 17, 2022). That is, the investment policy statement must be written with the sole interest of the plan participant in mind.

68.79. Defendants' breaches of their fiduciary duties, relating to their overall decision-making, resulted in, *inter alia*, the selection (and ~~maintenance~~retention) of ~~several funds in the Plan throughout the Class Period, including~~ the Target Date ~~Series~~Fund ("TDF") series identified below, that wasted the assets of the Plan and the assets of participants because of unnecessary costs and predictable underperformance.

**C.    Defendants Breached Their Fiduciary Duties by Selecting and Retaining in the Plan's Lineup the Chronically Underperforming American Century Series of Target Date Funds**

~~**1.    The Use of Target Date Funds in 401(k) Plans**~~

**1.    ~~At all~~Precept's Evaluation Considerations**

80.    Throughout the Class Period, Precept Advisory Group ("Precept") is/was the "investment advisor" and was paid for by Plan assets. *See* 2017-2023 Form 5500s.

81.    It is important to note that simply having an advisor is not the end of the fiduciary analysis, because fiduciaries must conduct their own investigation, and furthermore, it may be considered imprudence/nonfeasance to ignore the information provided by an advisor.

82.    The allegations herein do not presume Precept employed any of its stated criteria with respect to its purported review of Plan investments since Plaintiffs have not been provided access to such information. Rather, the allegations herein support the meaningfulness of Plaintiffs' comparators and benchmarks which demonstrate the imprudence of the Plan's investments challenged herein.

83.    Precept advertises that it provides quarterly "customized and objective reports [that] are prepared by internal analysts and presented by investment consultants

to committees" that include the following "Performance Measurement and Evaluation" considerations (hereinafter "Precept Evaluation Considerations"):[18]

**Quantitative measurements include**:

- o  Absolute and risk-adjusted performance
- o  Performance vs. peer group
- o  Performance vs. relevant market index
- o  Adherence to investment style
- o  Portfolio concentration
- o  Expense ratio vs. peer group~~times,~~
- o  Risk/return: standard deviation, R-squared, alpha, beta and sharpe ratio

**Qualitative considerations include:**

- o  Investment approach and style consistency
- o  Morningstar star rating
- o  Fund company's financial stability and corporate governance practice
- o  Legal issues or government investigations with fund company or manager(s).

84.    As discussed throughout this Complaint, applying the Precept Evaluation Considerations to the American Century Target Date Series shows that, on top of the underperformance (as overlapping with the quantitative measurements), the American Century Target Date Series also repeatedly displayed serious *qualitative* issues throughout the Class Period based on information knowable at the time these reports would have been generated to the Committee with the information Precept deems pertinent to evaluating a plan's investments.

---

[18] *See* https://www.preceptadvisory.com/Services.htm

69.85.It remains unknown to plaintiffs whether Precept actually provided Defendants maintained the authority to exercise control over the Plan's investments, with quarterly reports including the Plan's American Century Target Date Funds. these details or whether Precept was present at any meetings (assuming Defendants held meetings).

86. Defendants included in the Plan's menu of investment offerings the materially underperforming American Century target date suite whether it was the mutual fund version or the collective investment trust version. Both had a nearly identical asset portfolio and managers with the primary difference being expense (hereinafter the entire series will be referred to as the "However, if the information was presented it demonstrates that Defendants ignored the chronic condemnatory information, and if the reports were not presented, then it was incumbent on Defendants to do an independent investigation or press Precept for further information.

87. Ultimately, the Precept Evaluation Considerations highlight procedural failures by Defendants.

1.2. **Evaluating The** American Century Target Date Series[19]," when referred to collectively).

70. During the Class Period, the Plan offered the collective investment trust ("CIT") version of the American Century Target Date Series known as the American Century Retirement Date Trust series. Since the first CIT version of this series wasn't

---

[19] During the Class Period, the Plan offered the collective investment trust ("CIT") version of the American Century Target Date Series known as the American Century Retirement Date Trust series. Since the first CIT version of this series wasn't available until August of 2014 and not included in the Plan until 2016, the mutual fund version will be used here for comparison purposes since its mutual fund counterpart, namely, the American Century One Choice Date series first began in May of 2008 which will provide more of a historical timeline of the series performance. The R6 version was in the Plan as early as 2015, it had an inception date of July 2013 while the next lowest share class, the I shares, came on the market in May of 2008 and will be used here. The I share is an accurate comparator to the rest of the series since it had identical managers and holdings to both the R6 and the CIT versions with nearly identical performance histories on a total return basis with fees excluded but this combined with the Beta analysis, below, makes the comparisons efficient with regards to which fund costs more or less.

1    available until August of 2014 and not included in the Plan until 2016, the mutual fund
2    version will be used here for comparison purposes since its mutual fund counterpart,
3    namely, the American Century One Choice Date series first began in May of 2008
4    which will provide more of a historical timeline of the series performance. The R6
5    version was in the Plan as early as 2015, it had an inception date of July 2013 while the
6    next lowest share class, the I shares, came on the market in May of 2008 and will be
7    used here.  The I share is an accurate comparator to the rest of the series since it had
8    identical managers and holdings to both the R6 and the CIT versions with nearly
9    identical performance histories on a total return basis with fees excluded but this
10   combined with the Beta analysis, below, makes the comparisons efficient with regards
11   to which fund costs more or less.

12          71.1.  Indeed, using prior share classes of an investment to measure performance
13   is standard practice.  The fee disclosure for the Target Date Series provided to Plan
14   participants states: "The analysis on these pages may be based, in part, on adjusted
15   historical returns for periods prior to the [share] class's actual inception of 03/23/2018.
16   The returns are provided by Morningstar and reflect the historical performance of the
17   oldest, eligible share class of the Pool with reported expenses and an inception date of
18   08/15/2014." 2022 Disclosure at A4.

19          72.    The performance histories of these funds were mediocre and their risk
20   return profiles were flat when compared to their appropriate peer groups.

21          73.    Target date funds are designed to provide a single diversified investment
22   vehicle for plan participants. "Target date investments are generally designed for
23   investors expecting to retire around the year indicated in each investment's name."
24   2022 Disclosure at A4.

25          74.1.  The first target date funds in the industry were offered as early as 1994,
26   and since then the market for target date funds has exploded with numerous investment
27   managers offering a variety of different target date fund investments.

28          75.1.  By the mid-2000s, many target date funds with established performance

- 24 -
THIRD FOURTH AMENDED CLASS ACTION COMPLAINT

1  histories were available to defined contribution plans. By 2009, several target date

2  funds had performance histories of five years or more.

3      76.1.  Multiple types of assets are included in a target date fund portfolio,

4  including equity (stock) and fixed income (bond) securities. Target date funds offer

5  diversity and balanced exposure to a broad array of underlying securities included in

6  the fund.

7      88.    Target date series are a staple in almost every defined contribution plan.

8  Although no two target date series are identical, the general strategy, underlying

9  investments, and risk profile is the same across all target date series: "[a] target-date

10  fund is a fund of funds that provides asset-class diversity through a blend of stocks and

11  bonds. Portfolios are adjusted for lower risk as they approach a designated target date"

12  of retirement. https://www.morningstar.com/investing-definitions/target-date-funds-.

13  The subtle differences between series are what makes them more or less prudent than

14  others, especially in terms of performance predictability.

15      77.    Target date series "provide a valuable service to investors by relieving

16  them of the need to manage their portfolios themselves." *Id.* An investment in a single

17  target date fund can be attractive to plan participants who do not want to actively

18  manage their retirement savings and periodically convert to more conservative

19  holdings as their retirement date draws near. Target date funds "are managed to

20  gradually become more conservative over time.  The investment risks of each target

21  date investment change over time as its asset allocation changes." 2022 Disclosure at

22  A4.

23      78.    This rebalancing occurs based on the fund's "glide path." A glide path

24  determines how the fund's target asset allocations across the underlying securities are

25  expected to change over time and how they become more conservative as the target

26  retirement date approaches.

27      79.    As mentioned above, the target date refers to the participant's expected

28  retirement year. For example, "target date 2030" funds are designed for individuals

1    who intend to retire in 2030. As the year 2030 approaches, the fund's investment
2    manager adjusts the underlying asset mix to become more conservative.

3        80.    Target date funds have been divided into two broad categories by some
4    industry professionals based on the fund's glide path: "To" and "Through" target date
5    funds. A "To" target date fund is designed to allocate its underlying assets to the most
6    conservative investments at the year of the expected retirement. In contrast, a
7    "Through" target date fund continues its glidepath progression to reach its most
8    conservative asset allocation past the expected retirement date. This method focuses on
9    the life expectancy of the participant rather than the retirement date.

10       81.    However, for purposes of this Complaint, it matters little whether a target
11   date fund is a through or a to fund since the earliest retirement target year will be
12   excluded from this analysis, currently the 2025 year. Doing this allows all target date
13   funds to be compared equally since only the performance and risk return characteristics
14   in the early to middle of the target date path are considered for analysis. In fact,
15   Morningstar, the most respected independent research database in the financial industry
16   doesn't distinguish between a so called to or through fund as is indicated by the lack of
17   a separate Morningstar category and index for to and through target date funds. Instead,
18   all target date funds are expected to track the appropriate Morningstar indexes and
19   benchmarks.

20       89.    Thus, target date series are an important set-it-and-forget it option for less
21   savvy investors relying on their plan fiduciaries to select a prudent series for their plan.

22       82.90.  A fiduciary's duty to ensure that a prudent target date fund ("TDF") is
23   offered to plan participants is heightened when considering the circumstances in which
24   these funds are used by participants. Given the structure of target date funds,
25   participants often invest all their retirement assets in a single target date fund that
26   matches their retirement date. Some plans, like the Plan, make target date funds the
27   default selection if plan participants do not select a specific fund within the 401(k)
28   plan's lineup of investments. The use of a plan's target date funds as the default

investment option underscores the importance of a prudent and diligent process of monitoring target date funds by plan fiduciaries.

83.   A fiduciary must monitor all investment options in a 401(k) plan as a prudent investment professional. This process includes a requirement for the fiduciary to regularly evaluate the fund's performance history, the portfolio manager's experience and tenure, changes to the fund's investment strategy, changes to the underlying assets in the investment, total assets under management within the fund, fees, and any other relevant factors.

84.   With respect to investment returns, diligent investment professionals monitor the performance of their selected target date funds using appropriate industry-recognized "benchmarks" and prudently managed equivalents.

91.   The first target date funds in the industry were offered as early as 1994, and since then the market for target date funds has exploded with numerous investment managers offering a variety of different target date fund investments.

92.   By the mid-2000s, many target date funds with established performance histories were available to defined contribution plans. By 2009, several target date funds had performance histories of five years or more.

93.   The prevailing standard of prudence is to compare investments to several benchmarks. These benchmarks are the relevant market index, peer groups, and individual investible funds that represent alternatives that could replace an investment's position in a plan's investment menu.

85.94. The measurement of target date funds against prudently managed alternatives is critical given that these alternatives represent other target date funds available to the plan, which may be a more appropriate choice to meet participants' retirement needs.

95.   Established  The American Century Target Date Series consistently materially underperformed available alternative TDF series as well as the relevant market index and peer groups.

96.    While ignoring red flags found in a fund's prospectuses is imprudent, it is also imprudent not to investigate objective information that third parties provide regarding an investment.

97.    Throughout the Class Period, American Century Investments repeatedly disseminated information that demonstrated poor ratings, performance, strategy, and management of the funds. American Century Investments' reporting of these bad facts outweighed the existence of any seemingly benign facts in the reports. This is especially true because, objective, third-party information also negated any potential redeeming facts American Century stated regarding its own funds.

98.    Furthermore, information for the American Century Target Date Series that was central to the Precept Evaluation Considerations was available at least quarterly and raised many red flags throughout the Class Period as well as before the CIT version was implemented in the Plan.

**i.    Morningstar Benchmarks**

99.    American Century Investments' "Statement of Additional Information[20]" dated September 23, 2020, states that the American Century Target Date Series' "Peer Group" is the "Morningstar Target-Date" peer group (or category).

100.    Further, American Century uses data that "is proprietary to Morningstar and/or its content providers" on its webpages for the One Choice portfolios.[21]

101.    For another example, American Century publishes Morningstar star ratings on its webpages for the American Century Target Date Series. *See* https://www.americancentury.com/invest/funds/one-choice-2045-portfolio/aroix/.

102.    Precept utilizes "Morningstar Direct" for its "Investment Analysis & Benchmarking System" which will "Customize, automate, and generate Investment

---

[20] *See* https://www.sec.gov/Archives/edgar/data/1293210/000129321020000124/acaapocp2065catchupsai.htm

[21] *See*, *e.g.*, https://www.americancentury.com/invest/funds/one-choice-2045-portfolio/aroix/

1    Summary        Reports        on        a        quarterly        basis." *See*

2    https://www.preceptadvisory.com/Services.htm

3        103.   Accordingly, the Precept Evaluation Considerations, particularly the

4    considerations pertaining to returns, peer group comparisons, risk, and Morningstar

5    ratings appear to be generated from Morningstar data.

6        104.   It is therefore most likely that Precept provided the most up to date

7    (quarterly) benchmarking information using the Morningstar Lifetime Moderate Index

8    category, rather than "S&P Target Date to" index ("S&P To Index") which is listed in

9    the funds' prospectuses issued annually. However, neither index reported acceptable

10   returns for the American Century Target Date Series.

11       105.   The 2024 Prospectus states that the S&P To Index corresponding to each

12   target date vintage is what "the advisor considers to be more representative of the

13   fund's investment strategy." *See* 2024 Prospectus at 9, 14, 19, 24, 29, 34, 39, 44, 49.

14       106.   However, prospectuses do not offer a disinterested evaluation of a fund,

15   as they are filed by the fund's manager. Again, Morningstar is an accepted unbiased

16   source of investment fund information, as Morningstar evaluates funds beyond what is

17   stated in their prospectus.

18       107.   Nonetheless, as demonstrated *infra*, the American Century Target Date

19   Series underperformed against the S&P To Index before the Trust version was

20   implemented in the Plan and throughout the Class Period.

21       108.   Further, because the Morningstar Peer Group is the appropriate peer group

22   (or universe), the Morningstar Lifetime Moderate Index is another appropriate index to

23   benchmark the American Century Target Date Series against.

24       109.   In short, the Morningstar Lifetime Moderate Index category is the

25   appropriate index for understanding what information Defendants likely had at their

26   disposal in the moments when they were supposed to be making decisions regarding

27   the American Century Target Date Series.

28       110.   "Performance vs. peer group" and "Expense ratio vs. peer group" are two

- 29 -
~~THIRD~~ FOURTH AMENDED CLASS ACTION COMPLAINT

of the Precept Evaluation Considerations and are indeed important considerations made by prudent fiduciaries.

111. The "Morningstar Target-Date" peer group, as designated for the American Century Target Date Series by its manager, is the appropriate Morningstar Category.

112. A Morningstar Category is assigned by placing funds into peer groups based on their underlying holdings. The underlying securities in each portfolio are the primary factor in [Morningstar's] analysis . . . . Funds are placed in a category based on their portfolio statistics and compositions over the past three years. Analysis of performance and other indicative facts are also considered." *See* Morningstar's summary of the Northern Trust Focus 2045 Fund, filed in *Allegretti v. Walgreen Co. et al.*, No. 19-cv-05392 at Dkt. 43 ECF pg. 28 (N.D. Ill. Dec. 6, 2019). The analysis in Allegretti similarly deals with the Morningstar Lifetime Moderate Index category. *Id.*

113. Specifically, Morningstar Categories group funds "into categories according to their actual investment style, not merely their stated investment objectives, nor their ability to generate a certain level of income. To ensure homogeneous groupings, Morningstar normally allocates funds to categories on the basis of their portfolio holdings. Several portfolios are taken into account to ensure that the fund's real investment stance is taken into account." https://lt.morningstar.com/1c6qh1t6k9/glossary/default.aspx?LanguageId=en-GB&group=M

114. Morningstar categories are more reliable than simply comparing fund prospectuses, because Morningstar is a third-party providing objective, disinterested information. Indeed, "Morningstar categories help investors and investment professionals make meaningful comparisons between funds." https://sg.morningstar.com/sg/news/115635/morningstar-category-definition.aspx

115. Again, Precept uses Morningstar for its reporting to clients, so it is most likely that information disseminated by Morningstar throughout the Class Period was

provided to Defendants on top of the fact that this data was available to Defendants regardless of Precept's services.

116. The Morningstar Peer Group being the appropriate peer group (or universe), is another reason why the Morningstar Lifetime Moderate Index is an appropriate index to benchmark the American Century Target Date Series against.

*ii.* **The Comparator *Funds***

~~86.~~117.    The established target date investment managers that are worthy of providing alternative TDF investments for the Plan include, but are not limited to, American Funds ~~and~~, Callan GlidePath® Funds, MoA Clear Passage Funds, Natixis Funds, Nuveen Lifecycle Funds, T. Rowe Price. ~~American~~ Retirement Funds, and Voya Target Retirement Funds. T. Rowe ~~have each~~has offered target date funds for ~~nearly~~more than 20 years ~~and those~~while American offered target date funds ~~have provided~~for approximately 15 years, providing stable investment returns to 401(k) plan participants.

118. The T.Rowe Price Retirement Target Date A Series, the American Funds Target Date R6 Series, the Callan GlidePath® Target Date R6 Series, the MoA Clear Passage Target Date Series, the Natixis Target Date N Series, the Nuveen Lifecycle Target Date R6 Series and Voya Target Date CIT Series will all be referred to as the "Comparator Funds."

119. The Comparator Funds are grouped in the same Morningstar Category as the American Century Target Date Series and are comparable based on several aspects:

*Underlying Holding and Management*

120. The American Century Target Date Series and each of the Comparator Funds are large blend style funds, per their Morningstar pages.

121. "[N]o series is truly passively managed, as every target-date manager makes active decisions in building a glide path and selecting asset classes, sometimes tactically based on market outlooks." *See* https://www.morningstar.com/funds/1-trillion-target-date-fund-landscape

122.   The American Century Target Date Series "buys and sells shares of other American Century mutual funds" and thus it is at least significantly actively managed. *See* 2024 Prospectus at 8.

123.   The Comparator Funds also all have a significant degree of active management, or are purely actively managed.[22]

124.   Multiple types of assets are included in a target date fund portfolio, including equity (stock) and fixed income (bond) securities. Target date funds offer diversity and balanced exposure to a broad array of underlying securities included in the fund.

125.   The 2045 vintage is a good demonstration of the asset allocations for the American Century Target Date Series, the Comparator Funds, the Morningstar Category, and the Morningstar Index, because the target date is neither too close nor too distant. The asset allocation is sufficiently similar across all funds, where U.S. Equities are the largest percentage of holdings, non-U.S. equities range from 20.07-29.57% of holdings, and the remaining holding are Fixed Income (or bonds), Cash investments, and "other" or "not classified" investments:

| | U.S. Equity | Non-U.S. Equity | Fixed Income | Other | Cash | Not Classified |
|---|---|---|---|---|---|---|
| **American Century 2045 TDFs**[23] | 45.64% | 21.19% | 31.19% | 0.04% | 1.7% | 0.24% |

---

[22] *See* https://capitalgroup.prospectus-express.com/summary.asp?doctype=spro&cid=capgroup&fid=02630T514 ; https://www.im.natixis.com/en-us/products/mutual-funds/natixis-target-retirement-funds ; https://www.nuveen.com/en-us/investments/nuveen-lifecycle-target-date-series ; https://www.callan.com/uploads/2021/03/638ddda1c314c02cce19a40d9b4c7de3/callanglidepathcommentary-r6-4q2020.pdf ; https://moafunds.com/funds/target-date/clear-passage-2050 ; https://individuals.voya.com/voya-target-date-funds .
[23] *See* https://www.morningstar.com/funds/xnas/aroix/portfolio

~~THIRD~~ FOURTH AMENDED CLASS ACTION COMPLAINT

| | | | | | | |
|---|---|---|---|---|---|---|
| **Natixis Target Retirement 2045**[24] | 54.6% | 26.67% | 14.11% | 0.25% | 4.33% | N/A |
| **Nuveen Lifecycle 2045**[25] | 55.71% | 29.17% | 13.43% | 0.02% | 1.65% | N/A |
| **Callan GlidePath**[26] | 57.68% | 28.93% | 5.09% | 8.31% | N/A | N/A |
| **American Funds 2045**[27] | 59.24% | 25.84% | 10.05% | 0.4% | 4.34% | 0.14% |
| **MoA Clear Passage 2045**[28] | 62.32% | 20.07% | 13.34% | 0.16% | 4.11% | N/A |
| **Voya Target Retirement 2045**[29] | 60.18% | 29.57% | 10.98% | 0.04% | -0.78% | 0.01 |
| **T. Rowe Price Retirement 2045**[30] | 65.6% | 28.66% | 2.6% | 0.61% | 2.51% | 0.02 |
| **Morningstar Category**[31] | 52.25% | 27.38% | 9.50% | 10.31% | 2.18% | 0.04% |

[24] *See* https://www.morningstar.com/funds/xnas/nsfjx/portfolio
[25] *See* https://www.morningstar.com/funds/xnas/tlxix/portfolio
[26] The information for Callan  was derived from a different source, but the breakdown represents the closest categorization method. *See* https://doc.morningstar.com/LatestDoc.aspx?clientid=greatgray&key=1cd9aa63b2372cae&documenttype=124&sourceid=260&secid=FOUSA06U3M
[27] *See* https://www.morningstar.com/funds/xnas/aahtx/portfolio
[28] *See* https://www.morningstar.com/funds/xnas/murmx/portfolio
[29] *See* https://www.morningstar.com/funds/xnas/irspx/portfolio
[30] *See* https://www.morningstar.com/funds/xnas/trrkx/portfolio
[31] https://www.morningstar.com/funds/xnas/aroix/portfolio

| | | | | | |
|---|---|---|---|---|---|
| **Morningstar Index**[32] | 55.33% | 30.11% | 14.28% | 0.28% | 0 | 0 |

126.  As seen above, the American Century Target Date Series' fixed income holding was more than the Comparator Funds' percentages, but still the third largest category of underlying assets. As discussed herein, this reflects a flawed strategy that led to poor results.

127.  Relevant for comparison purposes is that the Comparator Funds represented similar priorities of asset allocation at the same time, yet to a lesser extreme, which resulted in the Comparator Funds achieving better returns without using a pointlessly unorthodox glidepath strategy.

***Glide Paths and Strategy***

128.  The strategy of a target date series is to "gradually shift[] a retirement fund's investments from riskier to safer options as you get closer to retirement age. This reallocation is based on the Fund's 'glide path.'" *Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, 210 (6th Cir. Nov. 20, 2024) (internal citations omitted).

129.  "Glide paths in retirement funds come in two main types: 'to' and 'through.' 'To' glide paths reach their most conservative allocation at the target retirement date and stay there, while 'through' glide paths continue to adjust and become more conservative for several years after the retirement date." *Id.*

130.  Also, a "'to' objective is focused on limiting the volatility or the variability of outcomes for the investor up to retirement, while a 'through' objective drives growth for participant balances for several years and then allows them to be converted into income through retirement." https://www.plansponsor.com/in-depth/evaluating-vs-glide-paths/, dated February 17, 2021.

---

[32] *Id.*

131.  "The retirement industry previously perceived "to" glide paths as more conservative than "'through' ones[,]" but the market volatility of the 2020 Covid-19 Pandemic dispelled the widely held beliefs that there is a material difference in outcomes based on a fund's glidepath, as opposed to other factors. https://www.plansponsor.com/in-depth/evaluating-vs-glide-paths/, dated February 17, 2021.

132. Critically, as target-date portfolio specialist Joe Martel explained, "volatility risk" is "rarely catastrophic due to its short-term nature." "However, longevity risk is a lasting problem—a participant who runs out of retirement income at age 80 or 85 will experience devastating consequences." https://www.plansponsor.com/in-depth/evaluating-vs-glide-paths/

133.  For this reason, by the year 2024, 71% of TDFs were "through" funds "that continue to change their allocations for up to 30 years after the target date, while the remainder are "to" funds with allocations that no longer change after the target date." *See* https://www.ici.org/system/files/2024-10/quick-facts-tdfs.pdf

134.  In short, even if the type of glidepath were a prominent consideration for fiduciaries (it is not), "to" glidepaths are unfavored because, the "through" glidepath TDF's provide more secure long-term income which is the essential purpose of a TDF, while the relatively brief market volatility for which "to" glidepaths purport to protect against have proven to be inconsequential in the long term.

135.  Hence, a prudent fiduciary investigating the marketplace's trends and alternative funds will compare funds with to and through glide paths.

136.  Indeed, even American Century deems it acceptable to compare the American Century Target Date Series to both "to" and "through" glidepath TDFs, because American Century states that Morningstar's TDF peer group is appropriate, despite the fact that it includes TDFs with both types of glidepath.

137.  American Century Investments states that the American Century Target Date Series have "a more moderate, flatter glide path, which aims to keep more

participants on course throughout the journey to and through retirement." *See* https://res.americancentury.com/docs/a-auth/one-choice-target-date-portfolios-plan-sponsor-brochure?cpg=true

138. The 2024 Prospectus explains how the glidepath operates: "on approximately November 30 of the year before the target date, its neutral mix will become fixed." 2024 Prospectus.

139. Morningstar reports that the "American Century One Choice target-date series offers a contrarian approach to retirement investing. A distinctly flat glide path aims to mitigate sharp drawdowns for most of the investment journey but courts above-average risk for retirees." https://www.morningstar.com/funds/xnas/arfsx/quote

140. Comparable levels of risk are listed as important Precept Evaluation Considerations.

141. Because of the unconventional, unproven glidepath strategy, the American Century Funds necessitate a heightened level of scrutiny by fiduciaries to determine whether the strategy was working as hoped.

142. As discussed herein, American Century's speculation that the atypically "flatter" glidepath strategy would lead to better results than the results achieved by other TDFs using conventional wisdom achieved never materialized. In fact, it repeatedly proved to be a losing strategy.

143. Indeed, the strategy did not materially "mitigate sharp drawdowns", particularly when properly viewing the American Century Target Date Series' returns for a whole market cycle.

144. Instead, the American Century Target Date Series underperformed for years before and after market draw downs, performed unremarkably during market draw downs, and repeatedly proved to have a defective strategy that did not achieve the fund's aims- thus guaranteeing that retirees were not receiving safe and/or optimal funds for and throughout retirement.

145.   The American Century Target Date Series offered no meaningful market volatility security nor greater income in the longevity sense, particularly compared to the dozens of other TDF series the Plan could have invested in that employed conventional wisdom for their glidepaths, allocations, and strategies.

146.   Had Defendants investigated the marketplace they would have discovered that other TDFs with "moderate" glidepaths seeking stability in market downturns existed, without going to the extreme flat glidepath that the American Century Target Date Series employed.

147.   These moderate glidepath TDFs, including several of the Comparator Funds, ensured that the more important, higher possible returns in good markets were not sacrificed for the short-term safer returns in market downturns.

148.   The Voya Target Retirement Funds are "to" glidepath TDFs like the American Century Target Date Series, but with a more conventional approach, which resulted in greater returns overall.[33]

149.   The T. Rowe Price Target Date Funds' glidepath is also comparable because it "offer[s] lower volatility -- and lower potential long-term growth -- than Retirement Funds by emphasizing bonds near the target date."[34]

150.   The Callan Glidepath Series takes a moderate glidepath approach by flattening the glidepath until the fund is within twenty years of the target retirement date and flattens again after only 10 years of the retirement date.[35]

151.   The Callan Glidepath Series performed materially better than the American Century Target Date Series in good markets – by as much as 7.11% – while also performing better or roughly the same in bad markets. In 16 instances of negative

---

[33] *See* https://presents.voya.com/Content/Delivers/adp/presentationresources/Voya_TARGET_SOLUTION_TRUST_SERIES_Q4_2024.pdf
[34] *See* https://www.troweprice.com/personal-investing/tools/fund-research/target-date-funds#TargetFunds
[35] *See* https://doc.morningstar.com/LatestDoc.aspx?clientid=greatgray&key=1cd9aa63b2372cae&documenttype=124&sourceid=260&secid=FOUSA06U3M

THIRD FOURTH AMENDED CLASS ACTION COMPLAINT

returns, the American Century Target Date Series only beat the Callan Glidepath Funds only                                                                     four times, often by                                                                     less than                                                                     0.25%:

| Group/Investment | 1/1/2016 Return (Cumulative) 12/31/2016 | 1/1/2017 Return (Cumulative) 12/31/2017 | 1/1/2018 Return (Cumulative) 12/31/2018 | 1/1/2019 Return (Cumulative) 12/31/2019 | 1/1/2020 Return (Cumulative) 12/31/2020 | 1/1/2021 Return (Cumulative) 12/31/2021 | 1/1/2022 Return (Cumulative) 12/31/2022 | 1/1/2023 Return (Cumulative) 12/31/2023 |
|---|---|---|---|---|---|---|---|---|
| **US SA Target-Date 2020** | | | | | | | | |
| American Century Retirement Date 2020 II | 6.40 | 11.21 | | | | | | |
| Callan GlidePath® 2020 Fund CL Z | 9.32 | 14.35 | | | | | | |
| **US SA Target-Date 2025** | | | | | | | | |
| American Century Retirement Date 2025 X | 6.61 | 12.43 | -4.66 | 17.44 | 11.80 | 9.78 | -13.47 | 11.62 |
| Callan GlidePath® 2025 Fund CL Z | 9.94 | 15.87 | -4.27 | 20.70 | 13.45 | 15.62 | -12.58 | 13.34 |
| **US SA Target-Date 2030** | | | | | | | | |
| American Century Retirement Date 2030 X | 6.73 | 13.71 | -5.22 | 18.79 | 13.16 | 10.48 | -14.41 | 13.26 |
| Callan GlidePath® 2030 Fund CL Z | 10.22 | 17.42 | -5.15 | 22.24 | 14.41 | 17.18 | -13.59 | 14.65 |
| **US SA Target-Date 2035** | | | | | | | | |
| American Century Retirement Date 2035 X | 6.98 | 14.91 | -5.73 | 20.19 | 14.34 | 11.26 | -15.19 | 13.26 |
| Callan GlidePath® 2035 Fund CL Z | 10.50 | 18.36 | -5.85 | 23.48 | 15.14 | 18.25 | -14.37 | 15.90 |
| **US SA Target-Date 2040** | | | | | | | | |
| American Century Retirement Date 2040 X | 7.29 | 16.33 | -6.17 | 21.54 | 15.67 | 11.96 | -16.01 | 14.13 |
| Callan GlidePath® 2040 Fund CL Z | 10.71 | 19.18 | -6.42 | 24.32 | 15.80 | 19.07 | -14.84 | 16.99 |
| **US SA Target-Date 2045** | | | | | | | | |
| American Century Retirement Date 2045 X | 7.65 | 17.82 | -6.74 | 23.00 | 16.97 | 12.85 | -16.55 | 14.87 |
| Callan GlidePath® 2045 Fund CL Z | 10.75 | 19.43 | -6.82 | 24.92 | 16.20 | 19.28 | -15.40 | 17.83 |
| **US SA Target-Date 2050** | | | | | | | | |
| American Century Retirement Date 2050 X | 7.90 | 18.90 | -7.27 | 24.35 | 18.16 | 13.92 | -16.99 | 15.68 |
| Callan GlidePath® 2050 Fund CL Z | 10.77 | 19.43 | -6.82 | 24.92 | 16.25 | 19.28 | -15.56 | 18.28 |
| **US SA Target-Date 2055** | | | | | | | | |
| American Century Retirement Date 2055 X | 8.23 | 19.46 | -7.61 | 24.86 | 18.51 | 14.48 | -17.19 | 16.32 |
| Callan GlidePath® 2055 Fund CL Z | 10.79 | 19.44 | -6.90 | 24.99 | 16.34 | 19.32 | -15.55 | 18.27 |
| **US SA Target-Date 2060** | | | | | | | | |
| American Century Retirement Date 2060 X | 8.15 | 19.71 | -7.76 | 25.36 | 18.91 | 14.89 | -17.30 | 16.57 |
| Callan GlidePath® 2060 Fund CL Z | 10.85 | 19.51 | -6.87 | 25.03 | 16.45 | 19.23 | -15.46 | 18.28 |

152.  The above data also demonstrates why it is appropriate to evaluate TDFs, as long-term investments, through full market cycles rather than myopically focusing on a TDF's behavior during a market downturn. The volatility risks faced by these two funds were predictably short-term while the surrounding years offered outweighing potential returns that the Callan Glidepath Funds achieved and the American Century Target Date Series did not.

153.  The MoA Clear Passage funds are "through" glidepaths, but in a more conservative sense because the glidepath becomes fixed within 10 years of the retirement date.[36]

154.  The Natixis Target Retirement funds and the Nuveen Lifecycle funds are "through" glidepaths.[37]

---

[36] *See* https://moafunds.com/funds/target-date
[37] *See* https://www.im.natixis.com/en-us/products/mutual-funds/natixis-target-retirement-funds ; https://www.nuveen.com/en-us/mutual-funds/nuveen-lifecycle-index-2035-fund?shareclass=I

~~THIRD~~ FOURTH AMENDED CLASS ACTION COMPLAINT

155.   Again, prudent fiduciaries compare funds with "through" glidepaths as well as "to" glidepaths, and favor "through" glidepath funds based on their strategy's proven ability to better guarantee long term income support for individuals throughout retirement.

156.   Whether comparing "to" glidepath TDFs, glidepaths that become flat within 10 years of retirement, or longer "through" glidepaths, the American Century Target Date Series' returns demonstrate the glidepath and asset allocation management was an obvious flawed strategy.

**D.    The American Century Series of Target Date Funds Chronically Underperformed**

87.157.      In 2020, the 401(k) Plan held approximately $155 million dollars in the American Century Target Date Series. 2020 401(k) Plan Auditor Report at 10. With such a large amount invested in the target date series, the Plan would have been able to choose virtually any available target date series for the Plan.

88.158.      The American Century Target Date Series are the only target date investing options in the Plan. In other words, participants in the Plan who want to invest in a target date strategy have no choice other than the American Century Target Date Series.

89.159.      Defendants were under an obligation under ERISA to carefully vet the American Century Target Date Series before selecting them for inclusion in the Plan. Defendants were also under a continuing obligation under ERISA to carefully monitor and scrutinize the performance of the American Century Target Date Series on an ongoing basis thereafter.

**1.    The American Century Target Date Series Materially Underperformed Relative to Comparator Target Date Funds and Indexes**

1

2      90.    The American Century Target Date Series consistently materially

3  underperformed industry accepted benchmarks for target date funds used by

4  investment professionals as well as the benchmarks in the Series' disclosures.

5      91.    The American Century Target Date Series can be compared to various

6  similar target date funds ("Comparator Funds") and relevant indexes ("Comparator

7  Indexes") as benchmarks. Suitable Comparator funds include the T.Rowe Price

8  Retirement target date suite and the American Funds target date suite. These two target

9  date suites are suitable Comparator Funds to the American Century Target Date Series

10 because Morningstar, the most well respected and accepted financial industry fund

11 database places all three funds in the US Fund Target Date Category and/or the US SA

12 Target Date Category ("Target Date Category") and compares those funds to how an

13 average fund in that category should perform by using the Morningstar Lifetime

14 Moderate Index.[38] There are, at least, 200 other similar funds in the Target Date

15 Category, as will be described in more detail below.

16     92.    As noted above, the Plan's fiduciaries have acknowledged the reliability

17 of Morningstar as a resource.

18     93.1. A Morningstar Category is assigned by placing funds [*e.g.*, the T.Rowe

19 Price Retirement target date suite and the American Funds target date suite etc.] into

20 peer groups based on their underlying holdings. The underlying securities in each

21 portfolio are the primary factor in [Morningstar's] analysis . . . . Funds are placed in a

22 category based on their portfolio statistics and compositions over the past three years.

23 Analysis of performance and other indicative facts are also considered." *See*

24 _____

25 [38] Although, during the Class Period, the share class of the American Century Target Date Series
   was in the Collective Investment Trust ("CIT") version, the identical mutual fund version will be

26 analyzed here because it had been in existence longer than the CIT version. Accordingly, the mutual
   fund versions of the two Comparator funds will also be used. The mutual fund versions of each fund

27 are accurate comparators to the CIT version because they have identical managers and performed in
   a nearly identical fashion to their mutual fund counterparts. In addition, the mutual fund versions of

28 each fund have been in existence for a longer of period of time allowing the performance and risk
   characteristic of each to be analyzed over a longer period of time.

1    Morningstar's summary of the Northern Trust Focus 2045 Fund, filed in *Allegretti v.*
2    *Walgreen Co. et al.*, No. 19-cv-05392 at Dkt. 43 ECF pg. 28 (N.D. Ill. Dec. 6, 2019).
3    The analysis in Allegretti similarly deals with the Morningstar Lifetime Moderate
4    Index category. *Id.*

5        94.   Further, Morningstar itself states that it created its categories "to help
6    investors make meaningful comparisons between mutual funds. Morningstar found that
7    the investment objective listed on a fund's prospectus often did not adequately explain
8    how the fund was actually invested." Morningstar Category Classification, 31 March
9    2022 ("Morningstar Classifier")[39] at page 5. The Morningstar Classifier goes on to state
10   that "[f]or example, many funds claimed to be seeking "growth," but some of those
11   were investing in established blue-chip companies while others were investing in
12   small cap companies." *Id.*

13       95.   Morningstar is the most well respected independent research tool
14   available to the financial industry and is used and trusted by virtually all financial
15   professionals and fiduciaries as evidenced by the Plan fiduciaries' own reliance on
16   Morningstar data.

17       96.   Morningstar places the two Comparator Funds and the American Century
18   Target Date Series in the Target Date Category because the underlying holdings of each
19   fund match the risk return profile of this category. The Target Date Category should
20   concentrate its holdings in the large blend/risk return category. In fact, as demonstrated
21   by the graphs in Exhibit "C" which make up a part of the Morningstar report for each
22   fund, these three funds do in fact share these qualities. It's for this reason that the two
23   Comparator Funds are accurate and suitable comparators along with the more than 200

24

25

26

27

─────────────

28   [39] Available at the following web address:
     https://advisor.morningstar.com/Enterprise/VTC/MorningstarCategoryClassificationforFunds_April
     2022.pdf. Last accessed on May 12, 2023.

THIRD FOURTH AMENDED CLASS ACTION COMPLAINT

1    funds that Morningstar has placed in the Target Date Category.⁴⁰

2        97.160.    A prudent fiduciary should have used some or all of these the

3    aforementioned benchmarks, or substantially similar benchmarks, to evaluate the

4    performance of the American Century Target Date Series before implementing the CIT

5    version in the Plan in 2016, or at least as early as the inception of the Class Period, or

6    sooner, and on an ongoing basis, thereafter.

7        98.161.    The performance of the American Century Target Date Series

8    lagged behind the performance of the applicable Comparator Funds for many years

9    before the inception of the Class Period clearly showing that it was an imprudent choice

10   for the Plan.

11       162.   The yearly performance as early as 2014, well before the inception of the

12   Class Period, shows that the American Century Target Date Series were, historically,

13   an imprudent selection. Using target date 2040 as a sample target date year,⁴¹ it's

14   clear that out of more than 200 Morningstar peer funds in the LT Mod target date

15   group, the American Century Target Date Series was mediocre, at best. Here, two

16   target date series from this Morningstar As seen in the chart below, the Challenged

17   Funds (in yellow) underperformed compared to the peers (in red text) in their

18   Morningstar Categories and their Morningstar benchmarks on a 5-year average basis

19   before Defendants implemented the Trust version in the Plan and continued to

20   underperform throughout the Class Period. Specifically, the chart below demonstrates

21

22   ⁴⁰ Each year, as funds are created or discontinued, the number of funds in this category varied but
23   generally averaged slightly more than 200 funds for both the US Fund Target Date Category and the
     US SA Target Date Category. The list of funds in this Morningstar category in any given year, would
24   include various share classes of each target date suite. In addition, the 200 funds referenced is
     conservative as the US Fund Target Date Category and the US SA Target Date Category each
25   averaged approximately 200 funds each year in their respective categories and both are meant to track
     the same index, namely the Lifetime Moderate Index.
26   ⁴¹ A complete analysis for each target date year beginning in 2030 to 2055 is attached hereto as Exhibit
27   "D." As discussed above, 2025 is removed from this analysis to make a fair comparison between
     funds using their early to mid target date life. All target date years from 2030 to 2055, currently,
28   should have greater focus on growth for retirement savings, especially the 2040 year which will be
     used as the primary comparator.

that, in 2019, the 2030-2060 vintages of the American Century Target Date Series underperformed against the Comparator Funds' corresponding vintages 35 out of 35 instances (100%). In 2021, the same vintages underperformed against the Comparator Funds' corresponding vintages in 39 out of 41 instances (95%). In 2023 and 2024, the same vintages underperformed against the Comparator Funds' corresponding vintages in all 49 instances (100%). In total, and since 2015, the American Century Target Date Series underperformed the Comparator Funds on a 5-year lookback period in 172 out of 174 instances, or **99%** of the time.

| Investment and Benchmark | Five-Year Return (Annualized) | | | |
| --- | --- | --- | --- | --- |
| | 1/1/2015 - 12/31/2019 | 1/1/2017 - 12/31/2021 | 1/1/2019 - 12/31/2023 | 1/1/2020 - 12/31/2024 |
| American Century Retirement 2030 Trust Class XI | 6.27 | 10.00 | 7.61 | 5.72 |
| American Funds 2030 Trgt Date Retire R6 | 8.07 | 12.16 | 8.90 | 7.18 |
| Callan GlidePath® 2030 Fund CL R6 | 8.05 | 12.51 | 9.92 | 7.90 |
| MoA Clear Passage 2030 Fund | 7.88 | 11.23 | 9.21 | 7.21 |
| Natixis Target Retirement 2030 N | N/A | N/A | 8.92 | 6.92 |
| Nuveen Lifecycle 2030 R6 | 7.67 | 11.35 | 8.48 | 6.41 |
| T. Rowe Price Retirement 2030 Tr-A | 8.25 | 12.64 | 9.39 | 7.21 |
| Voya Target Retirement 2030 Tr Comps CIT | 7.47 | 11.74 | 8.61 | 6.71 |
| **Benchmark: Morningstar Lifetime Mod 2030 TR USD** | **7.28** | **11.07** | **7.44** | **5.15** |
| American Century Retirement 2035 Trust Class XI | 6.69 | 10.76 | 8.22 | 6.17 |

~~THIRD~~ FOURTH AMENDED CLASS ACTION COMPLAINT

| | | | |
|---|---|---|---|
| American Funds 2035 Trgt Date Retire R6 | 8.99 | 13.97 | 10.39 | 8.43 |
| Callan GlidePath® 2035 Fund CL R6 | 8.25 | 13.09 | 10.51 | 8.48 |
| MoA Clear Passage 2035 Fund | 8.28 | 12.22 | 10.28 | 8.33 |
| Natixis Target Retirement 2035 N | N/A | N/A | 9.83 | 7.67 |
| Nuveen Lifecycle 2035 R6 | 8.11 | 12.27 | 9.38 | 7.22 |
| T. Rowe Price Retirement 2035 Tr-A | 8.64 | 13.55 | 10.24 | 8.05 |
| Voya Target Retirement 2035 Tr Comps CIT | 7.91 | 12.86 | 9.77 | 7.87 |
| **Benchmark: Morningstar Lifetime Mod 2035 TR USD** | **7.82** | **11.85** | **8.41** | **6.04** |
| American Century Retirement 2040 Trust Class XI | 7.14 | 11.57 | 8.80 | 6.67 |
| American Funds 2040 Trgt Date Retire R6 | 9.30 | 14.75 | 11.17 | 9.40 |
| Callan GlidePath® 2040 Fund CL R6 | 8.35 | 13.55 | 11.02 | 9.08 |
| MoA Clear Passage 2040 Fund | 8.29 | 12.79 | 11.19 | 9.36 |
| Natixis Target Retirement 2040 N | N/A | N/A | 10.48 | 8.40 |
| Nuveen Lifecycle 2040 R6 | 8.51 | 13.17 | 10.34 | 8.17 |
| T. Rowe Price Retirement 2040 Tr-A | 8.93 | 14.31 | 10.93 | 8.80 |
| Voya Target Retirement 2040 Tr Comps CIT | 8.21 | 13.77 | 10.83 | 8.94 |

THIRD FOURTH AMENDED CLASS ACTION COMPLAINT

| | | | | |
|---|---|---|---|---|
| **Benchmark: Morningstar Lifetime Mod 2040 TR USD** | **8.15** | **12.42** | **9.3** | **6.98** |
| American Century Retirement 2045 Trust Class XI | 7.59 | 12.42 | 9.48 | 7.25 |
| American Funds 2045 Trgt Date Retire R6 | 9.45 | 15.02 | 11.35 | 9.60 |
| Callan GlidePath® 2045 Fund CL R6 | 8.41 | 13.73 | 11.26 | 9.34 |
| MoA Clear Passage 2045 Fund | 8.30 | 12.91 | 11.43 | 9.65 |
| Natixis Target Retirement 2045 N | N/A | N/A | 11.11 | 8.93 |
| Nuveen Lifecycle 2045 R6 | 8.76 | 13.85 | 11.08 | 8.86 |
| T. Rowe Price Retirement 2045 Tr-A | 9.08 | 14.73 | 11.43 | 9.33 |
| Voya Target Retirement 2045 Tr Comps CIT | 8.35 | 14.25 | 11.54 | 9.65 |
| **Benchmark: Morningstar Lifetime Mod 2045 TR USD** | **8.26** | **12.70** | **9.84** | **7.63** |
| American Century Retirement 2050 Trust Class XI | 7.93 | 13.18 | 10.18 | 7.89 |
| American Funds 2050 Trgt Date Retire R6 | 9.55 | 15.17 | 11.41 | 9.64 |
| Callan GlidePath® 2050 Fund CL R6 | 8.43 | 13.74 | 11.31 | 9.48 |
| MoA Clear Passage 2050 Fund | 8.26 | 12.93 | 11.55 | 9.85 |
| Natixis Target Retirement 2050 N | N/A | N/A | 11.13 | 9.06 |
| Nuveen Lifecycle 2050 R6 | 8.86 | 14.06 | 11.28 | 9.09 |

~~THIRD~~ FOURTH AMENDED CLASS ACTION COMPLAINT

| | | | | |
|---|---|---|---|---|
| T. Rowe Price Retirement 2050 Tr-A | 9.07 | 14.73 | 11.48 | 9.42 |
| Voya Target Retirement 2050 Tr Comps CIT | 8.39 | 14.24 | 11.54 | 9.67 |
| **Benchmark: Morningstar Lifetime Mod 2050 TR USD** | **8.24** | **12.75** | **10.03** | **7.88** |
| American Century Retirement 2055 Trust Class XI | 8.07 | 13.48 | 10.52 | 8.29 |
| American Funds 2055 Trgt Date Retire R6 | 9.54 | 15.17 | 11.35 | 9.60 |
| Callan GlidePath® 2055 Fund CL R6 | 8.39 | 13.75 | 11.34 | 9.50 |
| MoA Clear Passage 2055 Fund | N/A | 13.03 | 11.65 | 10.03 |
| Natixis Target Retirement 2055 N | N/A | N/A | 11.13 | 9.00 |
| Nuveen Lifecycle 2055 R6 | 8.93 | 14.17 | 11.37 | 9.19 |
| T. Rowe Price Retirement 2055 Tr-A | 9.08 | 14.75 | 11.47 | 9.43 |
| Voya Target Retirement 2055 Tr Comps CIT | 8.44 | 14.36 | 11.65 | 9.81 |
| **Benchmark: Morningstar Lifetime Mod 2055 TR USD** | **8.19** | **12.71** | **10.01** | **7.86** |
| American Century Retirement 2060 Trust Class XI | N/A | 13.73 | 10.78 | 8.52 |
| American Funds 2060 Trgt Date Retire R6 | N/A | 15.13 | 11.32 | 9.59 |
| Callan GlidePath® 2060 Fund CL R6 | 8.46 | 13.80 | 11.37 | 9.53 |

THIRD FOURTH AMENDED CLASS ACTION COMPLAINT

| | | | | |
|---|---|---|---|---|
| MoA Clear Passage 2060 Fund | N/A | N/A | 11.84 | 10.21 |
| Natixis Target Retirement 2060 N | N/A | N/A | 11.51 | 9.31 |
| Nuveen Lifecycle 2060 R6 | 9.01 | 14.29 | 11.53 | 9.31 |
| T. Rowe Price Retirement 2060 Tr-A | 9.11 | 14.73 | 11.47 | 9.42 |
| Voya Target Retirement 2060 Tr Comps CIT | N/A | 14.46 | 11.72 | 9.89 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2060 TR USD** | **8.13** | **12.65** | **9.94** | **7.77** |

163.   It is baffling why the Trust version of the American Century Target Date Series was implemented and retained in the Plan during the Class Period given the data available showed that the American Century Target Date Series overwhelmingly underperformed their Morningstar benchmarks on a 5-year average basis since before the start of the Class Period and continued to underperform throughout the Class Period.

164.   In the chart below, the American Century Target Date Series (highlighted in yellow), consistently underperformed compared to the Comparator Funds (in red text) in their Morningstar Categories and their Morningstar benchmarks (in bold) on a 3-year average basis just before the start of the Class Period (July 28, 2017) and continued to underperform throughout the Class Period. In fact, the chart below demonstrates that, in 2019, the 2030-2060 vintages of the American Century TDFs underperformed against the Comparator Funds' corresponding vintages 36 out of 41 instances (88%). In 2021, the same vintages underperformed against the Comparator Funds' corresponding vintages in all 49 instances (100%). In 2023 and 2024, the 2030-2065 vintages of the American Century Target Date Series underperformed against the Comparator Funds' corresponding vintages in all 55 instances (100%), and in all 56 instances (100%), respectively. In total and since 2017, the American Century Target

Date Series underperformed the Comparator Funds on a 3-year lookback period in 196 out of 201 instances, or **98%** of the time.

| Investment and Benchmark | Three-Year Return (Annualized) | | | |
|---|---|---|---|---|
| | 1/1/2017 - 12/31/2019 | 1/1/2019 - 12/31/2021 | 1/1/2021 - 12/31/2023 | 1/1/2022 - 12/31/2024 |
| American Century Retirement 2030 Trust Class XI | 8.64 | 14.30 | 2.29 | 1.68 |
| American Funds 2030 Trgt Date Retire R6 | 10.86 | 16.09 | 3.47 | 2.77 |
| Callan GlidePath® 2030 Fund CL R6 | 10.56 | 17.62 | 4.85 | 3.11 |
| MoA Clear Passage 2030 Fund | 9.77 | 16.22 | 4.49 | 3.23 |
| Natixis Target Retirement 2030 N | N/A | 16.31 | 3.19 | 2.43 |
| Nuveen Lifecycle 2030 R6 | 10.34 | 15.61 | 2.64 | 2.31 |
| T. Rowe Price Retirement 2030 Tr-A | 11.26 | 17.34 | 3.23 | 2.45 |
| Voya Target Retirement 2030 Tr Comps CIT | 10.12 | 16.46 | 2.82 | 1.98 |
| **Benchmark: Morningstar Lifetime Mod 2030 TR USD** | **10.01** | **15.47** | **1.27** | **0.40** |
| American Century Retirement 2035 Trust Class XI | 9.25 | 15.42 | 2.49 | 1.82 |
| American Funds 2035 Trgt Date Retire R6 | 12.28 | 18.75 | 4.20 | 3.35 |
| Callan GlidePath® 2035 Fund CL R6 | 10.95 | 18.60 | 5.23 | 3.50 |
| MoA Clear Passage 2035 Fund | 10.28 | 17.94 | 5.42 | 3.98 |

~~THIRD~~ FOURTH AMENDED CLASS ACTION COMPLAINT

| | | | |
|---|---|---|---|
| Natixis Target Retirement 2035 N | N/A | 17.82 | 3.95 | 2.90 |
| Nuveen Lifecycle 2035 R6 | 11.07 | 17.00 | 3.29 | 2.88 |
| T. Rowe Price Retirement 2035 Tr-A | 11.87 | 18.68 | 3.86 | 2.99 |
| Voya Target Retirement 2035 Tr Comps CIT | 10.89 | 18.10 | 3.83 | 2.85 |
| **Benchmark: Morningstar Lifetime Mod 2035 TR USD** | **10.76** | **16.60** | **2.38** | **1.34** |
| American Century Retirement 2040 Trust Class XI | 9.94 | 16.54 | 2.63 | 2.01 |
| American Funds 2040 Trgt Date Retire R6 | 12.76 | 19.96 | 4.75 | 4.14 |
| Callan GlidePath® 2040 Fund CL R6 | 11.22 | 19.37 | 5.61 | 4.02 |
| MoA Clear Passage 2040 Fund | 10.32 | 19.10 | 6.45 | 4.78 |
| Natixis Target Retirement 2040 N | N/A | 18.70 | 4.48 | 3.48 |
| Nuveen Lifecycle 2040 R6 | 11.72 | 18.36 | 4.09 | 3.61 |
| T. Rowe Price Retirement 2040 Tr-A | 12.36 | 19.80 | 4.35 | 3.47 |
| Voya Target Retirement 2040 Tr Comps CIT | 11.30 | 19.70 | 4.75 | 3.54 |
| **Benchmark: Morningstar Lifetime Mod 2040 TR USD** | **11.24** | **17.50** | **3.51** | **2.40** |

| | | | | |
|---|---|---|---|---|
| American Century Retirement 2045 Trust Class XI | 10.62 | 17.75 | 2.90 | 2.28 |
| American Funds 2045 Trgt Date Retire R6 | 12.96 | 20.32 | 4.83 | 4.23 |
| Callan GlidePath® 2045 Fund CL R6 | 11.33 | 19.77 | 5.68 | 4.26 |
| MoA Clear Passage 2045 Fund | 10.34 | 19.38 | 6.78 | 5.08 |
| Natixis Target Retirement 2045 N | N/A | 19.67 | 4.97 | 3.87 |
| Nuveen Lifecycle 2045 R6 | 12.05 | 19.63 | 4.63 | 3.98 |
| T. Rowe Price Retirement 2045 Tr-A | 12.59 | 20.49 | 4.80 | 3.90 |
| Voya Target Retirement 2045 Tr Comps CIT | 11.52 | 20.65 | 5.40 | 4.15 |
| **Benchmark: Morningstar Lifetime Mod 2045 TR USD** | **11.42** | **17.99** | **4.25** | **3.19** |
| American Century Retirement 2050 Trust Class XI | 11.15 | 18.95 | 3.28 | 2.62 |
| American Funds 2050 Trgt Date Retire R6 | 13.11 | 20.53 | 4.75 | 4.20 |
| Callan GlidePath® 2050 Fund CL R6 | 11.33 | 19.79 | 5.75 | 4.47 |
| MoA Clear Passage 2050 Fund | 10.26 | 19.53 | 6.92 | 5.29 |
| Natixis Target Retirement 2050 N | N/A | 19.80 | 4.94 | 3.87 |
| Nuveen Lifecycle 2050 R6 | 12.18 | 19.96 | 4.81 | 4.14 |
| T. Rowe Price Retirement 2050 Tr-A | 12.58 | 20.53 | 4.88 | 4.03 |

THIRD FOURTH AMENDED CLASS ACTION COMPLAINT

| | | | | |
|---|---|---|---|---|
| Voya Target Retirement 2050 Tr Comps CIT | 11.58 | 20.72 | 5.33 | 4.25 |
| **Benchmark: Morningstar Lifetime Mod 2050 TR USD** | **11.43** | **18.09** | **4.52** | **3.54** |
| American Century Retirement 2055 Trust Class XI | 11.34 | 19.43 | 3.56 | 2.98 |
| American Funds 2055 Trgt Date Retire R6 | 13.11 | 20.54 | 4.56 | 4.15 |
| Callan GlidePath® 2055 Fund CL R6 | 11.30 | 19.84 | 5.76 | 4.46 |
| MoA Clear Passage 2055 Fund | 10.17 | 19.73 | 6.97 | 5.34 |
| Natixis Target Retirement 2055 N | N/A | 19.68 | 5.05 | 4.05 |
| Nuveen Lifecycle 2055 R6 | 12.27 | 20.10 | 4.89 | 4.23 |
| T. Rowe Price Retirement 2055 Tr-A | 12.60 | 20.53 | 4.87 | 4.04 |
| Voya Target Retirement 2055 Tr Comps CIT | 11.68 | 20.84 | 5.42 | 4.36 |
| **Benchmark: Morningstar Lifetime Mod 2055 TR USD** | **11.41** | **18.05** | **4.50** | **3.54** |
| American Century Retirement 2060 Trust Class XI | 11.50 | 19.86 | 3.71 | 3.12 |
| American Funds 2060 Trgt Date Retire R6 | 13.05 | 20.51 | 4.62 | 4.14 |

| | | | | |
|---|---|---|---|---|
| Callan GlidePath® 2060 Fund CL R6 | 11.37 | 19.89 | 5.76 | 4.48 |
| MoA Clear Passage 2060 Fund | N/A | 19.99 | 7.19 | 5.44 |
| Natixis Target Retirement 2060 N | N/A | 20.22 | 5.32 | 4.15 |
| Nuveen Lifecycle 2060 R6 | 12.34 | 20.34 | 4.97 | 4.29 |
| T. Rowe Price Retirement 2060 Tr-A | 12.56 | 20.55 | 4.88 | 4.02 |
| Voya Target Retirement 2060 Tr Comps CIT | 11.62 | 21.04 | 5.45 | 4.30 |
| **Benchmark: Morningstar Lifetime Mod 2060 TR USD** | **11.37** | **17.95** | **4.41** | **3.45** |
| American Century Retirement 2065 Trust Class XI | N/A | N/A | 3.72 | 3.21 |
| American Funds 2065 Trgt Date Retire R6 | N/A | N/A | 4.65 | 4.14 |
| Callan GlidePath® 2065 Fund CL R6 | N/A | N/A | 5.77 | 4.48 |
| MoA Clear Passage 2065 Fund | N/A | N/A | 7.40 | 5.70 |
| Natixis Target Retirement 2065 N | N/A | N/A | N/A | 4.21 |
| Nuveen Lifecycle 2065 R6 | N/A | N/A | 5.15 | 4.42 |
| T. Rowe Price Retirement 2065 Tr-A | N/A | N/A | 5.16 | 4.03 |
| Voya Target Retirement 2065 Tr Comps CIT | N/A | N/A | 5.42 | 4.37 |
| **Benchmark: Morningstar** | **N/A** | **N/A** | **4.31** | **3.35** |

~~THIRD~~ FOURTH AMENDED CLASS ACTION COMPLAINT

| **Lifetime Mod 2065 TR USD** | | | | |
|---|---|---|---|---|

165.   Further, the chart above demonstrates that the American Century Target Date Series underperformed their Morningstar benchmarks on a 3-year average basis since before the start of the Class Period and continued to underperform throughout the Class Period. More specifically, 2030-2065 vintages of the American Century TDFs underperformed against the Morningstar benchmarks on a 3-year average basis in every instance in 2019, four out of seven instances in 2021, and six out of eight instances in 2023 and 2024.

**2.      *Peer Group Median***

166.   In light of the long-term purpose of TDFs, it bears repeating that prudent fiduciaries look at returns on a full market cycle so as not to make decisions on a myopic of good or bad markets.

167.   The Plan's own advisor recommends evaluating an investment versus a peer group, and the American Century Target Date Series' peer group per American Century is Morningstar's target date peer group.

168.   The American Century Target Date Series overwhelmingly underperformed against its peer group median.

169.   The American Century Target Date Series underperformed their peer group median in 43 out of 66 instances across all vintages in the eight years from 2016-2023. *See* Exhibit D ("Peer Group Median Comparison").

170.   The American Century Target Date Series frequently underperformed the peer group median by more than 4% on several occasions.

171.   There were four years in which every vintage of the American Century Target Date Series underperformed against the peer group median: 2016 with an average underperformance of 1.03%, 2017 with an average underperformance of 2.25%, 2021 with an average underperformance of 3.03%, 2023 with an average

underperformance of 3.12%.[42]

172.  Here, the American Century Target Date Series' performance in bad markets was only marginally better than its peers based on the peer group median. This performance clearly did not compensate for the American Century Target Date Series significant inferior performance compared to the median in good markets.

173.  There were only two years when every vintage outperformed the peer group: 2018 with an average outperformance of 0.96%, and 2022 with an average outperformance of 0.82%.

174.  The marginal and infrequent outperformance of the peer group median did not compensate for the severe and routine underperformance against the peer group median in the majority of other years, whereas the highest average outperformance in 2018 was less than the average underperformance in all other years, sometimes by less than a third.

175.  This data was released at least on an annual basis, meaning that Defendants should have accessed this information throughout the Class Period, particularly in light of Precept's reporting abilities.

176.  Not only does this reflect a flawed strategy of the American Century Target Date Series, but it also reflects that the fiduciaries were not reviewing the fund through the industry standard full market cycle to see if the strategy was worth the investment.

177.  Indeed, the performance of the American Century Target Date Series during the short-lived market downturns did not justify retaining the funds in the better markets, considering TDFs are long term holds.

178.  Again, the American Century Target Date Series' flat glidepath resulted in the more actualized issue of participants having less income throughout retirement,

---

[42] In 2019, every vintage of the American Century Target Date Series underperformed against the peer group median except for the 2060 vintage which only outperformed the peer group median by 0.1%.

1  rather than the unrealistic fear that they would lose significant income during short-
2  term market downturns.

3        **3.**    ***The S&P Index***

4      179.  As discussed, although the Prospectus uses the S&P Index it is unlikely
5  that Precept's reports used it instead of the Morningstar Lifetime Moderate Index.

6      180.  Further, Defendants should not have only considered the fund manager's
7  choice of index, particularly given that the American Century Target Date Series'
8  glidepath was unconventional, even for a "to" glidepath.

9      181.  Nonethless, for the sake of completeness, it is notable that the S&P Index
10 outperformed the American Century Target Date Series before the Trust version was
11 implemented in the Plan, before the Class Period began, and throughout the Class
12 Period. This information was knowable annually, if not quarterly.

13     182.  On an annual basis, the Trust version underperformed against the S&P
14 Index for every vintage before the Trust version was implemented in the Plan in 2016:

| | 1/1/2015 12/31/2015 |
|---|---|
| **Target-Date 2025** | |
| American Century One Choice 2025 X | -1.26 |
| *Benchmark 1: S&P Target Date To 2025 TR* | -0.21 |
| **Target-Date 2030** | |
| American Century One Choice 2030 X | -1.06 |
| *Benchmark 1: S&P Target Date To 2030 TR* | -0.26 |
| **Target-Date 2035** | |
| American Century One Choice 2035 X | -0.97 |
| *Benchmark 1: S&P Target Date To 2035 TR* | -0.46 |
| **Target-Date 2040** | |
| American Century One Choice 2040 X | -1.05 |
| *Benchmark 1: S&P Target Date To 2040 TR* | -0.52 |
| **Target-Date 2045** | |
| American Century One Choice 2045 X | -1.14 |
| *Benchmark 1: S&P Target Date To 2045 TR* | -0.55 |
| **Target-Date 2050** | |
| American Century One Choice 2050 X | -1.23 |
| *Benchmark 1: S&P Target Date To 2050 TR* | -0.58 |
| **Target-Date 2055** | |
| American Century One Choice 2055 X | -1.41 |
| *Benchmark 1: S&P Target Date To 2055 TR* | -0.54 |
| **Target-Date 2060** | |
| American Century One Choice 2060 X | |
| *Benchmark 1: S&P Target Date To 2060 TR USD* | -0.54 |

183.   Importantly, even in a year where every vintage suffered negative returns, the American Century Target Date Series underperformed, again proving to have a defective strategy.

184.   This underperformance continued in 2016 and 2017, before and shortly into the Class Period:

| | 1/1/2016 12/31/2016 | 1/1/2017 12/31/2017 |
|---|---|---|
| **Target-Date 2025** | | |
| American Century One Choice 2025 X | 6.61 | 12.43 |
| *Benchmark 1: S&P Target Date To 2025 TR* | 7.17 | 12.94 |
| **Target-Date 2030** | | |
| American Century One Choice 2030 X | 6.73 | 13.71 |
| *Benchmark 1: S&P Target Date To 2030 TR* | 7.75 | 14.76 |
| **Target-Date 2035** | | |
| American Century One Choice 2035 X | 6.98 | 14.91 |
| *Benchmark 1: S&P Target Date To 2035 TR* | 8.27 | 16.09 |
| **Target-Date 2040** | | |
| American Century One Choice 2040 X | 7.29 | 16.33 |
| *Benchmark 1: S&P Target Date To 2040 TR* | 8.77 | 17.72 |
| **Target-Date 2045** | | |
| American Century One Choice 2045 X | 7.65 | 17.82 |
| *Benchmark 1: S&P Target Date To 2045 TR* | 9.14 | 18.46 |
| **Target-Date 2050** | | |
| American Century One Choice 2050 X | 7.90 | 18.90 |
| *Benchmark 1: S&P Target Date To 2050 TR* | 9.43 | 19.06 |
| **Target-Date 2055** | | |
| American Century One Choice 2055 X | 8.23 | 19.46 |
| *Benchmark 1: S&P Target Date To 2055 TR* | 9.63 | 19.48 |
| **Target-Date 2060** | | |
| American Century One Choice 2060 X | 8.15 | 19.71 |
| *Benchmark 1: S&P Target Date To 2060 TR USD* | 9.89 | 20.02 |

185.   The underperformance against the S&P Index is also demonstrated on a three-year basis beginning before the Trust version was implemented in the Plan, and continued into the Class Period:

| | 1/1/2015 12/31/2017 | 1/1/2016 12/31/2018 |
|---|---|---|
| **Target-Date 2025** | | |
| American Century One Choice 2025 X | 5.78 | 4.55 |
| *Benchmark 1: S&P Target Date To 2025 TR* | 6.50 | 5.03 |
| **Target-Date 2030** | | |
| American Century One Choice 2030 X | 6.29 | 4.78 |
| *Benchmark 1: S&P Target Date To 2030 TR* | 7.24 | 5.40 |
| **Target-Date 2035** | | |
| American Century One Choice 2035 X | 6.78 | 5.04 |
| *Benchmark 1: S&P Target Date To 2035 TR* | 7.75 | 5.62 |
| **Target-Date 2040** | | |
| American Century One Choice 2040 X | 7.29 | 5.41 |
| *Benchmark 1: S&P Target Date To 2040 TR* | 8.40 | 6.01 |
| **Target-Date 2045** | | |
| American Century One Choice 2045 X | 7.83 | 5.76 |
| *Benchmark 1: S&P Target Date To 2045 TR* | 8.74 | 6.22 |
| **Target-Date 2050** | | |
| American Century One Choice 2050 X | 8.21 | 5.96 |
| *Benchmark 1: S&P Target Date To 2050 TR* | 9.01 | 6.41 |
| **Target-Date 2055** | | |
| American Century One Choice 2055 X | 8.43 | 6.10 |
| *Benchmark 1: S&P Target Date To 2055 TR* | 9.22 | 6.55 |
| **Target-Date 2060** | | |
| American Century One Choice 2060 X | | 6.09 |
| *Benchmark 1: S&P Target Date To 2060 TR USD* | 9.47 | 6.76 |

186.

187.

188.   The American Century Target Date Series' Trust version performance against the S&P Index on a three-year bases beginning in January of 2020 and ending in 2024 shows similar consistent underperformance:

| | 1/1/2020 12/31/2022 | 1/1/2021 12/31/2023 | 1/1/2022 12/31/2024 |
|---|---|---|---|
| **Target-Date 2025** | | | |
| American Century One Choice 2025 X | 2.03 | 1.97 | 1.42 |
| Benchmark 1: S&P Target Date To 2025 TR | 1.94 | 2.46 | 1.88 |
| **Target-Date 2030** | | | |
| American Century One Choice 2030 X | 2.28 | 2.05 | 1.43 |
| Benchmark 1: S&P Target Date To 2030 TR | 2.53 | 3.35 | 2.51 |
| **Target-Date 2035** | | | |
| American Century One Choice 2035 X | 2.56 | 2.24 | 1.57 |
| Benchmark 1: S&P Target Date To 2035 TR | 3.05 | 4.26 | 3.14 |
| **Target-Date 2040** | | | |
| American Century One Choice 2040 X | 2.84 | 2.38 | 1.76 |
| Benchmark 1: S&P Target Date To 2040 TR | 3.31 | 5.00 | 3.84 |
| **Target-Date 2045** | | | |
| American Century One Choice 2045 X | 3.28 | 2.66 | 2.03 |
| Benchmark 1: S&P Target Date To 2045 TR | 3.53 | 5.63 | 4.41 |
| **Target-Date 2050** | | | |
| American Century One Choice 2050 X | 3.76 | 3.03 | 2.37 |
| Benchmark 1: S&P Target Date To 2050 TR | 3.82 | 5.92 | 4.74 |
| **Target-Date 2055** | | | |
| American Century One Choice 2055 X | 3.96 | 3.31 | 2.73 |
| Benchmark 1: S&P Target Date To 2055 TR | 3.81 | 6.01 | 4.69 |
| **Target-Date 2060** | | | |
| American Century One Choice 2060 X | 4.15 | 3.47 | 2.87 |
| Benchmark 1: S&P Target Date To 2060 TR USD | 4.04 | 6.07 | 4.77 |

189.   In the above 24 instances, the American Century Target Date Series only beat the S&P Index three times, and by 0.15% at most. This includes data from during and after the Covid-19 market conditions.

190.   The American Century Target Date Series' performance against the S&P Index on a five-year bases also showed underperformance since before the Trust version was implemented as well as before and after the Covid-19 market conditions:

| | 1/1/2015 12/31/2019 | 1/1/2019 12/31/2023 | 1/1/2020 12/31/2024 |
|---|---|---|---|
| **Target-Date 2025** | | | |
| American Century One Choice 2025 X | 5.79 | 6.84 | 5.07 |
| Benchmark 1: S&P Target Date To 2025 TR | 6.15 | 6.78 | 5.06 |
| **Target-Date 2030** | | | |
| American Century One Choice 2030 X | 6.22 | 7.39 | 5.46 |
| Benchmark 1: S&P Target Date To 2030 TR | 6.73 | 7.90 | 6.08 |
| **Target-Date 2035** | | | |
| American Century One Choice 2035 X | 6.64 | 7.99 | 5.92 |
| Benchmark 1: S&P Target Date To 2035 TR | 7.18 | 8.98 | 7.04 |
| **Target-Date 2040** | | | |
| American Century One Choice 2040 X | 7.09 | 8.57 | 6.42 |
| Benchmark 1: S&P Target Date To 2040 TR | 7.67 | 9.73 | 7.80 |
| **Target-Date 2045** | | | |
| American Century One Choice 2045 X | 7.54 | 9.25 | 6.99 |
| Benchmark 1: S&P Target Date To 2045 TR | 7.96 | 10.31 | 8.41 |
| **Target-Date 2050** | | | |
| American Century One Choice 2050 X | 7.88 | 9.95 | 7.63 |
| Benchmark 1: S&P Target Date To 2050 TR | 8.13 | 10.67 | 8.85 |
| **Target-Date 2055** | | | |
| American Century One Choice 2055 X | 8.02 | 10.29 | 8.03 |
| Benchmark 1: S&P Target Date To 2055 TR | 8.26 | 10.70 | 8.82 |
| **Target-Date 2060** | | | |
| American Century One Choice 2060 X | | 10.55 | 8.26 |
| Benchmark 1: S&P Target Date To 2060 TR USD | 8.46 | 10.96 | 9.04 |

191.   Naturally, these chronic years of underperformance mean that the 10-year basis also shows underperformance against the S&P Index in nearly every vintage:

THIRD FOURTH AMENDED CLASS ACTION COMPLAINT

| | 1/1/2015 12/31/2024 |
|---|---|
| **Target-Date 2025** | |
| American Century One Choice 2025 X | 5.43 |
| Benchmark 1: S&P Target Date To 2025 TR | 5.60 |
| | |
| **Target-Date 2030** | |
| American Century One Choice 2030 X | 5.84 |
| Benchmark 1: S&P Target Date To 2030 TR | 6.40 |
| | |
| **Target-Date 2035** | |
| American Century One Choice 2035 X | 6.28 |
| Benchmark 1: S&P Target Date To 2035 TR | 7.11 |
| | |
| **Target-Date 2040** | |
| American Century One Choice 2040 X | 6.75 |
| Benchmark 1: S&P Target Date To 2040 TR | 7.74 |
| | |
| **Target-Date 2045** | |
| American Century One Choice 2045 X | 7.27 |
| Benchmark 1: S&P Target Date To 2045 TR | 8.19 |
| | |
| **Target-Date 2050** | |
| American Century One Choice 2050 X | 7.75 |
| Benchmark 1: S&P Target Date To 2050 TR | 8.49 |
| | |
| **Target-Date 2055** | |
| American Century One Choice 2055 X | 8.02 |
| Benchmark 1: S&P Target Date To 2055 TR | 8.54 |
| | |
| **Target-Date 2060** | |
| American Century One Choice 2060 X | |
| Benchmark 1: S&P Target Date To 2060 TR USD | 8.75 |

192.   An overwhelming body of information available at every point in time would have warned the Defendants of the need to select a different target date series. Unfortunately for Plan participants, Defendants continuously failed to investigate and/or act on this information.

### 4. *Modern Portfolio Theory*

peer group will be analyzed, namely T.Rowe Price Retirement 2040 (TRRDX) and the American Funds 2040 Target Retirement R6 (RFGTX) ("collectively the "Two Comparator Funds") as against the sample year for the American Century Target Date Series, namely the American Century Once Choice 2040 I (ARDSX).

1    99.    As can be seen in the graph below, which compares the performance of

2    the Two Comparator Funds and their performance against the appropriate Morningstar

3    Index, the Morningstar Lifetime Moderate Index, MSAAM40M, ("Morningstar

4    Index"), it's clear the American Century Target Date Series performed poorly as

5    compared to its peers and generally below its Morningstar Index. The Two Comparator

6    Funds performed well above the Morningstar Index for many years before the Class

7    Period while the American Century Target Date Series performed generally below it.

8    In fact, in the years leading up to the Class Period, the American Century Target Date

9    Series performed well below the Morningstar Index for several consecutive quarters

10    and clearly should have been removed at that time or never have been included in the

11    Plan. This obligation to select appropriate funds for the Plan and/or to monitor the funds

12    selected, which is a clear obligation of the Plan Fiduciaries under ERISA, is continuing

13    and continued to be an appropriate reason for removal of the American Century Target

14    Date Series up to the start of the Class

15    Period. And, again, as discussed above, there were more than 100 better choices

16    between the Index and the Comparator Funds that could have been selected for the

17    Plan.[43] The graph below uses a historical 3-year average[44] as is required by industry

18    professionals and trust law on which ERISA is based. *Hughes v. Northwestern Univ.*,

19    142 S.Ct. 737, 741 (2022).   This three year average is based on total return meaning

20    that the fees paid for the fund's maintenance and management are not factored into

21

22

23

24    [43] In this case, both possible Morningstar Categories, namely the US Fund Target Date 2040
Category and the US SA Target Date 2040 Category tracked the appropriate index closely making

25    this fund ranking analysis generally accurate for each year analyzed.

26    [44] A 3-year average is used for purposes of this analysis because it's the best early indicator of
issues with any particular fund, however, 5-year averages provide similar results. The Plan

27    fiduciaries should have used 3-year averages in selecting and maintaining the American Century
Target Date Series throughout the Class Period. These 3-year averages would or should have been

28    available to them, as Plan fiduciaries, at the time they reached their decisions on selection and
maintenance of this Series and cannot be said to constitute a hindsight analysis.

THIRD FOURTH AMENDED CLASS ACTION COMPLAINT

1  their performance. However, when taking into account total returns and the Beta
2  analysis, below, the comparator funds were the most cost-effective.

3      100.   As demonstrated in the graph above, beginning in the third quarter of
4  2013, the American Century Target Date 2040 Series began to significantly
5  underperform the Morningstar Index for, at least, three consecutive quarters. Industry
6  standards and ERISA require that after a fund show signs of degradation to this extent,
7  such a fund should be placed on a watchlist and replaced with one of the 100 funds that
8  would have performed better in the Target Date Category as early as the next quarter



22  of underperformance. *Hughes at* 741 (reiterating that ERISA is based on trust law); *see*
23  *also*, the Charter of the Cobham Advance Electronics Solutions, Inc. 401(k) Plan
24  Committee Charter as amended and restated as of October 23, 2020 at 2 (providing that
25  the Committee must "review and monitor the investment performance of the Plan…") 
26  In addition, as soon as the fund showed significant underperformance issues, the Plan's
27  fiduciaries should have noticed that many funds in the Target Date Category were

- 63 -
THIRD FOURTH AMENDED CLASS ACTION COMPLAINT

1  performing well above their Morningstar Index. Had they done so, as they were
2  obligated to do under ERISA, they would have inquired why the American Century
3  Target Date Series lagged behind the Morningstar Index and they would have learned
4  that the better performing funds in the Target Date Category employed a superior
5  investment strategy. This would have caused them to either never have selected this
6  Series for inclusion in the Plan or to have removed it before the Class Period by no
7  later than the start of the Class Period.

8      101.    To make matters worse, the American Century Once Choice 2040 I
9  (ARDSX) ranked poorly as compared to its peers in its Morningstar Category. For
10  example, in 2016, prior to the Class period, this fund ranked in the 71st percentile out
11  of 221, or 156th out of 221, funds in the Lifetime Mod 2040 TR category maintained
12  by Morningstar. In 2017, it ranked in the 95th percentile being ranked only higher than
13  12 of a possible 234 funds in that category in that year. Pointing out some of its worst
14  years, in 2019 it ranked in the 85th percentile, in 2021 it ranked in the 96th percentile
15  and, thus far into 2023, it's ranking in the 91st percentile. It did have some years where
16  it ranked higher but this is only evidence of the instability of the funds especially where
17  it clearly ranked poorly more times than it had ranked higher. Similar results are seen
18  for the remaining target date years that are part of the American Century Target Date
19  Series.

102.   This trend of underperformance continued into 2015, although the fund rose slightly above its Morningstar Index in 2016, by the middle of 2017 the fund again showed significant signs of a flawed investment strategy, which was or should have been apparent to the Plan fiduciaries in 2013 through 2015, but this underperformance again became painstakingly evident from the middle of 2017 forward as the fund significantly underperformed its Morningstar Index for ten consecutive quarters. Yet, the Plan fiduciaries again neglected to take action while millions of dollars of retirement savings of the Plans' participants evaporated. These underperformance issues are demonstrated in the graph below:

103.193.     There's no justifiable excuse for having allowed the American Century Target Date Series to languish in the Plan for so long without taking any action



at all. This issue has nothing to do with any differences in the purpose of the Series or any possible justifiable difference in investment strategy, it's simply evidence of a

1   clearly flawed investment strategy. Investment professionals and fiduciaries charged
2   with putting the interests of plan participants first use what's know as Modern Portfolio
3   Theory or MPT to prove that an investment strategy had been historically flawed for a
4   particular fund.

5       194.   Using MPT, fiduciaries quantify a funds investment strategy on an
6   absolute and relative volatility basis. MPT allows fiduciaries to gauge the amount of
7   risk necessary for a fund to meet or exceed the appropriate index. Standards at any
8   given time are set by the all the funds in a Morningstar Category and those funds
9   performing below the index and category need to consider the strategies utilized by the
10  better performers and make adjustments as necessary. By 2014, the Plan fiduciaries
11  should have had a discussion with the managers of the American Century Target Date
12  Series to learn why this Series had such significant issues. Clearly, had this discussion
13  taken place prior to the inclusion of the Series in the Plan it would not have been
14  included in the Plan. The Plan fiduciaries failure in understanding the Series issues,
15  allowed the Series to continue to underperform in the Plan until at least 2022.

16      104.195.   The Restatement of Trusts describes the duty to use MPT or similar
17  strategy as follows: "[t]his standard requires the exercise of reasonable care, skill, and
18  caution, and is to be applied to investments not in isolation but in the context of the
19  trust portfolio and as a part of an overall investment strategy, which should incorporate
20  risk and return objectives reasonably suitable to the trust". UPIA § 2(b) (Unif. Law
21  Comm'n 1995); Restatement (Third) of Trusts § 90(a) (2007) (*See Birse v.*
22  *CenturyLink, Inc.*, 2019 WL 9467530, * 5 (D. Col. Oct. 23, 2019).

23      105.196.   There are many MPT factors, but, one of the most important factors,
24  is simply known as Beta. Morningstar defines Beta as "the measure of systemic risk
25  with respect to the risk-free rate. Systemic risk is the tendency of the value of the fund
26  and the value of a benchmark (in this case, the risk free rate). Beta is the ratio of what
27  the excess return of the fund would be to the excess return of the risk free rate."
28

Morningstar Custom Calculation Data Points[45] at 4.

197.   As mentioned, Precept considers beta to be a meaningful measurement for evaluating investments, and provides beta measurements in its reports to clients.

106.198.   Here, from 2011 to the end of 2022, using a 3-year average, the American Century Target Date 2040 Series had one of the lowest Beta ratings in the Target Date Category and especially low when compared to two of the two Comparator Funds. This is clearly indicative of a fund that failed to adapt to the better strategies utilized in the Target Date Category and has nothing to do with any intended positive result or strategy employed by the managers of the Series. Such low Beta returns combined with the analysis of actual returns, above, suggest that anyone invested in this fund would be deprived of meaningful returns on their investment and indicates a flawed investment strategy. Had the Plan fiduciaries monitored the Beta of the American Century Target Date Series, they would have seen clearly that the fund would deliver flat returns devoid of any meaningful savings for plan participants' retirement throughout the glide path. The underperforming Beta factors of the American Century Target Date 2040[46] Series, on a 3-year average, ranging from 2011 to 2022 are seen in the graph below:

///
///
///
///
///
///
///
///

---

[45] Available at https://morningstardirect.morningstar.com/clientcomm/customcalculations.pdf last accessed on November 21, 2023.
[46] A Beta analysis for target date years 2030 through 2055 is attached hereto at Exhibit "E."

THIRD FOURTH AMENDED CLASS ACTION COMPLAINT



107.    In fact, the Morningstar report for the American Century Target Date Series confirms these conclusions. The Morningstar report provides: "American Century One Choice target date series' adequately resourced team and uninspiring fund lineup merit a renewed Morningstar Analyst Rating of Neutral for its four cheapest share classes and Negative for the two priciest shares." Morningstar Report for American Century Investments Once Choice 2040 Portfolio I Class ARDSX "Morningstar Report")[47] at 1. The Morningstar Report goes on to say: "[t]his target-date series has one of the flattest glide paths in the industry. … the lower equity allocation for most of the glide path means the series' longest dated vintages have been less sensitive to big stock market swings than peers …."

199.    A Beta analysis for target date years 2030 through 2055 is attached

---

[47] The Morningstar Report is publicly available for through many of its subscription services. For more information please visit www.morningstar.com.

1    hereto at Exhibit "E."

2    108.200.    By choosing or continuing to include the American Century Target

3    Date Series in the Plan despite the clear evidence that the fund had a flawed investment

4    strategy as evidenced by the Series' performance for many years prior to the Class

5    Period and during the Class period as well as the clear evidence that the Series had one

6    of the worst Beta rankings out of the more than 200 funds in the Target Date Category

7    from 2011 to the present, deprived Plan participants of meaningful returns costing them

8    millions in retirement savings needlessly. This Series should have never been selected

9    for the Plan and certainly should not have been permitted to languish in the Plan for

10    years with no action taken by the Plan fiduciaries.

11    **E. Defendants Had an Imprudent Process to Review Plan investments Because**

12    **of An Apparent Lack of An Investment Policy Statement**

13    109.    ERISA does not explicitly require an investment policy statement ("IPS"),

14    but having one is considered prudent practice. An IPS can serve to facilitate a prudent

15    process for monitoring the investments offered by the plan, which is at the heart of

16    fiduciary conduct.

17    110.    The Committee Charter appears to contemplate that the Committee shall

18    "adopt an Investment Policy for the Plan, review it periodically and update the

19    Investment Policy when applicable." Charter, at 2.

20    111.    However, in response to Plaintiffs' ERISA 104(b) request for all written

21    instruments governing the Plan, including any investment policy statements (*see*

22    allegations *supra*), the Plan administrator did not produce an IPS which leads to the

23    plausible conclusion that the Plan did not have an operative IPS during all or some part

24    of the Class Period. This then, is in violation of the Committee Charter and against

25    fiduciary best practices.

26    112.    As further evidence that the Plan did not have an IPS during the Class

27    Period, there is no mention of an IPS in any of the Plan documents, other than the

28    Charter. Failure to have a written IPS in violation of the Charter is an indication of

1   Defendants lacking a prudent process because they could not "review and monitor the

2   investment performance of the Plan and oversee compliance with the Investment

3   Policy," if one did not exist.

4        113.   To the extent that an IPS does exist and the Plan administrator withheld it

5   from Plaintiffs, it only serves to reinforce the notion that Plaintiffs do not have actual

6   knowledge of the specifics of Defendants' decision-making process with respect to the

7   Plan—in part due to Defendants' actions withholding information related to

8   Defendants' processes (and execution of such) for selecting, monitoring, and removing

9   the Plan's investments (*i.e.*, IPS, Committee meeting minutes).

10       114.   Even if an IPS for the Plan did exist, the fact that the Plan continued to

11  retain the poorly performing Target Date Series for several years when the prudent

12  choice would have been to remove the investments, is an indication that the Plan

13  fiduciaries either did not follow the IPS, which is a breach of fiduciary duty, or the IPS

14  was imprudently written, which is also a breach of fiduciary duty.

15       115.   Thus, either way, the absence of a written Plan IPS is circumstantial

16  evidence of a breach of fiduciary duty.

17

18

19

20

21

22

23

24

25

26

27

28





**5.** *Morningstar Ratings*

201. One of the Precept Evaluation Considerations that Precept categorizes as a qualitative factor is an investment's Morningstar Star Rating.

202. However, Morningstar actually explains that the Morningstar Star Ratings are a "quantitative, backward-looking measure of a fund's past performance, measured from one to five stars. Star ratings are calculated at the end of every month." https://www.morningstar.com/company/morningstar-ratings-faq

203. Nonetheless, Morningstar also publishes qualitative Morningstar Medalist Ratings that are "the summary expression of Morningstar's forward-looking analysis of investment strategies as offered via specific vehicles using a rating scale of Gold, Silver, Bronze, Neutral and Negative. The Medalist Ratings indicate which investments Morningstar believes are likely to outperform a relevant index or peer group average on a risk-adjusted basis over time. Analyst Ratings are continuously monitored and reevaluated at least every 14 months." *Id.*

204. Morningstar's Medalist Ratings "are evaluated on three key pillars

1   (People, Parent, and Process) which, when coupled with a fee assessment, forms the

2   basis for Morningstar's conviction in those products' investment merits and determines

3   the Medalist Rating they're assigned." *Id.*

4       205.   Together, Morningstar's Star and Medalist ratings repeatedly reported

5   poor forward looking, backward looking, qualitative, and quantitative ratings for the

6   American Century Target Date Series.

7       ***Morningstar Medalist Ratings***

8       206.   The qualitative and forward-looking Medalist ratings repeatedly reported

9   that the American Century Target Date Series received the second lowest metal

10  throughout the Class Period.

11      207.   In a report published on Feb 5, 2018, the American Century Target Date

12  Series' Morningstar Rating was neutral, with at least 12 series achieving a bronze or

13  higher. *See* https://www.morningstar.com/funds/target-date-fund-series-wins-gold.

14      208.   In a report published on May 12, of 2020, the American Century Target

15  Date Series had a "neutral" rating from Morningstar, with at least 15 other series

16  achieving a bronze or better. *See* https://www.morningstar.com/funds/best-target-date-

17  series

18      209.   As of February 25, 2021, the American Century Target Date Series had a

19  "neutral" rating from Morningstar, with at least 14 series ranking bronze or above. *See*

20  https://www.morningstar.com/funds/best-target-date-funds-2021-beyond

21      210.   As of March 23, 2022, the American Century Target Date Series had a

22  "neutral" rating from Morningstar, with at least 15 series ranking bronze or above. *See*

23  https://www.morningstar.com/funds/best-target-date-funds-2022-beyond

24      211.  The American Century Target Date Series retained a "neutral"

25  Morningstar Analyst Ratings for target-date mutual funds as of March 2023. 19 funds

26  were ranked Bronze or above. *See* https://www.morningstar.com/personal-

27  finance/best-target-date-funds-2023-beyond

28      212.  The American Century Target Date Series retained a "neutral"

Morningstar Analyst Ratings for target-date mutual funds as of March 2024. At least 19 funds were ranked Bronze or above. *See* https://www.morningstar.com/funds/best-target-date-funds-2024

213.   Over time, the American Century Target Date Series retained their neutral, or the second worst possible metal ratings, while more funds received higher ratings. The recurring publication of American Century Target Date Series' condemnatory ratings demonstrates several qualitative issues surrounding the funds' continued inclusion.

214.   The American Century Target Date Series retained a "neutral" or second worst possible rating in the periods immediately following the 2020 Covid 19 market crash and less than a year after. This should have dispelled the already unfounded belief that the fund's "distinct" glidepath would innovate solutions to poor markets that other funds did not.

***Morningstar Star Ratings***

215.   American Century Investments publicizes the Morningstar Star Ratings on each of its pages dedicated to a specific target date within the series. Because Plaintiffs are unable to access the Morningstar Star Ratings for the CIT version, the star ratings for the Investor Class are used herein, because it is another version of the same flagship American Century Target Date Series with more accessible historical data than any other class. Plaintiffs were able to locate the September 30, 2023 quarterly Fact Sheet that American Century created for the Series which published the 3-year Morningstar Star Ratings for each target date. A comparison is below:

| Target Date | 2023 3-Year Rating | Current Overall Star Rating |
|---|---|---|
| 2025 | ★★★ | ★★ |
| 2030 | ★★ | ★★ |
| 2035 | ★ | ★ |
| 2040 | ★ | ★ |
| 2045 | ★ | ★ |
| 2050 | ★ | ★★ |
| 2055 | ★ | ★★ |
| 2060 | ★ | ★ |
| 2065 | ★ | ★ |

216.   Based on the other historical data for the American Century Target Date Series, it is likely that the series had similarly dismal Morningstar Star Ratings earlier in the Class Period. This data proves that the American Century Target Date Series were deemed undesirable by the greater investment industry.

217.   Because Precept advertises that it provides Morningstar Star Ratings in its reports to plan fiduciaries, it is likely that Defendants had access to the Morningstar Star Ratings throughout the Class Period and ignored the results.

218.   Defendants had all of the information they needed to recognize the need and ability to replace the American Century Target Date Series, but failed to do so, leaving participants with less at and throughout retirement.

**F.E.  The Fees Associated with the American Century Target Date Series Were Unreasonable Compared to Fees of the Prudent Investment Alternatives**

116.219.    As noted above, under 29 U.S.C. § 1104(a)(1), a plan fiduciary must give substantial consideration to the cost of investment options. –"Wasting beneficiaries' money is imprudent.  In devising and implementing strategies for the investment and management of trust assets, trustees are obligated to minimize costs."

1    Uniform Prudent Investor Act (the "UPIA"), § 7.

2    ~~117.~~220.    Further, "The Restatement … instructs that 'cost-conscious

3    management is fundamental to prudence in the investment function,' and should be

4    applied 'not only in making investments but also in monitoring and reviewing

5    investments.'" *Tibble v,. Edison Int'l*, 843 F.3d 1187, 1197-98 (9th Cir. 2016) (*en*

6    *banc*) (quoting Restatement (Third) of Trusts, § 90, cmt. b).

7    ~~118.~~221.    Additional fees of only 0.18% or 0.4% can have a large effect on a

8    participant's investment results over time because "[b]eneficiaries subject to higher

9    fees…lose not only money spent on higher fees, but also lost investment opportunity;

10    that is, the money that the portion of their investment spent on unnecessary fees would

11    have earned over time." *Tibble*, 843 F.3d at 1198 ("It is beyond dispute that the higher

12    the fees charged to a beneficiary, the more the beneficiary's investment shrinks.").

13    222.    Critically, Precept advertises that it provides clients with the "Expense

14    ratio vs. peer group" data that it deems important for fiduciaries to consider when

15    evaluating plan investments.

16    ~~119.~~223.    Per the 2022 Disclosure, just as a representative example for the

17    entire Class Period, each of the American Century Target Date ~~year funds~~Series' target

18    dates had an expense ratio of .42%. *Id.* at A2. ~~Compared to the Comparator Funds,~~

19    ~~this~~This cost was higher than several of the Comparator Funds and consistently higher

20    than the Morningstar median fees, while the American Century funds performed worse

21    than the Comparator Funds ~~-~~ and the median. Thus, investment in the American

22    Century Target Date Series cost Plan participants monetary losses that will impact them

23    over their lifetime:

24

25

26

27

28

| Target-Date 2025 | |
|---|---|
| American Century Retirement Date 2025 X | 0.42 |
| Callan GlidePath® 2025 Fund CL Z | 0.24 |
| T. Rowe Price Retirement 2025 Tr-A | 0.38 |
| Voya Target Solution 2025 Trust | 0.39 |
| *Peer Group Median* | 0.25 |
| **Target-Date 2030** | |
| American Century Retirement Date 2030 X | 0.42 |
| Callan GlidePath® 2030 Fund CL Z | 0.24 |
| T. Rowe Price Retirement 2030 Tr-A | 0.38 |
| Voya Target Solution 2030 Trust | 0.39 |
| *Peer Group Median* | 0.28 |
| **Target-Date 2035** | |
| American Century Retirement Date 2035 X | 0.42 |
| Callan GlidePath® 2035 Fund CL Z | 0.24 |
| T. Rowe Price Retirement 2035 Tr-A | 0.38 |
| Voya Target Solution 2035 Trust | 0.39 |
| *Peer Group Median* | 0.25 |
| **Target-Date 2040** | |
| American Century Retirement Date 2040 X | 0.42 |
| Callan GlidePath® 2040 Fund CL Z | 0.24 |
| T. Rowe Price Retirement 2040 Tr-A | 0.38 |
| Voya Target Solution 2040 Trust | 0.39 |
| *Peer Group Median* | 0.28 |
| **Target-Date 2045** | |
| American Century Retirement Date 2045 X | 0.42 |
| Callan GlidePath® 2045 Fund CL Z | 0.23 |
| T. Rowe Price Retirement 2045 Tr-A | 0.38 |
| Voya Target Solution 2045 Trust | 0.39 |
| *Peer Group Median* | 0.26 |
| **Target-Date 2050** | |
| American Century Retirement Date 2050 X | 0.42 |
| Callan GlidePath® 2050 Fund CL Z | 0.22 |
| T. Rowe Price Retirement 2050 Tr-A | 0.38 |
| Voya Target Solution 2050 Trust | 0.39 |
| *Peer Group Median* | 0.28 |
| **Target-Date 2055** | |
| American Century Retirement Date 2055 X | 0.42 |
| Callan GlidePath® 2055 Fund CL Z | 0.22 |
| T. Rowe Price Retirement 2055 Tr-A | 0.38 |
| Voya Target Solution 2055 Trust | 0.39 |
| *Peer Group Median* | 0.26 |
| **Target-Date 2060** | |
| American Century Retirement Date 2060 X | 0.42 |
| Callan GlidePath® 2060 Fund CL Z | 0.22 |
| T. Rowe Price Retirement 2060 Tr-A | 0.38 |
| Voya Target Solution 2060 Trust | 0.39 |
| *Peer Group Median* | 0.28 |

THIRD FOURTH AMENDED CLASS ACTION COMPLAINT

| Group/Investment | Prospectus Net Expense Ratio | Net Expense Ratio |
|---|---|---|
| **US SA Target-Date 2025** | - | - |
| American Century Retirement Date 2025 X | | 0.42 |
| T. Rowe Price Retirement 2025 Tr A | | 0.38 |
| *Benchmark 1: Morningstar Lifetime Mod 2025 TR USD* | | |
| *Benchmark 2: Morningstar Lifetime Mod 2025 TR USD* | | |
| *Peer Group:  Morningstar Category = Target Date 2025* | | |
| *Number of investments ranked* | | |
| *Peer Group Median* | | 0.25 |
| **US SA Target-Date 2030** | - | - |
| American Century Retirement Date 2030 X | | 0.42 |
| T. Rowe Price Retirement 2030 Tr A | | 0.38 |
| *Benchmark 1: Morningstar Lifetime Mod 2030 TR USD* | | |
| *Benchmark 2: Morningstar Lifetime Mod 2030 TR USD* | | |
| *Peer Group:  Morningstar Category = Target Date 2030* | | |
| *Number of investments ranked* | | |
| *Peer Group Median* | | 0.28 |
| **US SA Target-Date 2035** | - | - |
| American Century Retirement Date 2035 X | | 0.42 |
| T. Rowe Price Retirement 2035 Tr A | | 0.38 |
| *Benchmark 1: Morningstar Lifetime Mod 2035 TR USD* | | |
| *Benchmark 2: Morningstar Lifetime Mod 2035 TR USD* | | |
| *Peer Group:  Morningstar Category = Target Date 2035* | | |
| *Number of investments ranked* | | |
| *Peer Group Median* | | 0.25 |
| **US SA Target-Date 2040** | - | - |
| American Century Retirement Date 2040 X | | 0.42 |
| T. Rowe Price Retirement 2040 Tr A | | 0.38 |
| *Benchmark 1: Morningstar Lifetime Mod 2040 TR USD* | | |
| *Benchmark 2: Morningstar Lifetime Mod 2040 TR USD* | | |
| *Peer Group:  Morningstar Category = Target Date 2040* | | |
| *Number of investments ranked* | | |
| *Peer Group Median* | | 0.28 |
| **US SA Target-Date 2045** | - | - |
| American Century Retirement Date 2045 X | | 0.42 |
| T. Rowe Price Retirement 2045 Tr A | | 0.38 |
| *Benchmark 1: Morningstar Lifetime Mod 2045 TR USD* | | |
| *Benchmark 2: Morningstar Lifetime Mod 2045 TR USD* | | |
| *Peer Group:  Morningstar Category = Target Date 2045* | | |
| *Number of investments ranked* | | |
| *Peer Group Median* | | 0.26 |
| **US SA Target-Date 2050** | - | - |
| American Century Retirement Date 2050 X | | 0.42 |
| T. Rowe Price Retirement 2050 Tr A | | 0.38 |

- 77 -

THIRD FOURTH AMENDED CLASS ACTION COMPLAINT

| | | | |
|---|---|---|---|
| *Benchmark 1: Morningstar Lifetime Mod 2050 TR USD* | | | |
| *Benchmark 2: Morningstar Lifetime Mod 2050 TR USD* | | | |
| *Peer Group: Morningstar Category = Target-Date 2050* | | | |
| *Number of investments ranked* | | | |
| *Peer Group Median* | | | 0.28 |
| **US SA Target-Date 2055** | - | - | |
| American Century Retirement Date 2055 X | | | 0.42 |
| T. Rowe Price Retirement 2055 Tr A | | | 0.38 |
| *Benchmark 1: Morningstar Lifetime Mod 2055 TR USD* | | | |
| *Benchmark 2: Morningstar Lifetime Mod 2055 TR USD* | | | |
| *Peer Group: Morningstar Category = Target-Date 2055* | | | |
| *Number of investments ranked* | | | |
| *Peer Group Median* | | | 0.26 |
| **US SA Target-Date 2060** | - | - | |
| American Century Retirement Date 2060 X | | | 0.42 |
| T. Rowe Price Retirement 2060 Tr A | | | 0.38 |
| *Benchmark 1: Morningstar Lifetime Mod 2060 TR USD* | | | |
| *Benchmark 2: Morningstar Lifetime Mod 2060 TR USD* | | | |
| *Peer Group: Morningstar Category = Target-Date 2060* | | | |
| *Number of investments ranked* | | | |
| *Peer Group Median* | | | 0.28 |

120.224.    Here, had the Plan fiduciaries conducted an impartial review of the Plan's investments they would have easily noticed the Target Date Series were far more expensive than peer funds and the Morningstar benchmarks.

**G. A Securities Lawsuit Against American Century Related to its Target Date Series Underscores the Imprudence of the Target Date Series**

121.    One final factor indicating the imprudence of the American Century Target Date Series relates to a recent proposed securities class action filed in the District of New Jersey. *See Dale Ylitalo et al. v. Automatic Data Processing, Inc., ADP, Inc., and American Century Investments Services, Inc.,* No. 2:24-cv-07635-JKS-LDW (D.N.J.)

122.    The action was brought against American Century and the other defendants for violations of Sections 12(a)(2) (15 U.S.C. § 77(a)(2)), and 15 (15 U.S.C. § 77o) of the Securities Act of 1933 ("Securities Act"; Sections10(b) (15 U.S.C. § 78j(b)) and 20(a) (15 U.S.C. § 78t(a))of the Securities Exchange Act of 1934

1    ("Exchange Act"), and Florida Deceptive and Unfair Trade Practices Act

2    ("FDUTPA"), Fla. Stat. 501.201, et seq., and N.J.S.A § 49:3-71. The proposed class

3    period spans back to 2021, well within the Class Period here.

4        123.  In essence, the complaint alleges American Century acted in concert with

5    ADP to give unregistered and unlicensed ADP employees improper training to sell the

6    Target Date Series challenged in this Complaint to individual retirement plans.

7        225.  The complaint alleges the ADP employees were incentivized to push the

8    Target Date Series onto the retirement plans and that American Century knew of "these

9    sales requirements, promotions, and incentives, and encouraged the sale of" the Target

10   Date Series to the retirement plans. Qualitative and quantitative data repeatedly

11   published before and throughout the Class Period, especially data likely provided by

12   the advisor on a quarterly basis, demonstrated that the American Century Target Date

13   Series' deeply flawed strategy, unjustifiable fees, and poor performance outlook that

14   imposes real longevity risks for retirees.

15       **VII. Defendants failed to Comply with Their Obligations Under 29**

16   **U.S.C. § 1024(b)(4)**

17       226.  As stated *supra*, on April 28, 2022, Plaintiffs sent Defendants a written

18   request for documents pursuant to 29 U.S.C. § 1024(b)(4), ERISA §104(b)(4).

19       227.  Defendants violated 29 U.S.C. § 1132(c)(1) and 29 U.S.C. § 1024(b)(4)

20   by failing to furnish complete documents within 30 days of Plaintiff's April 28, 2022,

21   written request. More specifically, Defendants failed to provide the Plan's operative

22   IPS.

23       228.  The 2019 SPD states, in the section labeled "Statement of ERISA Rights"

24   that "ERISA provides that all Plan Participants shall be entitled to: Receive Information

25   About Your Plan and Benefits." 2019 SPD at 18. This includes, "all documents

26   governing the Plan." *Id*.

27       229.  Per the Charter, the Investment Policy Statement is a governing Plan

28   document because the Committee must "adopt an Investment Policy for the Plan,

review it periodically and […] *oversee compliance with the Investment Policy."* Charter at 2 (emphasis added).

230.    Up until the motion to dismiss hearing held on December 11, 2024, Defendants had never acknowledged the existence of a Plan IPS. At the hearing, Defendants admitted to having an IPS but stated they were unwilling to provide it to Plaintiffs. This is a violation of ERISA.

231.    Under ERISA, and especially the Charter's terms for this Plan, an IPS is a document governing the Plan, and thus Plaintiffs were entitled to receive them under 29 U.S.C. § 1024(b)(4), ERISA §104(b)(4). *See Trs. of New York State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*, 102 F.4th 572, 597 (2d Cir. 2024); *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 656 (4th Cir. 1996).

232.    As a result of Defendants' violation of ERISA, Plaintiffs are entitled to an award of statutory penalties at the rate of $110.00 per day under 29 U.S.C. § 1132(c)(1), 29 U.S.C. § 1024(b)(4), and 29 C.F.R. § 2575.502c-1 for each day Defendants have been in violation of its fiduciary duty to provide information under ERISA, for a total penalty amount to be determined by the Court.

233.    As of April 18, 2025, Defendants have failed to produce the investment policy statement for 1,056 days (the time period between May 28, 2022, when the IPS was due to be produced and April 18, 2025), resulting in $116,160 in penalties as of the date of filing this Fourth Amended Complaint.

**COUNT I**

124.    *Id.* at ¶ 58.

125.    The conduct of American Century as described in the lawsuit plausibly suggests that the American Century funds were pushed onto unsuspecting retirement plans, not unlike the Plan, not because of their prudence, but simply to secure profit for American Century.

****

1    126.  Given the totality of circumstances described above, the American
2    Century Target Date investments were an imprudent investment for the Plan.

3    **FIRST CLAIM FOR RELIEF**
     **Breaches of Fiduciary Duty of Prudence**
4    **(Asserted against the Committee)**

5
6    127.234.  Plaintiffs re-allege and incorporate herein by reference all prior
7    allegations in this Complaint as if fully set forth herein.

8    128.235.  At all relevant times, the Committee and its members during the
9    Class Period ("Prudence Defendants") were fiduciaries of the Plan within the meaning
10   of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that they exercised discretionary
11   authority or control over the administration and/or management of the Plan or
12   disposition of the Plan's assets.

13   129.236.  As fiduciaries of the Plan, these Defendants were subject to the
14   fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a).  These fiduciary
15   duties included managing the assets of the Plan for the sole and exclusive benefit of the
16   Plan's participants and beneficiaries, and acting with the care, skill, diligence, and
17   prudence under the circumstances that a prudent person acting in a like capacity and
18   familiar with such matters would use in the conduct of an enterprise of like character
19   and with like aims.

20   130.237.  The Prudence Defendants breached these fiduciary duties in
21   multiple respects as discussed throughout this Complaint such as failing to make
22   decisions regarding the performance of the funds in the Plan.

23   131.238.  The failure to engage in an appropriate and prudent process resulted
24   in saddling the Plan and its participants with poorly performing funds.

25   132.239.  As a direct and proximate result of the breaches of fiduciary duties
26   alleged herein, the Plan suffered millions of dollars of losses due to excessive costs.
27   Had Defendants complied with their fiduciary obligations, the Plan would not have

28

1  suffered these losses, and the Plan's participants would have had more money available

2  to them for their retirement.

3      133.240.    Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Prudence

4  Defendants are liable to restore to the Plan all losses caused by their breaches of

5  fiduciary duties, and also must restore any profits resulting from such breaches.  In

6  addition, Plaintiffs are entitled to equitable relief and other appropriate relief for

7  Defendants' breaches as set forth in their Prayer for Relief.

8      134.241.    The Prudence Defendants knowingly participated in each breach of

9  the other Defendants, knowing that such acts were a breach, enabled the other

10 Defendants to commit breaches by failing to lawfully discharge such Defendant's own

11 duties, and knew of the breaches by the other Defendants and failed to make any

12 reasonable and timely effort under the circumstances to remedy the breaches.

13 Accordingly, each Defendant is also liable for the breaches of its co-fiduciaries under

14 29 U.S.C. § 1105(a).

15           ~~SECOND CLAIM FOR RELIEF~~
            COUNT II
16    **Failure to Adequately Monitor Other Fiduciaries**
17    **(Asserted against Cobham and the Board Defendants)**

18     135.242.    Plaintiffs re-allege and incorporate herein by reference all prior

19 allegations in this Complaint as if fully set forth herein.

20     136.243.    Cobham and the Board Defendants (the "Monitoring Defendants")

21 had the authority to appoint and remove members of the Committee, and the duty to

22 monitor the Committee and were aware that the Committee Defendants had critical

23 responsibilities as fiduciaries of the Plan.

24     137.244.    In light of this authority, the Monitoring Defendants had a duty to

25 monitor the Committee Defendants to ensure that the Committee Defendants were

26 adequately performing their fiduciary obligations, and to take prompt and effective

27 action to protect the Plan in the event that the Committee Defendants were not fulfilling

28 those duties.

1    ~~138.~~245.    The Monitoring Defendants also had a duty to ensure that the

2    Committee Defendants possessed the needed qualifications and experience to carry out

3    their duties; had adequate financial resources and information; maintained adequate

4    records of the information on which they based their decisions and analysis with respect

5    to the Plan's investments; and reported regularly to the Monitoring Defendants.

6    ~~139.~~246.    The Monitoring Defendants breached their fiduciary monitoring duties by,

7            among other things:

8        (a)    Failing to monitor and evaluate the performance of the Committee

9                Defendants or have a system in place for doing so, standing idly by as

10               the Plan suffered significant losses as a result of the Committee

11               Defendants' imprudent actions and omissions;

12       (b)    failing to monitor the processes by which Plan investments were

13               evaluated; and

14       (c)    failing to remove Committee members whose performance was

15               inadequate in that they continued to maintain imprudent, excessively

16               costly, and poorly performing investments within the Plan, all to the

17               detriment of the Plan and the Plan participants' retirement savings.

18   ~~140.~~247.    As a consequence of the foregoing breaches of the duty to monitor,

19   the Plan suffered millions of dollars of losses.  Had the Monitoring Defendants

20   complied with their fiduciary obligations, the Plan would not have suffered these

21   losses, and Plan participants would have had more money available to them for their

22   retirement.

23   ~~141.~~248.    Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Monitoring

24   Defendants are liable to restore to the Plan all losses caused by their failure to

25   adequately monitor the Committee Defendants.  In addition, Plaintiffs are entitled to

26   equitable relief and other appropriate relief as set forth in their Prayer for Relief.

27                    **COUNT III**

28            **Failure to Furnish Governing Plan Documents (the IPS)**

**(Asserted against Cobham, the Committee, and the Board Defendants)**

249. Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

250. Cobham as Plan administrator, and the other Defendants, had an obligation under 29 U.S.C. § 1024(b)(4) to provide Plaintiffs with governing plan documents upon request.

251. Defendants, or their delegates, failed to comply with their obligations under 29 U.S.C. § 1024(b)(4)

252. Defendants violated 29 U.S.C. § 1132(c)(1) and 29 U.S.C. § 1024(b)(4) by failing to furnish complete documents within 30 days of Plaintiffs' April 28, 2022, written request. Accordingly, Defendants must pay statutory penalties of $110 per day for each day since the IPS was due that Defendants have not produced it.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that judgment be entered against Defendants on all claims and requests that the Court award the following relief:

A.    A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative, Rule 23(b)(2) of the Federal Rules of Civil Procedure;

B.    Designation of Plaintiffs as Class Representatives and designation of Plaintiff's counsel as Class Counsel;

C.    A Declaration that the Defendants, and each of them, have breached their fiduciary duties under ERISA;

D.    An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, including losses to the Plan resulting from imprudent

investment of the Plan's assets, and to restore to the Plan all profits the Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations;

E.     An order requiring the Company Defendants to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of a constructive trust, or a surcharge against the Company Defendant as necessary to effectuate said relief, and to prevent the Company Defendant's unjust enrichment;

F.     For statutory penalties in an amount to be determined at trial, pursuant to 29 U.S.C. § 1132(c)(1), 29 U.S.C. § 1024(b)(4), and 29 C.F.R. § 2575.502c-1;

F.G.     Actual damages in the amount of any losses the Plan suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses;

G.H.     An order enjoining Defendants from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

H.I.     Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary or fiduciaries to run the Plan and removal of Plan's fiduciaries deemed to have breached their fiduciary duties;

I.J.     An award of pre-judgment interest;

J.K.     An award of costs pursuant to 29 U.S.C. § 1132(g);

K.L.     An award of attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

1    ~~L.~~M.   Such other and further relief as the Court deems equitable

2    and just.

3

4

5    Dated:   ~~July 26, 2024~~April 18, 2025                **ROSMAN & GERMAIN APC**

6                                              */s/ Daniel L. Germain*

7                                              Daniel L. Germain

8                                              5959 Topanga Canyon Boulevard
                                               Suite 360

9                                              Woodland Hills, CA  91367-7503

10                                             Telephone: (818) 788-0877
                                               Fax: (818) 788-0885

11                                             E-mail: Germain@lalawyer.com

12                                             */s/ Mark K. Gyandoh*

13                                             Mark K. Gyandoh, Esquire
                                               (admitted *Pro Hac Vice*)

14                                             PA Attorney ID # 88587

15                                             **CAPOZZI ADLER, P.C.**
                                               312 Old Lancaster Road

16                                             Merion Station, PA 19066

17                                             Telephone:  (610) 890-0200
                                               Fax:  (717) 233-4103

18                                             Email:  markg@capozziadler.com

19

20                                             *Counsel for Plaintiffs and the Putative Class*

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

I hereby certify that on ~~July 26, 2024~~April 18, 2025, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By: *Mark K. Gyandoh*
    Mark K. Gyandoh, Esq.