1   **MORGAN, LEWIS & BOCKIUS LLP**
    Mark A. Feller, Bar No. 319789
2   One Market, Spear Street Tower
    San Francisco, CA 94105-1126
3   Tel: +1.415.442.1000
    Fax: +1.415.442.1001
4   mark.feller@morganlewis.com

5   Deborah S. Davidson (pro hac vice)
    110 N. Wacker Drive, Suite 2800
6   Chicago, IL 60606-1511
    Tel: +1.312.324.1159
7   Fax: +1.312.324.1001
    deborah.davidson@morganlewis.com
8
9   Sean McMahan (pro hac vice)
    1717 Main Street, Suite 3200
    Dallas, TX 75201-7347
10  Tel:    +1.214.466.4000
    Fax:    +1.214.466.4001
11  sean.mcmahan@morganlewis.com

12  Attorneys for Defendants
    CAES SYSTEMS, LLC, THE BOARD OF
13  DIRECTORS OF CAES SYSTEMS, LLC, THE
    401(K) PLAN COMMITTEE OF CAES
14  SYSTEMS, LLC, and JOHN DOES 1-30

15  [Additional Counsel Listed on Signature Page]

16              **IN THE UNITED STATES DISTRICT COURT**

17              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

18

19  | | |
    |---|---|
20  Michael Phillips, et al., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

CAES Systems, LLC, The Board of Directors of CAES Systems, LLC, The 401(k) Plan Committee of CAES Systems, LLC, Cobham Advanced Electronic Solutions, Inc., The Board of Directors of Cobham Advanced Electronic Solutions, Inc., The 401(k) Plan Committee of Cobham Advanced Electronic Solutions, Inc., and John Does 1-30,

Defendants.

Case No. 5:23-cv-03785-EKL

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Date:       August 27, 2025
Time:       10:00 a.m.
Location:   San Jose Courthouse,
            Courtroom 7
            San Jose, CA 95113
Judge:      Hon. Eumi K. Lee
Fourth Am. Compl. Filed: April 18, 2025

**NOTICE OF MOTION AND MOTION TO DISMISS**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

  **PLEASE TAKE NOTICE** that on August 27, 2025, at 10:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Eumi K. Lee in Courtroom 7 of the above-entitled Court, located at 280 South 1st Street, San Jose, CA 95113, CAES Systems LLC ("CAES"), The Board of Directors of CAES System LLC, the 401(k) Plan Committee of CAES Systems LLC ("Committee"), Cobham Advanced Electronic Solutions, Inc. ("CAES Inc."), the Board of Directors of Cobham Advanced Electronic Solutions, Inc., and the 401(k) Plan Committee of Cobham Advanced Electronic Solutions, Inc. (collectively, "Defendants")[1] will and hereby do move the Court to dismiss with prejudice the Fourth Amended Class Action Complaint filed by Michael Phillips, Brenda Paclik, and Crystal Franklin ("Plaintiffs"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants base their motion to dismiss on this Notice of Motion and Motion to Dismiss, the accompanying Memorandum of Points and Authorities, and such other materials and evidence as may be presented to the Court.

  As explained herein, Defendants request that the Court dismiss the Complaint with prejudice.

Dated: May 23, 2025

              MORGAN, LEWIS & BOCKIUS LLP
              By */s/ Sean K. McMahan*
                Sean K. McMahan

              Mark A. Feller
              Deborah S. Davidson (pro hac vice)
              Sean K. McMahan (pro hac vice)
              Mathew J. McKenna (pro hac vice)
              MORGAN, LEWIS & BOCKIUS LLP
              *Attorneys for Defendants*

---

[1] Prior to January 1, 2023, CAES Inc. sponsored the Cobham United States 401(k) Plan. In connection with a corporate transaction involving CAES and CAES Inc., sponsorship of the Cobham United States 401(k) Plan transferred from CAES Inc. to CAES effective January 1, 2023, and the Cobham United States 401(k) Plan was renamed the CAES 401(k) Plan. On September 4, 2024, CAES was acquired by Honeywell International Inc. In connection with that acquisition, sponsorship of the Plan transferred to Cobham Benefits Holding, LLC effective August 28, 2024. For simplicity, Defendants use the terms "CAES," "the Plan," "the Committee" and "the Board" in this motion to refer to the Defendants in this action.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
5:23-cv-03785-EKL     -2-

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF ISSUES TO BE DECIDED ................................................... 1

II.   INTRODUCTION ............................................................................................. 1

III.  BACKGROUND ............................................................................................... 3

    A.   The Plan and Parties. ............................................................................... 3

    B.   Overview of Target-Date Funds. ............................................................ 3

    C.   The American Century TDFs. ................................................................. 4

    D.   Plaintiffs' Comparators. .......................................................................... 5

    E.   Plaintiffs' Claims. ................................................................................... 5

IV.   ARGUMENT .................................................................................................... 6

    A.   Standard Of Review. ............................................................................... 6

    B.   Plaintiffs' Performance Allegations Do Not Support An Inference That Defendants Utilized A Flawed Fiduciary Process. .................................. 7

    C.   The Court Should Reject Plaintiffs' Claim That A Prudent Fiduciary Would Never Select A "To Retirement" Target-Date Fund. ................... 9

    D.   Plaintiffs' Allegation That The American Century TDFs Did Not Have Best-In-Class Morningstar Star Ratings Or Medalist Ratings Does Not Support An Inference Of Imprudence And Is Inaccurate To Boot. ...... 11

    E.   Plaintiffs Do Not Plausibly Allege That The American Century TDFs Charged "Excessive" Fees. .................................................................... 13

    F.   Plaintiffs Do Not Plausibly Allege Meaningful Benchmarks For The American Century TDFs. ...................................................................... 14

        1.   Plaintiffs do not plausibly allege their comparators are meaningful benchmarks for the American Century TDFs. ........................... 15

        2.   Plaintiffs do not plausibly allege their indices are meaningful benchmarks for the American Century TDFs. ........................... 19

    G.   The Court Should Dismiss Plaintiffs' Baseless Claim For Statutory Penalties. ............................................................................................... 20

    H.   Plaintiffs' Derivative Monitoring Claim Fails As A Matter Of Law. ................. 23

V.    CONCLUSION ............................................................................................... 23

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
5:23-cv-03785-EKL                                    -i-

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Anderson v. Intel Corp. Inv. Pol'y. Comm.*,
5    579 F. Supp. 3d 1133 (N.D. Cal. 2022), *aff'd*, 2025 WL 1463295 ...................................... 13

6
*Anderson v. Intel Corp. Inv. Policy Comm.*,
7    2025 WL 1463295 (9th Cir. May 22, 2025) ...................................................................... *passim*

*Ashcroft v. Iqbal*,
8    556 U.S. 662 (2009) ............................................................................................................ 6

9
*Baumeister v. Exelon Corp.*,
10    2023 WL 6388064 (N.D. Ill. Sept. 29, 2023) .................................................................. 12

11
*Beldock v. Microsoft Corp.*,
    2023 WL 1798171 (W.D. Wash. Feb. 7, 2023) ................................................................ 8

12
*Bell Atl. Corp. v. Twombly*,
13    550 U.S. 544 (2007) ............................................................................................................ 6

14
*Birse v. CenturyLink, Inc.*,
15    2020 WL 1062902 (D. Colo. Mar. 5, 2020) ................................................................... 21

16
*Bracalente v. Cisco Sys., Inc.*,
17    2023 WL 5184138 (N.D. Cal. Aug. 11, 2023) .............................................................. 7, 9

18
*Bracalente v. Cisco Sys., Inc.*,
    2024 WL 2274523 (N.D. Cal. May 20, 2024) ............................................................ 16, 23

19
*Davis v. Salesforce.com, Inc.*,
20    2020 WL 5893405 (N.D. Cal. Oct. 5, 2020) .................................................................. 13

21
*Davis v. Wash. Univ. in St. Louis*,
22    960 F.3d 478 (8th Cir. 2020) ..................................................................... 6, 15, 18, 20

*Enstrom v. SAS Inst.*,
23    2025 WL 685219 (E.D.N.C. Mar. 3, 2025) .................................................................... 11

24
*Faircloth v. Lundy Packing Co.*,
25    91 F.3d 648 (4th Cir. 1996) ............................................................................................ 22

26
*Falberg v. Goldman Sachs Grp., Inc.*,
    2024 WL 619297 (2d Cir. Feb. 14, 2024) ...................................................................... 21

27
*Fifth Third Bancorp v. Dudenhoeffer*,
28    573 U.S. 409 (2014) .................................................................................................. 7, 9, 20

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
5:23-cv-03785-EKL    -ii-

*Hughes Salaried Retirees Action Comm. v. Adm'r of Hughes Non-Bargaining Ret. Plan*,
   72 F.3d 686 (9th Cir. 1995).................................................................................................. 21

*Hughes v. Nw. Univ.*,
   595 U.S. 170 (2022) .......................................................................................... 7, 10, 19, 22

*Johnson v. Russell Invs. Tr. Co.*,
   2025 WL 358197 (S.D. Fla. Jan. 31, 2025), *appeal filed*, No. 25-10692 (11th
   Cir. Mar. 4, 2025) ............................................................................................................... 18

*In re LinkedIn ERISA Litig.*,
   2021 WL 5331448 (N.D. Cal. Nov. 16, 2021) ............................................................. 13, 19

*Luckett v. Wintrust Fin. Corp.*,
   2024 WL 3823175 (N.D. Ill. Aug. 14, 2024)..................................................... 8, 16, 19, 23

*Matney v. Barrick Gold of N. Am.*,
   2022 WL 1186532 (D. Utah Apr. 21, 2022), *aff'd*, 80 F.4th 1136 ....................................... 12

*Matney v. Barrick Gold of N. Am.*,
   80 F.4th 1136 (10th Cir. 2023).................................................................................... 8, 16

*Matousek v. MidAmerican Energy Co.*,
   51 F.4th 274 (8th Cir. 2022)............................................................................................. 11

*Meiners v. Wells Fargo & Co.*,
   898 F.3d 820 (8th Cir. 2018)........................................................................... 4, 11, 14, 18

*MHC Fin. Ltd. P'ship v. City of San Rafael*,
   714 F.3d 1118 (9th Cir. 2013).............................................................................................. 2

*In re Northrop Grumman Corp. ERISA Litig.*,
   2010 WL 11469724 (C.D. Cal. Aug. 12, 2010)................................................................. 21

*Partida v. Schenker, Inc.*,
   2024 WL 1354432 (N.D. Cal. Mar. 29, 2024).............................................................. 14, 19

*Partida v. Schenker, Inc.*,
   2025 WL 948123 (N.D. Cal. Mar. 28, 2025)..................................................................... 19

*Patterson v. Morgan Stanley*,
   2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ..................................................................... 11

*Phillips v. Cobham Advanced Elec. Sols., Inc.*,
   2024 WL 3228097 (N.D. Cal. June 28, 2024) ............................................................. *passim*

*Pizarro v. Home Depot, Inc.*,
   111 F.4th 1165 (11th Cir. 2024)................................................................................. 12, 19

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
5:23-cv-03785-EKL                    -iii-

*Sgro v. Danone Waters of N. Am., Inc.*,
    532 F.3d 940 (9th Cir. 2008)..................................................................................... 22

*Shaver v. Operating Eng'rs Local 428 Pension Tr. Fund*,
    332 F.3d 1198 (9th Cir. 2003)........................................................................... 3, 21, 22

*Smith v. CommonSpirit Health*,
    2021 WL 4097052 (E.D. Ky. Sept. 8, 2021)............................................................. 11

*Smith v. CommonSpirit Health*,
    37 F.4th 1160 (6th Cir. 2022)............................................................................. 11, 15

*Tibble v. Edison Int'l*,
    575 U.S. 523 (2015) ..................................................................................................... 6

*Tibble v. Edison Int'l*,
    729 F.3d 1110 (9th Cir. 2013), *vacated on other grounds*, 575 U.S. 523 (2015).................... 9

*Tobias v. NVIDIA Corp.*,
    2021 WL 4148706 (N.D. Cal. Sept. 13, 2021) ........................................................ 13

*Trustees of N.Y. State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*,
    102 F.4th 572 (2d Cir. 2024).................................................................................... 22

*Wehner v. Genentech, Inc.*,
    2021 WL 2417098 (N.D. Cal. June 14, 2021), *appeal filed*, No. 24-2630 (9th
    Cir. July 16, 2024)........................................................................................ 15, 20, 21

*White v. Chevron Corp.*,
    2016 WL 4502808 (N.D. Cal. Aug. 29, 2016)............................................................ 9

*White v. Chevron Corp.*,
    2017 WL 2352137 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453 (9th Cir.
    2018) ..........................................................................................................*passim*

*Zavislak v. Netflix, Inc.*,
    2024 WL 2884649 (N.D. Cal. June 7, 2024) (Davila, J.), *appeal pending*, No.
    24-4175 (9th Cir.) ...................................................................................................... 21

**Statutes**

29 U.S.C. § 1024(b)(4)............................................................................................*passim*

29 U.S.C. § 1102 ........................................................................................................ 21

29 U.S.C. § 1104(a)(1)(B)...................................................................................... 1, 5, 6

29 U.S.C. § 1104(a)(1)(D)............................................................................................ 22

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
5:23-cv-03785-EKL                                                    -iv-

**Other Authorities**

Rule 12(b)(6) .................................................................................................................... 4

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
5:23-cv-03785-EKL                                    -v-

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    STATEMENT OF ISSUES TO BE DECIDED**

3      1.      Whether the Court should dismiss Count I because Plaintiffs' allegations that the

4 American Century Target Date Funds ("American Century TDFs") generated lower investment

5 returns than other target-date suites do not support an inference that Defendants failed to properly

6 monitor investments in the CAES 401(k) Plan (the "Plan") in violation of the duty of prudence

7 imposed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1104(a)(1)(B).

8      2.      Whether the Court should dismiss Count II because Plaintiffs' failure-to-monitor

9 allegations are derivative of, and fall with, Plaintiffs' primary prudence claim in Count I.

10      3.      Whether the Court should dismiss Count III because ERISA Section 104(b)(4), 29

11 U.S.C. § 1024(b)(4), does not require production of an Investment Policy Statement ("IPS") in

12 response to a participant's request for documents.

13

**II.    INTRODUCTION**

14      To state a viable imprudence claim, Plaintiffs must plausibly allege facts permitting an

15 inference that the Plan fiduciaries were asleep at the wheel and did not adequately monitor the

16 Plan's investments. *E.g.*, ECF 75 ("Order") at 1-2; *Phillips v. Cobham Advanced Elec. Sols., Inc.*,

17 2024 WL 3228097, at *6 (N.D. Cal. June 28, 2024). As this Court has held twice in dismissing

18 Plaintiffs' prior complaints, allegations that one investment generated lower returns than another

19 investment cannot create a plausible inference that the challenged investment was imprudent or the

20 investment monitoring process was flawed. Order at 2 (dismissing Third Amended Complaint

21 because it "rest[ed] on essentially the same allegations that the American Century TDFs

22 underperformed relative to comparator funds"); *Phillips*, 2024 WL 3228097, at *8 (dismissing

23 Second Amended Complaint because it relied on "the conclusory and circular statement" that

24 Defendants utilized a deficient process "as evidenced by the poor performance" of the American

25 Century TDFs).

26      Plaintiffs' Fourth Amended Complaint ("Complaint") suffers the same flaw—it alleges

27 only that the American Century TDFs' investment returns "lagged behind the performance of the

28 applicable Comparator Funds," and claims this is enough for the Court to infer a flawed fiduciary

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
5:23-cv-03785-EKL                    -1-

1    process. Compl. ¶ 161. In the words of Yogi Berra, "it's déjà vu all over again." *MHC Fin. Ltd.*

2    *P'ship v. City of San Rafael*, 714 F.3d 1118, 1122 (9th Cir. 2013). Plaintiffs' failure to muster

3    anything other than underperformance requires dismissal of the Complaint, this time with prejudice.

4    There is a second basis for dismissal of Count I—the Complaint does not allege apt

5    benchmarks for assessing the prudence of the American Century TDFs. To plausibly allege a

6    prudent fiduciary would have selected a different investment because of performance or fees,

7    Plaintiffs must provide a "meaningful benchmark" for the challenged investment. *Anderson v. Intel*

8    *Corp. Inv. Policy Comm.*, 2025 WL 1463295, at *4 (9th Cir. May 22, 2025); Order at 3. Plaintiffs

9    do not satisfy this standard. They claim that any target-date fund is a meaningful benchmark for

10    any other target-date fund solely because they are all target-date funds, regardless of the actual

11    differences between them. The Court already rejected that theory. Order at 3 ("simply labeling

12    funds as comparable or as in the same category . . . is insufficient to establish that those funds are

13    meaningful benchmarks"). The Ninth Circuit agrees. *Anderson*, 2025 WL 1463295, at *5. And the

14    Complaint's meager allegations about the holdings and strategies of the American Century TDFs

15    versus the comparators conclusively establish that those funds have markedly ***dissimilar*** asset

16    allocations and ***dissimilar*** investment strategies, so the comparators cannot be meaningful

17    benchmarks. *Id.* at *5-6.

18    None of Plaintiffs' remaining allegations save Count I. Their claim that the American

19    Century TDFs charged "excessive" fees flounders for a simple reason—"ERISA does not require

20    fiduciaries to 'scour the market to find and offer the cheapest possible funds.'" *White v. Chevron*

21    *Corp.*, 2017 WL 2352137, at *14 (N.D. Cal. May 31, 2017) (Hamilton, J.) (*White II*), *aff'd*, 752 F.

22    App'x 453 (9th Cir. 2018) (*White III*) (unpublished). And this Court already held that Plaintiffs'

23    allegation that the American Century TDFs had "low Beta" is simply another way of alleging

24    Defendants should have selected a better-performing investment and does not state a claim.

25    *Phillips*, 2024 WL 3228097, at *8. Plaintiffs also ask the Court to find that "to retirement" target-

26    date funds are per se imprudent. They offer no support for that novel theory, and the case law

27    counsels against applying such bright-line rules to the prudence inquiry. *See Anderson*, 2025 WL

28    1463295, at *6 (rejecting "generalized attacks" on discrete investment categories). Moreover,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
5:23-cv-03785-EKL                                   -2-

Plaintiffs also allege the Plan **should have** offered the Voya TDFs, which utilize a "to retirement" glidepath, demonstrating the internal inconsistency and implausibility of this theory.

Count II fares no better. That count alleges that other Defendants did not properly monitor the Committee. This is a derivative claim that cannot survive dismissal of Plaintiffs' primary claim that the American Century TDFs were imprudent. *E.g.*, *Phillips*, 2024 WL 3228097, at *9.

Finally, Count III alleges Defendants violated ERISA's disclosure requirements in Section 104(b)(4), 29 U.S.C. § 1024(b)(4), by failing to produce the Plan's IPS to Plaintiffs before they filed this lawsuit back in 2022. Plaintiffs ignore binding Ninth Circuit precedent, which makes clear that ERISA plan administrators are ***not*** obligated to produce documents like the IPS that "relate only to the manner in which the plan is operated." *Shaver v. Operating Eng'rs Local 428 Pension Tr. Fund*, 332 F.3d 1198, 1202 (9th Cir. 2003). Count III thus fails as a matter of law.

For these reasons, and those explained in further detail below, the Court should dismiss the Complaint in its entirety, with prejudice.

## III.     BACKGROUND

### A.     The Plan and Parties.

The Plan is a defined-contribution 401(k) plan that offered retirement benefits to eligible employees of CAES. Compl. ¶¶ 40-41. Plan participants selected the investments for their Plan accounts from a menu of investment options vetted by the Committee. *Id.* ¶¶ 28, 48-49. Participants could choose from a wide range of investments, including, among others, the American Century TDFs. *Id.* ¶¶ 49, 159.

CAES sponsored the Plan and CAES's Board appointed the members of the Committee. *Id.* ¶¶ 22, 25. The Committee was responsible for selecting and monitoring the Plan's investments. *Id.* ¶¶ 28, 30. Plaintiffs are former CAES employees and former Plan participants who invested in the American Century TDFs. *Id.* ¶¶ 16-18.

### B.     Overview of Target-Date Funds.

"TDFs offer a long-term investment strategy based on holding a mix of stocks, bonds and other investments (this mix is called an asset allocation) that automatically changes over time as the participant ages." Ex. 1 at 1 (*Target Date Retirement Funds – Tips for ERISA Plan Fiduciaries*,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
5:23-cv-03785-EKL                             -3-

(Dep't of Lab., Feb. 2013)).[2] Target-date funds are offered as a suite of different "vintages" typically spaced in five-year increments (e.g., 2040 fund, 2045 fund, 2050 fund, and so on), with each vintage representing an anticipated retirement date. *Phillips*, 2024 WL 3228097, at *2. As the target retirement date approaches, the fund changes its asset allocation to move away from riskier investments like stocks and include a higher proportion of conservative investments like bonds. Ex. 1 at 1. This gradual shift in asset allocation is called the "glide path." *Id.*

It is important for fiduciaries to know whether a target-date fund's investment manager uses a "to retirement" or a "through retirement" glidepath because the strategies have different risk profiles and purposes. *Id.* A target-date fund with a "to retirement" strategy reaches its most conservative asset allocation at the target retirement date, i.e., 2050. *Id.* By contrast, a fund utilizing a "through retirement" strategy continues to adjust equity exposure to de-risk years beyond the target retirement date, potentially decades beyond. *Id*. Even "within this general framework," there are "considerable differences among TDFs offered by different providers." *Id.* That is because target-date fund managers invest in different types and percentages of stocks, bonds, and other assets. *Id.* at 2; *see also Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 & n.2 (8th Cir. 2018) (affirming Rule 12(b)(6) dismissal because some vintages of the challenged target-date fund had a higher bond allocation than the comparator target-date fund); Compl. ¶ 125 (alleging markedly different asset allocations between American Century TDFs and comparators).

### C.    The American Century TDFs.

The Plan included at least ten different American Century TDF vintages covering five-year periods from 2020 through 2065, as well as an "in retirement" vintage. *See* ECF 79-3 at 1-2. The American Century TDFs use a "to retirement" glidepath strategy. Compl. ¶ 148.

Almost all investments charge investors a fee, representing annual charges by the investment manager for managing the fund. *White II*, 2017 WL 2352137, at *19. The investment-management fee is expressed in the form of an "expense ratio," a percentage-based charge against a participant's total assets invested in the fund. For instance, a participant who invests $1,000 in a

---

[2] The cited exhibits are attached to the McMahan Declaration accompanying the Request for Judicial Notice. As explained, these documents are properly before the Court at this stage.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
5:23-cv-03785-EKL                    -4-

fund with an expense ratio of 0.75% (or 75 basis points) pays an annual fee of $7.50 ($1,000 x 0.0075) to the investment manager (these fees do not go to the Defendants). In 2022, the American Century TDFs had an expense ratio of 0.42%. Compl. ¶ 223.

### D.    Plaintiffs' Comparators.

Plaintiffs compare the performance and/or fees of the American Century TDFs to seven other target-date suites. Compl. ¶ 118. The Court already held that two of these—the American Funds TDFs and T. Rowe Price TDFs—are not meaningful benchmarks. Order at 3. Nevertheless, Plaintiffs continue to allege these target-date funds are suitable comparators, in part because they all "are grouped in the same Morningstar Category" as the American Century TDFs. Compl. ¶ 119. Plaintiffs allege that there are "200 funds in the Target Date Category." *Id*. ¶ 200.

All the comparators except for the Voya TDFs utilize a "through retirement" glidepath. *See id.* ¶¶ 153-54 (alleging the MoA TDFs, Natixis TDFs, and Nuveen TDFs all utilize "through" glidepaths)[3]; Ex. 2 at 7 (Morningstar, *2020 Target-Date Strategy Landscape* (May 2020) (the American Funds TDFs and T. Rowe Price TDFs utilize "through" glidepaths)); Ex. 3 at 1 (*Callan GlidePath 2040 Fund* Fact Sheet (June 30, 2022) (Callan GlidePath TDFs "help investors maintain a planned asset allocation all the way ***through*** retirement by changing their asset allocations over time." (emphasis added)). Plaintiffs admit that each of the comparators holds approximately 14% to 27% ***more*** in equities than the American Century TDFs and that the American Century TDFs hold approximately 17% to 29% ***more*** in bonds than the comparators. Compl. ¶ 125.

Plaintiffs also compare the performance of the American Century TDFs to the Morningstar Lifetime Moderate Index and the S&P "To" Index. *Id*. ¶ 104.

### E.    Plaintiffs' Claims.

In Count I, Plaintiffs allege the Committee breached its duty of prudence under ERISA Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), by offering the American Century TDFs because

---

[3] Effective July 1, 2024, the Natixis Sustainable Future TDFs were rebranded as the Natixis Target Retirement Funds. Ex. 4 at 1 (Natixis Prospectus Supplement (June 17, 2024)). Effective May 1, 2024, the TIAA-CREF Lifecycle TDFs were rebranded as the Nuveen Lifecycle TDFs. Ex. 5 at 1 (Nuveen Prospectus Supplement (Mar. 28, 2024)). Plaintiffs use the new names for each of those funds, but the historical documents they rely on throughout the Complaint use the original names.

those investments (1) had lower overall returns than Plaintiffs' comparators; (2) were more expensive than "several" of Plaintiffs' comparators and the target-date category median; and (3) did not receive best-in-class ratings from Morningstar. Compl. ¶¶ 160-225, 234-41. In Count II, Plaintiffs allege CAES and the Board had a duty to monitor the Committee's performance and breached that duty by failing to ensure that the Committee prudently managed the Plan's investments. *Id.* ¶¶ 242-48. And, in Count III, Plaintiffs allege that all Defendants violated ERISA's disclosure requirements by failing to produce the IPS. *Id*. ¶¶ 226-33, 249-52.

## IV.    ARGUMENT

### A.    Standard Of Review.

Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court should dismiss claims that simply are "conceivable." *See Twombly*, 550 U.S. at 570.

ERISA's duty of prudence includes "a continuing duty to monitor investments and remove imprudent ones." *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015). The "test of prudence" asks whether the fiduciaries, "at the time they engaged in the challenged [activity], employed the appropriate methods to investigate the merits of the investment." *White II*, 2017 WL 2352137, at *13. But the question is ***not*** whether, in hindsight, a fiduciary could have selected a better-performing investment. Order at 1-2; *see also* 29 U.S.C. § 1104(a)(1)(B) (the duty of prudence is analyzed under the "circumstances then prevailing"). That is because "ERISA requires prudence, not prescience." *Anderson*, 2025 WL 1463295, at *4 (cleaned up). Thus, to nudge a claim from conceivable to plausible, a plaintiff must allege facts supporting an inference that the fiduciary's decision-making process, at the time of the decision, did not comport with ERISA's fiduciary standards. *Id.*; *see also Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 482-83 (8th Cir. 2020) ("*Wash U*"). To satisfy this pleading requirement, an ERISA complaint must set forth either direct allegations that the fiduciary's oversight process was flawed or circumstantial allegations permitting the court to infer a flawed process. *Anderson*, 2025 WL 1463295, at *4. When a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
5:23-cv-03785-EKL                                    -6-

complaint relies on circumstantial factual allegations, as Plaintiffs do here, "those allegations must give rise to a '*reasonable* inference' that the defendant committed the alleged misconduct, *i.e.*, the facts alleged must be 'suggestive of, rather than merely consistent with, a finding of misconduct.'" *Bracalente v. Cisco Sys., Inc.*, 2023 WL 5184138, at *3 (N.D. Cal. Aug. 11, 2023) (Davila, J.) (*Bracalente I*); *accord Anderson*, 2025 WL 1463295, at *4.

ERISA fiduciaries often face "difficult tradeoffs," so courts "must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022). Ultimately, the court must conduct a "careful, context-sensitive scrutiny of a complaint's allegations" to "divide the plausible sheep from the meritless goats." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

### B.   Plaintiffs' Performance Allegations Do Not Support An Inference That Defendants Utilized A Flawed Fiduciary Process.

In dismissing the Second Amended Complaint, Judge Davila explained that "federal courts have widely and consistently rejected attempts to impose ERISA liability where the claims are based solely on a fund's underperformance." *Phillips*, 2024 WL 3228097, at *8 (cleaned up). Accordingly, Judge Davila dismissed Plaintiffs' claims but granted "leave to amend to add allegations of Defendants' omissions or conduct, or other relevant information." *Id*. Plaintiffs sought (unsuccessfully) to remedy this issue in the Third Amended Complaint, adding allegations that (1) Defendants lacked an IPS; (2) the American Century TDFs charged excessive fees; and (3) a securities lawsuit concerning American Century was a "red flag." ECF 56 ¶¶ 112-28. This Court concluded those allegations failed to state a plausible claim. Order at 4-5.

The current Complaint reasserts Plaintiffs' twice-rejected underperformance theory of imprudence, asking the Court to infer a flawed fiduciary process because the American Century TDFs generated lower returns than Plaintiffs' comparators. Plaintiffs essentially ask the Court to ignore its prior ruling (and the weight of authority) that "poor performance, standing alone, is not sufficient to create a reasonable inference that plan fiduciaries failed to conduct an adequate investigation." Order at 2 (quoting *White II*, 2017 WL 2352137, at *20); *Phillips*, 2024 WL 3228097, at *8; *see also White III*, 752 F. App'x at 455 (allegations that a fiduciary "could have

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
5:23-cv-03785-EKL                                    -7-

chosen different vehicles for investment that performed better during the relevant period" do not make it "more plausible than not that any breach of a fiduciary duty had occurred"); *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1154 n.15 (10th Cir. 2023) (courts "uniformly" reject claims alleging relying on subpar investment returns). The Court should decline this invitation (again) and dismiss Count I. Additionally, even if a performance comparison on its own could state a claim for breach of fiduciary duty (and it cannot), Plaintiffs' performance analysis is notably flawed.

**First,** Plaintiffs ignore several vintages of the American Century TDFs. The performance allegations in the Complaint address the 2030-2060 vintages, and exclude the 2020, 2025, 2065, and In Retirement vintages. But the American Century TDFs, like all target-date funds, are selected for inclusion in a retirement plan as a full suite. *See Beldock v. Microsoft Corp.*, 2023 WL 1798171, at *4 (W.D. Wash. Feb. 7, 2023) ("Plaintiffs assert that [] TDFs are chosen for defined contribution plans as a complete suite."). A plan fiduciary cannot pick and choose which vintages or which suites of funds to offer and, conversely, a plaintiff cannot make out a claim of imprudence by picking and choosing which vintages to allege are imprudent. Notably, this is one of the deficiencies Plaintiffs told the Court they would address in the current Complaint. *See* Ex. 6 (Dec. 11, 2024, Hr'g Tr. at 14:12-15 ("We can also include more vintages, a description of more vintages throughout the class period, which is one of the issues that Defendants have pointed out.")). While Plaintiffs added allegations about a handful of vintages relative to their prior complaint, they still do not include allegations about the full suite.

**Second,** Plaintiffs allege that the American Century TDFs underperformed their cherry-picked comparators "throughout" the putative class period. *E.g.*, Compl. ¶ 162. Despite that claim, Plaintiffs provide performance data for only four (out of eight) years during the putative class period. Even if these comparisons were meaningful (and they are not), the mere fact that a subset of vintages of the American Century TDFs underperformed a handful of comparators as of year-ends 2019, 2021, 2023, and 2024 (but, apparently not as of 2017, 2018, 2020, or 2022) does not suggest underperformance at all points during the putative class period. *See Luckett v. Wintrust Fin. Corp.*, 2024 WL 3823175, at *5, (N.D. Ill. Aug. 14, 2024) (dismissing claims based on three- and five-year performance data as of four different quarter-ends because "three and five-year horizons

1  are relative blips in the timelines of plans that are meant to last four or five decades").

2  **Third,** Plaintiffs' allegation that the American Century TDFs had "one of the lowest Beta

3  ratings" is just another attack on performance. Compl. ¶ 198. As Judge Davila acknowledged, "Beta

4  is itself a performance metric." *Phillips*, 2024 WL 3228097, at *8. Thus, he concluded that

5  Plaintiffs' allegations that the American Century TDFs "had one of the worst Beta rankings" are

6  "mere restatements of the proposition that underperformance is a sufficient basis to find a breach

7  of the duty of prudence." *Id.* But "simply providing metrics or opinions further describing the

8  [challenged funds'] underperformance" cannot salvage a complaint. *Bracalente I*, 2023 WL

9  5184138, at *5. The same conclusion remains true here.

10  Absent any "additional allegations of process failures," the Court cannot plausibly infer a

11  fiduciary breach based on allegations that some vintages of the American Century TDFs had lower

12  investment returns, during certain discrete periods, than seven other target-date funds. *Phillips*,

13  2024 WL 3228097, at *8. Plaintiffs offer nothing more, and the Court should dismiss Count I.

14  **C.**    **The Court Should Reject Plaintiffs' Claim That A Prudent Fiduciary Would**

15  **Never Select A "To Retirement" Target-Date Fund.**

16  Plaintiffs also allege that "to retirement" glidepaths are "unfavored" among fiduciaries,

17  rendering the American Century TDFs (and every other "to retirement" target-date fund) per se

18  imprudent. Compl. ¶¶ 133-34. Such a holding would be unprecedented, and this novel theory

19  cannot be reconciled with the authority rejecting similar "bright-line approach[es]" for evaluating

20  fiduciary-breach claims. *E.g.*, *White v. Chevron Corp.*, 2016 WL 4502808, at *10 (N.D. Cal. Aug.

21  29, 2016) (rejecting argument that a fiduciary must offer only institutional share classes of mutual

22  funds because "[t]here are simply too many relevant considerations for a fiduciary, for that type of

23  bright-line approach to prudence to be tenable") (quoting *Tibble v. Edison Int'l*, 729 F.3d 1110,

24  1135 (9th Cir. 2013), *vacated on other grounds*, 575 U.S. 523 (2015)); *see also Dudenhoeffer*, 573

25  U.S. at 425 (ERISA requires a "careful, context-sensitive scrutiny" of a complaint alleging a breach

26  of fiduciary duty).

27  The Ninth Circuit just rejected a similar theory in *Anderson*. There, the plaintiffs alleged

28  that a target-date allocation strategy that utilized hedge funds and private equity funds was

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
5:23-cv-03785-EKL                    -9-

1   "*inherently* so risky that no prudent investor with the same aims would have invested in them."

2   2025 WL 1463295, at *6. The Ninth Circuit explained that this "*per se* challenge to hedge funds

3   and private equity overlooks that the prudence of each investment is not assessed in isolation but,

4   rather, as the investment relates to the portfolio as a whole." *Id.* (cleaned up). "Thus, generalized

5   attacks on hedge funds and private equity funds as a category" could not state a plausible claim. *Id.*

6   The same is true here—Plaintiffs' "generalized attack[]" on "to retirement" target-date strategies

7   asks the Court to ignore the context-specific analysis required for their claims and to assess the

8   prudence of that strategy "in isolation." That approach cannot be harmonized with governing

9   Supreme Court and Ninth Circuit precedent.

10          Moreover, Plaintiffs' own documents explain that "to retirement" and "through retirement"

11  target-date funds have different goals, and plan sponsors select between them "based on the

12  outcomes they want to deliver." *See* Ex. 7 at 1 (*Evaluating 'To' vs. 'Through' Glide Paths*, Amanda

13  Umpierrez (Feb. 17, 2021) (cited at Compl. ¶¶ 130-33)). "A 'to' objective is focused on limiting

14  the volatility or the variability of outcomes for the investor up to retirement, while a 'through'

15  objective drives growth for participant balances for several years and then allows them to be

16  converted into income through retirement." Ex. 7 at 1. "Managers of 'through' TDFs tend to have

17  a primary focus on creating income throughout retirement, and managing volatility is the second

18  objective," whereas "managers of 'to' TDFs have the objective of limiting portfolio volatility up to

19  retirement as the primary goal, and the income throughout retirement is more of a secondary

20  objective." *Id.*

21          There is nothing improper with prioritizing one of those approaches—creating income or

22  managing volatility—over the other. Indeed, this is just the sort of "difficult tradeoff[]" the Supreme

23  Court contemplated when it cautioned that courts "must give due regard to the range of reasonable

24  judgments a fiduciary may make based on her experience and expertise." *Hughes*, 595 U.S. at 177.

25  Plaintiffs offer no allegations that suggest Defendants' decision to utilize a "to retirement" target-

26  date fund was imprudent, much less to support their theory that ***every*** fiduciary that seeks to manage

27  volatility by utilizing "to retirement" target-date funds acts imprudently. To the contrary, Plaintiffs

28  themselves contend that the Voya TDFs—another "to retirement" target-date suite—would have

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
5:23-cv-03785-EKL                              -10-

been a prudent investment for Defendants to offer in the Plan because of their "greater returns," highlighting the absurdity of Plaintiffs' allegations. Compl. ¶ 148

### D. Plaintiffs' Allegation That The American Century TDFs Did Not Have Best-In-Class Morningstar Star Ratings Or Medalist Ratings Does Not Support An Inference Of Imprudence And Is Inaccurate To Boot.

Plaintiffs also argue that the Court should infer the American Century TDFs were imprudent because they received one-, two-, or three-star Morningstar Star Ratings during 2023 and 2025 and "Neutral" Morningstar Medalist Ratings between 2018 and 2024. Compl. ¶¶ 201-18. Plaintiffs provide only limited details about the methodology for these rankings, but this is just one more way of saying a fiduciary breached its duty because it did not select the best-performing fund. For example, the Morningstar Star Rating is a "purely quantitative, backward-looking measure of a fund's past performance." *See* Ex. 8 at 1 (*Morningstar Ratings 101: What You Need to Know* (2025) (cited at Compl. ¶¶ 202-04)). Just as no authority requires a fiduciary to select the best-performing fund, no authority requires a fiduciary to peruse Morningstar's rankings to select the previous year's highest-rated fund, which changes as performance changes from year to year. *See Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 281 (8th Cir. 2022) (comparison to a "peer group" composed of "hundreds of funds" failed because the lack of details in the complaint meant "we have no way of knowing whether the peer-group funds provide a 'sound basis for comparison,'" and "[a]mong the missing details is whether they hold similar securities, have similar investment strategies, and reflect a similar risk profile"); *Smith v. CommonSpirit Health*, 2021 WL 4097052, at *8 (E.D. Ky. Sept. 8, 2021) (*CommonSpirit I*) (a fiduciary is "not bound by Morningstar's fund rankings or generalized investor preference"), *aff'd*, 37 F.4th 1160 (6th Cir. 2022) (*CommonSpirit II*); *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *11 (S.D.N.Y. Oct. 7, 2019) ("that the [challenged fund] fell below other investment products in the Morningstar rankings . . . does not lead to the conclusion that the [challenged fund] was an imprudent investment") (citing *Meiners*, 898 F.3d at 823); *see also Enstrom v. SAS Inst.*, 2025 WL 685219, at *5 (E.D.N.C. Mar. 3, 2025) ("A prudent fiduciary . . . will not necessarily reflexively jettison investment options in favor of the prior year's top performers because past performance is no guarantee of future success.").

Plaintiffs' allegations concerning the Morningstar Star Ratings fail to state a plausible claim for a separate reason—Plaintiffs cherry-pick two points in time (September 30, 2023, and "current") and speculate that "it is likely that the series had similarly dismal Morningstar Star Ratings earlier in the Class Period." Compl. ¶¶ 215-16. Had Plaintiffs deigned to look, they would have quickly realized their allegation is wrong. For example, as of December 31, 2022, every vintage of the American Century TDFs received four or five stars (the highest possible) from Morningstar. *See* Ex. 9 at 7, 10 (*Morningstar Target-Date Fund Series Report*, American Century One Choice Series (as of Dec. 31, 2022)). Further, Plaintiffs do not include **any** point of comparison for their Morningstar Star Rating allegations. Instead, they provide two datapoints for the American Century TDFs in a vacuum, with no explanation for why those two datapoints suggest imprudence or how those two datapoints compare to **any** other investment available on the market.

Moreover, a Morningstar Medalist Rating of "Neutral" does not plausibly suggest no prudent fiduciary would have offered the American Century TDFs. *See Pizarro v. Home Depot, Inc.*, 111 F.4th 1165, 1177 (11th Cir. 2024) (plaintiff must establish investment decision fell "outside the 'range of reasonable judgments a fiduciary may make based on her experience and expertise,' such that a hypothetical prudent fiduciary in the same circumstances as the defendant, armed with the information that a proper evaluation would have yielded, would not (or could not) have made the same choice" (citations omitted)); *Matney v. Barrick Gold of N. Am.*, 2022 WL 1186532, at *4 (D. Utah Apr. 21, 2022) ("A plaintiff seeking to show a violation of the prudent man standard must allege that a fiduciary's investment decisions—in the conditions prevailing at the time, and without the benefit of hindsight—are such that a reasonably prudent fiduciary would not have made that decision" (cleaned up)), *aff'd*, 80 F.4th 1136. This is no different from Plaintiffs' prior allegation that the American Century TDFs were "mediocre." *See* ECF 35 ¶ 93 (alleging "the American Century Target Date Series was mediocre, at best"). But "[p]erformance in the middle of the pack is not sufficient to suggest imprudence. ERISA does not enable Plaintiffs to sue simply because a fund is not the top performer—instead, the allegations must show that the fiduciary acted outside the permissible range of prudent decisions." *Baumeister v. Exelon Corp.*, 2023 WL 6388064, at *4 (N.D. Ill. Sept. 29, 2023). Additionally, at least two of Plaintiffs' purportedly

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
5:23-cv-03785-EKL                    -12-

prudent comparators received "Neutral" Morningstar Medalist Ratings over the same period. *E.g.*, Ex. 10 at 4 (Morningstar, *The Best Target-Date Funds for 2024* (Mar. 26, 2024) (cited at Compl. ¶ 212) (rating the Natixis TDFs and Nuveen TDFs, using each of those investments' original names, as "Neutral")). Two more of Plaintiffs' comparators—the Callan TDFs and the MoA TDFs—were not even rated by Morningstar. *Id*. This precludes any inference that the American Century TDFs were imprudent, given that Plaintiffs have no issue with other "Neutral" or unrated investments.

### E.    Plaintiffs Do Not Plausibly Allege That The American Century TDFs Charged "Excessive" Fees.

The Third Amended Complaint alleged "that the fees associated with the American Century TDFs were excessive" based on a comparison "to one comparator fund and the median fee for the Morningstar category of funds." Order at 4. The Court found that claim failed as a matter of law because "Plaintiffs fail[ed] to allege that either the comparator fund[s] or the median fee is a meaningful benchmark." *Id*. Now, Plaintiffs allege the American Century TDFs charged excessive investment management fees based on a comparison to the same Morningstar peer group median and three comparators. Compl. ¶¶ 219-25. These allegations still fail to state a claim.

For starters, this Court already rejected Plaintiffs' comparison to the Morningstar peer group median. Order at 4. Plaintiffs do not explain why the Court should now accept the very same benchmark it previously found inapt. Nor can they, since courts in this district routinely dismiss claims premised on comparisons to medians. *E.g.*, *Anderson v. Intel Corp. Inv. Pol'y. Comm.*, 579 F. Supp. 3d 1133, 1150-51 (N.D. Cal. 2022) (Koh, J.), ("it is insufficient for an average to be a meaningful benchmark" and rejecting reliance on "Morningstar's peer group category"), *aff'd*, 2025 WL 1463295; *Davis v. Salesforce.com, Inc.*, 2020 WL 5893405, at *3 n.9 (N.D. Cal. Oct. 5, 2020) (Chesney, J.) (rejecting fiduciary breach claim alleging excessive fees compared to median fees); *In re LinkedIn ERISA Litig.*, 2021 WL 5331448, at *10-11 (N.D. Cal. Nov. 16, 2021) (same); *Tobias v. NVIDIA Corp.*, 2021 WL 4148706, at *15 (N.D. Cal. Sept. 13, 2021) (Koh, J.) (rejecting reliance on median fee where "Plaintiffs provide no basis for how they arrived at" the median fee).

This Court also already rejected Plaintiffs' comparison to the fees of the T. Rowe Price TDFs because that suite utilizes a "through retirement" glidepath as opposed to the American

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
5:23-cv-03785-EKL                    -13-

Century TDFs' "to retirement" glidepath, rendering them inapt comparators. Order at 3. This leaves Plaintiffs' two new comparator funds, neither of which is a meaningful comparator for the reasons explained *infra* at 14-19. Moreover, the simple fact that two target-date funds (out of the 200 or so available on the market) had lower fees (one of which was only 0.03% less) than the American Century TDFs says nothing about whether the fees of the American Century TDFs were imprudent. Outside of the least expensive investment option available on the market, it will ***always*** be possible to identify another fund (or a hundred) with a lower fee—but that does not mean the challenged fund is imprudent. *White II*, 2017 WL 2352137, at *14; *see also Partida v. Schenker, Inc.*, 2024 WL 1354432, at *7 (N.D. Cal. Mar. 29, 2024) (Martínez-Olguín, J.) (*Partida I*) ("the mere availability of cheaper alternatives does not establish a breach of the duty of prudence").

Furthermore, although Plaintiffs do not list the fees for all the comparators, at least two of the proposed comparators were ***more expensive*** than the American Century TDFs. In 2022 (the only year Plaintiffs include for their comparison), the Natixis TDFs charged fees of 0.53% and the Nuveen (formerly TIAA-CREF) TDFs charged fees of 0.48%, both more than the 0.42% Plaintiffs allege the American Century TDFs charged. Ex. 11 at 1 (*Morningstar Target-Date Fund Series Report* for the Natixis Sustainable Future Series (as of Dec. 31, 2022)); Ex. 12 at 1 (*Morningstar Target-Date Fund Series Report* for the TIAA-CREF Lifecycle Series (as of Sept. 30, 2022)). This precludes any inference of imprudence based on allegedly excessive fees.

## F.    Plaintiffs Do Not Plausibly Allege Meaningful Benchmarks For The American Century TDFs.

Plaintiffs' entire theory of the case rests on their allegation that the American Century TDFs underperformed seven cherry-picked comparator target-date funds and two indices. As with the Third Amended Complaint, "Plaintiffs fail to plausibly allege that the American Century TDFs underperformed relative to a meaningful benchmark," requiring dismissal. Order at 3. As this Court previously explained, "[t]o serve as a meaningful benchmark, a comparator fund must 'have similar aims, risks, and potential rewards to a challenged fund." Order at 3. *Anderson* affirms that conclusion. 2025 WL 1463295, at *4. After all, investments with different strategies, holdings, and fees are expected to perform differently. *See, e.g.*, *Meiners*, 898 F.3d at 823 (the "fact that one fund

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
5:23-cv-03785-EKL                    -14-

with a different investment strategy ultimately performed better does not establish anything about whether the [challenged funds] were an imprudent choice"). In other words, the Court cannot infer that performance of the American Century TDFs was too low or the fees too high unless Plaintiffs' comparators provide an apples-to-apples comparison. Order at 3 (concluding "different investment strategies" "make the comparator funds poor benchmarks"); *Anderson*, 2025 WL 1463295, at *5-6; *Wash U*, 960 F.3d at 485 ("Comparing apples and oranges is not a way to show that one [fund] is better or worse than the other."); *CommonSpirit II*, 37 F.4th at 1167 (explaining that funds with "separate goals and separate risk profiles" make "inapt comparators").

### 1. Plaintiffs do not plausibly allege their comparators are meaningful benchmarks for the American Century TDFs.

Plaintiffs offer three conclusory reasons the Court should accept their comparators: (1) they are "in the same Morningstar Category" as the American Century TDFs (Compl. ¶ 119); (2) they have "comparable" glide paths to the American Century TDFs (*id*. ¶¶ 128-56); and (3) they have "sufficiently similar" asset allocations to the American Century TDFs (*id*. ¶¶ 120-27). Plaintiffs' own allegations, and a wealth of case law, demonstrate that these comparisons say nothing about the prudence of the American Century TDFs.

***First,*** this Court has already rejected Plaintiffs' theory—alleged in each of the previous complaints—that all target-date funds are comparable simply by virtue of being grouped in the same Morningstar category. Order at 3 ("[S]imply labeling funds as comparable or as in the same category . . . is insufficient to establish that those funds are meaningful benchmarks."); *see also*, *e.g.*, *Wehner v. Genentech, Inc.*, 2021 WL 2417098, at *8 (N.D. Cal. June 14, 2021) (Orrick, J.), *appeal filed*, No. 24-2630 (9th Cir. July 16, 2024) (citation omitted) (rejecting plaintiffs' contention that "all three products. . . are TDFs, so they must be comparable"); *CommonSpirit II*, 37 F.4th at 1167 ("A side-by-side comparison of how two [target date] funds performed in a narrow window of time, with no consideration of their distinct objectives, will not tell a fiduciary which is the more prudent long-term investment option."). In any event, *Anderson* precludes that outcome. 2025 WL 1463295, at *5 (affirming holding that "simply labeling funds as comparable or a peer" is

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
5:23-cv-03785-EKL                                        -15-

1 insufficient to satisfy the meaningful benchmark requirement). Plaintiffs do not offer any reasons
2 for reaching a different conclusion.

3      **Second,** six of the seven comparators suffer the same flaw previously identified by this
4 Court—they utilize "through retirement" glidepaths, whereas the American Century TDFs utilize
5 a "to retirement" glidepath. Order at 3 ("Different glide paths therefore reflect different investment
6 strategies, and these differences make the comparator funds poor benchmarks."). Numerous other
7 courts agree. *E.g.*, *Matney*, 80 F.4th at 1154 n.14 (affirming dismissal for failure to allege
8 meaningful benchmark when the plan's target-date suite employed a "to retirement" glidepath and
9 the comparator suite employed a "through retirement" glidepath); *Luckett*, 2024 WL 3823175, at
10 *3 (dismissing claims involving BlackRock TDFs because comparators "use a 'through retirement'
11 strategy whereas BlackRock TDFs are 'to retirement' funds. These are substantive differences[.]");
12 *Bracalente v. Cisco Sys., Inc.*, 2024 WL 2274523, at *8 (N.D. Cal. May 20, 2024) (Davila, J.)
13 (*Bracalente II*) (same).

14      Plaintiffs offer no explanation for ignoring this Court's opinion and instructions from the
15 DOL (discussed *supra* at 3-4; Ex. 1 at 1), instead baldly asserting that "the type of glidepath [is not]
16 a prominent consideration for fiduciaries." Compl. ¶ 134. Contrary to Plaintiffs' suggestion,
17 however, Morningstar explains that "one of the biggest differentiators of target-date funds is
18 whether they use a 'to' glidepath, which stops lowering stock exposure at the target retirement date,
19 or a 'through' glide path, which continues to lower stock exposure for 10 to 15 years after the
20 retirement date." Ex. 13 at 29 (Morningstar, *Target-Date Strategy Landscape: 2023* (Mar. 28,
21 2023)). Moreover, as explained *supra* at 9-10, the very documents Plaintiffs rely on for their
22 allegations emphasize the difference between "to retirement" and "through retirement" glidepaths,
23 explaining that the former emphasizes managing volatility while the latter emphasizes creating
24 income. *See* Ex. 7 at 1 (cited at Compl. ¶¶ 130-33). In short, Plaintiffs offer no persuasive
25 justification for deviating from this Court's holding that "to retirement" and "through retirement"
26 target-date funds are inapt comparators. The Court should reject these "through retirement"
27 comparators on that basis alone.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
5:23-cv-03785-EKL                          -16-

**_Third_**, Plaintiffs' allegations concerning the holdings of the American Century TDFs and the comparators confirm that the different funds employ vastly different investment allocations. Generally, target-date funds invest in three primary asset classes—domestic equities, international equities, and fixed income (or bonds). Compl. ¶ 125; Ex. 14 at 1 (Investment Company Institute, _Quick Facts on Target Date Funds_) (cited at Compl. ¶ 133). But "glide paths vary between fund providers. Some choose glide paths that set early allocations to stocks [] to nearly 100 percent of the fund's assets, while others choose somewhat lower allocations." Ex. 14 at 1.

None of the comparators have asset allocations that are remotely like the asset allocations of the 2045 vintage of the American Century TDFs (the only vintage for which Plaintiffs provide any information). _Id._ As Plaintiffs allege, the American Century TDFs' 2045 vintage allocates 66.83% to equities (45.64% to "U.S. Equity" and 21.19% to "Non-U.S. Equity"). Compl. ¶ 125. The equity allocations for the comparators range from 81.27% (Natixis TDFs) to 94.26% (T. Rowe Price TDFs), with an average of 86.32%. _Id._

On the flip side, the American Century TDFs have much higher allocations to bond. The 2045 American Century TDF allocates 31.19% to bonds, while the bond allocations for the comparators range from 2.60% (T. Rowe Price TDFs) to no more than 14.11% (Natixis TDFs), with an average of 9.94%. _Id._ Thus, on average, the comparators allocate nearly 20% **_more_** to equities and 20% **_less_** to bonds than the American Century TDFs. And the "closest" comparator, the Natixis TDFs, allocates approximately 15% more to equities and 17% less to bonds than the American Century TDFs. _Id._ These admitted differences are fatal to Plaintiffs' contention that their comparators and the American Century TDFs have "similar" asset allocations and provide meaningful benchmarks. _Anderson_ is instructive on this point.

The _Anderson_ plaintiffs challenged the plan's inclusion of a suite of custom target-date funds that followed a strategy that allocated less to equities than other target-date funds and was "aimed at decreasing volatility and reducing the risks of large losses during a market downturn." 2025 WL 1463295, at *2. The complaint compared the performance and fees of those target-date funds to "equity-heavy retail [target-date] funds that pursued different objectives—typically revenue generation." _Id._ at *5. The Ninth Circuit affirmed dismissal for failure to plead a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

5:23-cv-03785-EKL                                    -17-

meaningful benchmark, explaining that the "putative comparators were not truly comparable because they had 'different aims, different risks, and different potential rewards.'" *Id.* (quoting *WashU*, 960 F.3d at 485); *see also Meiners,* 898 F.3d at 823 & n.2 (affirming dismissal where challenged target-date fund and comparator had a 12% difference in bond allocations and this ***alone*** meant the two funds had "a different investment strategy" and, accordingly, the fact that the comparator "ultimately performed better does not establish anything about whether the Wells Fargo TDFs were an imprudent choice at the outset"); *Johnson v. Russell Invs. Tr. Co.*, 2025 WL 358197, at *10 (S.D. Fla. Jan. 31, 2025) (holding that "performance comparisons between the Russell TDFs and Johnson's Comparator Funds are inapt" because "the Russell TDFs had a fundamentally different asset allocation than Johnson's Comparator Funds"), *appeal filed*, No. 25-10692 (11th Cir. Mar. 4, 2025). The same is true here. Plaintiffs compare the performance of the American Century TDFs, which they admit use a "risk-mitigation" strategy that includes a significantly higher allocation to bonds and lower allocation to equities, *e.g.* Compl. ¶ 139, to the performance of "equity heavy" target-date funds "that pursued different objectives." 2025 WL 1463295, at *5. Plaintiffs' failure to provide meaningful benchmarks is fatal to their claims

Of course, these differences in glidepaths and asset allocations do not mean that the Plan's American Century TDFs are "necessarily better or worse" than any of Plaintiffs' comparators; rather, these funds are "just different," even if they have "some similarities" in that they all are target-date funds. *Wash U*, 960 F.3d at 485-86 (holding plaintiffs may not "dodge the requirement for a meaningful benchmark by merely finding a less expensive alternative fund or two with some similarity"). But these critical differences ***do*** render Plaintiffs' comparators inapt benchmarks. As the Eleventh Circuit recently explained:

> Target date funds are not all created equal—funds from different sponsors may have different glide paths, which means they also have different risk-return profiles. In years when the equity market is hot, a more aggressive target date fund that retains equities longer will appear to outperform a fund that shifts toward more conservative assets like bonds sooner. But that snapshot does not mean it is objectively imprudent to adopt a more conservative strategy—the tables turn when the market is down.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
5:23-cv-03785-EKL                    -18-

1  *Pizarro*, 111 F.4th at 1180. Again, this is consistent with Ninth Circuit authority. As *Anderson* held,

2  there is nothing wrong with adopting target-date funds with a "risk-mitigation objective." 2025 WL

3  1463295, at *6. Indeed, "ERISA fiduciaries are not required to adopt a riskier strategy simply

4  because that strategy may increase returns." *Id.* That is exactly what Plaintiffs allege happened here.

5  *See* Ex. 15 at 7 (American Century Investments, *One Choice Target Date Portfolios* (2025) (cited

6  at Compl. ¶ 137) (showing American Century TDFs regularly outperformed during the ten largest

7  market downturns from 2007 to 2022).

8         In summary, Defendants' choice to favor the "more moderate" and "flatter" glide path of

9  the American Century TDFs, Compl. ¶¶ 137, 139, thereby seeking to manage volatility and protect

10  participants' investments during market downturns, is just the sort of "difficult tradeoff[]" the

11  Supreme Court contemplated when it cautioned that courts "must give due regard to the range of

12  reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes*, 595

13  U.S. at 177. Absent a meaningful comparator, Plaintiffs' performance allegations say nothing about

14  the prudence of that choice.

15         **2.    Plaintiffs do not plausibly allege their indices are meaningful**

16         **benchmarks for the American Century TDFs.**

17         Plaintiffs also compare the American Century TDFs to two market indices—the

18  Morningstar Lifetime Moderate Index and the S&P "To" Index. *E.g.*, Compl. ¶ 104. But courts

19  routinely find that market indices like these are not meaningful benchmarks for actively managed

20  mutual funds like the American Century TDFs. *Anderson*, 2025 WL 1463295, at *3 (noting

21  plaintiffs claimed the plan's target-date funds "underperformed alleged comparable alternatives,

22  including published indices like the S&P 500"); *Partida v. Schenker, Inc.*, 2025 WL 948123, at *2

23  (N.D. Cal. Mar. 28, 2025) (Martínez-Olguín, J.) (*Partida II*) ("[a]nother deficiency with the

24  comparators is that they are passively managed market indexes [], which do not make them

25  meaningful benchmarks for the actively managed [fund at issue]"); *Partida I*, 2024 WL 1354432,

26  at *8 (similar); *Luckett*, 2024 WL 3823175, at *4 ("courts widely agree that the S&P indices cannot

27  serve as a comparator for TDF performance"); *LinkedIn*, 2021 WL 5331448, at *9 (dismissing

28  underperformance claim that "pled nothing more than the conclusory underperformance of an

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
5:23-cv-03785-EKL                    -19-

1    actively managed fund as compared to a market index benchmark, which is insufficient on its own

2    to state a claim for breach of prudence"); *Wehner*, 2021 WL 2417098, at *8 (finding that "S&P

3    Indices" did not serve as meaningful comparators to the plan's target-date funds); *see also Wash*

4    *U*, 960 F.3d at 485 n.4 (rejecting argument that index was a meaningful benchmark for challenged

5    active fund because an index "is not a fund, much less an actively managed one").

6         Additionally, this Court previously rejected Plaintiffs' claim that the American Century

7    TDFs were imprudent as compared to the Morningstar Lifetime Moderate Index because "the cited

8    data reflects that some American Century TDF vintages often matched or outperformed the

9    Morningstar Index." Order at 3 n.4. Of course, Plaintiffs stripped out much of the performance data

10   from the Complaint that the Court relied on in its ruling. *Compare* ECF 56-4 (Ex. D to the Third

11   Am. Compl.), *with* Compl. ¶¶ 162-65. Nonetheless, the data Plaintiffs included in the Complaint

12   similarly demonstrates that the American Century TDFs often outperformed the Morningstar

13   Lifetime Moderate Index. *See, e.g.*, Compl. ¶¶ 162-63 (2030 vintage outperformed on a five-year

14   basis as of 2023 and 2024; 2035 vintage outperformed on a five-year basis as of 2024; 2050, 2055,

15   and 2060 vintages outperformed on a five-year basis as of 2021, 2023, and 2024).

16        As for the S&P "To" Index, Plaintiffs themselves assert that it is not an appropriate index

17   because "prospectuses do not offer a disinterested evaluation of a fund," whereas "Morningstar is

18   an accepted unbiased source of investment fund information." Compl. ¶ 106. And Plaintiffs further

19   note it is "unlikely" that Defendants even relied on the S&P "To" Index because Defendants'

20   investment advisor favored Morningstar data. *Id*. ¶¶ 104, 179. Ultimately, Plaintiffs included the

21   "To" index only "for the sake of completeness." *Id*. ¶ 181. The Court should not credit a comparison

22   that Plaintiffs themselves do not appear to endorse.

23        **G.    The Court Should Dismiss Plaintiffs' Baseless Claim For Statutory Penalties.**

24        After three-plus years of litigation, Plaintiffs assert for the first time (in their ***fifth***

25   complaint) that Defendants' IPS is a "governing Plan document" and, therefore, the failure to

26   produce the IPS in response to a pre-litigation request for documents in 2022 violated ERISA

27   Section 104(b)(4), 29 U.S.C. § 1024(b)(4), and requires the imposition of statutory penalties.

28   Compl. ¶¶ 226-29, 249-52. The Court may easily dispose of this claim.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
5:23-cv-03785-EKL                              -20-

ERISA Section 104(b)(4) states that a plan administrator must produce "a copy of the latest updated summary[] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). The "plan document" requirement is set forth in ERISA Section 402, 29 U.S.C. § 1102, which provides that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument" (*id.* § 1102(a)(1)) and lists both "requisite" and "optional" features of the plan, none of which includes an IPS. *Id.* §§ 1102(b)-(c). Plaintiffs concede ERISA does not require a fiduciary to adopt an IPS. *See* ECF 56 ¶ 112 ("ERISA does not explicitly require an investment policy statement"); *see also Falberg v. Goldman Sachs Grp., Inc.*, 2024 WL 619297, at *3 (2d Cir. Feb. 14, 2024) ("it is not required that fiduciaries adopt [an IPS] in order to be found to have acted prudently") (internal quotations omitted); *Birse v. CenturyLink, Inc.*, 2020 WL 1062902, at *7 (D. Colo. Mar. 5, 2020) (rejecting argument that failure to have formal process statement constituted a fiduciary breach).

Defendants were under no obligation to produce the IPS in response to Plaintiffs' statutory document request. The Ninth Circuit "narrowly interpret[s] the disclosure requirements of Section 104(b)(4)." *Zavislak v. Netflix, Inc.*, 2024 WL 2884649, at *23 (N.D. Cal. June 7, 2024) (Davila, J.), *appeal pending*, No. 24-4175 (9th Cir.). The documents subject to production under ERISA Section 104(b)(4) are those that show a participant "what benefits he may be entitled to, what circumstances may preclude him from obtaining benefits, what procedures he must follow to obtain benefits, and who are the persons to whom the management and investment of his plan funds have been entrusted." *Hughes Salaried Retirees Action Comm. v. Adm'r of Hughes Non-Bargaining Ret. Plan*, 72 F.3d 686, 690 (9th Cir. 1995). And the catchall category of "other instruments under which the plan is established or operated"—the only category potentially relevant to Plaintiffs' claim—is "limited to documents that are similar in nature to the documents specifically listed in § 104(b)(4)." *Id.* at 691. Thus, a plan administrator is ***not*** obligated to produce documents that "relate only to the manner in which the plan is operated." *Shaver*, 332 F.3d at 1202; *see also Wehner II*, 2021 WL 2417098 at *13 (noting that "[t]he Ninth Circuit strictly construes [ERISA Section 104(b)] requirements"); *In re Northrop Grumman Corp. ERISA Litig.*, 2010 WL 11469724, at *19 (C.D.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
5:23-cv-03785-EKL                    -21-

1  Cal. Aug. 12, 2010) ("investment policy statements are not the plan instruments").

2          Plaintiffs ignore this case law—which Defendants cited in their prior motion to dismiss

3  (ECF 58 at 13-14)—and rely instead on two out-of-Circuit opinions to support Count III. One is

4  inapposite, and the other does not change the outcome. In *Trustees of N.Y. State Nurses Ass'n*

5  *Pension Plan v. White Oak Glob. Advisors, LLC*, an ERISA pension plan executed an investment

6  management agreement ("IMA") with a third party, White Oak, to serve as its discretionary

7  investment manager. 102 F.4th 572, 585 (2d Cir. 2024). The trustees of the plan subsequently grew

8  concerned that White Oak had violated the IMA and arbitrated the dispute pursuant to the terms of

9  the IMA. *Id*. at 586-87. The arbitrator ruled in favor of the trustees and, following a dispute over

10 the scope of White Oak's obligations, the trustees filed suit in federal district court to confirm the

11 arbitration award. *Id*. at 587-90. White Oak challenged the court's jurisdiction and, on appeal, the

12 Second Circuit determined the court had federal question jurisdiction because the arbitration

13 agreement was contained in the IMA, which was a "document that governs the plan" for purposes

14 of an ERISA Section 404(a)(1)(D) claim (not Section 104(b)(4)).[4] *Id*. at 597. *White Oak* says

15 absolutely nothing about whether an IPS is an "instrument[] under which the plan is established or

16 operated" for purposes of an ERISA Section 104(b)(4) document request.

17         Plaintiffs also cite *Faircloth v. Lundy Packing Co.*, in which the Fourth Circuit determined

18 that participants in an employee stock ownership plan were entitled to a copy of the plan's

19 investment policy. 91 F.3d 648, 656 (4th Cir. 1996). But the Fourth Circuit explicitly noted that it

20 "will not speculate on how the Ninth Circuit would apply its decision in *Hughes* to the facts of this

21 case." *Id*. at 654. Nor can the Fourth Circuit's opinion be squared with the Ninth Circuit's

22 subsequent opinion in *Shaver* explaining that a plan administrator is ***not*** obligated to produce

23 documents that "relate only to the manner in which the plan is operated." *Shaver*, 332 F.3d at 1202.

24 Thus, *Faircloth* has no bearing on Plaintiffs' claim.

25         Finally, only a "plan administrator" can be liable for failure to produce the documents listed

26 in ERISA Section 104(b)(4). *E.g.*, *Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 945 (9th

27 _____

28 [4] ERISA Section 404(a)(1)(D) states in relevant part that a fiduciary must "discharge his duties" "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
5:23-cv-03785-EKL                                    -22-

1    Cir. 2008). This claim thus fails to the extent asserted against the Board and Committee.

2        For all these reasons, the Court should dismiss Count III.

3    **H.    Plaintiffs' Derivative Monitoring Claim Fails As A Matter Of Law.**

4        The Court should dismiss Plaintiffs' "failure to monitor" claim against CAES and the Board

5    because it is derivative of their Count I fiduciary breach claim against the Committee. As Judge

6    Davila explained, "[b]ecause the primary [fiduciary breach] claim does not survive, the monitoring

7    claim must fail as well." *Phillips*, 2024 WL 3228097, at *9; *see also Bracalente II*, 2024 WL

8    2274523, at *11 (dismissal of fiduciary-breach claim requires dismissal of monitoring claim).

9    **V.    CONCLUSION**

10        Plaintiffs have filed five complaints asking the Court to infer that the fiduciary process was

11    flawed because Defendants could have selected a better-performing target-date suite. This Court

12    dismissed two complaints because Plaintiffs cannot rely on underperformance alone, but must

13    allege additional indicia of imprudence, such as facts suggesting the fiduciary selected investments

14    to line its own pockets or that carried excessive risk. *E.g.*, *Luckett*, 2024 WL 3823175, at *6

15    (dismissing complaint that did not "allege the typical indicia of imprudence recognized by courts,

16    such as self-dealing or a conflict of interest"). Plaintiffs eschew any such allegations, doubling

17    down on their performance allegations and tacking on a few additional inapt comparators. But

18    Plaintiffs' factual allegations demonstrate conclusively that the comparators they proffer are not

19    meaningful benchmarks for the American Century TDFs. *Anderson* puts to rest any uncertainty on

20    that issue. In short, Plaintiffs' Fourth Amended Complaint fails as a matter of law and the Court

21    should dismiss it in its entirety and with prejudice.

22

23    Dated: May 23, 2025                    MORGAN, LEWIS & BOCKIUS LLP

24                                           By    */s/ Sean K. McMahan*
                                             Sean K. McMahan

25                                           Deborah S. Davidson (pro hac vice)
26                                           110 N. Wacker Drive, Suite 2800
                                             Chicago, IL 60606-1511
27                                           Telephone: +312.324.1159
                                             Facsimile: +312.324.1001
28                                           deborah.davidson@morganlewis.com

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Sean K. McMahan (pro hac vice)
1717 Main Street, Suite 3200
Dallas, TX 75201
Telephone: +1.214.466.4000
Facsimile: +1.214.466-4001
sean.mcmahan@morganlewis.com

Mark A. Feller, Bar No. 319789
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: +1.415.442.1000
Fax: +1.415.442.1001
mark.feller@morganlewis.com

Mathew J. McKenna (pro hac vice)
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: +1.202.739.3000
Facsimile: +1.202.739-3001
mathew.mckenna@morganlewis.com

Attorneys for Defendants

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
5:23-cv-03785-EKL                                    -24-