**ROSMAN & GERMAIN APC**
Daniel L. Germain (Bar No. 143334)
5959 Topanga Canyon Boulevard
Suite 360
Woodland Hills, CA  91367-7503
Telephone: (818) 788-0877
Facsimile: (818) 788-0885
E-Mail: Germain@Lalawyer.com

Counsel for Plaintiffs and the Putative Class

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

MICHAEL PHILLIPS, BRENDA PACLIK and
CRYSTAL FRANKLIN, individually and on
behalf of all others similarly situated,

        Plaintiffs,

      v.

CAES SYSTEMS, LLC, THE BOARD OF
DIRECTORS OF CAES SYSTEMS, LLC, THE
401(K) PLAN COMMITTEE OF CAES
SYSTEMS, LLC, COBHAM ADVANCED
ELECTRONIC SOLUTIONS, INC., THE
BOARD OF DIRECTORS OF COBHAM
ADVANCED ELECTRONIC SOLUTIONS,
INC., THE 401(K) PLAN COMMITTEE OF
COBHAM ADVANCED ELECTRONIC
SOLUTIONS, INC. and JOHN DOES 1-50,

        Defendants.

CASE NO. 5:23-cv-03785-EKL

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FOURTH AMENDED
CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

I.      INTRODUCTION ...............................................................................................1

II.     STATEMENT OF FACTS ................................................................................2

        A.      The Key Players ...................................................................................2

        B.      Statutory Violations ............................................................................2

        C.      Fiduciary Processes.............................................................................2

        D.      Meaningful Benchmarks .....................................................................3

        E.      Underperformance and Defective Strategy.........................................4

        F.      Morningstar Ratings............................................................................5

        G.      Excessive Fees ....................................................................................6

III.    ARGUMENT ....................................................................................................6

        A.      Legal Standard ....................................................................................6

        B.      Defendants' Improper Exhibits...........................................................7

        C.      Flawed Processes ................................................................................8

        D.      The Benchmarks Satisfy Ninth Circuit Precedent .............................8

                1.      *Anderson* on Benchmarks ......................................................9

                2.      Meaningful Indexes ...............................................................10

                3.      Meaningful Comparator Funds ..............................................12

                        i.   Assets Under Management ......................................12

                        ii.  Glidepaths ................................................................13

        E.      Multiple Sources Confirm Consistent Underperformance ...............15

        F.      Morningstar Ratings as other *indicia* of imprudence.....................18

        G.      The Complaint's Additional Excessive Fee Allegations ..................21

        H.      The Statutory Penalties .....................................................................23

I.    The Complaint's Plausible Claim for Failure to Monitor ........................... 25

IV.    CONCLUSION ............................................................................................ 25

1

**TABLE OF AUTHORITIES**

2

PAGE(S)

3

**Cases**

4

*Anderson v. Intel Corp. Inv. Pol'y Comm.,*
137 F.4th 1015 (9th Cir. 2025) .........................................................................*Passim*

5

*Baird v. BlackRock Institutional Tr. Co., N.A.,*
403 F. Supp. 3d 765 (N.D. Cal. 2019) ....................................................................... 10

6

7

*Bartling v. Fruehauf Corp.,*
29 F.3d 1062 (6th Cir.1994) ........................................................................................ 24

8

9

*Bouvy v. Analog Devices, Inc.,*
No. 19-cv-881, 2020 WL 3448385 (S.D. Cal. June 24, 2020) .............................. 12, 17

10

*Bracalente v. Cisco Sys., Inc.,*
No. 22-cv-04417, 2024 WL 2274523 (N.D. Cal. May 20, 2024).................................. 15

11

12

*Braden v. Wal-Mart Stores, Inc.,*
588 F.3d 585 (8th Cir. 2009) ............................................................................ 6, 16, 23

13

14

*Brown Davis v. Walgreen Co.,*
No. 19-cv-05392, 2020 WL 8921399 (N.D. Ill. Mar. 16, 2020) ....................... 9, 11, 12

15

16

*Bussian v. RJR Nabisco, Inc.,*
223 F.3d 286 (5th Cir. 2000) .................................................................................. 8, 18

17

18

*Daggett v. Waters Corp.,*
731 F. Supp. 3d 121 (D. Mass. 2024) ................................................................... 21, 23

19

*Dale v. NFP Corp.,*
658 F. Supp. 3d 620 (N.D. Ill. 2023) ......................................................................... 24

20

21

*Davis v. Salesforce.com, Inc.,*
No. 21-cv-15867, 2022 WL 1055557 (9th Cir. Apr. 8, 2022) ........................... 6, 7, 25

22

23

*Eden Surgical Ctr. v. Budco Grp., Inc.,*
No. 09-cv-3991, 2010 WL 2180360 (C.D. Cal. May 27, 2010)........................... 23, 25

24

*Faircloth v. Lundy Packing Co.,*
91 F.3d 648 (4th Cir. 1996) .................................................................................. 24, 25

25

26

*Gaines v. BDO USA, LLP,*
663 F. Supp. 3d 821 (N.D. Ill. 2023) ......................................................................... 12

27

28

*Hainey v. SAG-AFTRA Health Plan*,
No 21-cv-02618, 2023 WL 3645514 (D. Md. May 25, 2023)....................................... 24

*Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*,
961 F. Supp. 2d 393 (D. Conn. 2013) ......................................................................... 24

*Huang v. TriNet Grp., Inc.*,
2022 WL 93571 (M.D. Fla. Jan. 10, 2022) ................................................................... 7

*Hughes Salaried Retirees Action Comm. v. Adm'r of Hughes Non-Bargaining Ret. Plan*,
72 F.3d 686 (9th Cir. 1995) ("*Hughes Salaried*") ........................................... 23, 24, 25

*Hughes v. Nw. Univ.*,
1142 S. Ct. 737 (2022) (*Hughes I*) .................................................................. 1, 19, 20

*Hughes v. Nw. Univ.*,
63 F.4th 615 (7th Cir. 2023) (*Hughes II*) ..................................................................... 6

*Johnson v. Russell Inv. Mgmt.*,
No. 22-cv-21735, 2025 WL 358197 (S.D. Fla. Jan. 31, 2025) ..................................... 13

*Johnson v. Parker-Hannifin Corp.*,
122 F.4th 205 (6th Cir. 2024) ................................................................... 7, 10, 11, 17

*Jones v. DISH Network Corp.*,
No. 22-cv-00167, 2023 WL 7458377 (D. Colo. Nov. 6, 2023) ...................................... 8

*Karg v. Transamerica Corp.*,
No. 18-cv-134, 2019 WL 3938471 (N.D. Iowa Aug. 20, 2019) ........................... 7, 15, 17

*Kistler v. Stanley Black & Decker, Inc.*,
No. 22-cv-966, 2024 WL 3292543 (D. Conn. July 3, 2024) .............................*Passim*

*Klawonn v. Bd. of Directors for the Motion Picture Indus. Pension Plans*,
No. 22-cv-209194, 2022 WL 17224708 (C.D. Cal. Sept. 27, 2022) ............................ 15

*Kong v. Trader Joe's Co.*,
No. 20-cv-56415, 2022 WL 1125667 (9th Cir. Apr. 15, 2022) ................................... 19

*Krueger v. Ameriprise Fin., Inc.*,
No. 11-cv-02781, 2012 WL 5873825 (D. Minn. Nov. 20, 2012) ................................ 18

*Luckett v. Wintrust Fin. Corp.*,
No. 22-cv-03968, 2024 WL 3823175 (N.D. Ill. Aug. 14, 2024) .................................. 15

*Matney v. Barrick Gold of N. Am.*,
80 F.4th 1136 (10th Cir. 2023) .................................................................................. 15

*Mattson v. Milliman, Inc.*,
No. 22-cv-37, 2022 WL 21596720 (W.D. Wash. Dec. 13, 2022) ................................. 13

*Matousek v. MidAmerican Energy Co.*,
51 F.4th 274 (8th Cir. 2022) ................................................................................. 21

*In re MedStar ERISA Litig.*,
No. 20-cv-1984, 2021 WL 391701 (D. Md. Feb. 4, 2021) ....................................... 18

*Northrop Grumman Corp. ERISA Litig.*,
No. 06-cv-06213, 2010 WL 11469724 (C.D. Cal. Aug. 12, 2010) ............................. 25

*Partida v. Schenker Inc.*,
No. 22-cv-09192, 2024 WL 1354432 (N.D. Cal. Mar. 29, 2024) (*Partida I*) ........... 10, 11

*Partida v. Schenker Inc.*,
No. 22-cv-09192, 2025 WL 948123 (N.D. Cal. Mar. 28, 2025) (*Partida II*) ........... 10, 11

*Patterson v. Morgan Stanley*,
No. 16-cv-6568, 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) .................................. 21

*Phelps v. Qwest Emps. Ben. Comm.*,
No. 04-cv-02042, 2005 WL 3280239 (D. Colo. Dec. 2, 2005) ............................... 24

*Phillips v. Cobham Advanced Elec. Sols., Inc.*,
No. 23-cv-03785, 2024 WL 3228097 (N.D. Cal. June 28, 2024)............................... 7, 18

*Pizarro v. Home Depot, Inc.*,
No. 18-cv-01566, 2019 WL 11288656 (N.D. Ga. Sept. 20, 2019)............................ 20

*Pizarro v. Home Depot, Inc.*,
111 F.4th 1165 (11th Cir. 2024) ...................................................................... 14, 20

*In re: Prime Healthcare ERISA Litig.*,
No. 20-cv-01529, 2021 WL 3076649 (C.D. Cal. July 16, 2021)............................... 16

*Rubke v. SERVICENOW Inc.*,
24-cv-01050, Slip Op. (N.D. Cal. Apr. 22, 2025).............................................. 8, 19, 20

*Russell v. Illinois Tool Works, Inc.*,
No. 22-cv-2492, 2024 WL 2892837 (N.D. Ill. June 10, 2024)................................. 12

*Schissler v. Janus Henderson US (Holdings) Inc.*,
No. 22-cv-02326, 2023 WL 6902050 (D. Colo. Sept. 7, 2023)................................ 11

*Sgro v. Danone Waters of N. Am., Inc.*,
532 F.3d 940 (9th Cir. 2008) .......................................................................... 25

*Shaver v. Operating Eng'rs Loc. 428 Pension Tr. Fund*,
332 F.3d 1198 (9th Cir. 2003) ......................................................................... 23, 25

*Smith v. CommonSpirit Health*,
No. 20-cv-95-, 2021 WL 40970528 (E.D. Ky. Sept. 8, 2021),
*aff'd*, 37 F.4th 1160 (6th Cir. 2022)......................................................................... 21

*Snyder v. UnitedHealth Grp., Inc.*,
No. 21-cv-1049, 2021 WL 5745852 (D. Minn. Dec. 2, 2021) ....................................... 9

*Spence v. Am. Airlines, Inc.*,
No. 23-cv-00552, 2025 WL 225127 (N.D. Tex. Jan. 10, 2025) .................................... 18

*In re Sutter Health ERISA Litig.*,
No. 20-cv-01007, 2023 WL 1868865 (E.D. Cal. Feb. 9, 2023) ....................... 10, 16, 22

*Sweda v. Univ. of Pennsylvania*,
923 F.3d 330 (3d Cir. 2019)......................................................................................... 17

*Terraza v. Safeway Inc.*,
241 F. Supp. 3d 1057 (N.D. Cal. 2017) ....................................................................... 21

*Thomson v. Caesars Holdings Inc.*,
661 F. Supp. 3d 1043 (D. Nev. 2023) ................................................. 11, 13, 16, 24

*Tibble v. Edison Int'l*,
575 U.S. 523135 S. Ct. 1823 (2015).......................................................................... 7, 8

*Trauernicht v. Genworth Fin. Inc.*,
No. 22-cv-00532, 2023 WL 5961651 (E.D. Va. Sept. 13, 2023) ................................. 11

*Wehner v. Genentech, Inc.*,
No. 20-cv-06894, 2021 WL 2417098 (N.D. Cal. June 14, 2021)................................. 10

*Wright v. Oregon Metallurgical Corp.*,
360 F.3d 1090 (9th Cir. 2004) ....................................................................................... 6

*Zimmerman v. Cedars-Sinai Med. Ctr.*,
No. 23-cv-01124, 2024 WL 1135773 (C.D. Cal. Feb. 18, 2024) ............... 8, 10, 13, 20

**Statutes**
29 U.S.C. § 1024(b)(4) ............................................................................................ 2, 24

29 U.S.C. § 1132 (c)(1).................................................................................................. 2

**Other Sources**

Employee Retirement Income Security Act of 1974 ............................................*Passim*

1   Plaintiffs respectfully submit this Opposition to Defendants' Motion to Dismiss Plaintiffs'

2   Fourth Amended Class Action Complaint. *See* ECF No. 92 (hereinafter "MTD").

3   **I.    INTRODUCTION**

4       "An ERISA plaintiff can 'use the data about the selected funds and some circumstantial

5   allegations about methods to show that 'a prudent fiduciary in like circumstances would have acted

6   differently.' " *Anderson v. Intel Corp. Inv. Pol'y Comm.,* 137 F.4th 1015, 1026 (9th Cir. 2025)

7   (citations omitted). In accordance with this Court's order granting Plaintiffs leave to amend their prior

8   complaint to add additional support for meaningful investment comparisons, *see* ECF No. 75

9   ("Order"), and pursuant to the pleading standard set forth in *Anderson*, Plaintiffs' Fourth Amended

10  Complaint (hereafter, "Complaint") now alleges sufficient supporting details to create a holistic view

11  of Defendants' breach of ERISA's duty of prudence. Another salient change is the new *process*

12  allegations involving the Plan's advisor which provide additional *indicia* as to the imprudence of the

13  challenged American Century Target Date Funds ("American Century TDFs") and, importantly,

14  Defendants' deficient investigatory methods. The Complaint is now robustly plausible.

15      Defendants' arguments crumble under even a cursory review of the well-pled Complaint and

16  caselaw. Conspicuously absent from Defendants' Motion is any mention, let alone argument against,

17  the well-pled allegations regarding the Plan's advisor, Precept Advisory Group ("Precept"). The new

18  allegations detail the information available to Defendants in real time, as deemed pertinent by Precept,

19  yet this information was ignored. Information repeatedly showed that the American Century TDFs

20  were not achieving their objective, were underperforming, were overpriced, and had poor qualitative

21  ratings. Although the theory of imprudence and types of comparators in *Anderson* are practically

22  opposite from this case, the *dicta* in *Anderson* unquestionably approves of the benchmarks and theory

23  advanced here.

24      Defendants' Motion fails for several other reasons. Defendants attempt to attack each

25  allegation separately, despite the Supreme Court's mandate to evaluate ERISA complaints using a

26  "context specific inquiry" and consider the "allegations as a whole." *Hughes v. Nw. Univ.*, 142 S. Ct.

27  737, 704, 742 (2022) (*Hughes I*). Defendants also claim that Plaintiffs do not include certain details

28

1  that the Complaint clearly includes, argue against theories of liability that Plaintiffs *do not* advance,

2  and artfully crop several improper exhibits to create counter-factual arguments that are neither correct

3  nor appropriate at this stage. Lastly, although there is no directly on point Ninth Circuit precedent

4  dealing with Investment Policy Statements ("IPSs") improperly withheld under 29 U.S.C. §

5  1024(b)(4), ERISA §104(b)(4), subsequent cases applying Ninth Circuit precedent have upheld

6  similar challenges involving IPSs. As with the entirety of Defendants' Motion, Defendants do not

7  offer any applicable cases in support of their position.

8      Plaintiffs respectfully request that Defendants' Motion to Dismiss be denied.

9  **II.    STATEMENT OF FACTS**

10     **A.    The Key Players**

11     Precept is/was the Plan's "investment advisor." Compl., ¶¶ 52-53. Plaintiffs are Plan

12  participants who invested in the American Century TDFs, were subjected to the investment menu

13  options controlled by Defendants, and who paid a portion of Precept's fees. *Id.*, ¶¶ 16-19. American

14  Century Investments ("ACI") is the American Century TDFs' investment manager. *Id.*, ¶ 97.

15     **B.    Statutory Violations**

16     The Plan Charter mandates that "The Committee shall: (i) adopt an Investment Policy for the

17  Plan" and, *inter alia*, "oversee compliance with the Investment Policy" including the "terminat[ion]"

18  of "investment manager(s)." Compl., ¶ 29. The IPS directly affected which Plan investments were

19  available to Plan participants, including the default investments. *Id.*, ¶ 90. "Cobham as Plan

20  administrator, and the other Defendants, had an obligation under 29 U.S.C. § 1024(b)(4) to provide

21  Plaintiffs with governing plan documents upon request." *Id.*, ¶ 250. Defendants violated 29 U.S.C. §

22  1132(c)(1) and 29 U.S.C. § 1024(b)(4) by failing to furnish the IPS within 30 days of Plaintiffs' April

23  28, 2022, written request. *Id.*, ¶ 227.

24     **C.    Fiduciary Processes**

25     Precept promotes that it provides quarterly "customized and objective reports" to its clients,

26  which includes numerous quantitative and qualitative measures which the Complaint collectively

27  refers to as "Precept Evaluation Considerations." Compl., ¶ 83. Applying the Precept Evaluation

28

1   Considerations to the American Century TDFs shows that, along with underperformance, the

2   American Century TDFs repeatedly displayed serious qualitative issues throughout the Class Period.

3   This information was knowable to Defendants through Precept. *Id.*, ¶ 84. Defendants also apparently

4   failed to discover or act on information knowable through ACI.

5       Industry experts have concluded that the three- and five-year period is the most appropriate

6   timeframe for evaluating investment performance because it covers a full market cycle. *See* Compl.,

7   ¶ 70. A prudent fiduciary investigating the marketplace's trends and alternative funds will compare

8   TDFs with "to" and "through" glidepaths. *Id.*, ¶¶ 135, 136, 155. Historical and industry data

9   necessitates that fiduciaries choosing "to" glidepath TDFs pay extra scrutiny to these funds. *Id.*, ¶

10  134. "To" glidepaths are not *per se* imprudent, but "to" glidepaths are unfavored because the

11  "volatility risk" that "to" glidepaths aim to mitigate is "rarely catastrophic due to its short-term nature"

12  while, more realistically, "longevity risk is a lasting problem." *Id.*, ¶¶ 131-35.

13      **D.      Meaningful Benchmarks**

14      ACI designates the "S&P Target Date 'to' [glidepath]" index (the "S&P Index") as the index

15  which is "representative of the fund's investment strategy." Compl., ¶ 105. The Morningstar Lifetime

16  Moderate Index is another appropriate index for the American Century TDFs because ACI designated

17  the Morningstar Peer Group as the peer group for the American Century TDFs, Precept uses

18  Morningstar, and Defendants use Morningstar return data. *Id.*, ¶¶ 75, 101, 102.

19      The Complaint details how the seven TDF "Comparator Funds" are meaningful in terms of

20  objectives, asset allocations, and glidepaths. As explained below, all of the funds have the same

21  objective, but the Comparator Funds achieved this objective using better strategies while the

22  American Century TDFs failed to meet their objective. The American Century TDFs provided no

23  meaningful market volatility security nor greater income in the longevity sense, particularly compared

24  to the dozens of other TDF series the Plan could have invested in that employed time-proven methods

25  for their glidepaths, allocations, and strategies. *Id.*, ¶¶ 144-45.

26      The American Century TDFs and all of the Comparator Funds are large blend style funds. *See*

27  Compl., ¶ 120. The American Century TDFs and the Comparator Funds all have a significant degree

28

of active management or are purely actively managed. *Id.*, ¶123. The asset allocation is sufficiently similar across all funds, where U.S. Equities are the largest percentage of holdings, non-U.S. equities range from 20.07-29.57% of holdings, and the remaining holding are Fixed Income (or bonds), Cash investments, and "other" or "not classified" investments. *Id.*, ¶ 125. The American Century TDFs' fixed income holding was more than the Comparator Funds' percentages, as a matter of flawed strategy, but still the third largest category of underlying assets like the Comparator Funds. *Id.*, ¶ 126.

ACI states that the American Century TDFs have "a more <u>moderate</u>, flatter glidepath, which aims to keep more participants on course throughout the journey <u>to and through retirement</u>." *See* Compl., ¶137 (emphasis added). Morningstar reports that the "American Century One Choice target-date series offers a contrarian approach to retirement investing. A distinctly flat glidepath aims to mitigate sharp drawdowns for most of the investment journey but courts above-average risk for retirees." *Id.*, ¶ 139. The American Century TDFs' unconventional glidepath strategy necessitated a heightened level of scrutiny by fiduciaries. *Id.*, ¶ 141. ACI's speculation that the atypically "flatter" glidepath strategy would materially "mitigate sharp drawdowns" proved to be a be a losing strategy, offering no meaningful market volatility security nor greater income in the longevity sense. *Id.*, ¶¶ 140-45. A prudent investigation would have revealed that other TDFs with "moderate" glidepaths and the same objectives existed and successfully met this objective. *Id.*, ¶ 146.

The Voya TDFs have "to" glidepaths, the T. Rowe Price TDFs have "lower volatility- and lower potential long-term growth […] by emphasizing bonds near the target date" like "to" glidepaths, and the Callan Glidepath Series takes a "moderate" glidepath approach which the American Century TDFs also purport to have. Compl., ¶¶ 148-51. The MoA Clear Passage funds are "through" glidepaths, but in a more conservative sense because the glidepath becomes fixed within 10 years of the retirement date. *Id.*, ¶ 153. The Natixis Target Retirement funds and the Nuveen Lifecycle funds are "through" glidepaths, which are meaningful because, as mentioned, ACI notes that the aim of the American Century TDFs is to aid investors "through retirement" and because prudent fiduciaries will investigate both "to" and "through" glidepath options. *Id.*, ¶¶ 153, 155, 137.

### E.    Underperformance and Defective Strategy

1    The Complaint's performance data spans from January 1, 2015 until December 31, 2024,

2  using 1-, 3-, 5-, and 10-year periods across multiple data points. *See* Compl., ¶¶ 151, 162-64, 169,

3  182-91. Using the 2030-2065 vintages, the Complaint alleges that since 2015, the American Century

4  TDFs underperformed the Comparators on a 5-year lookback **99%** of the time. *Id.*, ¶ 162. In total and

5  since 2017, the American Century TDFs underperformed the Comparator Funds on a 3-year look

6  back period **98%** of the time. *Id.*, ¶ 164. The American Century TDFs also underperformed against

7  the Morningstar benchmarks for a large majority of the time. *Id.*, ¶ 165. The American Century TDFs

8  underperformed their peer group median in 43 out of 66 instances across **all vintages** in the eight

9  years from 2016-2023, and frequently by more than 4%. *Id.*, ¶¶ 169-71 (there were four years in

10  which every vintage underperformed). The negligible and infrequent outperformance of the American

11  Century TDFs against the peer group median did not compensate for the severe and routine

12  underperformance against the peer group median in the majority of other years. *Id.*, ¶ 174.

13    On an annual basis, the American Century TDFs underperformed against the S&P Index for

14  every vintage before the Trust version was implemented in the Plan in 2016 and continued into the

15  Class Period. *See* Compl., ¶¶ 182, 184. Importantly, this included information that "even in a year

16  where every vintage [of the S&P index and American Century TDFs] suffered negative returns," the

17  American Century TDFs underperformed in every vintage, proving that it was not meeting its

18  objectives. *Id.*, ¶¶ 182-85. The American Century TDFs also underperformed against the S&P index

19  on multiple three-year and five-year bases beginning in 2015 and ending in 2024 (with some

20  overlapping years). *Id.*, ¶¶ 185-90. This underperformance information includes periods before,

21  during, and after, the COVID-19 crash, again showing the objectives were not met. *Id.* The 10-year

22  basis also shows underperformance against the S&P Index in nearly every vintage. *Id.*, ¶ 191.

23    **F.    Morningstar Ratings**

24    Morningstar Star Ratings are one of the Precept Evaluation Considerations and are posted by

25  ACI on the American Century TDFs' webpages. *See* Compl., ¶¶ 201, 215. Morningstar also publishes

26  "Morningstar Medalist Ratings, which are a qualitative "Forward-looking analysis of investment

27  strategies as offered via specific vehicles using a rating scale of Gold, Silver, Bronze, Neutral and

28

1   Negative" and evaluates "three key pillars (People, Parent, and Process) which, when coupled with a

2   fee assessment, forms the basis for Morningstar's conviction in those products." *Id*., ¶ 204. Over time,

3   the American Century TDFs retained a neutral, or the second worst possible, metal ratings. *Id*., ¶ 213

4   (collecting data from 2018 - 2024). The American Century TDFs retained a neutral rating in the

5   periods following the COVID-19 market crash and less than a year after, which demonstrated that the

6   American Century TDFs were not meeting their objectives. *Id*., ¶ 214. Out of nine vintages (2025-

7   2065) in 2023, seven vintages received only one star, and the highest rating was only three stars;

8   likewise, the current ratings show that, for the same vintages, five vintages had one star and no vintage

9   received higher than two stars. *Id*., ¶¶ 215-16.[1]

10        **G.    Excessive Fees**

11        Precept advertises that it provides clients with pertinent "Expense ratio vs. peer group" data.

12   Compl., ¶ 222. American Century TDFs' fees were higher than several of the Comparator Funds and

13   the Morningstar Peer Group, while also performing worse these comparators. *Id*., ¶ 223.

14   **III.    ARGUMENT**

15        **A.    Legal Standard**

16        On a motion to dismiss, courts must "accept all material allegations of a complaint and view

17   them in the light most favorable to the plaintiff." *Wright v. Oregon Metallurgical Corp*., 360 F.3d

18   1090, 1096 (9th Cir. 2004). "ERISA plaintiffs generally lack the inside information necessary to make

19   out their claims in detail unless and until discovery commences." *Anderson*, 137 F.4th at 1028

20   (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009)). "It is in this light that

21   [courts] read the Supreme Court's directive to recognize the 'difficult tradeoffs' that an ERISA

22   fiduciary faces, and the 'range of reasonable judgments' that may be made" as "alternative

23   explanations [that] need not be conclusively ruled out at the pleadings stage." *Hughes v. Nw. Univ*.,

24   63 F.4th 615, 628 (7th Cir. 2023) (*Hughes II*); *see also Davis v. Salesforce.com, Inc.*, No. 21-cv-

25   15867, 2022 WL 1055557, at *1 (9th Cir. Apr. 8, 2022) (Defendants' "explanation is plausible" but

26

27   _____

28   [1] Although Precept would have provided Defendants with this data, during the Class Period, Plaintiffs
     were unable to access this past data, and therefore only include the information Plaintiffs could locate.

1    "not sufficient at the pleading stage to render plaintiffs' facially plausible allegations inadequate.");

2    *Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, 222 (6th Cir. 2024) (similar).

3         A "fiduciary is required to conduct a regular review of its investment with the nature and

4    timing of the review contingent on the circumstances[,]" but in all circumstances this is a "continuing

5    duty" where a fiduciary is liable for "failing to properly monitor investments and remove imprudent

6    ones." *Tibble v. Edison Int'l*, 575 U.S. 523, 530, 135 S. Ct. 1823, 1828-29 (2015); *see also Anderson*,

7    137 F.4th at 1023 (the "appropriate inquiry will be context specific."). Plaintiffs may, but are not

8    required to, "identify a comparator" if it is meaningful, or plaintiffs may "use the data about the

9    selected funds and some circumstantial allegations about methods" used by the fiduciaries, to create

10   a plausible inference of imprudence. *Anderson*, 137 F.4th at 1023, 1026.

11        **B.    Defendants' Improper Exhibits**

12        Plaintiffs object to Defendants' requests for judicial notice. Defendants again try to turn the

13   pleadings stage into a motion for summary judgment by artfully cropping sections of their exhibits in

14   an unsuccessful attempt to refute the well-pled allegations in the Complaint. *See Davis*, 2022 WL

15   1055557, at *1 ("the judicially noticed documents on which defendants rely" cannot "render

16   plaintiffs' facially plausible allegations inadequate."). Defendants' improper attempt is particularly

17   offensive to the Court, because this Court has twice refused to "take judicial notice of any fact that

18   disputes any allegation in the" complaints, when Defendant submitted similar exhibits. *Phillips v.*

19   *Cobham Advanced Elec. Sols., Inc.*, No. 23-cv-03785, 2024 WL 3228097, at *5 (N.D. Cal. June 28,

20   2024); *see also* Order at 2 n.3 (same). As detailed herein, Defendants' arguments fail because the

21   exhibits either further support Plaintiffs' claims, are outdated, or are otherwise lacking context unlike

22   the Complaint's holistic pleading. Hence why, courts routinely refuse to consider a "disagreement

23   over interpretation of fees and fund comparison" using a defendants' proffered "Morningstar data[,]"

24   and "SEC Filings[,]" "Defendants are not entitled to any inferences drawn from the data itself." *Karg*

25   *v. Transamerica Corp.*, No. 18-cv-134, 2019 WL 3938471, at **6-7 (N.D. Iowa Aug. 20, 2019).[2]

26

27   _____

28   [2] *See also Huang v. TriNet Grp., Inc.*, 2022 WL 93571, at **4-5 (M.D. Fla. Jan. 10, 2022) (refusing
     to consider "the sort of evidence that might be submitted at summary judgment or at trial" including

C. **Flawed Processes**

Basically, "unlike Plaintiffs' earlier complaint, the operative complaint's underperformance allegations are part and parcel of direct allegations that Defendants ignored their own selected [advisor's] criteria for evaluating and monitoring the prudence of Plan investments." *Jones v. DISH Network Corp.*, No. 22-cv-00167, 2023 WL 7458377, at *7 (D. Colo. Nov. 6, 2023); *see also Rubke*, 24-cv-01050, slip op., at 2 ("the Plan investment consultant during the entire Class Period, provided quarterly investment plan reviews which raised multiple red flags that the Plan Committee consistently ignored."). Data about investments and circumstantial process allegations can sufficiently allege an inference of imprudence. *See Anderson*, 137 F.4th at 1026. ERISA fiduciaries are "required to conduct a regular review of its investment with the nature and timing of the review contingent on the circumstances[,]" and this "continuing duty" includes "remov[ing] imprudent" investments. *Tibble*, 575 U.S. at 529. Several circumstances here indicate that Defendants had a deficient review process. Defendants failed to apply the necessary scrutiny to the American Century TDF's "contrarian approach" and failed to consider data that Precept deemed pertinent- data that is included in the Complaint. Compl., ¶¶ 84, 141. Allegations regarding ACI also demonstrate information and benchmarks that were available to Defendants, but went ignored. *Id.*, ¶¶ 97-99, 215. Thus, "[a] reasonable factfinder could conclude that an appropriate investigation would have revealed this information and that such information, when weighed against the information that should have been gathered on other providers, would cause a fiduciary to eliminate" the American Century TDFs. *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 307 (5th Cir. 2000). Defendants' Motion entirely fails to address the plausibility of these process allegations.

D. **The Benchmarks Satisfy Ninth Circuit Precedent**

---

"performance information on various investment funds, all in an effort to undercut Plaintiffs' factual allegations."); *Rubke v. SERVICENOW Inc.*, 24-cv-01050, slip op., at 4 (N.D. Cal. Apr. 22, 2025) (attached to the Gyandoh Declaration as Ex. 1) (an imprudent investment case holding that "if the document merely creates a defense to the well pled allegations in the complaint, then that document did not necessarily form the basis of the complaint."); *Zimmerman v. Cedars-Sinai Med. Ctr.*, No. 23-cv-01124, 2024 WL 1135773, at *4 (C.D. Cal. Feb. 18, 2024) ("that report cannot be used to dispute well-pleaded facts.").

1    The Complaints' two meaningful indexes are paired with seven Comparator Funds with the

2    same objectives and similar, *but not detrimentally identical* "Underlying Holding and Management"

3    and "Glidepaths and Strateg[ies]" and risk considerations. Compl., ¶¶ 95-156. While comparing the

4    American Century TDFs to individual funds or an index alone may be insufficient, courts routinely

5    hold that an index alongside specific comparators are holistically plausible as a matter of fact and law

6    at this stage. *See, e.g.*, *Kistler v. Stanley Black & Decker, Inc.*, No. 22-cv-966, 2024 WL 3292543, at

7    *120 (D. Conn. July 3, 2024) ("in combination with their allegations regarding peer TDFs, the S&P

8    Target Date Indices assist the plaintiffs in plausibly showing that their peer TDF performance

9    comparisons are not cherry picked."); *Brown Davis v. Walgreen Co*., No. 19-cv-05392, 2020 WL

10   8921399, at *1 (N.D. Ill. Mar. 16, 2020) ("the "Morningstar Lifetime Moderate Index—and three

11   comparator target-date funds" are sufficient); *Snyder v. UnitedHealth Grp., Inc*., No. 21-cv-1049,

12   2021 WL 5745852, at *3 (D. Minn. Dec. 2, 2021) (upholding the "meaningful benchmarks which can

13   be broken down into two categories: the Morningstar Comparators and the Indices.").

14              **1.    *Anderson* on Benchmarks**

15   Detailed information on the Comparator Funds demonstrate that they have the same

16   objectives, same categories of underlying investment and priority of allocation, and similar glidepaths

17   as the American Century TDFs, meaning a "moderate" glidepath and the objective to keep

18   "participants on course throughout the journey to and through retirement" as well as seeking stability

19   in market downturns. Compl., ¶ 137; *see also id.*, ¶¶ 125-27. Plaintiffs allege that "[h]ad Defendants

20   investigated the marketplace they would have discovered that other TDFs with "moderate" glidepaths

21   seeking stability in market downturns existed, without going to the extreme flat glidepath that the

22   American Century TDFs did. *Id*., ¶¶ 146-53. Because Plaintiffs do not make a *per se* argument against

23   "to" glidepaths or challenge the American Century TDFs' objective, the Voya Comparator Fund's

24   "to" glidepath is a meaningful comparison, not an "inconsistency." MTD at 3. Plaintiffs' allegations

25

26

27

28

are sufficient under *Anderson*, where the court did not discuss glidepaths, but did emphasize "[t]he need for a relevant comparator with similar objectives." *Anderson*, 137 F.4th at 1022.[3]

Critically, the facts in *Anderson* are opposite from here, and the plaintiffs' theory of liability is materially distinct. As a threshold matter, the *Anderson* plaintiffs challenged the *choice* of "the risk-minimization" aim and made a "*per se* challenge to hedge funds and private equity" as underlying funds. *Anderson*, 137 at 1024. For this reason, "rather than presenting a comparison to Intel's [manager designated] benchmarks or to available funds with similar risk-mitigation strategies and objectives," the plaintiff in *Anderson* used the S&P 500 index, a non-TDF index, and "simply label[ed] funds as comparable or as in the same category." *Anderson*, 137 F.4th at 1020. Notably, the Ninth Circuit found it compelling that "the fiduciaries' choices had their intended effects" when assessing the manager's designated benchmark, whereas in this case, the manager's designated benchmark shows the American Century TDFs did not have their intended effects. *Anderson*, 137 at 1025. Plaintiffs' theory of liability and selection of Comparator Funds with the same objectives and underlying funds makes this case readily distinguishable from *Anderson*.

## 2. Meaningful Indexes

No "circuit court … has held that a market index can never serve as a meaningful benchmark." *Johnson*, 122 F.4th at 218; *see*, *e.g.*, *Baird v. BlackRock Institutional Tr. Co., N.A.*, 403 F. Supp. 3d 765, 780 (N.D. Cal. 2019) (denying dismissal where the funds were "compared to the Dow Jones Target Date benchmark indices."); *Zimmerman*, 2024 WL 1135773, at *2 ("The FAC offers the Morningstar Category Index as one source for such benchmarks and identifies three funds that failed to meet those performance indicators."); *In re Sutter Health ERISA Litig.*, No. 20-cv-01007, 2023 WL 1868865, at *8 (E.D. Cal. Feb. 9, 2023) (funds "trail[ing] their respective indices" infer imprudence); *Kistler*, 2024 WL 3292543, at *2 (upholding the use of S&P Target Date Indices).[4] In

---

[3] *Anderson* implies that one comparator is enough, so even humoring Defendants' oversimplification of glidepaths, the Voya comparator alone is a sufficient comparison. *Anderson*, 137 F.4th at 1022.

[4] *Anderson* and *Wehner* both involved custom TDFs where the plaintiffs used an index that was not the challenged fund's designated index. *See Anderson*, 137 F.4th at 1023; *Wehner v. Genentech, Inc.*, No. 20-cv-06894, 2021 WL 2417098, at *8 (N.D. Cal. June 14, 2021). And in *Partida I* and *II*, the

1   addition to the performance characteristics, the Morningstar and S&P Indexes are meaningful because
2   they are the benchmarks designated by ACI and likely used by Precept. Performance compared to a
3   manager's designated index is meaningful. *See Anderson,* 137 F.4th at 1025; *see also Schissler v.*
4   *Janus Henderson US (Holdings) Inc*., No. 22-cv-02326, 2023 WL 6902050, at *5 n.6 (D. Colo. Sept.
5   7, 2023) ("Plaintiffs [plausibly] rely on the benchmarks identified in the prospectuses to allege
6   inadequate performance."); *Thomson v. Caesars Holdings Inc*., 661 F. Supp. 3d 1043, 1057 (D. Nev.
7   2023) ("RITC's own internal benchmarks" was meaningful). Indeed, indices are often used in this
8   Circuit and elsewhere.

9          It is significant that the manager-approved S&P Index shows consistent underperformance in
10  full market cycles as well as a narrowly focused year of market downturn. *See* Compl., ¶¶ 179-92;
11  *Anderson*, 137 at 1025. That is why Plaintiffs "endorse" the meaningfulness of this comparator. MTD
12  at 20. The Complaint compares the American Century TDFs' performance directly to the S&P
13  benchmark, unlike Defendants who try to argue against these well-pled allegations by pointing to
14  ACI's overly shortened snapshots of S&P data in their materials, which, as discussed herein,
15  incomplete and unreliable. *See infra*; *see also* MTD at 20 (quoting Compl., ¶ 106) (fund managers
16  "do not offer a disinterested evaluation of a fund."). Moreover, Defendants fail to acknowledge that
17  the S&P Index is for "to" glidepaths. *See* Compl., ¶ 104; *see also Johnson*, 122 F.4th at 210 (a
18  "through" glidepath TDF's underperformance is meaningfully compared to the S&P "through"
19  glidepath index). S&P TDF Indexes are commonly upheld as meaningful benchmarks. *See, e.g., id.*;
20  *Kistler*, 2024 WL 3292543, at *2; *Trauernicht v. Genworth Fin. Inc.*, No. 22-cv-00532, 2023 WL
21  5961651, at *13 (E.D. Va. Sept. 13, 2023).

22         Further, Defendants note that the "investment advisor favored Morningstar data" MTD at 20,
23  but fail to acknowledge how this bolsters the process-based inference that Defendants had access to
24  the chronic underperformance but failed to investigate it. *See* Compl., ¶¶ 58, 74, 223. Many courts

25

26  ───────────────────────
    indexes were insufficient *alone* because the comparator funds were not meaningful. *See Partida v.*
27  *Schenker Inc.*, No. 22-cv-09192, 2024 WL 1354432, at *8 (N.D. Cal. Mar. 29, 2024) (*Partida I*);
    *Partida v. Schenker Inc*., No. 22-cv-09192, 2025 WL 948123, at *2 (N.D. Cal. Mar. 28, 2025)
28  (*Partida II*).

have held that the Morningstar Index can be used to compare TDF performance even without similar advisor allegations. *See*, *e.g.*, *Brown Davis*, 2020 WL 8921399, at *1; *Russell v. Illinois Tool Works, Inc.*, No. 22-cv-2492, 2024 WL 2892837, at *3 (N.D. Ill. June 10, 2024) (plausibly comparing funds to individual funds in the same "Morningstar fund categories benchmarked to the same index."); *Gaines v. BDO USA, LLP*, 663 F. Supp. 3d 821, 829-30 (N.D. Ill. 2023) (similar). Defendants criticize the prior complaint as having incomplete performance data, *see* MTD at 8, which showed that the "American Century TDF vintages often matched or outperformed the Morningstar Index." *Id.*, at 20 (quoting Order at 3 n.4). The Complaint now includes the full set of data. Thus, because the data shows consistent underperformance against the Morningstar Index, the Order's holding regarding the prior allegations are inapplicable. *See* ECF No. 81, at 43-53 (showing the redline additions of the new Morningstar data including more vintages and years); Compl., ¶¶ 163-65. Thus, any instances of slight outperformance were anomalies not "often" occurring and not undermining the consistent and material underperformance. MTD at 20; *see also Bouvy v. Analog Devices, Inc.*, No. 19-cv-881, 2020 WL 3448385, at *9 n.7 (S.D. Cal. June 24, 2020) ("Although Defendants challenge the factual basis for Plaintiff's claims, including by showing that some funds did not underperform, Plaintiff provided enough information to create a factual inference that they indeed underperformed."). The indexes here are meaningful.

### 3. Meaningful Comparator Funds

The Comparator Funds implemented better strategies to achieve the same objectives as the American Century TDFs, charged lower or more reasonable fees, and allocated similar holdings in a similar but less extreme way. While Defendants' first argument attempts to disregard these improvements by misstating that the Complaint alleges the funds are "comparable simply by virtue of being grouped in the same Morningstar category" MTD at 15 (quoting Order at 3), Defendants contradict themselves in their later arguments by admitting that the Complaint now details asset allegations, and concede at least one comparator fund has a comparable glidepath. MTD at 15-16.

### i. Assets Under Management

1   The Comparator Funds' underlying assets have identical categories and materially similar

2   asset allocation as the American Century TDFs, whereas the differences in allocations, and relatedly

3   the glidepath, "resulted in the Comparator Funds achieving better returns" while seeking the same

4   objective. Compl., ¶¶ 125-27; *see also Anderson*, 137 F.4th at 1025 ("a plaintiff could make out an

5   imprudence claim by alleging that a plan invested much more in a particularly risky class of assets

6   than did other[s]."). Again, the Comparator Funds are not "vastly" different, and in any event,

7   Defendants' bald opinion is merely a factual denial for later stages. MTD at 17; *see also Mattson v.*

8   *Milliman, Inc.*, No. 22-cv-37, 2022 WL 21596720, at *2 (W.D. Wash. Dec. 13, 2022) (refusing the

9   defendants' arguments "that the funds and indices described in detail in the amended complaint have

10  'materially different' equity allocations and, therefore, do not share the same 'aims, risks, and

11  potential rewards' as the WPS funds."); *Thomson*, 661 F. Supp. 3d at 1057 (in-depth similarities are

12  not required in every context); *Zimmerman*, 2024 WL 1135773, at *8 ("Defendants ask the Court to

13  conclude that the three comparators are not apt based on the say so of counsel.").

14  While the challenged funds in *Anderson* "aimed at decreasing volatility and reducing the risks

15  of large losses during a market downturn[,]" MTD at 15, that general aim was dissimilarly challenged

16  by the plaintiff and successfully achieved by the challenged funds. *See Anderson*, 137 F.4th at 1025;

17  *but see* Compl., ¶¶ 142-83, 198. Again, the underlying funds in *Anderson* were categorically different

18  - "not just stocks and bonds but also hedge funds and private equity funds[,]" unlike the "more

19  traditional assets like stocks and bonds" that make up both the American Century TDFs and

20  Comparator Funds here. *Anderson*, 137 F.4th at 1021; Compl., ¶ 125.[5] The Comparator Funds and

21  American Century TDFs share identical objectives and similar assets.

22              ii.        **Glidepaths**

23  Again, *Anderson* did not discuss glidepaths but emphasized that a comparable objective is

24  what matters, and the funds here all have the same objective. *See Anderson*, 137 F.4th at 1022;

25

26  [5] This also makes Defendants' cite to the summary judgment decision *Johnson. Russell Invs. Tr. Co.*,

27  distinguishable where the plaintiffs did not dispute that "the Russell TDFs' diversification strategy also included investments in real assets [....] while Johnson's Comparator Funds did not invest at all

28  in real assets." *Johnson*, No. 22-cv-21735, 2025 WL 358197, at *3, 10 (S.D. Fla. Jan. 31, 2025).

1    Compl., ¶¶ 125-27, 137-53. The Complaint demonstrates that Defendants failed to apply the
2    appropriate review to the American Century TDFs based on their unorthodox glidepath, meanwhile
3    the Comparator Funds were available and actually achieved the same intended objectives. *Id.*, ¶¶ 141,
4    148. Critically this Court did not state that "to" and "through" is the extent of the glidepath analysis
5    and they can never serve as comparators. What this Court actually said, aptly and without using the
6    words "to" and "through", was "some funds reach their most conservative mix of investments 'at the
7    year of expected retirement,' others reach their most conservative mix after retirement, focusing
8    instead on the plan participant's 'life expectancy.'" Order at 3 (citations to the prior complaint
9    omitted). The Complaint details how the to/through label is only a superficial distinction in this case
10   given ACI's definition of its glidepath and aims, thereby making the Comparator Funds' glidepaths
11   sufficiently similar. *Id.*, ¶¶ 137, 149-53. Nonetheless, Defendants concede there is a "to" glidepath
12   TDF Comparator Fund, and one comparator is sufficient under *Anderson*. *See* n. 4, *supra*.   In
13   materially misconstruing Plaintiffs' background information on glidepaths, without addressing the
14   specific glidepath here, it is Defendants who "ask[] the Court to ignore the context-specific analysis
15   required for [Plaintiffs'] claims and to assess" bits of the Complaint "in isolation." MTD at 10.

16        Defendants fail to address allegations that "American Century's speculation that the atypically
17   'flatter' glidepath strategy would […] materially 'mitigate sharp drawdowns'" never materialized
18   view properly evaluating the funds through full market cycles. Compl., ¶¶ 142-44. However,
19   Defendants implicitly agree that a "snapshot" of performance during one part of a market cycle is not
20   enough to warrant a fund imprudent or prudent. MTD at 18 (quoting the motion for summary
21   judgment decision in *Pizarro v. Home Depot, Inc.*, 111 F.4th 1165, 1180 (11th Cir. 2024)). Just as a
22   fund cannot be judged solely "when the equity market is hot[,]" it also cannot be judged solely "when
23   the market is down." *Id*. The Complaint demonstrates that the American Century TDFs
24   "underperformed for years before and after market draw downs" as well as during market draw
25   downs, and "repeatedly proved to have a defective strategy." Compl., ¶¶ 144-192. Defendants attempt
26   to refute this well-pled, multi-sourced performance data with incomplete and unreliable data
27   disseminated by ACI about its own fund. Defendants' cited page on the 2024 prospectus does not

28

provide full market cycle comparisons to the S&P Index, like the Complaint, it only considers market drawdowns, but even those periods are too short of snapshots to support Defendants' premature counter-factual arguments. *See* Document 84-15 at 7 (limiting the "COVID-19" timeframe to one month). On the other hand, the very next page purports to show "A Full Market Cycle" but does not use the S&P Index, instead it uses only one vintage of one "Aggressive Target Date Fund[,]" and therefore does contradict the Complaints' well-pled allegations. *See id*. at 8; *see also Karg*, 2019 WL 3938471, at *6 (refusing to accept the defendants' characterization of SEC data).

Defendants' legal arguments are also unavailing. First, in *Bracalente*, Judge Davila explained that a complaint could be plausible if there is "a sufficient basis to demonstrate why the comparators are meaningful benchmarks despite their apparent differences[,]" but there were not supporting allegations in that case. *Bracalente v. Cisco Sys., Inc*., No. 22-cv-04417, 2024 WL 2274523, at *8 (N.D. Cal. May 20, 2024).[6] Here, the Complaint provides extensive details explaining why the Comparator Funds are similar, but not detrimentally identical. *See Klawonn v. Bd. of Directors for the Motion Picture Indus. Pension Plans*, No. 22-cv-209194, 2022 WL 17224708, at *5 (C.D. Cal. Sept. 27, 2022) ("the Court rejects Defendant's arguments that the comparator plans and their investment choices are so dissimilar from the Plan that as a matter of law, the alleged comparators are inadequate."). The Comparator Funds are meaningfully similar.

### E.     Multiple Sources Confirm Consistent Underperformance

The Complaint enhances the number of performance comparators, the length of underperformance, and the degree of underperformance, as well now providing facts about "all vintages." Compl., ¶ 169. These new allegations surpass the plausibility threshold. Defendants' first argument, that Plaintiffs "ignore several vintages" is actually Defendants' ignoring vintages that are

---

[6] Defendants' other cases are also dissimilar. *Luckett* was dismissed because "meeting minutes [showed] that the Committee discussed various factors and arrived at the conclusion that *in addition to its glidepath*, [such as] the low cost" which is not the case here. *Luckett v. Wintrust Fin. Corp*., No. 22-cv-03968, 2024 WL 3823175, at *6 (N.D. Ill. Aug. 14, 2024). The main difference in *Matney* was between "actively and passively managed funds" (not challenged here), and the court carefully limited its holding to the plaintiffs' "broad allegation […] *here*." *Matney v. Barrick Gold of N. Am*., 80 F.4th 1136, 1153 (10th Cir. 2023) (emphasis in original).

1    clearly in the Complaint. MTD at 8. The Complaint specifically alleges the underperformance of the

2    2065 and 2025 vintages which Defendants say are absent. *See id*.; Compl., ¶¶ 164, 182-91; ECF No.

3    56-5 (the prior complaint only included the 2030-2055 vintages). Finally, the 2020 vintage and the In

4    Retirement vintage are the same now that the target date has passed, and thus it is not relevant to the

5    analysis, but the Complaint does allege that, per Morningstar, in the retirement phase the funds have

6    "above-average risk" which is not justified by the flat returns during before retirement. Compl., ¶

7    139. Defendants are correct that the TDFs are "offered as a suite" meaning every vintage is subject

8    to the same poor management and strategy flaws. MTD at 4.

9        In total, the performance data for the American Century TDFs span from January 1, 2015 until

10    December 31, 2024, using 1, 3, 5, and 10 year periods across multiple data points. *See* Compl., ¶¶

11    151, 162-64, 169, 182-91. Hence, the data does not cover only a "a subset of vintages" and not only

12    data "as of year ends 2019, 2021, 2023, and 2024." MTD at 8-9. Defendants again deny the existence

13    of details that are plainly in the complaint. *See Thomson*, 661 F. Supp. 3d at 1058–59 ("I disagree

14    with RITC's characterization that plaintiffs merely allege two years of underperformance—they

15    allege that the Russell TDFs underperformed the State Street ones since their inceptions, over three-

16    and five-year periods leading up to 2017, and for the two-year period beginning in 2017.") Applying

17    Defendants' logic as to what should be included, to the fact that these details *are* included, implies

18    that the Compliant meets Defendants' opinion of plausibility.

19        Defendants' criticism fails for another reason, they attempt to separate the performance data

20    points although ERISA complaints, and necessarily performance data, "should be read as a whole,

21    not parsed piece by piece." *Thomson*, 661 F. Supp. 3d at 1058–59 (quoting *Braden*, 588 F.3d at 594).

22    Some of the paragraphs do independently show underperformance to a legally sufficient degree and

23    duration, but moreover, the combined data overwhelmingly shows material and consistent

24    underperformance from multiple angles. Even ignoring the well-pled 10-year performance data (*see*

25    Compl., ¶ 191), the numerous "three- and five-year periods" alleged are sufficient as a matter of law

26    in this Circuit and others. *See Thomson*, 661 F. Supp. 3d at 1058–59; *In re: Prime Healthcare ERISA*

27    *Litig*., No. 20-cv-01529, 2021 WL 3076649, at *2 (C.D. Cal. July 16, 2021); *Sutter*, 2023 WL

28

1868865, at *8; *Kistler*, 2024 WL 3292543, at *11 (multiple comparisons of "three-year and five-year returns" demonstrated consistent underperformance). Moreover, "ERISA fiduciaries have a duty to act prudently according to current practices." *Sweda v. Univ. of Pennsylvania*, 923 F.3d 330 (3d Cir. 2019). The current practice by "[diligent investment professionals assess a fund's prior performance based on a three-year trailing performance" because it covers a full market cycle. *Johnson*, 122 F.4th at 215; *see also* Compl., ¶ 70 (alleging the same).

Although Defendants do not cite where the Complaint includes "data for only four (out of eight) years" MTD at 8, it is likely in reference to the section pertaining to solely the peer group median performance which alleges more data than Defendants aver. The American Century TDFs underperformed their peer group median in 43 out of 66 instances across all vintages in the eight years from 2016-2023, and frequently by more than 4%. *See* Compl., ¶¶ 169-71. In the outlying instances where the American Century TDFs did outperform, the degree to which they outperformed was 0.96% *at most*, meaning the marginal and infrequent outperformance of the peer group median did not compensate for the severe and routine underperformance against the peer group median in the majority of other periods. *Id.*, ¶¶ 173-74. These allegations infer a deficient investigatory process because Defendants would have had access to information from Precept who advertises that it provides "Performance vs. peer group" information to its clients. *Id.*, ¶¶ 83, 110. Defendants did not just fail to recognize and act on poor performance alone, they failed to recognize that the American Century TDF's purported strategy was not meeting its objective. *Id.*, ¶ 146. In any event, the anomalies of better performance pale against the overall data showing that the suite underperformed for several years, including during periods where the American Century TDFs were aiming to mitigate losses. *See Karg*, 2019 WL 3938471, at *7 (positive performance "in certain years within the period" did not undermine the fact that "each of the challenged funds failed to outperform the comparable funds or the relevant benchmark over the relevant period as a whole," thereby creating a triable "factual issue."); *Bouvy*, 2020 WL 3448385, at *9 n.7 ("Although Defendants challenge the factual basis for Plaintiff's claims, including by showing that some funds did not underperform, Plaintiff provided enough information to create a factual inference that they indeed underperformed.").

1    Lastly, Defendants criticize Plaintiffs for alleging that the American Century TDFs had "one

2    of the lowest Beta ratings" while also admitting that, "Beta is itself a performance metric." MTD at 9

3    (quoting *Phillips*, 2024 WL 3228097, at \*8). It is also one of the Precept's Evaluation Considerations.

4    *See* Compl., ¶ 83. Defendants do not argue that the Beta detracts from the holistic plausibility analysis,

5    instead they point out that it serves to "further describ[e] the [challenged funds'] underperformance."

6    MTD at 9. Plaintiffs agree. Defendants do not address the numerous process-based allegations

7    regarding this data, nor that the data is derived from benchmarks Precept and ACI deemed

8    meaningful. However, the meaningful benchmarks and process allegations overlap and accord with

9    the holding in *Anderson*. *See Anderson*, 137 F.4th at 1026.

10        **F.    Morningstar Ratings as other *indicia* of imprudence**

11    The Morningstar Star Ratings and Medalist Ratings (collectively "Morningstar Ratings") are

12    well-pled and create other *indicia* of imprudent processes and the knowable disrepute of the American

13    Century TDFs in addition to the chronic underperformance and inability to achieve its aims. *See*

14    Compl., ¶¶ 201-205. Ergo, "[a] reasonable factfinder could conclude that an appropriate investigation

15    would have revealed this information and that such information, when weighed against the

16    information that should have been gathered on other providers, would cause a fiduciary to eliminate"

17    the American Century TDFs. *Bussian*, 223 F.3d at 307. The Morningstar Ratings and similarly

18    publicly disseminated information by industry experts is frequently deemed a sufficient *indicia* of

19    imprudence. For example, in *Kistler*, the Plaintiffs alleged that the challenged "TDFs' peer ranks were

20    noticeably and consistently poor" this information was in the fiduciary's "reports." *Kistler*, 2024 WL

21    3292543, at \*14. This supported plausibility because "[p]rudent fiduciaries would have at the very

22    least taken note of the repeatedly poor rankings." *Id.*; *see also In re MedStar ERISA Litig.*, No. 20-

23    cv-1984, 2021 WL 391701, at \*2 (D. Md. Feb. 4, 2021) (denying a motion to dismiss where "in recent

24    years the Index suite has received several five-star ratings by Morningstar, the Active suite has failed

25    to earn any five-star ratings.); *Krueger v. Ameriprise Fin., Inc.*, No. 11-cv-02781, 2012 WL 5873825,

26    at \*3 (D. Minn. Nov. 20, 2012) ("Morningstar, an independent rating service, gave the funds lower

27    ratings than other comparable funds."); *Spence v. Am. Airlines, Inc.*, No. 23-cv-00552, 2025 WL

28

1   225127, at *10 (N.D. Tex. Jan. 10, 2025) (the reports showed "overall performance relative to
2   benchmarks and peer groups, and any noteworthy qualitative information."); *Rubke*, 24-cv-01050,
3   slip op., at 2.

4        Defendants' arguments regarding the Morningstar Ratings are a premature denial of the facts
5   which are accurately pled and intended to be viewed in Plaintiffs' favor. As a threshold matter,
6   Plaintiffs provide more than "limited details about [Morningstar's] methodology" MTD at 11; *see*,
7   *e.g.*, Compl., ¶¶ 202-04. Overall, the American Century TDFs languished in the Plan despite receiving
8   persistent poor ratings that Precept believed its clients should consider. Although these allegations
9   may not be sufficient on their own, they provide sufficient support for the Complaint as "as a whole"
10  alongside the performance and fee allegations. *Hughes I*, 142 S. Ct. at 742.

11       **Morningstar's Medalist Ratings.** Medalist Ratings are not about performance and are a
12  "forward-looking analysis." Compl., ¶¶ 203-204. For years, "the American Century Target Date
13  Series retained their neutral, or the second worst possible metal ratings, while more funds received
14  higher ratings[,]" including after the market crashes that American Century aimed to excel in. *Id*., ¶¶
15  205, 213-14. There was not simply "*a* Morningstar Medalist Rating of 'Neutral[,]'" *see* MTD at 12,
16  but actually "repeated 'neutral'" ratings over the years while the number of series ranking better than
17  neutral grew over time from 12-19. Compl., ¶ 206. A neutral rated fund is not a suitable investment
18  for a Plan of this size and ability to obtain more favorable investments (*see* Compl., ¶ 8), and it is
19  worse than the "mediocre" and "middle of the pack" picture that Defendants try to paint. MTD at 12.
20  In fact, Defendants' citations all pertain to situations involving performance alone while the
21  Morningstar star ratings are *qualitative* data in addition to the performance data alleged in other
22  sections of the Complaint. *See* Compl., ¶ 203. Also, the fact that two Comparator Funds were rated
23  neutral one time late in the Class Period (or not considered) is an anomaly and does not change the
24  fact that the American Century TDFs repeatedly were rated bottom of the barrel and unworthwhile
25  while dozens of better rated funds remained available to the Plan. *See Kong v. Trader Joe's Co.*, No.
26  20-cv-56415, 2022 WL 1125667, at *1 (9th Cir. Apr. 15, 2022) (a fiduciary "cannot ignore the power
27  the trust [or Plan] wields to obtain favorable investment products."). Moreover, Defendants' exhibit,

28

1   which they admit is not referenced in the Complaint, does not contradict the data in the Complaint,

2   and is only used to form the basis of Defendants' defense, and is therefore improper. *See* MTD at 12

3   (citing Ex. 9); *Zimmerman*, 2024 WL 1135773, at *4 ("that report cannot be used to dispute well-

4   pleaded facts."); *Rubke v. SERVICENOW Inc.*, 24-cv-01050, slip op., at 4 (Defendants improper

5   "document merely creates a defense to the well pled allegations").

6       **Morningstar's Star Ratings.** The predominantly one-star Morningstar Star ratings were also

7   knowable because they were a Precept Evaluation Consideration and ACI "publicizes the Morningstar

8   Star Ratings on each of its pages." Compl., ¶¶ 201, 215-17.[7] Accordingly, these allegations are "data

9   about the selected funds and some circumstantial allegations about [Defendants' deficient] methods."

10  *Anderson*, 137 F.4th at 1026. While Defendants argue these allegations need "any point of

11  comparison" MTD at 12, the Ninth Circuit has clarified that a "[c]omparison is not a pleading

12  requirement for a breach of fiduciary claim." *Anderson*, 137 F.4th at 1027. In any event, there are

13  plenty of comparisons on the Complaint "as a whole." *Hughes I*, 142 S. Ct. at 742. For this reason,

14  Defendants are also incorrect to state that that these "datapoints" exist "in a vacuum" when they are

15  properly part of the whole Complaint. MTD at 12.

16      Notably, Defendants rely on the summary judgment decision and standard in *Pizarro*, which

17  necessarily involved more insider knowledge than here. *See* MTD at 12; *but see Anderson*, 137 F.4th

18  at 1025–26 ("plaintiffs "typically lack extensive information regarding the fiduciary's 'methods.'").

19  However, at the relevant motion to dismiss stage, the court in *Pizarro* held that there was sufficient

20  "circumstantial evidence" to cross the plausibility threshold based on underperformance, high fees,

21  and other "issues that the[] [Plaintiffs'] claim would have alerted a prudent fiduciary to the

22  deficiencies in the investment choices that remained in the Plan[,]" including a "poor rating" by "by

23  an independent agency." *Pizarro v. Home Depot, Inc.*, No. 18-cv-01566, 2019 WL 11288656, at *3

24  (N.D. Ga. Sept. 20, 2019). That is precisely the case here where the Complaint alleges that an

25

26

---

27  [7] Again, this information would have been available to Defendants when they reviewed the funds,
    from Precept, but because the websites only post the most current data, Plaintiffs could not find further
28  information at the time of filing the Complaint. *See* n. 3, *supra*.

1    independent agency, Morningstar, gave the American Century TDFs poor ratings, among other

2    allegations. Defendants' other cases are distinguishable because they do not include the advisor-

3    related allegations, nor the accompanying robust performance allegations alleged here. For instance,

4    Defendants lead with *Matousek v. MidAmerican Energy Co*., 51 F.4th 274, 281 (8th Cir. 2022) (*see*

5    MTD at 11), but *Matousek* was discussing "peer group" medians for performance only reasons, not

6    Morningstar Ratings. *Id*. Defendants also rely on *Smith*, but, unlike here, those plaintiffs alleged the

7    challenged funds had a four-star rating and should have been replaced with five-star funds. *See Smith*

8    *v. CommonSpirit Health*, No. 20-cv-95-, 2021 WL 4097052, at *8 (E.D. Ky. Sept. 8, 2021), *aff'd*, 37

9    F.4th 1160 (6th Cir. 2022). The court was not considering the same red flag raised by the

10   overwhelming number of one star ratings the American Century TDFs received. *See* Compl., ¶ 215.

11   Likewise, the full quote in *Paterson* was that "the Morningstar rankings" were not enough "without

12   more context as to the nature or circumstances" because the fund was outperforming its benchmark

13   consistently, unlike here. *Patterson v. Morgan Stanley*, No. 16-cv-6568, 2019 WL 4934834, at *11

14   (S.D.N.Y. Oct. 7, 2019). Nowhere in the Complaint do Plaintiffs allege that Defendants were

15   "require[d] [...] to peruse Morningstar's rankings to select the previous year's highest-rated fund,"

16   MTD at 11. Defendants raise this strawman argument instead of addressing the investigative process

17   allegations underlying the Morningstar allegations- allegations that are part of a whole Compliant

18   demonstrating numerous *indicia* of imprudence.

19         **G.**    **The Complaint's Additional Excessive Fee Allegations**

20         "[N]othing in ERISA requires every fiduciary to scour the market to find and offer the

21   cheapest possible fund[,]" but "[a] claim of breach is sufficiently made out, however, when a plaintiff

22   plausibly alleges that the higher fees were unjustified or otherwise improper." *Daggett v. Waters*

23   *Corp*., 731 F. Supp. 3d 121, 137 (D. Mass. 2024). The American Century TDFs' fees were unjustified

24   in light of their dismal performance, which are two significant elements of Defendants' same

25   imprudent investment review process. *See Terraza v. Safeway Inc*., 241 F. Supp. 3d 1057, 1076 (N.D.

26   Cal. 2017) ("[T]he Court cannot reasonably infer from the fee differential on its own that the

27   Defendants acted imprudently in selecting the challenged funds[,]" but if the "investment options ...

28

---

1   underperformed compared to their benchmark" then the combine allegations are sufficiently

2   plausible); *Sutter*, 2023 WL 1868865, at *2 (evaluating underperformance and fee allegations

3   together). As Defendants concede, the Complaint includes more fee comparators than the previous

4   complaint, now totaling three Comparator Funds and the peer group median. MTD at 13. The

5   Complaint now also alleges that "Precept advertises that it provides clients with the "Expense ratio

6   vs. peer group" data that it deems important for fiduciaries to consider when evaluating plan

7   investments. Compl., ¶ 222. Defendants misconstrue the opinions issued by this Court and other

8   caselaw to argue that "this Court already rejected Plaintiffs' comparison to the Morningstar peer

9   group median" entirely, and median fees can never be used. MTD at 13. The Order actually states

10  that "Plaintiffs fail to allege that either the comparator fund or the median fee is a meaningful

11  benchmark." Order at 4. Now, Plaintiffs allege why both the Morningstar median is a meaningful

12  benchmark (per the Plan's advisor) as well as the Comparator Funds that are interlaced with the

13  meaningful benchmark analysis. *See* Compl., ¶ 222, *see also id*., ¶¶ 83, 108-116, 167. These

14  allegations are evaluated holistically.

15      Defendants only cite to cases where the complaints failed due to a "reliance on median fee[]s"

16  such as the peer group category, ***alone,*** unlike here. MTD at 13. Defendants improperly attack the

17  Comparator Funds and the median separately, although the comparisons are alleged together. In

18  particular, after Defendants argue that the median is insufficient and holds too many funds, *see* MTD

19  at 5, they criticize that a few individual funds "out of the 200 or so available on the market" is not

20  enough. *Id*., at 14. The median shows that the American Century TDFs were "consistently higher than

21  the Morningstar median fees" of the 200 other funds, while specific, better performing funds were

22  available to the Plan. Compl., ¶ 223. Defendants' other premise for attacking the Comparator Funds

23  is also flawed. This Court did not outright reject "Plaintiffs' comparison to the fees of the T. Rowe

24  Price TDFs," MTD at 13, only that the complaint needed more supporting allegations regarding

25  comparability. *See* Order at 4. Nor did the Court state that the "through" glidepath made the *fee*

26  comparison unreliable, and Defendants do not provide any explanation or caselaw as to why the

27  glidepath would lead to differing fees. Nonetheless, Defendants admit that the "two new comparator

28

1    funds" were not part of the prior analysis and at least one fund is a "to" glidepath." MTD at 14; *see*

2    *also* n. 4, *supra* (one comparator is sufficient).

3          Lastly, Defendants cite to two ("through" glidepath) Comparator Funds that were negligibly

4    more expensive while substantially outperforming the American Century TDFs.[8] *See* MTD at 14. The

5    fact that some higher performing funds charged higher fees does not make those funds equally

6    imprudent or poor comparators because, unlike the American Century TDFs, the higher fees were

7    justified by the performance. *See Daggett*, 731 F. Supp. 3d at 137. The Comparator Funds used in the

8    fee section significantly outperformed the American Century TDFs while charging *significantly* lower

9    fees (*e.g.*, 0.42 verses 0.22). Hence, Defendants' improper exhibit fails to undermine the Complaint.

10   The Complaint plausibly compares the "fund to an allegedly similar but more cost effective fund

11   available in the market" and "to an investment in index funds." *Braden*, 588 F.3d at 590.

12         **H.    The Statutory Penalties**

13         There are two predominant Ninth Circuit cases involving § 104(b)(4) claims, *Hughes Salaried*

14   *Retirees Action Comm. v. Adm'r of Hughes Non-Bargaining Ret. Plan*, 72 F.3d 686, 689 (9th Cir.

15   1995) ("*Hughes Salaried*") and *Shaver v. Operating Eng'rs Loc. 428 Pension Tr. Fund*, 332 F.3d

16   1198, 1201 (9th Cir. 2003). Neither case involved IPSs or any similar document request.[9] However,

17   courts applying *Shaver* and *Hughes Salaried* recognize that "'internally developed criteria […] do

18   relate to the manner in which the plan is operated. However, unlike the list of itemized expenditures

19   at issue in *Shaver*, they also 'restrict or govern the plan's operation.'" *Eden Surgical Ctr. v. Budco*

20   *Grp., Inc.*, No. 09-cv-3991, 2010 WL 2180360, at *6 (C.D. Cal. May 27, 2010) ("The Court is mindful

21   of the restrictive interpretation of section 1024(b)(4) that the Ninth Circuit has adopted.").

22

23   ─────────────────

24   [8] For example, 5-year performance data for the 2060 vintages shows that while the American Century
     TDFs (charging .42%) produced returns of 3.71, the Nuveen TDFs (charging 0.48%) produced returns

25   of 4.97 and the Natixis TDFs (charging 0.53%) produced returns of 5.32. *See* Compl., ¶164.

26   [9] The plaintiffs in *Hughes Salaried* sought "a list of plan participants" that would "provide[]
     participants with absolutely no information whatsoever about the plan." *Hughes Salaried*, 72 F.3d at

27   689. The plaintiffs in *Shaver* sought "a detailed list of [defendants'] expenditures incurred in
     managing the fund." *Shaver*, 332 F.3d at 1201 (this would require "administrators to turn over every

28   receipt they have any time.").

As a foundational matter IPSs dictate how investments are selected, maintained, and removed from a plan's menu, meaning the IPS directly effects the investments that participants can access. *See Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co*., 961 F. Supp. 2d 393, 396–97 (D. Conn. 2013) ("plan sponsors select funds to include in their plans" and "plan participants then choose their investments from the selection available."); *Thomson*, 661 F. Supp. 3d at 1060 (plaintiffs were subject to "menu options offered by the Plan."). Thus, IPSs "describe the terms and conditions of the plan, as well as its administration." *Hughes Salaried*, 72 F.3d at 689. That is especially true in this case, where the Charter requires the Committee to comply with the IPS. *See* Compl., ¶ 229 (quoting Charter at 2)[10]; *see also Dale v. NFP Corp*., 658 F. Supp. 3d 620, 632 (N.D. Ill. 2023) ("Defendants were required to manage Plan assets consistent with the objectives and standards laid out in the Plan's Investment Policy Statement.").

For these reasons, IPSs are the type of document contemplated in the Statute's list of mandatory items, and the holdings in *Hughes Salaried* and *Shaver* do not foreclose this reality. *See Eden Surgical Ctr.*, 2010 WL 2180360, at *6. In *Faircloth* the Fourth Circuit agreed more with the narrower holding in *Hughes Salaried* than the "presumption of disclosure under § 104(b)" set forth by the Sixth Circuit in *Bartling v. Fruehauf Corp.,* 29 F.3d 1062 (6th Cir.1994). *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 653-54 (4th Cir. 1996). However, the court noted that *Hughes Salaried* did not involve an IPS, and the "the funding policy and the investment policy are formal documents under which the ESOP is managed. They are therefore encompassed by § 104(b)(4)." *Id*., at 656; *see also Phelps v. Qwest Emps. Ben. Comm.*, No. 04-cv-02042, 2005 WL 3280239, at *4 (D. Colo. Dec. 2, 2005) ("The conclusion that the portfolio-specific guidelines at issue here constitute 'other instruments' within the meaning of § 1024(b)(4) is further commended by the Department of Labor's Interpretive Bulletin 94–2."); *Hainey v. SAG-AFTRA Health Plan*, No 21-cv-02618, 2023 WL 3645514, at **10, 12 (D. Md. May 25, 2023) (the plaintiff requested "statement of investment policy

---

[10] In the earlier complaints Plaintiffs alleged that using an IPS "was required in this case based on the Plan's Committee Charter" and it was imprudent not to have one. Order at 4. The IPS's existence was not confirmed until the motion to dismiss hearing. *Id*., at 3. Therefore, Plaintiffs could not, and did not, allege any statutory violations previously.

1   for the Plan" was "information subject to disclosure under a statute.'"). Accordingly, Plaintiffs do not

2   "ignore" *Shaver* and *Hughes Salaried*. MTD at 22.[11] Defendants fail to provide ***any*** cases dismissing

3   § 1024(b)(4) claims involving an IPS.[12]

4          Cobham is the Plan administrator.  S*ee* Compl., ¶ 22. The Basic Plan Document states that

5   "The Administrator may also, by written instrument, allocate and delegate […] responsibilities to an

6   administrative committee or committees formed to administer the Plan." *See* Ex. 2, ¶ 19.01. If

7   Cobham delegated this duty to the Committee, which is unknown at this time, then the Committee

8   may also be liable. *See* Compl., ¶ 244; *but see Sgro v. Danone Waters of N. Am., Inc*., 532 F.3d 940,

9   942, 945 (9th Cir. 2008) (Defendants' case where the plaintiff could bring a claim against his

10  employer but not against a separate "third party" that was not an administrator). Thus, this claim does

11  not "fail[] to the extent asserted against the Board and Committee." MTD at 23.

12         *Faircloth* is the only on point appellate level decision involving IPSs, while the Central

13  District of California case of *Eden Surgical Ctr.*, and other district court decisions, have also upheld

14  similar claims that defendants improperly withheld IPSs under § 104(b)(4).

15         **I.     The Complaint's Plausible Claim for Failure to Monitor**

16         It is undisputed that "plaintiffs' duty-to-monitor claim is derivative of their duty-of-prudence

17  claim[,]" and thus Count II is also sufficiently plausible. *Davis*, 2022 WL 1055557, at *2.

18  **IV.    CONCLUSION**

19         Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss in its entirety,

20  or in the alternative, grant leave to amend the Complaint.

21  Dated:   June 23, 2025                    **CAPOZZI ADLER, P.C.**

22                                            s/ *Mark K. Gyandoh*

23  _____

24  [11] It is also irrelevant that the Parties discussed these cases previously when arguing a different claim
    and theory, rather than the new claim here. MTD at 22; *see also* n. 11, *supra*.

25

26  [12] *See Northrop Grumman Corp. ERISA Litig.*, No. 06-cv-06213, 2010 WL 11469724, at *19 (C.D.
    Cal. Aug. 12, 2010) (no § 1024(b)(4) claim, but instead challenging whether an IPS for a different

27  plan could confirm fiduciary status); *Zavislak v. Netflix, Inc*., No. 21-cv-01811, 2024 WL 2884649,
    at *30 (N.D. Cal. June 7, 2024) (a summary judgment case where the plaintiffs requested "Anthem's

28  internal Medical Management Form" but "Anthem does not actually approve or deny any benefits.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mark K. Gyandoh, Esquire
(admitted *Pro Hac Vice*)
PA Attorney ID # 88587
312 Old Lancaster Road
Merion Station, PA 19066
Telephone:  (610) 890-0200
Fax:  (717) 233-4103
Email:  markg@capozziadler.com

**ROSMAN & GERMAIN APC**

Daniel L. Germain
5959 Topanga Canyon Boulevard
Suite 360
Woodland Hills, CA  91367-7503
Telephone: (818) 788-0877
Fax: (818) 788-0885
E-mail: Germain@lalawyer.com


*Counsel for Plaintiffs and the Putative Class*

## CERTIFICATE OF SERVICE

1

2     I hereby certify that on June 23, 2025, a true and correct copy of the foregoing document

3 was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel

4 of record.

5                                                    By: *Mark K. Gyandoh*

6                                                         Mark K., Gyandoh, Esq.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28