**MORGAN, LEWIS & BOCKIUS LLP**
Mark A. Feller, Bar No. 319789
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: +1.415.442.1000
Fax: +1.415.442.1001
mark.feller@morganlewis.com

Deborah S. Davidson (pro hac vice)
110 N. Wacker Drive, Suite 2800
Chicago, IL 60606-1511
Tel: +1.312.324.1159
Fax: +1.312.324.1001
deborah.davidson@morganlewis.com

Sean McMahan (pro hac vice)
1717 Main Street, Suite 3200
Dallas, TX 75201-7347
Tel:     +1.214.466.4000
Fax:    +1.214.466.4001
sean.mcmahan@morganlewis.com

Attorneys for Defendants
CAES SYSTEMS, LLC, THE BOARD OF
DIRECTORS OF CAES SYSTEMS, LLC, THE
401(K) PLAN COMMITTEE OF CAES
SYSTEMS, LLC, and JOHN DOES 1-30

[Additional Counsel Listed on Signature Page]

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Michael Phillips, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAES Systems, LLC, The Board of Directors of CAES Systems, LLC, The 401(k) Plan Committee of CAES Systems, LLC, Cobham Advanced Electronic Solutions, Inc., The Board of Directors of Cobham Advanced Electronic Solutions, Inc., The 401(k) Plan Committee of Cobham Advanced Electronic Solutions, Inc., and John Does 1-30,<br><br>Defendants. | Case No. 5:23-cv-03785-EKL<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FOURTH AMENDED CLASS ACTION COMPLAINT**<br><br>Date:      August 27, 2025<br>Time:      10:00 a.m.<br>Location:   San Jose Courthouse,<br>            Courtroom 7<br>            San Jose, CA 95113<br>Judge:     Hon. Eumi K. Lee<br>Fourth Am. Compl. Filed: April 18, 2025 |

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT ....................................................................................................... 2

        A.      ERISA Does Not Provide A Cause Of Action For Underperforming Funds. ........ 2

        B.      Plaintiffs Do Not Proffer Any Other Plausible Allegations Of Imprudence. ......... 3

                1.      Allegations that the American Century TDFs did not receive best-
                        in-class Morningstar ratings do not support an inference of
                        imprudence. .................................................................................... 4

                2.      Plaintiffs' excessive fee allegations do not suggest imprudence. .............. 6

                3.      Plaintiffs cannot state a plausible claim by alleging that to
                        retirement glide paths are "unfavored." ....................................... 7

        C.      Plaintiffs Do Not Plausibly Allege Meaningful Benchmarks For Measuring
                The American Century TDFs' Performance Or Fees. ........................................... 7

                1.      Plaintiffs do not plausibly allege indexes are meaningful
                        benchmarks. ................................................................................... 8

                2.      Anderson precludes Plaintiffs' arguments that their comparator
                        target-date funds are meaningful benchmarks. ......................... 10

        D.      The Court Should Dismiss Plaintiffs' Baseless Claim For Statutory
                Penalties. ....................................................................................................... 12

        E.      The Court Should Grant Defendants' Request For Judicial Notice. ..................... 14

        F.      Plaintiffs' Derivative Monitoring Claim Fails As A Matter Of Law. ................... 15

III.    CONCLUSION .................................................................................................. 15

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT
5:23-cv-03785-EKL                                    -i-

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

*Anderson v. Intel Corp. Inv. Pol'y. Comm.*,
    579 F. Supp. 3d 1133 (N.D. Cal. 2022) ..................................................... 7, 9, 10, 12

*Anderson v. Intel Corp. Inv. Policy Comm.*,
    137 F.4th 1015 (9th Cir. 2025)....................................................................*passim*

*Baird v. BlackRock Inst. Tr. Co., N.A.*,
    403 F. Supp. 3d 765 (N.D. Cal. 2019) ................................................................ 9

*Baird v. Steel Dynamics, Inc.*,
    2024 WL 3983741 (S.D. Ind. Aug. 29, 2024) .................................................... 4

*Beldock v. Microsoft Corp.*,
    2023 WL 3058016 (W.D. Wash. Apr. 24, 2023) ................................................ 5

*Bracalente v. Cisco Sys., Inc.*,
    2023 WL 5184138 (N.D. Cal. Aug. 11, 2023) .......................................... 2, 5, 15

*Bracalente v. Cisco Sys., Inc.*,
    2024 WL 2274523 (N.D. Cal. May 20, 2024) .................................................... 8

*Brown-Davis v. Walgreen Co.*,
    2020 WL 8921399 (N.D. Ill. Mar. 16, 2020) ................................................... 10

*Daggett v. Waters Corp.*,
    731 F. Supp. 3d 121 (D. Mass. 2024) ................................................................. 7

*Davis v. Washington University in St. Louis*,
    960 F.3d 478 (8th Cir. 2020) ............................................................................. 8

*Dorman v. Charles Schwab Corp.*,
    2018 WL 6803738 (N.D. Cal. Sept. 20, 2018) ................................................... 6

*Eden Surgical Center v. Budco Group, Inc.*,
    2010 WL 2180360 (C.D. Cal. May 27, 2010) .............................................. 13, 14

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014)........................................................................................... 15

*Hall v. Cap. One Fin. Corp.*,
    2023 WL 2333304 (E.D. Va. Mar. 1, 2023) ................................................... 5, 8

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Hughes Salaried Retirees Action Comm. v. Adm'r of Hughes Non-Bargaining Ret. Plan*,
    72 F.3d 686 (9th Cir. 1995) ........................................................................................ 13

*Kistler v. Stanley Black & Decker, Inc.*,
    2024 WL 3292543 (D. Conn. July 3, 2024) .................................................................... 5

*Krueger v. Ameriprise Fin., Inc.*,
    2012 WL 5873825 (D. Minn. Nov. 20, 2012) ................................................................. 5

*In re LinkedIn ERISA Litig.*,
    2021 WL 5331448 (N.D. Cal. Nov. 16, 2021) .............................................................. 8, 9

*Luckett v. Wintrust Fin. Corp.*,
    2024 WL 3823175 (N.D. Ill. Aug. 14, 2024) .................................................................. 5

*In re MedStar ERISA Litig.*,
    2021 WL 391701 (D. Md. Feb. 4, 2021) ........................................................................ 5

*Meiners v. Wells Fargo & Co.*,
    898 F.3d 820 (8th Cir. 2018) ....................................................................................... 11

*Partida v. Schenker, Inc.*,
    2025 WL 948123 (N.D. Cal. Mar. 28, 2025) ............................................................... 8, 9

*Partida v. Schenker, Inc.*,
    No. 3:22-cv-09192 (N.D. Cal. July 24, 2024), ECF No. 59 ............................................. 9

*Patterson v. Morgan Stanley*,
    2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) .................................................................... 4

*Penwell v. Providence Health & Servs.*,
    2021 WL 1222663 (W.D. Wash. Mar. 31, 2021) ........................................................... 13

*Phillips v. Cobham Advanced Elec. Sols., Inc.*,
    2024 WL 3228097 (N.D. Cal. June 28, 2024) ....................................................... 1, 14, 15

*In re: Prime Healthcare ERISA Litig.*,
    2021 WL 3076649 (C.D. Cal. July 16, 2021) .................................................................. 3

*Russell v. Ill. Tool Works, Inc.*,
    2024 WL 2892837 (N.D. Ill. June 10, 2024) ................................................................... 9

*Shaver v. Operating Eng'rs Loc. 428 Pension Tr. Fund*,
    332 F.3d 1198 (9th Cir. 2003) ................................................................................. 12, 13

*Smith v. CommonSpirit Health*,
    2021 WL 4097052 (E.D. Ky. Sept. 8, 2021), *aff'd*, 37 F.4th 1160 .................................. 9

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT
5:23-cv-03785-EKL
-iii-

*Smith v. CommonSpirit Health*,
  37 F.4th 1160 (6th Cir. 2022) ................................................................................. 2

*In re Sutter Health ERISA Litig.*,
  2023 WL 1868865 (E.D. Cal. Feb. 9, 2023) ........................................................ 7, 9

*Terraza v. Safeway, Inc.*,
  241 F. Supp. 3d 1057 (N.D. Cal. 2017) ............................................................... 6, 7

*Thomson v. Caesar Holdings, Inc.*,
  661 F. Supp. 3d 1043 (D. Nev. 2023) ....................................................................... 3

*Tobias v. NVIDIA Corp.*,
  2021 WL 4148706 (N.D. Cal. Sept. 13, 2021) ......................................................... 8

*Tullgren v. Booz Allen Hamilton*,
  2023 WL 2307615 (E.D. Va. Mar. 1, 2023) .......................................................... 5, 8

*White v. Chevron Corp.*,
  752 F. App'x 453 (9th Cir. 2018) ............................................................................. 6

*Zavislak v. Netflix, Inc.*,
  2024 WL 2884649 (N.D. Cal. June 7, 2024) (Davila, J.), *appeal pending*, No.
  24-4175 (9th Cir.) ................................................................................................... 12

*Zimmerman v. Cedars-Sinai Med. Ctr.*,
  2024 WL 1135773 (C.D. Cal. Feb. 18, 2024) ........................................................... 9

**Statutes**

29 U.S.C. § 1024(b)(4) ..................................................................................................... 12

ERISA ..................................................................................................................... *passim*

**Other Authorities**

Rule 12(b)(6) ..................................................................................................................... 15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT
5:23-cv-03785-EKL                                    -iv-

1    **I.    INTRODUCTION**

2        Plaintiffs claim that Defendants violated ERISA by offering the American Century TDFs

3    as an investment for the Plan.[1] But Plaintiffs do not allege other retirement plan fiduciaries divested

4    from those funds, that the market more broadly questioned the funds' prudence, that those funds

5    were excessively risky in relation to their returns, or that Defendants selected those funds for

6    disloyal reasons. And Plaintiffs concede the American Century TDFs generated positive returns

7    when the market was up and mitigated loss when it was down, as they are designed to do. Plaintiffs

8    nonetheless continue to rely on the same flawed theory—Defendants breached their fiduciary duties

9    because, in hindsight, the Committee could have selected a suite of target-date funds that generated

10   even better returns. This Court has already rejected that theory, explaining that "poor performance,

11   standing alone, is not sufficient to create a reasonable inference that plan fiduciaries failed to

12   conduct an adequate investigation." *E.g.*, ECF 75 ("Order") at 1-2; *Phillips v. Cobham Advanced*

13   *Elec. Sols., Inc.*, 2024 WL 3228097, at *8 (N.D. Cal. June 28, 2024). That same reasoning compels

14   dismissal of Plaintiffs' claims yet again.

15       Plaintiffs attempt to avoid this outcome by arguing they have alleged more than just lagging

16   performance because the American Century TDFs received one-, two-, or three-star ratings (out of

17   five) from Morningstar and received a Morningstar Medalist Rating of "neutral" (second out of

18   five) during various periods. But Plaintiffs concede the star rating is just another hindsight-based

19   performance measure. Their argument that no prudent fiduciary would have selected an investment

20   with a neutral rating is nonsense and lacks any supporting authority. Moreover, two of Plaintiffs'

21   "prudent" comparators received a neutral rating from Morningstar, fatally undermining this claim.

22       The Court also should dismiss the Complaint because Plaintiffs fail to allege meaningful

23   benchmarks. Ninth Circuit precedent is clear—Plaintiffs must compare the performance and fees

24   of the American Century TDFs to funds with similar "strategies and objectives." *Anderson v. Intel*

25   *Corp. Inv. Policy Comm.*, 137 F.4th 1015, 1023 (9th Cir. 2025). The Complaint admits that

26   Plaintiffs' comparators have different goals, different investment strategies, and different asset

27

---

28   [1] Capitalized terms herein have the same meaning as in Defendants' Motion to Dismiss the Fourth
     Amended Class Action Complaint (the "Motion"), ECF 82.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT
5:23-cv-03785-EKL                          -1-

allocations than the American Century TDFs. Plaintiffs argue in their Opposition that the funds all hold similar "categories" of assets and have the same "objective" of ensuring investors are "on course throughout the journey to and through retirement" and avoiding large losses during market downturns. Opp'n at 9. Those conclusory allegations would apply to every mutual fund and are not enough to plausibly allege meaningful benchmarks.

Finally, Plaintiffs' claim for statutory penalties fails as a matter of law. Plaintiffs' Opposition agrees that the Ninth Circuit imposes a stringent standard for these types of claims and offers no persuasive argument for allowing this claim to proceed.

For these reasons, and those explained in Defendants' Motion and further detail below, the Court should dismiss the Complaint in its entirety, this time with prejudice.

## II.     ARGUMENT

### A.     ERISA Does Not Provide A Cause Of Action For Underperforming Funds.

The Complaint again asks the Court to infer a flawed fiduciary process because the American Century TDFs allegedly generated lower returns during certain cherry-picked periods than Plaintiffs' comparators, comprised of seven target-date suites and two indexes. The Opposition doubles down on this theory, arguing that "multiple sources" show "consistent underperformance" and this is enough to state a plausible claim. Opp'n at 15. The Court already rejected this theory of liability, Order at 2, and the Opposition identifies no intervening Ninth Circuit authority that permits a claim based solely on allegations of better-performing alternatives. The Court should dismiss the Complaint for this reason alone.

Plaintiffs also admit various vintages of the American Century TDFs outperformed their comparators at certain times. Opp'n at 16-17. They argue these "anomalies" involving periods of outperformance "pale" against the alleged underperformance. *Id.* at 17. That misses the point. Plaintiffs cannot state a claim merely by identifying a better-performing investment, and even if they could, the fact that the American Century TDFs had periods of outperformance against Plaintiffs' hand-selected comparators precludes any inference of imprudence. Order at 3 n.4; *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1168 (6th Cir. 2022); *Bracalente v. Cisco Sys., Inc.*, 2023 WL 5184138, at *4 (N.D. Cal. Aug. 11, 2023).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT
5:23-cv-03785-EKL                                    -2-

Plaintiffs also continue to pick and choose which vintages allegedly underperformed, when they underperformed, and against which comparators. For instance, Plaintiffs allege that certain vintages underperformed the S&P Target Date Index over one-year periods beginning in 2015, 2016 and 2017 and over a ten-year period beginning in 2015. But Plaintiffs conveniently omit one-year performance in 2018 and other years when the market was down and the American Century TDFs' risk-mitigation strategy would be expected to perform better than strategies that chased enhanced returns like the comparators, *see generally* Compl., yet argue performance data should not be "parsed piece by piece." Opp'n at 16 (citing Compl. ¶¶ 182, 184, 191). And their own filings show periods of outperformance. For instance, Exhibit C to the Complaint shows that as of December 31, 2021, six out of ten vintages of the American Century TDFs outperformed the S&P "To" Index over the prior five years and five out of ten vintages outperformed that index over the prior ten years. ECF 79-3 at 13-14. The Court should not draw any inference of imprudence based on manipulated performance data that purposely excludes periods of outperformance.

Plaintiffs cite several district court opinions for their argument that they can state a claim based on underperformance alone. Opp'n at 16-17. The plaintiffs in each of those cases alleged far more than just poor performance. *E.g.*, *Thomson v. Caesar Holdings, Inc.*, 661 F. Supp. 3d 1043, 1058-59 (D. Nev. 2023) (alleging plan offered an investment menu composed entirely of underperforming mutual funds managed by the plan sponsor as a means of providing a cash infusion to the sponsor, violating ERISA's duties of prudence and loyalty); *In re: Prime Healthcare ERISA Litig.*, 2021 WL 3076649, at *4-5 (C.D. Cal. July 16, 2021) (alleging fiduciaries selected target-date fund that underperformed, investment manager failed to follow stated investment strategy, and investors lost confidence in investment, resulting in billions of dollars in outflows). These are the **same** cases Plaintiffs cited for the **same** proposition in their opposition to Defendants' motion to dismiss the third amended complaint. ECF 62 at 16-17 (citing *Thomson*, *Prime Healthcare*, and others). This authority could not save Plaintiffs' claims then and cannot do so now.

**B.    Plaintiffs Do Not Proffer Any Other Plausible Allegations Of Imprudence.**

Plaintiffs argue they identified two additional "indicia of imprudence," namely that the American Century TDFs did not receive a five-star rating from Morningstar in 2023 or 2025 and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT
5:23-cv-03785-EKL                                -3-

that the funds had "neutral" Morningstar Medalist Ratings during the putative class period. Opp'n at 18-21. Plaintiffs also argue that excessive fees coupled with underperformance is enough to state a claim. *Id.* at 21-23. These arguments do not move the needle.

> **1.    Allegations that the American Century TDFs did not receive best-in-class Morningstar ratings do not support an inference of imprudence.**

Plaintiffs do not dispute that Morningstar's star ratings are based exclusively on a fund's past performance, Opp'n at 18, and adding another performance measure cannot save Plaintiffs' deficient claims. *See* Mot. at 9. Moreover, Plaintiffs' star rating allegations focus on two discrete points in time and ignore the four- and five-star ratings that Morningstar gave the American Century TDFs at other periods in the putative class period. Mot. at 19. Plaintiffs' only response is that this is a "premature denial of the facts." Opp'n at 19. That is incorrect. Defendants did not deny Plaintiffs' allegations but merely pointed out that Plaintiffs continue to intentionally omit unfavorable information properly considered by the Court.

Plaintiffs' argument regarding the Morningstar Medalist Rating of "neutral" fares no better.[2] Plaintiffs seek to establish another per se rule of imprudence, arguing that a "neutral rated fund" is ***never*** "suitable" for a plan as large as the Plan. Opp'n at 19. Plaintiffs provide no support for such an extreme position, and Defendants are aware of none. Instead, courts regularly find that allegedly subpar Morningstar ratings "in no way" suggest an investment was imprudent. *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *14 (S.D.N.Y. Oct. 7, 2019); *accord Baird v. Steel Dynamics, Inc.*, 2024 WL 3983741, at *4 (S.D. Ind. Aug. 29, 2024) (a fiduciary "does not have a duty to swap out funds based on rankings within a Morningstar Category").

Moreover, Plaintiffs alleged that Defendants ***should have*** selected two "neutral" rated target-date suites instead of the American Century TDFs, and two others that received no rating at all, solely because those funds purportedly had better returns. Mot. at 12-13. But if a "neutral"

---

[2] Plaintiffs never explain the significance of a neutral rating from Morningstar, other than stating it is the "second worst possible rating" out of five. Compl. ¶ 214. But that does not tell the Court anything. For example, 75% of target-date funds could have a neutral rating, or only 25%, or any other percentage. And a neutral rating might simply mean that a fund was expected to perform about the same as the average fund or could mean something else altogether. This lack of context precludes any conclusion about the import of a neutral rating.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT
5:23-cv-03785-EKL                                    -4-

1    rating disqualifies a fund, then that alone renders those comparators imprudent too. Plaintiffs' only

2    response is the conclusory statement that the neutral ratings for Plaintiffs' comparators were an

3    "anomaly." Opp'n at 19. But that is no response at all. If a neutral rating is enough to render an

4    investment imprudent—it obviously is not—then Plaintiffs should simply admit their error,

5    especially since Plaintiffs selected the comparators in the first place.

6        The Opposition cites *Kistler v. Stanley Black & Decker, Inc.*, 2024 WL 3292543 (D. Conn.

7    July 3, 2024), for the argument that "repeatedly poor" Morningstar ratings "create other *indica* [sic]

8    of imprudent processes" (and for their benchmark and underperformance arguments). Opp'n at 9-

9    11, 17-18. *Kistler* is one of about a dozen lawsuits alleging that a suite of BlackRock target-date

10   funds was imprudent. In *Bracalente*, Judge Davila dismissed claims like those in *Kistler* because a

11   plaintiff in the Ninth Circuit cannot state a claim based on underperformance alone. 2023 WL

12   5184138, at *3-5. Judge Robart did the same in *Beldock v. Microsoft Corp.*, 2023 WL 3058016

13   (W.D. Wash. Apr. 24, 2023). Courts around the country agree. *E.g.*, *Luckett v. Wintrust Fin. Corp.*,

14   2024 WL 3823175 (N.D. Ill. Aug. 14, 2024); *Hall v. Cap. One Fin. Corp.*, 2023 WL 2333304 (E.D.

15   Va. Mar. 1, 2023); *Tullgren v. Booz Allen Hamilton*, 2023 WL 2307615 (E.D. Va. Mar. 1, 2023).

16       Moreover, *Kistler* did not even discuss Morningstar ratings. Rather, the court concluded

17   that plaintiffs stated plausible claims based on allegations that the plan's investment consultant

18   repeatedly informed the plan fiduciary that the BlackRock funds were among the worst performing

19   in the country. 2024 WL 3292543, at *14. The other authority that Plaintiffs cite for their

20   Morningstar argument are similarly inapposite. *See In re MedStar ERISA Litig.*, 2021 WL 391701,

21   at *5-6 (D. Md. Feb. 4, 2021) (plaintiffs plausibly alleged defendants breached fiduciary duties by

22   selecting target-date fund that materially underperformed similar target-date fund offered by same

23   company, investment manager failed to follow stated investment strategy, and investors lost

24   confidence in challenged investment, resulting in billions of dollars in outflows); *Krueger v.*

25   *Ameriprise Fin., Inc.*, 2012 WL 5873825, at *10-11 (D. Minn. Nov. 20, 2012) (allegations that

26   defendant selected proprietary mutual funds with no performance history and for its own benefit

27   stated plausible claim).

28       Plaintiffs argue that Defendants' cases on the Morningstar rating issue are inapt because

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT
5:23-cv-03785-EKL                                    -5-

1  they did not address "the advisor-related allegations" that Plaintiffs make about Precept. Opp'n at

2  21. But the only "advisor-related" allegations are that Precept's marketing materials state that

3  "qualitative considerations" include "Morningstar star rating." Compl. ¶ 83. Plaintiffs do not allege

4  that Precept advised Defendants that a fund with a neutral or one- or two-star Morningstar rating is

5  presumptively imprudent, or that any other investment consultant takes that stance.

6  **2.    Plaintiffs' excessive fee allegations do not suggest imprudence.**

7  Plaintiffs again ask the Court to infer a flawed fiduciary process because the American

8  Century TDFs purportedly charged excessive investment management fees compared to the

9  Morningstar peer group median and three other target-date suites. Compl. ¶¶ 219-25. As the Court

10  explained when addressing similar allegations in the third amended complaint, this "is not a case

11  where Defendants inexplicably invested in a higher-cost version of a fund when an identical, lower-

12  cost version was available." Order at 4. Once again, Plaintiffs' allegations do not permit the

13  inference that the Committee did not adequately monitor investments. Mot. at 13-14.

14  Plaintiffs agree that a fiduciary is not required to scour the market to find the cheapest fund,

15  Opp'n at 21, meaning allegations that a defendant could have selected a less expensive investment

16  do not plausibly allege a flawed process. *E.g.*, *White v. Chevron Corp.*, 752 F. App'x 453, 455 (9th

17  Cir. 2018) (allegations that defendant "could have chosen different vehicles for investment that

18  performed better during the relevant period, or sought lower fees for administration of the fund,"

19  did not make it "more plausible than not that any breach of a fiduciary duty had occurred"); *Dorman

20  v. Charles Schwab Corp.*, 2018 WL 6803738, at *3 (N.D. Cal. Sept. 20, 2018) (allegations that

21  funds "underperformed modestly and have somewhat higher fees is not enough to show

22  malfeasance"). As Judge Wilken explained, "in choosing funds, a fiduciary considers not only

23  modest differences in price and performance, but also other relevant factors, such as strategy,

24  security lending practices, economic cycles, and market fluctuations." *Id*.

25  Plaintiffs ask the Court to ignore this authority, arguing that they state a plausible claim

26  because they allege underperformance ***plus*** excessive fees. Opp'n at 21. But the authority they cite

27  does not support that proposition. *Terraza v. Safeway, Inc.*, 241 F. Supp. 3d 1057 (N.D. Cal. 2017),

28  held that allegations of excessive fees could not state a plausible claim. *Id.* at 1075-76. The court

denied dismissal because the plaintiff alleged defendants selected expensive and underperforming investments to benefit the plan's trustee, and when "viewed collectively" these allegations suggested the fiduciary acted imprudently and disloyally. *Id.* at 1076-77. The court also found it notable that plaintiffs alleged the plan offered excessively expensive share classes, *id.* at 1077, which is not alleged here. *In re Sutter Health ERISA Litig.*, 2023 WL 1868865 (E.D. Cal. Feb. 9, 2023), is similarly unhelpful to Plaintiffs. The court denied dismissal of claims alleging the challenged investment suffered a "substantial outflow of investment capital" and "received media scrutiny of its frequent strategy shifts, poor performance, and risk." *Id.* at *9. *Daggett v. Waters Corp.*, 731 F. Supp. 3d 121 (D. Mass. 2024), did not involve investment management fees at all. Instead, the plaintiffs alleged the plan charged excessive recordkeeping fees. *Id.* at 135-37.

Finally, as explained below, Plaintiffs do not offer any meaningful benchmarks, meaning they do not plausibly allege excessive fees in any event.

### 3. Plaintiffs cannot state a plausible claim by alleging that to retirement glide paths are "unfavored."

Plaintiffs allege that funds utilizing "to retirement" glidepaths are "unfavored" and per se imprudent. Compl. ¶¶ 133-34. But as Defendants pointed out, such a holding would be unprecedented and inconsistent with Ninth Circuit authority. Mot. at 9-11. Plaintiffs' Opposition seeks to temper this claim, arguing that Plaintiffs are not really making a per se imprudence argument but instead alleging that fiduciaries must pay "extra scrutiny" to funds that utilize to retirement glidepaths. Opp'n at 3. Plaintiffs do not identify what this "extra scrutiny" might entail or legal authority supporting that argument. *See id.* Moreover, this argument just reinforces Defendants' point that a through retirement fund cannot be a meaningful benchmark for a to retirement fund because they have different investment objectives that they seek to attain by utilizing different strategies. *Id.*; *see also* Mot. at 10 (discussing same).

### C. Plaintiffs Do Not Plausibly Allege Meaningful Benchmarks For Measuring The American Century TDFs' Performance Or Fees.

"To serve as a meaningful benchmark, a comparator fund must have similar aims, risks, and potential rewards to a challenged fund." Order at 3 (cleaned up); *accord Anderson*, 137 F.4th at

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT
5:23-cv-03785-EKL                                -7-

1023. Plaintiffs' Complaint falls well short of this standard. Mot. at 14-20.

>    **1.    Plaintiffs do not plausibly allege indexes are meaningful benchmarks.**

Plaintiffs argue that their two indexes are apt benchmarks because (1) the S&P "To" Index is the benchmark identified in the American Century TDFs' prospectuses; or (2) Precept "likely" used the Morningstar Lifetime Moderate Index in its analyses. Opp'n at 3. Indexes are "a composite of the disparate strategies and styles present in the broad universe of investable alternative TDFs" and represent "an amalgamation of the different characteristics of TDF strategies." *Hall*, 2023 WL 2333304, at *7. Thus, courts in this district and elsewhere reject similar benchmark allegations. *Bracalente v. Cisco Sys., Inc.*, 2024 WL 2274523, at *6 (N.D. Cal. May 20, 2024) (S&P Index was not a meaningful benchmark for target-date funds); *Tullgren*, 2023 WL 2307615, at *7 ("the S&P Index is not an actual fund" and not a meaningful benchmark for target-date funds).

The Eighth Circuit affirmed dismissal of indistinguishable allegations in *Davis v. Washington University in St. Louis*, 960 F.3d 478 (8th Cir. 2020). There, the plaintiffs alleged that an actively managed stock fund underperformed the Russell 3000 Index, which was the benchmark identified both in the prospectus and in plan participant disclosures. *Id.* at 485 n.4; *see also* Brief for Plaintiffs-Appellants and Addendum at 41-42, *Davis v. Wash. Univ. in St. Louis*, No. 18-3345 (8th Cir. Jan. 10, 2019) (arguing plaintiffs pled a meaningful benchmark because the Russell 3000 index was "TIAA-CREF identified as the appropriate benchmark in participant communications"). The Eighth Circuit rejected this argument—"[y]et again, the complaint is comparing apples and oranges. Index funds are passively managed, whereas CREF Stock Account has an actively managed component." *Davis*, 960 F.3d at 485. Accordingly, the court was "not persuaded that the Russell 3000 Index, standing alone, is a 'meaningful benchmark' in this breach-of-fiduciary-duty case." *Id.* at 485 n.4. "After all, it is not a fund, much less an actively managed one." *Id.*

Numerous district courts in the Ninth Circuit have reached the same conclusion. *E.g.*, *Partida v. Schenker, Inc.*, 2025 WL 948123, at *2 (N.D. Cal. Mar. 28, 2025); *In re LinkedIn ERISA Litig.*, 2021 WL 5331448, at *8-9 (N.D. Cal. Nov. 16, 2021). In fact, the plaintiffs in *Partida* relied on the exact same theory as Plaintiffs here: "Defendants ignore that **Plaintiff compares the performance of the Plan funds at issue *to their own prospectus benchmarks*** . . . . The prospectus

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT
5:23-cv-03785-EKL                                    -8-

benchmarks derive their name from the fact that they are each fund's self-selected comparator used in its prospectus. As such, they are appropriate barometers for fund performance." Response to Motion to Dismiss Plaintiffs' Second Amended Complaint, *Partida v. Schenker, Inc.*, No. 3:22-cv-09192 (N.D. Cal. July 24, 2024), ECF No. 59 at 16. The court rejected this argument and held that "passively managed market indexes" are not "meaningful benchmarks for the actively managed" funds that plaintiffs challenged. 2025 WL 948123, at *2. *LinkedIn* is the same. 2021 WL 5331448, at *8-9 (rejecting argument that fund's "own stated benchmark" was a meaningful benchmark). *See also Smith v. CommonSpirit Health*, 2021 WL 4097052, at *8 (E.D. Ky. Sept. 8, 2021) ("the benchmark listed in the fund's prospectus" is not a meaningful benchmark), *aff'd*, 37 F.4th 1160.

Moreover, Plaintiffs allege no facts about the holdings of the S&P "To" Index or how its allocations to bonds, equities, international securities, etc. line up to those of the American Century TDFs, as required by *Anderson*. *See generally* Compl. On the other hand, the allegations in the Complaint establish that the Morningstar Lifetime Moderate Index and American Century TDFs have dissimilar asset allocations. Compl. ¶ 125 ("Morningstar Index" allocated 18% **more** to equities and about 17% **less** to bonds that the American Century TDFs). Neither of Plaintiffs' indexes is a meaningful benchmark.

None of the case law Plaintiffs cite changes this conclusion. *Zimmerman v. Cedars-Sinai Med. Ctr.*, 2024 WL 1135773 (C.D. Cal. Feb. 18, 2024), and *Sutter Health* did not hold that an index is a meaningful benchmark. Rather, they refused to consider whether plaintiffs plausibly alleged meaningful benchmarks, reasoning that query was premature at the motion to dismiss stage. *Zimmerman*, 2024 WL 1135773, at *7-8; *Sutter Health*, 2023 WL 1868865, at *10 (disputes over benchmarks "are inappropriate at the motion to dismiss stage"). *Baird v. BlackRock Inst. Tr. Co., N.A.*, 403 F. Supp. 3d 765 (N.D. Cal. 2019), did not discuss whether an index could constitute a meaningful benchmark. Instead, the court concluded that allegations that the challenged funds underperformed compared to a "nearly identical" suite of alternative target-date funds, coupled with allegations of disloyalty, was sufficient to state a claim. *Id.* at 780. The out-of-circuit authority Plaintiffs cite is similarly flawed and contrary to the Ninth Circuit's ruling in *Anderson*. *Compare Russell v. Ill. Tool Works, Inc.*, 2024 WL 2892837, at *3 (N.D. Ill. June 10, 2024) (accepting

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT
5:23-cv-03785-EKL                                              -9-

1    allegation that funds in the same Morningstar category are a meaningful benchmark and refusing

2    to address strategy differences); *Brown-Davis v. Walgreen Co.*, 2020 WL 8921399, at *2 (N.D. Ill.

3    Mar. 16, 2020) (benchmark analysis premature at motion to dismiss stage).

4         Plaintiffs' reliance on the Morningstar peer group median for their excessive fee claim fails

5    for the same reasons. Mot. at 13. Plaintiffs argue that median is a proper benchmark because Precept

6    "provides clients with pertinent 'Expense ratio vs. peer group' data." Opp'n at 6, 22. Plaintiffs

7    provide no authority for this argument. *See id.* And they make no effort to distinguish all the

8    authority in Defendants' Motion demonstrating that a median is not a proper benchmark. Mot. at

9    13. *E.g.*, *Anderson*, 579 F. Supp. 3d 1133, 1150-51 (N.D. Cal. 2022) ("it is insufficient for an

10   average to be a meaningful benchmark" and rejecting reliance on "Morningstar's peer group

11   category"), *aff'd*, 137 F.4th 1015.

12        **2.    *Anderson* precludes Plaintiffs' arguments that their comparator target-**

13        **date funds are meaningful benchmarks.**

14        Plaintiffs' comparator funds have markedly dissimilar strategies and objectives than the

15   American Century TDFs, either because their underlying asset allocations look nothing alike, they

16   utilize different glidepath strategies, or the American Century TDFs have a risk-mitigation

17   objective while Plaintiffs' comparators focus on revenue generation. Mot. at 15-19. Plaintiffs first

18   respond that the comparators have "identical categories and materially similar asset allocation as

19   the American Century TDFs." Opp'n at 13. But the only support they provide for this conclusory

20   statement is that "U.S. Equities are the largest percentage of holdings" in each fund, "non-U.S.

21   equities range from 20.07-29.57%," and "the remaining holdings are Fixed Income." *Id.* at 4. That

22   argument, while true as far as it goes, is disingenuous. One fund could allocate 99% to a particular

23   asset class and a second fund 25% to the same asset class and that asset class might still represent

24   the "largest percentage of holdings" in each fund. But that does not mean they are meaningful

25   benchmarks for each other, and Courts reject those sorts of generalities in assessing benchmarks.

26   *E.g.*, Order at 3; *Anderson*, 137 F.4th at 1026.

27        Here, the American Century TDFs allocated a bit more than 31% to bonds. Compl. ¶ 125.

28   The closest comparator allocated a bit more than 14% to bonds, while the T. Rowe Price TDFs

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT
5:23-cv-03785-EKL                                    -10-

1  allocated a meagre 2.6% to bonds. *Id.* That asset allocation disparity alone – anywhere between

2  17% and 28% – makes the comparators inapt benchmarks because it establishes that the American

3  Century TDFs followed a more conservative investment strategy. *See Anderson*, 137 F.4th at 1019,

4  1023 (affirming dismissal of claims comparing investment that adopted an asset allocation aimed

5  at risk mitigation instead of an "equity heavy" allocation designed to generate revenue); *accord*

6  *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) (12% difference in bond

7  allocations rendered comparison meaningless). This means that all of Plaintiffs' comparator target-

8  date suites are inapt benchmarks.

9       Moreover, this Court already held that the glidepath differences between the American

10  Century TDFs, which have a to retirement glidepath, and the six comparators that use a through

11  retirement glidepath, makes those comparators inapt benchmarks. Order at 3; Mot. at 16. In

12  response, Plaintiffs argue that the Court did not use the terms "to" and "through" in its Order so did

13  not actually decide this issue. Opp'n at 13-14. That is absurd. The Court explained the difference

14  between the two glidepath strategies and concluded that "[d]ifferent glide paths . . . reflect different

15  investment strategies" that "make the comparator funds poor benchmarks." Order at 3.

16       Plaintiffs' Opposition merely drive this point home. Plaintiffs argue that the American

17  Century TDFs have an "unconventional glidepath strategy," an "unorthodox glide path," and an

18  "atypically 'flatter' glidepath strategy." Opp'n at 4, 14. But Plaintiffs do not provide any non-

19  conclusory allegations regarding the American Century TDFs and comparator target-date funds

20  suggesting that the comparators adopted a similar "unorthodox" glidepath strategy. Instead,

21  Plaintiffs baldly assert that some of their comparators have a "moderate" glidepath like the

22  American Century TDFs, "emphasiz[e] bonds near the target date like 'to' glidepaths," or use

23  "through glidepaths, but in a more conservative sense." *Id.* at 4. But other than these conclusory

24  labels, Plaintiffs allege no ***facts*** suggesting any of these comparators has "similar aims, risks, and

25  potential rewards" as the American Century TDFs. Order at 3.

26       Plaintiffs also state that the American Century TDFs and their comparator target-date funds

27  have a "similar objective," which is to "keep participants on course throughout the journey to and

28  through retirement" and seek "stability in market downturns." *E.g.*, *id.* at 9. That is no different

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT
5:23-cv-03785-EKL                                    -11-

than saying every mutual fund has the same "objective," to generate income for investors and avoid large losses. Those sorts of platitudes are not enough to plausibly allege a meaningful benchmark.

Plaintiffs next argue that the Voya TDFs are meaningful benchmarks simply because they utilize a to retirement glide path like the American Century TDFs. *Id.* at 14. Plaintiffs do not mention that the Voya TDFs allocated about 90% to equities and only 10% to bonds, compared to the American Century TDFs, which allocated about 67% to equities and 31% to bonds. Compl. ¶ 125. Plaintiffs' comparison of the "equity heavy" Voya TDFs to the conservative American Century TDFs fails as a matter of law. *Anderson*, 137 F.4th at 1023.

Finally, the Court should reject Plaintiffs' suggestion that they do ***not*** need to provide a meaningful benchmark. Opp'n at 7 (arguing Plaintiffs "are not required" to identify a meaningful benchmark). The Ninth Circuit in *Anderson* explained that "the need for a relevant comparator with similar objectives—not just a better-performing plan or investment—is implicit in ERISA's text." 137 F.4th at 1022. Thus, "to the extent a plaintiff asks a court to infer that a fiduciary used improper methods based on the performance of the investments," as Plaintiffs do here, then "he ***must*** compare that performance to funds or investments that are meaningfully similar." *Id.* at 1023 (emphasis added). This is true for both Plaintiffs' performance and fee allegations. *Id.*

**D.     The Court Should Dismiss Plaintiffs' Baseless Claim For Statutory Penalties.**

The Court also should dismiss Plaintiffs' claim for statutory penalties for the purported failure to produce the IPS. Plaintiffs agree that ERISA does not require a fiduciary to adopt an IPS. *See* Mot. at 21. Plaintiffs also agree that the Ninth Circuit "narrowly interpret[s] the disclosure requirements of [ERISA] Section 104(b)(4)." *Zavislak v. Netflix, Inc.*, 2024 WL 2884649, at *23 (N.D. Cal. June 7, 2024) (Davila, J.), *appeal pending*, No. 24-4175 (9th Cir.). There is no basis for imposing statutory penalties for the failure to produce a document that ERISA ***does not even require to exist***, and that is doubly true when considering that the Ninth Circuit has rejected a broad interpretation of ERISA's disclosure requirements. *E.g.*, *Shaver v. Operating Eng'rs Loc. 428 Pension Tr. Fund*, 332 F.3d 1198, 1202 (9th Cir. 2003).

Plaintiffs argue that an IPS dictates the selection and monitoring of investments and, because the "Charter requires the Committee to comply with the IPS," it is a document under which

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT
5:23-cv-03785-EKL                                     -12-

1   the Plan is "operated" and thus must be produced upon request. Opp'n at 24. But that argument

2   cannot be reconciled with Ninth Circuit guidance explaining that a plan administrator must produce

3   documents that show a participant "what benefits he may be entitled to, what circumstances may

4   preclude him from obtaining benefits, what procedures he must follow to obtain benefits, and who

5   are the persons to whom the management and investment of his plan funds have been entrusted."

6   *Hughes Salaried Retirees Action Comm. v. Adm'r of Hughes Non-Bargaining Ret. Plan*, 72 F.3d

7   686, 690 (9th Cir. 1995). A plan administrator is ***not*** obligated to produce all documents relating

8   "to the manner in which the plan is operated" but only documents similar in kind to those

9   specifically identified in the statute, i.e., the plan document, SPD, annual report, trust agreement,

10  and any bargaining agreement or terminal report. *Shaver*, 332 F.3d at 1202.

11       Plaintiffs' reliance on *Eden Surgical Center v. Budco Group, Inc.*, 2010 WL 2180360 (C.D.

12  Cal. May 27, 2010), the only authority they cite from a court in the Ninth Circuit, undermines their

13  position. Opp'n at 24-25. In *Eden*, the court held that ERISA required a plan administrator to

14  produce copies of internal criteria that governed whether a participant was entitled to receive

15  benefits and the amount of benefits the plan would pay.[3] 2010 WL 2180360, at *5. Those

16  documents were subject to production under Ninth Circuit guidance because they did not relate

17  solely to the way the plan operated. *Id.* Instead, they were "relevant to the processing and re-pricing

18  of [plaintiffs'] adverse benefit determinations" *Id. at* *1 because they were "expressly cited by the

19  Plan as criteria that the Administrator uses for determining" benefits and "provide[d] participants

20  with information on how benefits are calculated." *Id.* at *6-7. "Without that information, a

21  participant does not have all of the information he or she needs in order to know how claims are

22  processed and reimbursements are calculated." *Id.* at *7.

23       But Plaintiffs concede that the IPS (at most) relates to the way the Committee selects

24  investments. Opp'n at 24. The IPS thus is "wholly unrelated and irrelevant to where [Plaintiffs]

25  stand and what their rights are under the plan." *Penwell v. Providence Health & Servs.*, 2021 WL

26  1222663, at *5 (W.D. Wash. Mar. 31, 2021) (rejecting argument that *Eden* required production of

27
28
---
[3] Plaintiffs' argument that *Eden* "upheld similar claims that defendants improperly withheld IPSs" badly misstates that case. Opp'n at 25. *Eden* did not even involve a retirement plan, much less a request for an IPS, but related to a dispute over the alleged underpayment of medical benefits.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT
5:23-cv-03785-EKL                    -13-

1   documents providing information about "the maintenance and administration of the [Plan]" because

2   that argument "ignores the binding case law that requires narrow interpretation of 'other

3   instruments' and fails to show that such a broad category of documents is relevant to inform each

4   Plaintiff of his or her own plan or benefits").

5          Finally, even if the IPS was subject to production, Plaintiffs are not entitled to any penalties.

6   The imposition of penalties is not automatic but rests in the sound discretion of the Court. *Eden*

7   *Surgical Ctr.*, 2010 WL 2180360, at *8. Various factors govern this inquiry, "including bad faith

8   or intentional conduct on the part of the administrator, the length of the delay, the number of

9   requests made and documents withheld, and the existence of any prejudice to the participant or

10  beneficiary." *Id.* Although prejudice is not a prerequisite to an award of penalties, it is a key

11  consideration and Plaintiffs have the burden "to show that [they have] been prejudiced by the plan

12  administrator's refusal to turn over documents." *Id.*

13         Plaintiffs did not even assert this claim until almost three years after CAES responded to

14  their 104(b)(4) request and two years after they filed their original complaint, and they have never

15  identified any prejudice from the failure to produce the IPS. *See generally* Compl., Opp'n. Nor

16  could they. Plaintiffs' own filings establish that they received detailed annual information about

17  the performance and fees associated with the American Century TDFs. *See* ECF 79-3 (discussing

18  the American Century TDFs, their fees, and their one-, five-, and ten-year returns). This is one more

19  reason for dismissal of this claim.

20         **E.    The Court Should Grant Defendants' Request For Judicial Notice.**

21         The Court should grant Defendants' Request for Judicial Notice. ECF 83. The Court took

22  judicial notice of similar (or even the same) documents when it ruled on Defendants' Motion to

23  Dismiss the Third Amended Complaint. Order at 2 n.3; *see also Phillips*, 2024 WL 3228097, at *5.

24  Plaintiffs' argument that it is inappropriate to consider these documents at this stage of the case,

25  Opp'n at 7, is thus unavailing.

26         Plaintiffs argue the Request for Judicial Notice is "particularly offensive" because the Court

27  previously refused to "take judicial notice of any fact that disputes any allegations in the complaint"

28  and that Defendants are using their exhibits to "refute the well-pled allegations in the Complaint."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT
5:23-cv-03785-EKL                                                    -14-

1    *Id.* (cleaned up). The Opposition provides no further explanation in support of this argument and

2    does not identify a single fact dispute raised by the proposed exhibits. *See generally* Opp'n. That is

3    because those documents simply provide information that Plaintiffs omitted from their Complaint.

4    For instance, Plaintiffs did not allege whether all their comparators utilize a to or through glidepath

5    strategy, so Defendants introduced exhibits providing that information. Mot. at 5. Plaintiffs also

6    speculated that the American Century TDFs had "dismal Morningstar Star Ratings" throughout the

7    class period but only identified the actual ratings as of September 30, 2023, and "current." Compl.

8    ¶¶ 215-16. Exhibit 9 to Defendants' Motion provided further context for the Court in this respect

9    by providing the star ratings as of December 31, 2022. Mot. at 11-12. Plaintiffs do not dispute the

10   authenticity of these documents or the accuracy of the information therein.

11           **F.      Plaintiffs' Derivative Monitoring Claim Fails As A Matter Of Law.**

12           Plaintiffs' "failure to monitor" claim is derivative of their Count I fiduciary breach claim.

13   As Judge Davila explained, "[b]ecause the primary [fiduciary breach] claim does not survive, the

14   monitoring claim must fail as well." *Phillips*, 2024 WL 3228097, at *9.

15   **III.    CONCLUSION**

16           Motions to dismiss are an "important mechanism" for "weeding out meritless [fiduciary

17   breach] claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). The Complaint

18   contains none of the hallmarks of a viable claim, like allegations that the Plan offered numerous

19   investments that took on excessive risk and were selected for disloyal reasons. Instead, Plaintiffs

20   ask the Court to infer Defendants' fiduciary process was flawed solely because Defendants did not

21   pick the best performing target-date funds. Allowing such a claim to proceed would undermine

22   ERISA's purpose of encouraging employers to offer retirement plans in the first place because it

23   makes ERISA fiduciaries guarantors of the investments they select. As Judge Davila explained in

24   rejecting this same theory, it "flatten[s] [the] nuanced prudence evaluation into a one-dimensional

25   comparison" that considers only performance. *Bracalente*, 2023 WL 5184138, at *4. Rule 12(b)(6)

26   exists to weed out claims like this based on cherrypicked performance rather than fiduciary

27   misconduct. The Court should dismiss the Complaint with prejudice.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT
5:23-cv-03785-EKL                                    -15-

1    Dated: July 18, 2025                                    MORGAN, LEWIS & BOCKIUS LLP

2                                                            By    */s/ Sean K. McMahan*
                                                            Sean K. McMahan

3                                                            Deborah S. Davidson (pro hac vice)
                                                            110 N. Wacker Drive, Suite 2800
4                                                            Chicago, IL 60606-1511
                                                            Telephone: +312.324.1159
5                                                            Facsimile: +312.324.1001
                                                            deborah.davidson@morganlewis.com
6
                                                            Sean K. McMahan (pro hac vice)
7                                                            1717 Main Street, Suite 3200
                                                            Dallas, TX 75201
8                                                            Telephone: +1.214.466.4000
                                                            Facsimile: +1.214.466-4001
9                                                            sean.mcmahan@morganlewis.com

10                                                           Mark A. Feller, Bar No. 319789
                                                            One Market, Spear Street Tower
11                                                           San Francisco, CA 94105-1126
                                                            Tel: +1.415.442.1000
12                                                           Fax: +1.415.442.1001
                                                            mark.feller@morganlewis.com
13
                                                            Mathew J. McKenna (pro hac vice)
14                                                           1111 Pennsylvania Avenue, NW
                                                            Washington, DC 20004
15                                                           Telephone: +1.202.739.3000
                                                            Facsimile: +1.202.739-3001
16                                                           mathew.mckenna@morganlewis.com

17                                                           Attorneys for Defendants

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT
5:23-cv-03785-EKL                          -16-