**ROSMAN & GERMAIN APC**
Daniel L. Germain (Bar No. 143334)
5959 Topanga Canyon Boulevard
Suite 360
Woodland Hills, CA 91367-7503
Telephone: (818) 788-0877
Facsimile: (818) 788-0885
E-Mail: Germain@Lalawyer.com

Counsel for Plaintiffs and the Putative Class

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL PHILLIPS, BRENDA PACLIK and CRYSTAL FRANKLIN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAES SYSTEMS, LLC, THE BOARD OF DIRECTORS OF CAES SYSTEMS, LLC, THE 401(K) PLAN COMMITTEE OF CAES SYSTEMS, LLC, COBHAM ADVANCED ELECTRONIC SOLUTIONS, INC., THE BOARD OF DIRECTORS OF COBHAM ADVANCED ELECTRONIC SOLUTIONS, INC., THE 401(K) PLAN COMMITTEE OF COBHAM ADVANCED ELECTRONIC SOLUTIONS, INC. and JOHN DOES 1-50.<br><br>Defendants. | CASE NO. 5:23-cv-03785-EKL<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**Motion Date: February 25, 2026** |

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 3

A. Facts ........ 3

B. Previous Briefings ........ 6

III. ARGUMENT ........ 8

A. Standard of Review ........ 8

B. Defendants Violated Section 104(b)(4) ........ 8

1. Evidentiary objections ........ 8

2. The IPS falls under Section 104(b) ........ 10

3. The Court correctly found the IPS falls under *Hughes* ........ 12

4. The Committee Charter is central to the context specific analysis ........ 14

5. Full investment information was not already provided ........ 14

C. Penalties Under § 1132(c)(1) ........ 15

1. Bad faith and intentional misconduct ........ 15

2. The length of the delay ........ 16

3. Plaintiffs' repeated attempts demonstrate diligence ........ 17

4. Prejudice to Plaintiffs ........ 18

D. Plaintiffs Have Standing ........ 19

IV. CONCLUSION ........ 23

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Allen v. Honeywell Ret. Earnings Plan*,
No. 04-CV-424, 2005 WL 8160632 (D. Ariz. July 27, 2005) ........ 11

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........ 8

*Askew v. R.L. Reppert, Inc.*,
No. 11-CV-04003, 2016 WL 447060 (E.D. Pa. Feb. 5, 2016), *aff'd*,
721 F. App'x 177 (3d Cir. 2017) ........ 12

*Bafford v. Admin. Comm. of Northrop Grumman Pension Plan*,
101 F.4th 641 (9th Cir. 2024) ........ 1, 3, 15

*Barboza v. California Ass'n of Pro. Firefighters*,
594 F. App'x 903 (9th Cir. 2014) ........ 18

*Becker v. Williams*,
777 F.3d 1035 (9th Cir. 2015) ........ 7, 12, 13

*Bell Atlantic Corp. v. Twombly,*
147 F. App'x 643 (9th Cir. 2005) ........ 7, 8

*Cockerill v. Corteva, Inc.*,
No. 21-CV-3966, 2024 WL 5159892 (E.D. Pa. Dec. 18, 2024) ........ 19

*Davis v. Featherstone*,
97 F.3d 734 (4th Cir. 1996) ........ 18, 19

*Diaz v. BTG, Int'l, Inc.*,
2021 WL 2414580 (E.D. Pa. June 14, 2021) ........ 9

*Eden Surgical Ctr. v. Budco Grp., Inc.*,
No. 10-CV-07024, 2010 WL 2180360 (C.D. Cal. May 27, 2010) ........ 12, 13, 17

*Faircloth v. Lundy Packing Co.*,
91 F.3d 648 (4th Cir. 1996) ........ 7, 11, 12, 13

*Feng Zou v. Mukasey*,
271 F. App'x 584 (9th Cir. 2008) ........ 10

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014)....8, 10, 19

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101 (1989) ("*Firestone*") ....1, 18, 22

*Graeber v. Hewlett Packard Co. Emp. Benefits Org. Income Prot. Plan,*
421 F. Supp. 2d 1246, 1257 (N.D. Cal. 2006), *aff'd sub nom.* ....17

*Graeber v. Hewlett Packard Income Prot. Plan*,
281 F. App'x 679 (9th Cir. 2008)....17

*Harp v. Kaiser Found. Health Plan, Inc.*,
133 F. Supp. 3d 1248 (D. Or. 2015) ....18

*Hawkins v. Cintas Corp*.,
2024 WL 3982210 (S.D. Ohio 2021)....9

*Hemphill v. Est. of Ryskamp*,
619 F. Supp. 2d 954, 976 (E.D. Cal. 2008), *modified sub nom.*
*Hemphill v. Pers. Representative of Est. of Ryskamp*,
No. -05-CV-1319, 2008 WL 1696722 (E.D. Cal. Apr. 8, 2008) ....18

*Hoskins v. Metro. Life Ins. Co*.,
551 F. Supp. 2d 942 (D. Ariz. 2008) ....16, 18

*Hughes Salaried Retirees Action Comm. v. Adm'r of Hughes Non-Bargaining Ret. Plan*,
72 F.3d 686 (9th Cir. 1995) ("*Hughes*") ....*Passim*

*Ironworkers Field Pension Trust v. Loomis Sayles*,
259 F.3d 1036 (9th Cir. 2001) ....11

*Johnson v. Georgia-Pac. Corp.*,
260 F. *App'x* 994 (9th Cir. 2007)....17

*Korst v. Sound Ret. Tr*.,
No. 10-CV-1587, 2011 WL 13229290 (W.D. Wash. Mar. 23, 2011) ....12

*Lundstrom v, Young,*
2022 WL 15524624 (S.D. Cal. Oct. 27, 2022) ....21

*Lyn M. v. Premera Blue Cross*,
966 F.3d 1061 (10th Cir. 2020) ....15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)....8

*McFarlane v. First Unum Life Ins. Co.*,
274 F. Supp. 3d 150 (S.D.N.Y. 2017)....21, 22

*Mondry v. Am. Fam. Mut. Ins*. Co.,
557 F.3d 781 (7th Cir. 2009) ....13

*Moon v. Rush*,
69 F. Supp. 3d 1035 (E.D. Cal. 2014)....15, 16, 18

*Nesbeth v. ICON Clinical Rsch. LLC*,
No. 21-cv-1444, 2022 WL 22893879 (E.D. Pa. Mar. 10, 2022) ....9

*Ogren v. Northrop Grumman Corp*.,
No. 25-CV-02310, 2025 WL 3030578 (C.D. Cal. Sept. 10, 2025) ....18

*O'Handley v. Weber*,
62 F.4th 1145 (9th Cir. 2023) ....20

*Orr v. Bank of Am., NT & SA*,
285 F.3d 764 (9th Cir. 2002) ....9

*Penwell v. Providence Health & Servs*.,
No. 19-CV-01786, 2021 WL 1222663 (W.D. Wash. Mar. 31, 2021) ....13

*Premera Blue Cross v. Microsoft Corp*.,
118 F.4th 1248 (10th Cir. 2024) ....11

*Sedlack v. Braswell Servs. Grp., Inc*.,
134 F.3d 219 (4th Cir. 1998) ....17

*Sembiring v. Gonzales*,
499 F.3d 981 (9th Cir. 2007) ....10

*Shaver v. Operating Eng'rs Local 428 Pension Tr. Fund*,
332 F.3d 1198 (9th Cir. 2003) ....6, 7

*Spokeo, Inc. v. Robins,*
578 U.S. 330, 341(2016)....21, 22

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....20, 21

*Truong v. KPC Healthcare, Inc.*,
No. 23-CV-01384, 2024 WL 4867558 (C.D. Cal. Sept. 9, 2024) ....13

*Truong v. KPC Healthcare, Inc.*,
No. 23-CV-01384, 2024 WL 1984569 (C.D. Cal. May 3, 2024) ....20, 21, 22

*United States v. Flores-Blanco*,
623 F.3d 912 (9th Cir. 2010) ....................9

*Wander v. United Ben. Life Ins. Co.*,
905 F.2d 1541 (9th Cir. 1990) ....................8

*Wise v. MAXIMUS Fed. Servs., Inc.*,
445 F. Supp. 3d 170 (N.D. Cal. 2020) ....................8, 12, 15

*Wit v. United Behav. Health*,
79 F.4th 1068 (9th Cir. 2023) .................... *Passim*

*Zavislak v. Netflix, Inc.*,
No. 21-cv-01811, 2024 WL 2884649 (N.D. Cal. June 7, 2024) ("*Zavislak I*") ....................6, 8, 11

*Zavislak v. Netflix, Inc.*,
No. 24-4156, 2025 WL 2717422 (9th Cir. Sept. 24, 2025) (unpublished) ("*Zavislak II*) ..... *Passim*

**STATUTES**

28 U.S.C. §1746 ....................10

29 U.S.C. § 1024(b)(4) ....................16

29 U.S.C. § 1024(b)(4) ....................1, 6

29 U.S.C. § 1132(c) ....................17

29 U.S.C. § 1132(c)(1) ....................3, 6, 15, 16

29 U.S.C. § 1132(c)(1)(B) ....................18

29 U.S.C. § 1132(g) ....................23

FED. R. CIV. P. 56(C) ....................8

H.R.Rep. No. 93–533, p. 11 .................... 1

U.S. Code Cong. & Admin. News 1978 .................... 1

**OTHER SOURCES**

Employee Retirement Income Security Act of 1974 ("ERISA") .................... *Passim*

*Moore's Federal Practice* § 101.40 (3d ed. 2015) .................... 21

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs respectfully submit this reply in support of their motion for summary judgment and opposition to Defendants' motion for summary judgment.

## I. INTRODUCTION[1]

Defendants' submission and the updated factual record leave no doubt that all three elements of § 104(b)(4) are satisfied: the Plan's "administrator" failed to "furnish a copy" of the IPS, which is an "instrument[] under which the plan is established or operated[,]" within 30 days of Plaintiffs' first and subsequent proper requests. Dkt. 93, Order Granting Motion To Dismiss In Part Defendants' Motion to Dismiss ("Order"), at 18 (quoting 29 U.S.C. § 1024(b)(4)). The crucial reality is that "when a plan's fiduciary formally adopts an IPS, and when the fiduciary is required to comply with it when making investment decisions, the IPS is an 'instrument[] under which the plan is . . . operated.'" *Id.*, at 22. In the same light, Defendants do not raise material disputes or offer any persuasive reason why a full statutory penalty should not be awarded. Defendants continue to demonstrate bad faith and withhold the IPS. Plaintiffs' §104(b)(4) requests ("Requests") for the IPS has never been withdrawn.

Defendants' undisputed refusal to produce the IPS caused Plaintiffs to endure an Article III injury because Plaintiffs were unable to "'know[] exactly where [they] stand[] with respect to the plan.'" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989) ("*Firestone*") (quoting H.R.Rep. No. 93–533, p. 11 (1973), U.S. Code Cong. & Admin. News 1978, p. 4649); *see also Bafford v. Admin. Comm. of Northrop Grumman Pension Plan*, 101 F.4th 641, 652 (9th Cir. 2024) ("a central 'policy of [ERISA] [is] to protect ... the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information.'").

---

[1] All undefined terms shall have their same meaning as defined in Plaintiffs' Motion for Summary Judgment, Dkt. 106 ("Pltfs' MJS"). Defendants' Notice of Motion and Motion For Summary Judgment; Memorandum of Points and Authorities in Support and in Opposition to Plaintiffs' Motion for Summary Judgment, Dkt. 109, is hereafter referred to as ("Defs' MSJ")

**First**, there is no genuine dispute that Defendants are liable. Ultimately, it is undisputed that the Plan Administrator(s) did not produce the IPS within 30 days of any of Plaintiffs' Requests. It is undisputed that Defendants did not confirm the existence of an IPS until oral arguments were held before the instant "Complaint" (Dkt. 81) was filed, and, at that same hearing, Plaintiffs requested the IPS. It is undisputed, regardless of any outside advisor's involvement in crafting the IPS, that the Charter mandates that the *Committee* (without permission to delegate) is responsible for adopting, updating, and complying with the IPS. Defendants' only dispute about liability is to regurgitate their already rejected legal arguments and misapplication of caselaw as to the characterization of the IPS. Defendants do not provide any germane IPS cases, only cases involving a plan's contracts with third parties rather than documents directly related to participants. Worse yet, Defendants insist that this Court's Order was wrong. This Court's Order provided a correct, in-depth legal analysis and diligent application of the facts of this case – such as the importance of the Charter and nature of benefits in a defined contribution plan. Defendants' attempt to impose rigid limiting principles, devoid of any context, ignores this well-reasoned holding and Ninth Circuit precedent. *See* Order at 21. The Court has also held that when considering the requisite context, the IPS, *under the narrow circumstances of this case,* does fit into Defendants' proffered standard. *Id*., at 21-22. Defendants also raise a number of immaterial disputes, such as an advisor's influence on the IPS, that Defendants provided other documents, and that the Plan offered a brokerage window (which also fell under the purview of the IPS), but none of those irrelevant facts disprove any element of §104(b)(4).

**Second**, Defendants provide no genuine, material dispute outweighing any of the factors in favor of granting the full statutory award. Defendants' continued violation is especially flagrant because this Court has made it clear that the IPS, particularly in the context of the Plan and the Charter, constitutes a document that must be furnished according to § 104(b)(4) and Ninth Circuit Precedent. *See* Order at 18-22. Defendants concede that Plaintiffs repeatedly asked for the IPS, and, as Pltfs'

MSJ demonstrates, Plaintiffs have never withdrawn their request. Accordingly, it is not a material fact that Plaintiffs never specifically asked whether the IPS existed, as the record makes clear that Plaintiffs were continuously seeking its production to no avail. Of course, Plaintiffs need not show any prejudice, harm, or Defendants' bad faith for penalties to attach. *See Bafford*, 101 F.4th at 657.

**Third**, the Ninth Circuit in *Wit v. United Behav. Health*, 79 F.4th 1068 (9th Cir. 2023), as well as district court cases in this Circuit applying the principles of *Firestone* and Article III Standing, have flat out rejected Defendants' position and agreed that Plaintiffs' injury from the nondisclosure is sufficient. Defendants do not provide *any* on point cases.

Defendants' ongoing withholding of the IPS continues to be a violation of ERISA § 104(b), and warrants imposing a full penalty under § 1132(c)(1). For these reasons, and the reasons detailed in Pltfs' MSJ, Plaintiffs respectfully request that: (1) summary judgment be granted in Plaintiffs' favor, (2) Defendants' motion for summary judgment be denied, and (3) a full statutory penalty be awarded to Plaintiffs.

## II. BACKGROUND

### A. Facts[2]

It remains undisputed that Plaintiffs sent the Requests to the proper plan administrators on numerous occasions. Add'l Facts, ¶¶ 1-4, 12-17. It remains undisputed that Defendants have never provided the IPS. *Id.*, ¶¶ 22-23.

It is undisputed "that the Committee charter delegates responsibility to the Committee to monitor the Plan's investments." *Id.*, ¶ 26. It is undisputed that "The Committee Charter states in relevant part: "(a) The Committee ***shall***: (i) ***adopt an Investment Policy for the Plan***, review it periodically and ***update*** the Investment Policy when applicable; (ii) ***review and monitor the investment performance of the Plan and oversee compliance with the Investment Policy***; and (iii)

[2] "Add'l Facts" refers to Dkt. 110, with "Defs' Facts" referring to new facts added by Defendants.

select, appoint, monitor, and terminate investment advisor(s), investment manager(s), trustees, and other Service Providers." *Id.*, ¶ 27 (emphasis added).

Defendants do not dispute that Plaintiffs' April 28, 2022 request contains the quoted language requesting "all written instruments" governing or pertaining to the Plan, including "investment policy statements and investment management contracts, or other instruments under which the Plan was established or operated[.]" *Id.*, ¶ 12. "Defendants do not dispute that the May 26, 2022 response to Plaintiffs' Section 104(b)(4) Request did not include a copy of the IPS[,]" nor that Defendants did not confirm the existence of the IPS at that time. *Id.*, ¶ 14. It is undisputed that "[o]n June 7, 2022, Plaintiffs, through counsel, again wrote to the 'Plan Administrator' to 'follow[] up on our request dated April 28, 2022, pursuant to Section 104(b)(4). The letter reattached the original request" including the explicit request for the IPS. *Id.*, ¶ 15. Defs' Facts state, "On July 11, 2022, Plaintiffs served a third, near-identical, request for documents" including the request for an IPS. Defs' Facts, ¶ 5. Defendants do not dispute that an email from "Bruce Almquist SVP & General Counsel" stated that "[a]s your current request is identical to your prior request and we have already responded to your prior request, we are not duplicating our response." Add'l Facts, ¶¶ 16-17. Defendants fault Plaintiffs for "not identify[ing] any specific deficiency with Defendants' May 26, 2022, response and production." *Id.*, ¶ 15.

Defendants do not dispute that they never represented to Plaintiffs that producing the IPS would be a burden for Defendants. *Id.*, ¶¶ 21. It remains undisputed that the first time Defendants acknowledged the existence of an IPS was at oral arguments in front of the Court. *Id.*, ¶ 18. It is undisputed that "During the hearing on Defendants' motion to dismiss Plaintiffs' third amended complaint, Plaintiffs asked the Court to permit 'discrete discovery' consisting of a copy of the IPS." Defs' Facts, ¶ 15.

It remains undisputed that the Charter mandates that "[t]he Committee *shall oversee the internal and external procedures for managing and administering the Plan*" and the Committee charter delegates *responsibility to the Committee to monitor the Plan's investments.*" Add'l Facts, ¶¶ 7, 26 (emphasis added). Further, "The duties of Committee members are personal in nature *and may not be delegated to any non-member*." Dkt. 111-9 ("Charter") at 5, CAES_000666. Defendants add that "Precept drafted a 'customized Investment Policy Statement' designed 'to provide the Committee with guidelines for selecting, monitoring, and, evaluating investment options." Defs' Facts, ¶ 9. Defendants have not provided any evidence that Precept was a member of the Committee, nor had the authority to change the nature of the IPS from a mandatory document to mere "guidelines." Nor have Defendants presented any updated Charter that changes the nature of the IPS from a mandatory document that the Committee "shall […] oversee compliance with" to a suggestive document of mere guidelines. Charter at 2, CAES_000663.

Defendants submit a document they previously disclosed labeled "Qualified Default Investment Alternative Notice[,]" informing participants that their account "will be invested in the Plan's designated default investment option, unless and until [the participant] direct otherwise." *See* Dkt. No, 111-21 ("QDIA Notice"), CAES_000637. The use of a default option, or "QDIA" makes the existence of a brokerage window an immaterial fact. The brokerage window's existence is also immaterial because, insofar as the window pertains to investment offerings, the Committee was directed to monitor it as well as "terminate investment advisor(s), investment manager(s), trustees, and other Service Providers" in accordance with the IPS, necessarily including the providers of this investment service. Add'l Facts, ¶ 27. None of Defendants' characterizations of documents provided to Participants includes all of the information that can be found in an IPS, including criteria used to evaluate Plan offerings, and how the Committee determined whether to terminate investment managers and service providers.

Defendants dispute Plaintiffs' fact that the Court's Order put Defendants on notice that under Ninth Circuit Precedent and the circumstances of this Plan, the IPS falls within the scope of documents that § 104(b)(4) mandates be produced upon request. Add'l Facts, ¶ 20.

**B. Previous Briefings**

On July 26, 2024, Plaintiffs filed their Third Amended Complaint ("TAC"), Dkt. 56. The TAC included the allegations that Plaintiffs requested, and were denied, the IPS. *Id.*, ¶¶ 55-56. Defendants filed a Motion to Dismiss the TAC, arguing in part that ERISA Section 104(b)(4) does not require the production of an IPS. Dkt. 58, at 13-14 ("TAC MTD") Defendants relied on *Zavislak v. Netflix, Inc.*, No. 21-CV-01811, 2024 WL 2884649, at *23 (N.D. Cal. June 7, 2024) ("*Zavislak I*"); *Hughes Salaried Retirees Action Comm. v. Adm'r of Hughes Non-Bargaining Ret. Plan*, 72 F.3d 686 (9th Cir. 1995) ("*Hughes*"); *Shaver v. Operating Eng'rs Local 428 Pension Tr. Fund*, 332 F.3d 1198 (9th Cir. 2003)). Defendants argued that "if Plaintiffs truly believed the response to their ERISA Section 104(b)(4) request was deficient, they could have sought penalties under ERISA Section 502(c)(1), 29 U.S.C. § 1132(c)(1)." *Id.*, at 14.

Plaintiffs filed the operative Complaint that adds a new count for violation of 29 U.S.C. § 1024(b)(4), in light of the new information that an IPS existed. *See* Compl., Count VII. Defendants' Motion to dismiss the Complaint, Dkt. 82, argued that Plaintiffs 104(b)(4) claim was meritless because Plaintiffs did not include a 104(b)(4) claim in early version of their complaints- before Plaintiffs knew an IPS existed. *Id.*, at 20. Defendants again relied on *Zavislak I*, *Hughes*, and *Shaver* to argue they were not required to produce the IPS. *Id.*, at 21. On September 24, 2025, the Ninth Circuit in *Zavislak II* affirmed the lower court's finding as to liability, but vacated the award of statutory penalties. *Zavislak v. Netflix, Inc.*, No. 24-4156, 2025 WL 2717422, at *3 (9th Cir. Sept. 24, 2025) (unreported) ("*Zavislak II*").

The Court held oral arguments and subsequently issued the Order, holding in relevant part that "under *Hughes* and *Shaver*, Plaintiffs plausibly allege that the Plan's IPS is a document that restricts or governs the Plan's operation[,]" because "*in this case*," based on the particularized context,

"the *IPS restricts or governs an important aspect of the Plan's operation: the Committee's process for selecting and retaining investments offered through the Plan*." Order at 20 (emphasis added). The fact that the Plan was a 401(k) Plan was a key part of the analysis. "Defendants argued that the IPS does not provide information about the Plan or benefits under *Hughes*[,] […] the Plan at issue is a 401(k) retirement plan; the criteria used to invest participants' contributions is core information about the Plan." *Id*., at 21-22.

The Court detailed its legal findings as well, holding that *Faircloth v. Lundy Packing Co*., 91 F.3d 648 (4th Cir. 1996) is "the only appellate decision that directly addresses whether an IPS must be furnished under ERISA § 104(b)(4)," and *Faircloth* is "consistent with the Ninth Circuit's narrow construction of the statutory language." *Id*., at 20-21. "The Ninth Circuit has favorably cited *Faircloth*, calling the Fourth Circuit's construction 'similar[]' to the Ninth Circuit's construction in *Hughes*." *Id*., at 21 n.12 (quoting *Becker v. Williams*, 777 F.3d 1035, 1039 n.2 (9th Cir. 2015)). Critically, "the Ninth Circuit held that this standard [in *Hughes*] offered 'no limiting principle.'" *Id*., at 21 (quoting *Hughes*, 72 F.3d at 690) ("the Court does not hold that any document relating to a plan's operation must be furnished" but the IPS specifically is "an instrument that governs or restricts a plan's operation falls within the scope of ERISA § 104(b)(4).").

Plaintiffs subsequently moved for summary judgment, arguing that the law of the case doctrine applies here, by discussing *Bell v. Hawaiian Airlines, Inc.*, where the Ninth Circuit held that the law of the case doctrine applies to holdings regarding "'requests for information,'" and "ERISA disclosure requirements." *Bell,* 147 F. App'x 643, 644–45 (9th Cir. 2005) (because a violation was held to have occurred, "the only question properly before the district court upon remand was whether to exercise its discretion to impose statutory penalties.").

## III. ARGUMENT

### A. STANDARD OF REVIEW IN ERISA ACTIONS

"Summary judgment is properly granted when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law.'" *Wander v. United Ben. Life Ins. Co.*, 905 F.2d 1541 (9th Cir. 1990) (quoting Fed.R.Civ.P. 56(c)). Evaluating ERISA pleadings requires a "context-sensitive scrutiny." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). At the summary judgment stage, "the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.*, at 587. "A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Wise v. MAXIMUS Fed. Servs., Inc.*, 445 F. Supp. 3d 170, 183 (N.D. Cal. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### B. Defendants Violated Section 104(b)(4)

The law of the case doctrine remains germane to this case. Defendants reraise the same legal disputes about how to interpret the same caselaw, and the same Charter language in the Complaint (which Defendants do not dispute) was already considered by this Court, as well as the framework for characterizing benefits in a defined contribution plan. That *Zavislak II* confirmed *Zavislak I* did not involve the law of the case doctrine, and does not discount such a principle here. *But see Bell,* 147 F. App'x at 644–45.

#### 1. Evidentiary objections

"So long as the evidence is offered for a proper purpose, ... the district court is accorded wide discretion in deciding whether to admit the evidence, and the test for admissibility is one of relevance." *United States v. Flores-Blanco*, 623 F.3d 912, 919 (9th Cir. 2010). To the extent that Defendants' evidentiary objections are not dubious, they are unavailing. "In a summary judgment motion […] the affiant must be a person through whom the exhibits could be admitted into evidence.'" *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773–74 (9th Cir. 2002) (citation omitted). "[S]elf-authenticating documents need no extrinsic foundation." *Id.*, at 774. All of Plaintiffs' exhibits are properly before the Court. Simply that they are verified by Mr. Gyandoh is not the end of the analysis, because Mr. Gyandoh has personal knowledge. Indeed, he signed the Requests (*see*, *e.g.*, Document

106-7 at 2), so it is not "second-hand knowledge.'" Defs' MSJ at 4 (citation omitted). In any event, Defendants do not dispute that the Requests and emails state what Plaintiffs represent that they do as a matter of fact. *See, e.g.,* Add'l Facts, ¶¶ 12, 15, 18.

Moreover, lead counsel was involved in this case since before the original complaint was filed, and the maker of the Requests, Mr. Gyandoh has personal knowledge that Plaintiffs were unaware than an IPS existed. More to the point, as a highly experienced ERISA attorney, Mr. Gyandoh's professional opinions about the strategy of this case is more akin to that of an expert rather than a lay person.[3] Defendants do not provide any authority whatsoever for their position that Mr. Gyandoh "cannot use [his] own knowledge or beliefs to demonstrate prejudice to their clients." Defs' MSJ at 4. Defendants' dispute with Mr. Gyandoh's opinion is a factual dispute, not an evidentiary issue.

Lastly, Mr. Gyandoh's declaration filed contemporaneously with Plaintiffs' Separate Statement in Support of Their Motion For Summary Judgment states "I have personal knowledge of the facts set forth below and, if called as witness, I could and would testify competently thereto" and "I declare, pursuant to 28 U.S.C. §1746 and under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief." Dkt. 106-2 at 1, 2. Rather than provide any rule under the Federal Rules of Evidence, or even any caselaw, Defendants make an unavailing argument that the proper attestation was not provided. As the Ninth Circuit has repeatedly held, "[t]his argument 'unnecessarily elevate[s] form over substance.'" *Feng Zou v. Mukasey*, 271 F. App'x 584, 585 (9th Cir. 2008) (an "unsworn written statement" was acceptable); *see also Sembiring v. Gonzales*, 499 F.3d 981, 990 (9th Cir. 2007) ("Denial for failure to provide an affidavit is particularly unwarranted" where it would result in dismissing a motion to reopen based on a mere technicality).

[3] *See Diaz v. BTG, Int'l, Inc*., 2021 WL 2414580, at *8 (E.D. Pa. June 14, 2021) (the undersigned is "well-qualified to weigh the risks and benefits of continued litigation."); *Nesbeth v. ICON Clinical Rsch. LLC*, No. 21-cv-1444, 2022 WL 22893879, at *4 (E.D. Pa. Mar. 10, 2022) ("Capozzi Adler, P.C. […] has extensive experience."); *Hawkins v. Cintas Corp*., 2024 WL 3982210, at *10 (S.D. Ohio 2021) (Capozzi Adler "are experienced ERISA attorneys.").

Defendants' evidentiary disputes are further without merit because Defendants agree that many of the facts in the Gyandoh Declaration and exhibits are "undisputed." *See* §II.A*, supra.*

**2. The IPS falls under Section 104(b)**

Defendants' arguments against liability *again* raises arguments pertaining to Ninth Circuit precedent that this Court has already foreclosed. Defendants ignore this Court's thorough Order, and ERISA's context specific requirement (*Fifth Third Bancorp*, 573 U.S. at 425) by arguing that "[t]here is no authority suggesting that an IPS" falls under *Hughes*. Defs' MSJ at 9. The Ninth Circuit standard in *Hughes* explicitly "offered 'no limiting principle'" let alone the limiting principles and characterization that Defendants advance here. Order at 21 (quoting *Hughes*, 72 F.3d at 690). The § 104(b)(4) analysis considers the type of plan at issue and the role of the document requested. *Id*., at 21-22; *see also Zavislak II*, 2025 WL 2717422, at *2 ("*Hughes* [], did not classify what documents were subject to disclosure under Section 104 by their type but rather by what role they play for the beneficiary.").

Defendants, without supplying the IPS to prove their position, attempt to downplay the IPS as mere "guidelines" because that is what it may have been in other cases. Defs' MSJ at 9 (citation omitted). As stated in Pltfs' MSJ, it is possible that in other plans and circumstances producing an IPS may not be required. However, that is indisputably not the case here. *See Allen v. Honeywell Ret. Earnings Plan*, No. 04-CV-424, 2005 WL 8160632, at *22 (D. Ariz. July 27, 2005) ("While some [similar] documents […] may not fall under § 1024(b)(4) […] Plaintiffs' description" suffices). In the context of this case "the IPS restricts or governs an important aspect of the Plan's operation: the Committee's process for selecting and retaining investments offered through the Plan." Order at 20. The IPS "provide[s] information about the Plan or benefits" because "the Plan at issue is a 401(k) retirement plan; the criteria used to invest participants' contributions is core information about the Plan." Order at 20-21. In a separate section Defendants concede that "[a]s the Ninth Circuit explained

in California *Ironworkers Field Pension Trust v. Loomis Sayles*, 259 F.3d 1036 (9th Cir. 2001), a plan fiduciary 'must comply with the plan's written statement of investment policy.'" Defs' MSJ at 14-15. That is particularly true here where "the Plan's Charter mandates" an IPS. Order at 20; Add'l Facts, ¶¶ 26-27.

Defendants go as far as calling this Court's legal framework regarding *Premera Blue Cross v. Microsoft Corp.*, 118 F.4th 1248 (10th Cir. 2024) and *Faircloth* incorrect as a matter of law. The Court was correct for several reasons. The two biggest reasons are that *Faircloth* involved an IPS, unlike Defendants' cases, and *Faircloth* was "consistent with the Ninth Circuit's narrow construction of the statutory language." Order at 20-21. Defendants fail to liken the IPS and context specific allegations here to the administrative services agreements ("ASAs") with third parties that "govern[ed] the relationships between [the Sponsor] and its third-party service providers." *Zavislak I*, 2024 WL 2884649, at *28-30. The IPS is between the Committee and Plaintiffs' "investments." Order at 20. Simply that Precept consulted on the IPS does not change the Charter's *mandate* that the *Committee* must adopt, review, and *comply* with the IPS and cannot delegate their responsibilities to outside parties. Add'l Facts, ¶¶ 26-27. Tellingly, Defendants do not address the Charter until several sections later. Precepts' role is an immaterial fact because it does not affect the fact the IPS was the type of document that must be disclosed under *Hughes*. Notably, Defendants also concede in another section of their brief that in some circumstances "an ASA must be produced" per the Ninth Circuit. Defs' MSJ at 13 (discussing *Becker*, 777 F.3d at 1039 n.2). This demonstrates ERISA's context specific standard.

Defendants' case of *Korst v. Sound Ret. Tr.*, No., 10-CV-1587, 2011 WL 13229290 (W.D. Wash. Mar. 23, 2011), is also misplaced because it involved an "actuarial report" that merely advise[d] the trustees." Defs' MSJ at 11 (quoting *Korst*, 2011 WL 13229290, at *5). *Korst* also involved a *defined benefit plan* with set payments, a distinction of decisive importance in the §

104(b)(4) analysis as to whether the requested document provides required information about "the Plan or benefits under *Hughes*." Order at 21-22. As Defendants concede, "[w]hat impacts a participant's benefit in this case is the result—which investments are available" (Defs' MSJ at 11), and "the IPS restricts or governs" this "important aspect." Order at 20. Finally, and relatedly, "other ERISA-mandated disclosures" (MTD at 11) did not provide "the criteria used to invest participants' contributions" which "is core information." Order at 22. Hence, the production of other disclosures is not a material fact. *See Wise*, 445 F. Supp. 3d at 183.

**3. The Court correctly found the IPS falls under *Hughes***

In light of this Court's Order, it is incorrect to state that "*Faircloth* is the only opinion Plaintiffs identify that penalized an administrator for failing to produce an IPS." Defs' MSJ at 12. *Faircloth* is at least one more case than Defendants provide. Plaintiffs also provide a number of cases where an "agreement incorporate[ing] a number of schedules which determine what investment funds a plan participant can choose to invest his or her benefits" was "comparable to the funding and investment policies addressed in *Faircloth*" and is comparable to the IPS here. *Askew v. R.L. Reppert, Inc.*, No. 11-CV-04003, 2016 WL 447060, at *12 (E.D. Pa. Feb. 5, 2016), *aff'd*, 721 F. App'x 177 (3d Cir. 2017); *see also Eden Surgical Ctr. v. Budco Grp., Inc.*, No. 10-CV-07024, 2010 WL 2180360, at **5-6 (C.D. Cal. May 27, 2010) (the "internally developed criteria" that the decisionmakers must "use" was an "instrument[] under which the plan is established or operated."). Defendants again take issue with this Court's well-reasoned legal holding and caselaw.

*Becker* (relied on in the Order) is a published Ninth Circuit case, so its *dicta* that "'favorably cited *Faircloth*'" remains persuasive, if not binding. Defs' MSJ at 13. Defendants take issue with the Ninth Circuit's holding in *Becker*, because it agreed with *Mondry v. Am. Fam. Mut. Ins*. Co., 557 F.3d 781 (7th Cir. 2009), which held that an ASA must be produced in certain circumstances. Defs' MSJ at 13. Defendants somehow attempt to state that this is at odds with *Zavislak II*, while simultaneously

admitting that "The Ninth Circuit did not even mention *Mondry* in its opinion in *Zavislak*." *Id*.[4] This affirms the context specific approach of these claims. So too does Defendants' case of *Truong* where the court refused to accept that "that valuation reports *categorically* are not encompassed by § 104(b)(4). *Hughes* forecloses that argument." *Truong v. KPC Healthcare, Inc.*, No. 23-CV-01384, 2024 WL 4867558, at *4 (C.D. Cal. Sept. 9, 2024) (emphasis added). IPSs are not categorically excluded from § 104(b)(4) requests, especially not the IPS here because it was "expressly cited by the Plan as criteria." *Eden Surgical Ctr.*, 2010 WL 2180360, at *7.

*Becker* and this Court are correct that *Faircloth* is persuasive. The distinction that "an ESOP is trustee-directed, while a 401(k) plan is participant-directed" (Defs' MSJ at 13) is again foreclosed by this Court's prior finding regarding the import of the type of plan at issue. "An ESOP is a defined-contribution" plan like the Plan. *Faircloth*, 91 F.3d at 661; Order at 21-22.[5] The "IPS in *Faircloth* dictated how the trustee invested the assets of the plan" MTD at 13, which is significantly similar to here where the IPS dictates the "menu of investment options" available to participants. Defs' MSJ at 13. This is especially true regarding the QDIA. *See* QDIA Notice.

**4. The Committee Charter is central to the context specific analysis**

Defendants do not dispute the language of the Charter. Add'l Facts, ¶¶ 26-27. Defendants fail to negate this conclusive evidence demonstrating the IPS's mandatory disclosure in this case. Foremost, Defendants' argument that the IPS must fall under one of only "four purposes" (Defs' MSJ at 15) again defies this Court's well-reasoned analysis that the IPS does in fact inform Plaintiffs about their benefits in the defined contribution plan sense. Order at 21-22. Defendants also strawman

---

[4] Of course, the fact that *Zavislak II* is unpublished also means it does not affect the opinion in *Becker*.

[5] For this reason, *Penwell* is entirely distinguishable because that involved a healthcare plan where the plaintiffs' "incredibly broad" request included information about negotiations with third parties and third party "contracts." *Penwell v. Providence Health & Servs.*, No. 19-CV-01786, 2021 WL 1222663, at *3 (W.D. Wash. Mar. 31, 2021); *but see* Order at 21-22 (this framework does not square with the 401(k) Plan and Plaintiffs' have a particularized request for one document).

Plaintiffs' position as that "every IPS" must be produced "irrespective of whether a charter or some other document states the IPS must be followed." Defs' MSJ at 15. The opposite is true. In Pltfs' MSJ and the Complaint, Plaintiffs narrow their position to the context specific facts of this case, particularly, "the Charter's terms for this Plan." Pltfs' MSJ at 8 (quoting Complaint, ¶ 231). These terms include that the IPS must exist, and that it shall be complied with. Add'l Facts, ¶¶ 26-27.

**5. Full investment information was not already provided**

Defendants have provided no disclosures showing the *Committee's* criteria for selecting and determining whether to maintain or replace investments and managers. Defendants, without providing the IPS, ask this Court to assume that all the disclosures provided all of the information the IPS could provide to Plaintiffs to know where they would "stand[] with respect to the plan.'" *Firestone*, 489 U.S. at 118. Where a plaintiff stands in respect to a plan is not limited to investment benchmarks and fees or what "the DOL believed.'" MTD at 16. Defendants' position is not supported by anything other than self-serving assumptions that they provided all that was necessary, even after this Court's Order rejected that belief. Defendants again ignore the role of the IPS in this case, as well as the plain text of ERISA and binding precedent that §104(b)(4) offers "'no limiting principle.'" Order, at 21 (quoting *Hughes*, 72 F.3d at 690). The fact that Defendants provided other documents is not a material fact because it does not disprove that any element, meaning it remains that Defendants failed to provide the IPS within 30 days. Add'l Facts, ¶¶ 1-4, 12-17, 22-23; *Wise*, 445 F. Supp. 3d at 183.

Defendant's only dispute is whether the IPS falls under §104(b)(4), but this is disingenuous based on the Charter, QDIA, and binding precedent. Defendants are indisputably liable.

**C. Penalties Under § 1132(c)(1)**

Each of the four factors set forth in *Moon* for determining an appropriate penalty under § 1132(c)(1) supports the maximum award of $110 a day. *See Moon v. Rush*, 69 F. Supp. 3d 1035, 1046 (E.D. Cal. 2014).

**1. Bad faith and intentional misconduct**

Neither the Ninth Circuit nor ERISA "require a plan administrator to act in bad faith to be liable for a penalty," but, nevertheless, Defendants' bad faith does weigh in favor of a full award.

*Bafford*, 101 F.4th at 657. Most of Defendants' lack-of-bad-faith arguments fatally hinge on their already rejected belief that they were not required to produce the IPS. In fact, the Order makes it far from "unclear" that the IPS should be produced. Defs' MSJ at 18; *but see Moon*, 69 F. Supp. 3d at 1040, 46-47 (the "failure" to provide the documents "even after the [] court made clear" that the plaintiff was entitled to them demonstrated that the defendant "acted in bad faith or committed intentional misconduct."). Defendants' attempt to distinguish *Moon* is unavailing, particularly because, in Defendants' own words, that "court issued a ruling that clearly" stated the plaintiff was "entitled to receive documents under 104(b)(4)." Defs' MSJ at 20. What matters is that the *Moon* defendants were on notice by the court, exactly like here.

Defendants do not address Pltfs' MSJ position that continuing to ask for the IPS would be futile (Pltfs' MSJ at 20-21), nor provide a single case where the defendant avoided penalties after refusing to confirm the existence of a document or state their reason for not providing a document in their response to a 104(b)(4) request. *But see Lyn M. v. Premera Blue Cross*, 966 F.3d 1061, 1066 (10th Cir. 2020) ("Of course, no member could clearly identify a document that the plan administrator has kept secret."). Equally disingenuous is Defendants' claim that "Plaintiffs agreed that 'no discovery is necessary.'" Defs' MSJ at 20. Plaintiffs neither dismissed the Complaint nor withdrew their 104(b)(4) requests, so discovery into *whether Defendants failed to comply* was not required for Defendants *to comply*. As Plfts' MSJ makes clear, they are still awaiting the IPS. Add'l Facts, ¶¶ 22-23.

It is also unavailing to say there is no bad faith because "Plaintiffs never asked if an IPS existed" (Defs' MSJ at 19) when it is undisputed that Plaintiffs repeatedly asked for the IPS. Add'l Facts, ¶¶ 1-5, 12-17. Defendants did not just drag out this litigation by deliberately obscuring their position as to the IPS's disclosure and its existence, but Defendants also explicitly "took the position of […] encouraging litigation" under § 1024(b)(4). *Hoskins v. Metro. Life Ins. Co.*, 551 F. Supp. 2d 942, 946–47 (D. Ariz. 2008). *See* TAC MTD, at 14 (Defendants argued that "if Plaintiffs truly

believed the response to their ERISA Section 104(b)(4) request was deficient, they could have sought penalties under ERISA Section 502(c)(1), 29 U.S.C. § 1132(c)(1).”)). It is of no moment that Plaintiffs did not bring a claim for failing to produce “Committee minutes and materials” because Plaintiffs never took the position that these documents must be produced under §104(b)(4). Defs' MSJ at 19.

**2. The length of the delay**

Like in *Moon*, the length of delay is “ongoing” in this case, even despite a ruling that should have resulted in furnishing the IPS. *Moon*, 69 F. Supp. 3d at 1046–47; *see also Moothart v. Bell*, 21 F.3d 1499, 1506 (10th Cir. 1994) (“it was not error to consider the violation as continuing up to the date of trial.”). Defendants do not dispute they are still withholding the IPS. Add'l Facts, ¶¶ 22-23. That Defendants produced other documents “well within the 30-day statutory window” (Defs' MSJ at 21) does not lessen the weight of the fact that Plaintiffs have still not received the IPS, even after the Order eviscerated any doubt that it should have been furnished. Defendants did not try to mitigate this reality by confirming that they did not believe the IPS was required when Plaintiffs originally asked. They were already communicating with Plaintiffs in their response to the Requests. Add'l Facts, ¶¶ 13-14, 16-17.

*Eden Surgical Center* does not help Defendants because, opposite of here, the “Defendants produced” the requested documents as well as other documents “which explained Viant's general methodology for arriving at” its decisions. *Eden Surgical Ctr.*, 2012 WL 3113885, at *9. Defendants' production is not just late, it is entirely absent. *Graeber* is not helpful because those documents were “not documents covered by the statute.” *Graeber v. Hewlett Packard Co. Emp. Benefits Org. Income Prot. Plan,* 421 F. Supp. 2d 1246, 1257 (N.D. Cal. 2006), *aff'd sub nom. Graeber v. Hewlett Packard Income Prot. Plan*, 281 F. App'x 679 (9th Cir. 2008); *but see* Order, 18-22.

In *Johnson*, the district court did not abuse its discretion because the defendants stated “that the passage of time made it difficult to locate plan documents and to determine their relevance.”

*Johnson v. Georgia-Pac. Corp.*, 260 F. *App'x* 994, 998 (9th Cir. 2007). Here, it is undisputed that Defendants never represented any difficulty obtaining the IPS and conceded that an IPS existed and was being used. Add'l Facts, ¶¶ 21.

**3. Plaintiffs' repeated attempts demonstrate diligence**

"[N]othing in the statute requires that more than one request be made before penalties may be imposed." *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 226 (4th Cir. 1998) (citing 29 U.S.C. § 1132(c)). Defendants' egregious misrepresentation that Plaintiffs did not make reasonable requests for the IPS rests on baseless assumptions about Plaintiffs' "litigation strategy" and repackages Defendants' bad faith arguments that Plaintiffs did not try harder to obtain the IPS. Defs' MSJ at 21. It is undisputed that Plaintiffs made several requests for the IPS before Defendants conceded that one even existed. Add'l Facts, ¶¶ 1-4, 12-17. Submitting limited discovery briefings and adding a claim under §104(b)(4) once the existence of the IPS was known is the furthest thing from "half-heartedly" seeking the IPS. Defs' MSJ at 22. Defendants did not confirm an IPS existed, encouraged Plaintiffs to bring a §104(b)(4) claim, then confirmed an IPS existed but continued to deny it, and then faulted Plaintiffs for not bringing a claim earlier. As detailed in Pltfs' MSJ, further requests, attempts, and communications regarding the IPS would have been futile.

Defendants' cases do not support Defendants' position. In *Harp*, the plaintiff did not send the request to the plan administrator, and the defendant still could "not escape responsibility[,]" but sending the document to the wrong recipient was "relevant to the assessment of a penalty." *Harp v. Kaiser Found. Health Plan, Inc.*, 133 F. Supp. 3d 1248, 1265, 1267 (D. Or. 2015). It is undisputed that multiple Plan administrators received the requests and ignored the subject of an IPS entirely. Add'l Facts, ¶¶ 1-4, 12-17. Like *Harp*, the "widely spaced intervals" (Defs' MSJ at 22) in *Hemphill* do not compare to this case, because those requests were made "over the course of a decade[,]" whereas Plaintiffs have been making multiple requests, briefings, and oral arguments since July of 2023. *Hemphill v. Est. of Ryskamp*, 619 F. Supp. 2d 954, 976 (E.D. Cal. 2008), *modified sub nom. Hemphill v. Pers. Representative of Est. of Ryskamp*, No. 05-CV-1319, 2008 WL 1696722 (E.D. Cal.

Apr. 8, 2008); Dkt. 1. However, the repeated attempts in *Hemphill* did justify awarding a penalty, just like the repeated attempts here. *Id*., at 977.

**4. Prejudice to Plaintiffs**

"[A] showing of prejudice is not required for a district court to grant damages under 29 U.S.C. § 1132(c)(1)(B)." *Ogren v. Northrop Grumman Corp*., No. 25-CV-02310, 2025 WL 3030578, at *17 (C.D. Cal. Sept. 10, 2025) (quoting *Barboza v. California Ass'n of Pro. Firefighters*, 594 F. App'x 903, 906 (9th Cir. 2014)); *see also Moon*, 69 F. Supp. 3d at 1047–48 (Although it is unclear whether she has suffered prejudice as a result of Habib's ERISA statutory violations, a lack of prejudice does not exonerate Habib's failure to timely provide Moon with Plan documents."). In particular, courts recognize that "involving the judicial system" to ***litigate a §104(b)(4) claim*** indisputably proves prejudice. *Hoskins*, 551 F. Supp. 2d at 946–47; *see also Davis v. Featherstone*, 97 F.3d 734, 738–39 (4th Cir. 1996). That Plaintiffs were already litigating a *different* claim does not detract from the time and resources dedicated to *this claim*.

Plaintiffs' insufficient breach of fiduciary duty claim is a separate injury. Defendants' argument that some cases survived without an IPS while others were successful at the 12(b)(6) stage because of IPS allegations ignores ERISA's context specific approach, where here the IPS had a mandatory criteria directly affecting Plaintiffs' menu of investments. *See* Order at 21-23; *Fifth Third Bancorp*, 573 U.S. at 425. Further, it strains credulity that the IPSs in upheld cases were not supplied via a Section 104(b)(4) request before formal discovery commenced, nonetheless that plan administrators would not, in accordance with what "the Supreme Court has suggested" decide to "err on the side of caution" by producing the IPS. *Davis*, 97 F.3d at 738 (discussing *Firestone*, 489 U.S. at 118).

The rest of Defendants' arguments rely on a mischaracterization of the IPS that this Court has rejected, because the IPS was a governing Plan document affecting the operation of the Plan and Participants' benefits. Plaintiffs need not allege (nor could they) exactly how they may "have crafted a plausible fiduciary-breach claim" without knowing what is in the IPS. Defs' MSJ at 24. The prejudice is in Plaintiffs' not knowing what was in the IPS while being aware of the potential to better

enforce their rights. "The import of a participant knowing 'exactly where he stands with respect to the plan' cannot be understated." *Cockerill v. Corteva, Inc*., No. 21-CV-3966, 2024 WL 5159892, at *65 (E.D. Pa. Dec. 18, 2024) (citation omitted). "[S]uch knowledge does not necessarily require that an employee had a [] decision to make." *Id.*

Ultimately, Defendants intentionally, in bad faith, and ongoingly have refused to provide the IPS to Plaintiffs which has resulted in unnecessary and protracted litigation. Defendants have offered no genuine, material disputes contradicting the indisputable record that Defendants are liable for not producing the IPS and should pay the full penalty.

**D. Plaintiffs Have Standing**

In ERISA cases, "[t]o establish standing under Article III, 'a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.'" *Wit*, 79 F.4th at 1082 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). The Ninth Circuit instructed that courts must consider "whether the statutory provisions at issue were established to protect [the plaintiff's] concrete interests." *Id.* The plaintiffs' "harm further includes the risk that their claims will be administered under a set of Guidelines that" was imprudent, and the "harm of not knowing the scope of the coverage their Plans provide" because "[t]he latter implicates Plaintiffs' ability to make informed decisions." *Id.*, at 1083.

Particularly relevant to Defendants' arguments is that "Plaintiffs need not have demonstrated that they were, or will be, entitled to benefits to allege a concrete injury" even though *Wit* was decided after a trial. *Id*. As *Wit's* post-trial opinion instructs, Plaintiffs do not need to prove that the IPS would have rendered their breach of fiduciary duty cases sufficient. This affirms the long-standing principle that "the traceability requirement is less demanding than proximate causation." *O'Handley v. Weber*, 62 F.4th 1145, 1161 (9th Cir. 2023); *see also Truong v. KPC Healthcare, Inc.*, No. 23-CV-01384, 2024 WL 1984569, at *9 (C.D. Cal. May 3, 2024) (same; regardless of the breach of plaintiffs'

fiduciary duty claim "Plaintiff has therefore adequately alleged that Alerus's failure or refusal to provide the" document " caused Plaintiff's injury—her inability to obtain the valuation report to which she has plausibly alleged she was entitled under ERISA."). Defendants' self-serving assumption that the IPS and deliberate blocking of information had no influence on Plaintiffs' fiduciary breach claims ignores that the harm was in preventing Plaintiffs from conducting a fully informed investigation into their options and to fully attempt to vindicate their rights.

Like *Wit*, "[P]laintiffs' alleged injuries are particularized because the [IPS criterium] are applied to" what was available "to each individual class member." *Wit*, 79 F.4th at 1083. Also, the plaintiffs' injuries are "fairly traceable to [the defendant's] conduct because their […] inability to know" more information was "connected to [Defendants'] alleged conduct." *Id*. *Wit* is not the only on-point case here. Cases reviewing similar standing challenges for failure to disclose documents understand that "[a] plaintiff may be injured by a defendant's failure or refusal to disclose information that it is required by law to disclose." *McFarlane v. First Unum Life Ins. Co*., 274 F. Supp. 3d 150, 161 (S.D.N.Y. 2017) (quoting 15 James W. Moore et al., *Moore's Federal Practice* § 101.40 (3d ed. 2015));[6] *see also Lundstrom v. Young*, No. 18-CV-2856, 2022 WL 15524624, at *16 (S.D. Cal. Oct. 27, 2022); *Truong*, 2024 WL 1984569, at *8.

Plaintiffs' informational injuries are sufficient. Defendants' application of *TransUnion* fails, because *TransUnion* was a case brought under "the Fair Credit Reporting Act" where the plaintiffs' inaccurate credit information was not "not disclosed to a third party." *TransUnion LLC*, 594 U.S. 413 at 434. Whereas here, the Plan's information was concealed and *should have been disclosed to Plaintiffs*. In *Lundstrom*, an ERISA case form this Circuit, the court applied *TransUnion* to case where

[6] That the plaintiffs in *McFarlane* failed to state a claim because they did "not plausibly alleged that First Unum is an "administrator" which is not an issue here. *McFarlane*, 274 F. Supp. 3d at 164.

the defendants "failure to provide [the plaintiff] information required under ERISA caused him harm" because the plaintiff "did not know the" decisions behind his benefits and "he would have better been able to 'evaluate his options in contesting the validity of the'" decisions. *Lundstrom*, 2022 WL 15524624, at *16. That is exactly the harm here. Contrary to Defendants' position, Plaintiffs have "identified 'downstream consequences' from the informational injury he has suffered under ERISA" which is more than a 'bare procedural violation.'" *Id.* (quoting *TransUnion LLC*, 594 U.S. at 442; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341(2016)).

Likewise, in *McFarlane* the plaintiff's "alleged inability to obtain her benefit plan documents satisfies the injury-in-fact requirement" where she "alleges that she 'fail[ed] to obtain information' that, under her reading of Section 1024(b)(4), she was entitled to receive." *McFarlane*, 274 F. Supp. 3d at 161; *see also Truong*, 2024 WL 1984569, at *8 ("Plaintiff has adequately alleged an injury in fact—namely, that the withholding of the requested valuation report in violation of ERISA prevents her from fully understanding the benefits to which she is entitled under the plan."). The court aptly reiterated that the "Supreme Court has recognized that the purpose of ERISA's disclosure requirements is to 'ensure[ ] that 'the individual participant knows exactly where he stands with respect to the plan.'" *McFarlane*, 274 F. Supp. 3d at 162 (quoting *Firestone*, 489 U.S. at 118); *see also Wit*, 79 F.4th at 1083. "Thus, ERISA does not mandate disclosure for disclosure's sake." *Id.*, at 163. Like here, the "non-disclosure of plan documents has frustrated [plaintiff]'s efforts to challenge the" effect that the defendant's decisions had on her benefits, and the information could "help her protect her rights." *Id*. Indeed, "*Spokeo* may have clarified certain principles" but "it did not disturb the long-standing principle […] that a plaintiff suffers an injury in fact when she is denied access to helpful information subject to disclosure under a statute." *Id*. Moreover, the injury was "particularized," because the Plaintiffs "requested information regarding her plan, and" was denied. *Id*., at 163. The denial meant that the injury was not "'conjectural or hypothetical[,]'" because the

plaintiff sought "relief for an injury that she has already suffered." *Id.*, (quoting *Spokeo*, 578 U.S. at 330). Plaintiffs continue to suffer the same injury here.

Defendants' other argument is a factual dispute and mischaracterization of the influence of the IPS that this Court has rejected. The IPS pertains to "core" information about Plaintiffs' benefits. Order at 20-21. Plaintiffs need not allege (nor could they) exactly how they may "have crafted a plausible fiduciary-breach claim" without knowing what is in the IPS. MTD at 24. Defendants' argument also defies Ninth Circuit precedent. *See Wit*, 79 F.4th at 1083.

## IV. CONCLUSION

For the foregoing reasons, and the reasons stated in their Opening Brief, Plaintiffs respectfully request that the Court: (1) grant summary judgment in Plaintiffs' favor, (2) award the full statutory penalty permitted, (3) deny Defendants' motion for summary judgment, and (4) grant Plaintiffs the opportunity to brief an award of attorney's fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine.

Dated: January 16, 2026

**CAPOZZI ADLER, P.C.**

s/ *Mark K. Gyandoh*
Mark K. Gyandoh, Esquire
(admitted *Pro Hac Vice*)
PA Attorney ID # 88587
312 Old Lancaster Road
Merion Station, PA 19066
Telephone: (610) 890-0200
Fax: (717) 233-4103
Email: markg@capozziadler.com

**ROSMAN & GERMAIN APC**

Daniel L. Germain
5959 Topanga Canyon Boulevard
Suite 360
Woodland Hills, CA 91367-7503
Telephone: (818) 788-0877
Fax: (818) 788-0885
E-mail: Germain@lalawyer.com

*Counsel for Plaintiffs and the Putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2026, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By: *Mark K. Gyandoh*
Mark K., Gyandoh, Esq.