**MORGAN, LEWIS & BOCKIUS LLP**
Dylan Rudolph, Bar No. 278707
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: +1.415.442.1000
Fax: +1.415.442.1001
dylan.rudolph@morganlewis.com

Deborah S. Davidson (pro hac vice)
110 N. Wacker Drive, Suite 2800
Chicago, IL 60606-1511
Tel: +1.312.324.1000
Fax: +1.312.324.1001
deborah.davidson@morganlewis.com

Sean McMahan (pro hac vice)
1717 Main Street, Suite 3200
Dallas, TX 75201-7347
Tel: +1.214.466.4000
Fax: +1.214.466.4001
sean.mcmahan@morganlewis.com

*Counsel for Defendants*

[Additional Counsel Listed on Signature Page]

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Michael Phillips, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAES Systems, LLC, The Board of Directors of CAES Systems, LLC, The 401(k) Plan Committee of CAES Systems, LLC, Cobham Advanced Electronic Solutions, Inc., The Board of Directors of Cobham Advanced Electronic Solutions, Inc., The 401(k) Plan Committee of Cobham Advanced Electronic Solutions, Inc., and John Does 1-30,<br><br>Defendants. | Case No. 5:23-cv-03785-EKL<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Date: February 25, 2026<br>Time: 10:00 a.m.<br>Location: San Jose Courthouse, Courtroom 7, San Jose, CA 95113<br>Judge: Hon. Eumi K. Lee<br>Fourth Am. Compl. Filed: April 18, 2025 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1
II. EVIDENTIARY OBJECTIONS ..... 1
III. ARGUMENT ..... 2
A. An IPS Is Not An "Other Instrument" Under Ninth Circuit Precedent. ..... 2
1. The "Law of the Case" doctrine does not apply to the Order. ..... 2
2. Plaintiffs misrepresent Ninth Circuit case law and otherwise largely concede that the IPS does not inform participants about their benefits. ..... 2
3. Plaintiffs received all the investment-related disclosures required by ERISA and an IPS is not among them. ..... 5
4. The Court should reject Plaintiffs' reliance on out-of-circuit case law that is inconsistent with *Hughes* and its progeny. ..... 6
B. The Court Should Decline To Impose Penalties. ..... 9
1. CAES did not act in bad faith. ..... 9
2. Defendants promptly responded to Plaintiffs' Section 104(b)(4) request with the documents required by Section 104(b)(4). ..... 10
3. Plaintiffs have not exercised diligence. ..... 11
4. Plaintiffs do not identify any prejudice. ..... 12
C. Plaintiffs Lack Article III Standing. ..... 13
IV. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
2016 WL 6662729 (C.D. Cal. July 29, 2016) ..... 1

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
137 F.4th 1015 (9th Cir. 2025),
*cert. granted*, 2026 WL 120679 (2026) ..... 5, 6, 12, 15

*Askew v. R.L. Reppert, Inc.*,
2016 WL 447060 (E.D. Pa. Feb. 5, 2016),
*aff'd*, 721 F. App'x 177 (3d Cir. 2017) ..... 8

*Bailey v. U.S.*,
289 F. Supp. 2d 1197 (D. Haw. 2003) ..... 1

*Becker v. Williams*,
777 F.3d 1035 (9th Cir. 2015) ..... 7

*Bell v. Hawaiian Airlines, Inc.*,
147 F. App'x 643 (9th Cir. 2005) ..... 2

*Davis v. Featherstone*,
97 F.3d 734 (4th Cir. 1996) ..... 12

*Eden Surgical Ctr. v. Budco Grp., Inc.*,
2010 WL 2180360 (C.D. Cal. May 27, 2010) ..... 8, 9

*Faircloth v. Lundy Packing Co.*,
91 F.3d 648 (4th Cir. 1996) ..... 6, 7

*Hoskins v. Metro. Life Ins. Co.*,
551 F. Supp. 2d 942 (D. Ariz. 2008) ..... 12

*Hughes Salaried Retirees Action Comm. v. Adm'r of the Hughes Non-Bargaining Ret. Plan*,
72 F.3d 686 (9th Cir. 1995) ..... passim

*Kinsinger v. SmartCore, LLC*,
2019 WL 4026257 (W.D.N.C. Aug. 27, 2019) ..... 7

*Korst v. Sound Ret. Tr.*,
2011 WL 13229290 (W.D. Wash. Mar. 23, 2011) ..... 9

*Lundstrom v. Young*,
2022 WL 15524624 (S.D. Cal. Oct. 27, 2022) ..... 13, 14

*McFarlane v. First Unum Life Ins. Co.*,
274 F. Supp. 3d 150 (S.D.N.Y. 2017) ..... 14, 15

*Mondry v. Am. Family Mut. Ins. Co.*,
557 F.3d 781 (7th Cir. 2009) ..... 7, 8

*Moon v. Rush*,
69 F. Supp. 3d 1035 (E.D. Cal. 2014) ..... 9

*Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013) ..... 15

*Penwell v. Providence Health & Servs.*,
2021 WL 1222663 (W.D. Wash. Mar. 31, 2021) ..... 9

*Shaver v. Operating Eng'rs Local 428 Pension & Tr. Fund*,
332 F.3d 1198 (9th Cir. 2003) ..... 4

*TransUnion v. Ramirez*,
594 U.S. 413 (2021) ..... 13, 14

*Truong v. KPC Healthcare, Inc.*,
2024 WL 4867558 (C.D. Cal. Sept. 9, 2024) ..... 15

*Truong v. KPC Healthcare, Inc.*,
2024 WL 1984569 (C.D. Cal. May 3, 2024) ..... 14, 15

*Wit v. United Behavioral Health*,
79 F.4th 1068 (9th Cir. 2023) ..... 14

*Zavislak v. Netflix, Inc.*,
2025 WL 2717422 (9th Cir. Sept. 24, 2025) ..... passim

**STATUTES**

ERISA § 104(b)(4) ..... passim

## I. INTRODUCTION

The crux of the parties' dispute is whether an IPS is an "other instrument" that provides information about "the actual benefits to which Plan participants are entitled or the processes Plan participants must undergo to obtain those benefits" subject to production under ERISA Section 104(b)(4). *Zavislak v. Netflix, Inc.*, 2025 WL 2717422, at *2 (9th Cir. Sept. 24, 2025) ("*Zavislak II*"). Plaintiffs' latest brief mostly ignores this question, instead doubling down on their theory that this Court already held Defendants must produce the IPS. That is incorrect. More importantly, a straightforward application of Ninth Circuit precedent demonstrates that an IPS is not subject to production because, as Plaintiffs repeatedly admit, that type of document relates only to "the *Committee's* criteria" for selecting "investments and managers," and does not provide information about benefits offered by the Plan or the processes for obtaining those benefits. ECF 113 at 14. That admission dooms Plaintiffs' claims, and the Court should grant judgment in Defendants' favor.

## II. EVIDENTIARY OBJECTIONS

Defendants objected to "facts" regarding Plaintiffs' state of mind that were supported only by a declaration from Plaintiffs' counsel. ECF 109 at 4. Plaintiffs respond that their counsel "is more akin to that of an expert than a lay person" with respect to ERISA litigation strategy. ECF 113 at 9. But Plaintiffs have not taken any steps to qualify their counsel as an expert. And Plaintiffs' personal understanding of whether an IPS existed is not "litigation strategy" and not a subject for expert testimony. Even if Plaintiffs' counsel is an "expert" on ERISA litigation strategy, that does not qualify him to opine on what Plaintiffs "believed." *E.g.*, *Bailey v. U.S.*, 289 F. Supp. 2d 1197, 1203 (D. Haw. 2003) ("Counsel is not competent to testify as to what [his clients] knew and when they knew it. Accordingly, the court disregards his declaration."); *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 2016 WL 6662729, at *5 (C.D. Cal. July 29, 2016) (rejecting attorney declaration that his clients had "misunderstood" something because he did not have "personal knowledge of his clients' thoughts and beliefs"). Plaintiffs could have submitted evidence explaining that (1) they reviewed the documents produced by CAES; (2) they were unaware an IPS existed; and (3) the IPS would have influenced their investment decisions. They have not done so, and there is no admissible evidence in the record that demonstrates prejudice or harm to Plaintiffs.

Plaintiffs also conflate the attestation requirement in 28 U.S.C. § 1746 with this Court's mandate that all Separate Statements filed in connection with summary judgment briefs contain an attestation that "the evidence cited herein fairly and accurately supports or disputes the facts as asserted." ECF 109 at 4. This is not form over substance—Defendants dispute Plaintiffs' "facts" because they misrepresent the underlying documents. *E.g.*, ECF 110 Facts 5, 7, 14-18, 20, 25-26, 28.[1] Moreover, Plaintiffs' failure to submit any reply Separate Statement disputing the facts submitted by Defendants means those facts are "deemed to be admitted."[2]

## III. ARGUMENT

### A. An IPS Is Not An "Other Instrument" Under Ninth Circuit Precedent.

#### 1. The "Law of the Case" doctrine does not apply to the Order.

Plaintiffs' primary argument is that the Court's motion to dismiss opinion ("Order") resolved liability. ECF 113 at 6-8. If that were true—and it is not—the Court would have granted judgment in Plaintiffs' favor and ordered the parties to brief penalties only. And if the Order obligated Defendants to produce the IPS, Plaintiffs presumably would have conveyed that position to Defendants in discovery. Plaintiffs also ignore Defendants' argument that even if the Court held at the Rule 12 stage that an IPS must be produced in response to a 104(b)(4) request, it can reconsider that issue now. ECF 109 at 17. Their only response is (again) to cite *Bell v. Hawaiian Airlines, Inc.*, 147 F. App'x 643 (9th Cir. 2005), for their argument that the law of the case doctrine applies. ECF 113 at 7-8. But *Bell* involved a district court reconsidering on remand an issue already decided differently by the Ninth Circuit. 147 F. App'x at 644-45. That is not the situation here, and the law of the case doctrine does not restrict this Court's analysis. ECF 109 at 17 (citing authority).

#### 2. Plaintiffs misrepresent Ninth Circuit case law and otherwise largely concede that the IPS does not inform participants about their benefits.

Plaintiffs' response blatantly mischaracterizes Ninth Circuit case law and otherwise

[1] Plaintiffs' reply brief also exceeds the twenty-page limit set by the Court. Standing Order for Civil Cases Before Judge Eumi K. Lee, https://cand.uscourts.gov/sites/default/files/standing-orders/EKL-CivilStandingOrder-8-28-2025.pdf at 10.

[2] *See* Standing Order for Civil Cases Before Judge Eumi K. Lee, https://cand.uscourts.gov/sites/default/files/standing-orders/EKL-CivilStandingOrder-8-28-2025.pdf at 11.

concedes an IPS says nothing about the benefits offered or how to obtain them, meaning it does not fall within the purview of Section 104(b)(4). Plaintiffs argue that *Hughes Salaried Retirees Action Comm. v. Adm'r of the Hughes Non-Bargaining Ret. Plan*, 72 F.3d 686, 689-91 (9th Cir. 1995) (en banc), "offered 'no limiting principle'" with respect to documents subject to Section 104(b)(4). ECF 113 at 10, 14. That is the ***exact opposite*** of what the Ninth Circuit held. The en banc court rejected the panel's reasoning (which is no different than the argument Plaintiffs proffer here) that ERISA "requires disclosure of all documents that are 'critical to the operation of the plan'" because that test "admits of no limiting principle." *Hughes*, 72 F.3d at 690. Instead, the only documents that qualify as "other instrument[s]" under which a plan is "established or operated" are similar to those specifically listed in Section 104(b)(4) and that otherwise inform a participant (1) "what benefits he may be entitled to"; (2) "what circumstances may preclude him from obtaining benefits"; (3) "what procedures he must follow to obtain benefits"; and (4) "who are the persons to whom the management and investment of his plan funds have been entrusted." *Id.*

Plaintiffs seemingly agree with Defendants that an IPS does not satisfy that limiting test—an IPS (1) does not inform a participant about "benefits he may be entitled to"; (2) says nothing about the "circumstances that may preclude [a participant] from obtaining benefits"; (3) does not address the process for obtaining benefits; and (4) does not identify the persons responsible for managing investments. ECF 109 at 9-17. Instead, Plaintiffs repeatedly quote the Court's Order for the proposition that an IPS serves a singular purpose: it "restricts or governs an important aspect of the Plan's operation; the Committee's process for selecting and retaining" Plan investments. ECF 113 at 7, 10, 12; *see also id*. at 14 (arguing the IPS provides information on "the *Committee's* criteria for selecting and determining whether to maintain or replace investments and managers."). But if an IPS is not similar to the other documents specifically listed in Section 104(b)(4)—and Plaintiffs do not argue it is—and if an IPS does not satisfy any of the four criteria set forth in *Hughes*, then it cannot be an "other instrument" under Ninth Circuit authority.

*Zavislak II* makes this clear. The Ninth Circuit explained that "*Hughes* . . . did not classify what documents were subject to disclosure under Section 104 by their ***type*** but rather by what role they play for the ***beneficiary***." 2025 WL 2717422, at *2 (emphasis added). Plaintiffs effectively

admit the IPS plays no role for the beneficiaries themselves. Like the ASA at issue in *Zavislak II*, an IPS is silent regarding "the actual benefits to which Plan participants are entitled or the processes Plan participants must undergo to obtain those benefits." *Id.* at *2.

Defendants do not "attempt to downplay" the IPS. ECF 113 at 10. Whether one describes it as providing "guidelines" (as Defendants do) or "criteria" (as Plaintiffs do), the parties agree that the IPS informs the Committee's processes for selecting and monitoring Plan investments. But again, that is not enough in the Ninth Circuit. The charter does not change this conclusion. Once adopted, a fiduciary must comply with an IPS. ECF 109 at 14-15. But compliance with a document is not one of the factors considered by the Ninth Circuit. Indeed, there are numerous documents that "restrict or govern" a plan's operation, yet *Hughes* explicitly rejected the argument that all documents "critical to the operation of the plan" must be produced. *Hughes*, 72 F.3d at 690; *see also Shaver v. Operating Eng'rs Local 428 Pension & Tr. Fund*, 332 F.3d 1198, 1202 (9th Cir. 2003) (documents that "relate only to the manner in which the plan is operated" and do not "provide individual participants with information about the plan and benefits" are not subject to 104(b)(4)).

Moreover, if Plaintiffs are correct that the IPS must be produced because it is mandated by the charter, then any other document required by a committee charter would also be subject to production. For example, the charter required the Committee to prepare an annual budget for the Plan covering "all expenses relating to the Plan," providing a line item for each service provider expense, and requiring the Committee operate the Plan according to that budget. ECF 111-9 at CAES_000662-63 §§ II.1, II.3. But the Ninth Circuit has explicitly rejected the claim that budget-related documents must be produced under 104(b)(4). *Shaver*, 332 F.3d at 1202 ("itemized lists of expenditures" not required to be produced under 104(b)(4)). The charter also requires the Committee to execute ASAs with investment advisors and other service providers. ECF 111-9 at CAES_000662-63 §§ II.3(a)-(b). The Ninth Circuit has twice held that ASAs are not "other instruments" within the meaning of Section 104(b)(4). *E.g.*, *Zavislak II*, 2025 WL 2717422, at *2. Clearly, then, it is not enough that the IPS was mandated by the Committee charter or that the Committee was required to follow the IPS.

**3. Plaintiffs received all the investment-related disclosures required by ERISA and an IPS is not among them.**

Plaintiffs argue that CAES's provision of investment-related disclosures required by statute and regulation "is not a material fact," but do not address any of the case law Defendants cited finding no violation of Section 104(b)(4) where the plaintiff had access to information that allowed them "to know exactly where they stand with respect to the plan." ECF 109 at 16-17 (citing cases). Instead, Plaintiffs argue that without the IPS, they do not have access to Committee criteria for selecting and monitoring investments. ECF 113 at 14. That is exactly Defendants' point. An IPS provides no information about the actual investments offered in the Plan; that information is available to participants in the 404a-5 disclosures and Form 5500s. *See* ECF 109 at 3, 15-17. And an IPS says nothing about the benefits offered to participants or how to obtain those benefits; that information is available in the SPD and Plan document. *See id*. Plaintiffs don't attempt to explain how information about the Committee's internal processes would inform them of where they individually stood with respect to the Plan. The only argument they make is that, if they had access to the IPS, they might have been able to craft a plausible breach of fiduciary duty claim. But the Ninth Circuit explicitly rejected a similar argument in *Hughes*, denying the participants documents they sought to "enforce their rights and police the administration of the plan." 72 F.3d at 698.

*Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015 (9th Cir. 2025), *cert. granted*, 2026 WL 120679 (2026), reinforces this concept. That opinion discussed the well-established notion that plaintiffs in ERISA fiduciary breach cases "typically lack extensive information regarding the fiduciary's methods and actual knowledge because those details tend to be in the sole possession of that fiduciary." *Id.* at 1025 (cleaned up). Far from suggesting that ERISA's disclosure requirements impose a duty to provide participants with information about those internal fiduciary "methods," such as an IPS, the Ninth Circuit instead noted that ERISA plaintiffs are not required to "plead facts which tend systemically to be in the sole possession of defendants," 137 F.4th at 1025, and can state a plausible claim through other methods. "ERISA requires plan administrators to make extensive disclosures to participants, including a summary plan description and an annual report with audited financial statements." *Anderson*, 137 F.4th at 1025-26 (citing 29 U.S.C. §§ 1022

and 1023). It is these mandated disclosures that provide participants with the "detailed information" they need about the plan's investment options that render participants "well positioned to find appropriate comparators or to explain why these specific investments are so inherently risky, individually or in the aggregate, that selecting them was imprudent." *Anderson*, 137 F.4th at 1026. In other words, "[a]n ERISA plaintiff can use the data about the selected funds" that must be disclosed under the statute "and some circumstantial allegations about methods to show that a prudent fiduciary in like circumstances would have acted differently." *Id.* (cleaned up). Plaintiffs in this case had access to the same information plaintiffs typically have in similar cases.

In short, it is not the process behind the investment selection that must be provided to participants but, rather, detailed information about the investment options themselves once selected for inclusion in the plan. Requiring disclosure of an IPS just because it contains information about the fiduciary process that would not otherwise be subject to disclosure were it in a different form (e.g., in the underlying committee minutes and materials) may simply lead to fiduciaries foregoing adopting such documents. Ultimately, Defendants provided Plaintiffs with all the information about the Plan's investment options that they were required to.

**4. The Court should reject Plaintiffs' reliance on out-of-circuit case law that is inconsistent with *Hughes* and its progeny.**

The out-of-circuit authority Plaintiffs rely on is inconsistent with *Hughes*, *Zavislak*, and the other Ninth Circuit authority that this Court must follow. Defendants already explained that *Faircloth v. Lundy Packing Co.*, 91 F.3d 648 (4th Cir. 1996), is inapt for several reasons. ECF 109 at 12-13. Plaintiffs' only response is that the Court's Order precludes consideration of the differences between an ESOP and a 401(k) plan. ECF 113 at 13. But that distinction was not before the Court at the motion to dismiss stage. *See generally* Order. Moreover, Plaintiffs concede "[t]he § 104(b)(4) analysis considers the type of plan at issue and the role of the document requested." ECF 113 at 10. Plaintiffs otherwise do not address the differences that render *Faircloth* inapposite.[3]

[3] The concurrence in *Faircloth* highlighted the critical differences between an ESOP and 401(k) plan, noting that "Congress did not expressly indicate how § 104(b)(4) should be applied in the special context of an [ESOP]." 91 F.3d at 661. "In a nutshell, § 104(b)(4) must be read broadly in the ESOP situation because ESOP investments can be riskier than many other investments.

Plaintiffs argue that a footnote from *Becker v. Williams*, 777 F.3d 1035, 1039 n.2 (9th Cir. 2015), means that this Circuit adopted the same approach as the Fourth Circuit in analyzing the "other instruments" language. ECF 113 at 12-13. That is not true. ECF 109 at 12-13. *Becker* did not involve a Section 104(b)(4) claim and cited *Faircloth* (and *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781 (7th Cir. 2009)) for the general proposition that "[o]ther circuits have similarly construed § 1024(b)(4) as encompassing only formal documents that govern the operation of the plan." 777 F.3d at 1039 n.2. That much is true—the Fourth, Seventh, and Ninth Circuits have all limited the "other instruments" language in that manner. However, the Ninth Circuit requires an additional consideration—the "formal documents" governing the plan must also inform a participant about "the actual benefits to which Plan participants are entitled or the processes for obtaining benefits." *Zavislak II*, 2025 WL 2717422, at *2.

Neither *Faircloth* nor *Mondry* for that matter require such an analysis. One need only look to the case law addressing ASAs to understand that the Fourth and Seventh Circuit apply different standards than the Ninth. As previously explained, in the Ninth Circuit, ASAs are not "other instruments" under Section 104(b)(4) because they do not provide information necessary for participants to understand where they stand with respect to the plan. ECF 109 at 8-10. But ASAs must be produced in the Fourth and Seventh Circuits solely because they are documents under which a plan is "operated." *See Kinsinger v. SmartCore, LLC*, 2019 WL 4026257, at *7 (W.D.N.C. Aug. 27, 2019) (applying *Faircloth*); *Mondry*, 557 F.3d at 796.

Plaintiffs also misstate two of Defendants' arguments concerning *Becker* and *Mondry*. First, they suggest that Defendants "concede" that "in some circumstances 'an ASA must be produced' per the Ninth Circuit," citing Defendants' discussion of *Becker* and *Mondry*. ECF 113 at 11. But the language Plaintiffs quote is a description of the Seventh Circuit's holding in *Mondry*, not *Becker*. ECF 109 at 13. Second, Plaintiffs argue Defendants "admit" that "[t]he Ninth Circuit did

---

Maximum disclosure should be required so employees will have all the information necessary for them to understand and manage the risk associated with their ESOP investment." *Id.* "An employee should be allowed to know enough so he can make an informed judgment on whether Plan fiduciaries are making prudent decisions, including whether they are buying and selling shares of the sponsor company at a fair price." *Id.* at 663. Those "unique" risks do not exist here. *Id.* at 662.

not even mention *Mondry* in its opinion in *Zavislak*." ECF 113 at 12-13. Plaintiffs misconstrue the meaning of this "admission." The fact the Ninth Circuit did not mention *Mondry* in *Zavislak II* is notable because the plaintiff in *Zavislak II* argued that "the facts in *Mondry* were 'strikingly relevant'" to his claim that an ASA is an "other instrument." ECF 109 at 13 (citing *Zavislak* appellate briefing). The Ninth Circuit disagreed, rejecting plaintiff's reliance on "largely out-of-circuit decisions that interpret Section 104 to mandate broad disclosure" and reinforcing *Hughes*. *Zavislak II*, 2025 WL 2717422, at *2 & n. 2.

Outside of the above, Plaintiffs largely do not dispute Defendants' arguments concerning the Ninth Circuit's application of Section 104(b)(4) to ASAs. Instead, they argue this authority is irrelevant because an ASA "govern[s] the relationships between the Sponsor and its third-party service providers," whereas an IPS "is between the Committee and Plaintiffs' 'investments.'" ECF 113 at 11. That misses the point. Like an ASA, an IPS is an "internal document[] that do[es] not bear on where participants stand regarding the plan." ECF 109 at 9 (quoting *Zavislak II*, 2025 WL 2717422, at *2). Plaintiffs do not appear to dispute that characterization.

Defendants already explained why *Askew v. R.L. Reppert, Inc.*, 2016 WL 447060 (E.D. Pa. Feb. 5, 2016), *aff'd*, 721 F. App'x 177 (3d Cir. 2017), and *Eden Surgical Ctr. v. Budco Grp., Inc.*, 2010 WL 2180360 (C.D. Cal. May 27, 2010), are no help to Plaintiffs. ECF 109 at 14. Contrary to the Plaintiffs' suggestion, the "schedules" in *Askew* were nothing like an IPS. ECF 113 at 12. Rather, they contained a literal list of the investments that could be selected by the plan's fiduciary and denoted those that were in the plan. *See* Ex. 3 to Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment, *Askew v. R.L. Reppert, Inc.*, No. 5:11-cv-04003, Dkt. 78-4 (E.D. Pa. Apr. 24, 2015).[4] Plaintiffs do not suggest an IPS contains a similar list. That information was available to them through the Plan's 404a-5 disclosures and Form 5500 filings, which must be disclosed to participants. ECF 110 at Add'l Facts 10, 12.

Plaintiffs' continued mischaracterization of *Budco Grp.* is mystifying. *Budco Grp.* held that "internally developed criteria" that determined "what claims and amounts are reimbursable under

[4] The plaintiff in *Askew* also argued that the custodial agreement at issue qualified as a trust agreement, which is one of the documents explicitly enumerated in Section 104(b)(4). 2016 WL 447060, at *9. CAES produced a copy of the Plan's trust agreement. ECF 110 at Add'l Fact 2.

the plan" were subject to Section 104(b)(4) because they provide information about "how claims are processed and reimbursements are calculated." 2010 WL 2180360, at *6-7. *Budco Grp.* plainly did not hold that ***all*** "internally developed criteria" are subject to Section 104(b)(4). Instead, it stands for the narrow proposition that "internally developed criteria" are subject to production under Section 104(b)(4) if they also "provide participants with information on how benefits are calculated." *Id.* at *6-7. Plaintiffs admit an IPS does not provide that sort of information.

Plaintiffs attempt to distinguish *Penwell v. Providence Health & Servs.*, 2021 WL 1222663 (W.D. Wash. Mar. 31, 2021), and *Korst v. Sound Ret. Tr.*, 2011 WL 13229290 (W.D. Wash. Mar. 23, 2011), because they involved a healthcare plan and defined benefit plan, respectively. ECF 113 at 11-12, 13 n.5. Those cases stand for the proposition that internally developed criteria and documents memorializing the fiduciary process are not "other instruments" under Ninth Circuit law if they do not provide a beneficiary information about benefits. That is also true of an IPS, and the type of plan does not change that outcome.

**B. The Court Should Decline To Impose Penalties.**

Plaintiffs' argument for penalties largely relies on the fact that Defendants did not voluntarily produce the IPS following the Court's Order, but they make no persuasive attempt to explain why it took them almost three years after their request to raise this dispute in the first place. Again, nothing in their latest brief cures these defects, and there is no basis for imposing penalties.

**1. CAES did not act in bad faith.**

Plaintiffs' argument that CAES acted in "bad faith" is unavailing. Plaintiffs notably fail to address any of the cases Defendants cited holding that it is not bad faith to withhold documents where "the duty to furnish was unclear." ECF 109 at 18 (quoting *Rivera v. Miller*, 1992 WL 43542, at *1 (9th Cir. 1992)). Plaintiffs suggest the Order put Defendants "on notice" that they must produce the IPS, citing *Moon v. Rush*, 69 F. Supp. 3d 1035 (E.D. Cal. 2014). Defendants already explained why *Moon* does not support penalties here. ECF 109 at 20. That case involved a failure to produce a pension benefit statement under 29 U.S.C. § 1025(a) to an individual a different court had already ruled was a beneficiary and thus entitled to such a statement. 69 F. Supp. 3d at 1046.

Nor did Defendants ever "obscure" the existence of the IPS. ECF 113 at 15. Plaintiffs

concede they served an overbroad request seeking documents that are plainly outside Section 104(b)(4). ECF 113 at 16. Defendants produced documents that fell within the scope of that Section. ECF 109 at 19-20. Plaintiffs then proceeded to serve the same requests twice more, without identifying any deficiencies in Defendants' initial production. For the next three years, Plaintiffs never once suggested that Defendants were obligated to produce the IPS or indicated that Plaintiffs were "unaware" an IPS existed. *Id*.

Plaintiffs' concession that Committee minutes and materials are not "other instruments" is important to the Court's consideration of penalties. Plaintiffs admit they sent a request seeking numerous documents CAES was not obligated to produce. At no time did Plaintiffs indicate which documents they believed CAES was required to produce and which documents Plaintiffs hoped CAES would produce even if not required. Absent any specific inquiry, there is no basis for CAES to know Plaintiffs thought the IPS fell within 104(b)(4), unlike the Committee minutes and materials (and other documents like prospectuses) that they now concede do not.

Plaintiffs' argument about discovery is disingenuous. First, they ignore that the parties negotiated a stay of discovery in exchange for Defendants' agreement to produce "core Plan-related documents" and that Plaintiffs did not ask about an IPS. ECF 109 at 22. Second, Plaintiffs had an opportunity to conduct discovery prior to summary judgment briefing, including requesting production of the IPS, but decided it was not necessary. Ironically, Plaintiffs criticize Defendants for making arguments "without providing the IPS," ECF 113 at 14, but if they believed the IPS was important to their Section 104(b)(4) claim, they could have sought it in discovery.

**2. Defendants promptly responded to Plaintiffs' Section 104(b)(4) request with the documents required by Section 104(b)(4).**

Plaintiffs' statement that "Defendants' production is not just late, it is entirely absent," is unequivocally false. ECF 113 at 16. Plaintiffs concede that CAES responded to their initial request within 30 days, produced a host of documents, and explained that it was producing the documents that "Section 104(b)(4) requires a plan administrator to provide." ECF 110 at Fact 13. It was not until April 2025 that Plaintiffs first identified any purported deficiency with that production—and, even then, the only missing document they claimed is the IPS, not the many other documents (e.g.,

Committee minutes, presentations, and any documents referenced therein, fund prospectuses) that were requested and not produced. ECF 109 at 21. Plaintiffs fall back, again, on their wrongheaded argument that this Court's Order holding that they stated a plausible claim somehow obligated CAES to produce the IPS. ECF 113 at 16. Even if they were correct, the only "undue" delay would be from the date of the Court's Order when, under Plaintiffs' theory, Defendants were supposedly "on notice" of their obligation. Of course, the Court did not order the IPS produced.

**3. Plaintiffs have not exercised diligence.**

Plaintiffs' "repeated attempts" to obtain the IPS consisted of serving three near-identical document requests without any explanation as to what was supposedly missing from CAES's production. Plaintiffs falsely stated in the second request that they had "not received a response to [their] original letter," suggesting that they never bothered to review the documents they received before sending their second request. ECF 110 at Fact 15. Nor did Plaintiffs ever convey to CAES their view that the IPS or other documents not produced were subject to disclosure under Section 104(b)(4). And Plaintiffs do not even address Defendants' argument that the charter put them on notice of the existence of the IPS. ECF 109 at 19-20. Ultimately, CAES should not be held liable for failing to read Plaintiffs' minds.

To the extent Plaintiffs sought the IPS through "limited discovery briefings," those briefs were only submitted after the Court asked if an IPS existed. That simply highlights that Plaintiffs had not exercised diligence up to that point. Moreover, when Plaintiffs sought to obtain the IPS through "discovery briefing," their complaint was on the verge of dismissal and their request was procedurally incorrect and barred by Ninth Circuit precedent. ECF 75 at 5.

Further, Defendants never "encouraged" Plaintiffs to file suit—Defendants merely pointed out that if Plaintiffs thought the IPS was subject to production under Section 104(b)(4), then they could have filed a claim for penalties. ECF 58 at 14. Defendants further argued that "[t]he fact they have not done so is an acknowledgement that Defendants were not obligated to produce a copy of their IPS." *Id*. Ultimately, Defendants have no idea why Plaintiffs assumed an IPS did not exist yet never conveyed that assumption to Defendants. There is no secret, however, regarding the reason Plaintiffs did not file a claim for statutory penalties until nearly three years after their initial

document request—this is a Hail Mary to revive their fiduciary breach claims.

**4. Plaintiffs do not identify any prejudice.**

Plaintiffs cite *Hoskins v. Metro. Life Ins. Co.*, 551 F. Supp. 2d 942, 946-47 (D. Ariz. 2008), to support their argument that "'involving the judicial system' to litigate a § 104(b)(4) claim indisputably proves prejudice." ECF 113 at 18. That is not what *Hoskins* held. First, *Hoskins* does not mention "prejudice" once. Second, the documents at issue in *Hoskins* were "the Plan, policy, and plan summary," all enumerated documents that (unlike an IPS) must be produced under Section 104(b)(4). 551 F. Supp. 2d at 946. *Davis v. Featherstone*, 97 F.3d 734, 738 (4th Cir. 1996), similarly sought production of the plan document. And the issue in *Davis* was whether the individual requesting the document was a plan participant at the time of the request, and the Fourth Circuit noted it was "apparent" that she was. *Id*. Regardless, Plaintiffs' argument here once again ignores Defendants' argument, and the supporting case law, that "it is perfectly reasonable to involve the courts where, as here, the duty to disclose was not clear." ECF 109 at 23.

Plaintiffs confirm that the only prejudice they assert is that their fiduciary breach claim failed. ECF 113 at 18. Their argument is muddled, but they seem to suggest that it would be impossible for them to state a plausible claim for breach of fiduciary duty without the IPS.[5] That is belied by the hundreds of complaints challenging investment performance that have survived dismissal over the years. ECF 109 at 23. Regardless, *Anderson* precludes such a conclusion. The Ninth Circuit explained that ERISA plaintiffs receive all the information they need to state a plausible breach of fiduciary duty claim from the disclosures required by ERISA (and did not identify an IPS as one of those disclosures). *Supra* at 5-6. And if enabling a plaintiff to state a plausible claim was a viable reason for requiring production under Section 104(b)(4), then *Hughes* would have been decided differently since the plaintiffs there sought documents for the same reason. 72 F.3d at 698. It was not enough in *Hughes* and is not enough here.

[5] Plaintiffs argue it "strains credulity" that the IPSes cited in other cases "were not supplied via a Section 104(b)(4) request before formal discovery commenced." ECF 113 at 18. But they do not identify any case where the IPS was in fact produced pursuant to a Section 104(b)(4) request as opposed to, e.g., as part of a negotiated stay (the same way Plaintiffs obtained many documents in this case) or discovery order. Mere speculation without any evidence to back it up does not demonstrate prejudice at summary judgment.

Ultimately, Plaintiffs give away the game by arguing that "[t]he prejudice is in Plaintiffs' not knowing what was in the IPS while being aware of the potential to better enforce their rights." ECF 113 at 18-19. Plaintiffs do not suggest that their prejudice lies in being unaware of their benefits under the Plan, what might preclude them from receiving benefits, or the processes for obtaining benefits. Instead, the prejudice lies solely in the "potential" that they might be able to craft a more plausible fiduciary breach claim. That contention is speculative at its core and inconsistent with the Ninth Circuit's opinion in *Hughes*.

**C. Plaintiffs Lack Article III Standing.**

Plaintiffs' standing argument focus on the injury-in-fact prong, arguing their "informational injury" alone confers Article III standing. This argument is foreclosed by *TransUnion v. Ramirez*, 594 U.S. 413, 442 (2021). *See* ECF 109 at 24-25. Plaintiffs attempt to distinguish *TransUnion* on the basis that Defendants purportedly "concealed" the IPS from them, but that claim has no basis and is unsupported by any admissible evidence. *See supra* at 9-10; ECF 109 at 19-20.

Plaintiffs' reliance on *Lundstrom v. Young*, 2022 WL 15524624 (S.D. Cal. Oct. 27, 2022), does not help them. The court in *Lundstrom* reinforced *TransUnion's* requirement that plaintiffs only have standing to challenge an "informational injury" where they have "suffered some harm as a result of the informational injury." 2022 WL 15524624, at *15. In *Lundstrom*, the plaintiff alleged a violation of 29 U.S.C. § 1056(d)(3)(G)(i), which governs how ERISA-governed retirement plans handle domestic relations orders ("DROs") seeking assignment of retirement benefits. *Id*. That statutory provision requires, among other things, that the administrator notify any participant upon receipt of a DRO, establish procedures in writing for qualifying DROs, provide those procedures to any participant specified in a DRO, and notify the participant whether the DRO has been so qualified. *Id.* The plaintiff in *Lundstrom* alleged that the plan administrator had failed to maintain the required written procedures, failed to provide any such procedures, and failed to notify him when the plan qualified the DRO at issue. 2022 WL 15524624, at *15. Such failures allegedly cause the plaintiff to lose his plan benefits. *Id*. at *1 (the plan "transferred all investments from the [plaintiff's] 401(k) account into [the plaintiff's former spouse's] account"). Plaintiff also argued he was harmed insofar as the failure to provide the required information prevented him from

determining how and where to seek relief for his lost benefits. *Id*. at *15. The court found standing based on these alleged harms. Here, by contrast, the IPS is not a document that ERISA requires plan administrators to maintain, the failure to provide the IPS did not result in any decrease in Plaintiffs' plan benefits, and Plaintiffs are plainly aware of how and where to seek relief for their claimed (yet nonexistent) injury.

Plaintiffs also rely on *Wit v. United Behavioral Health*, 79 F.4th 1068 (9th Cir. 2023). *Wit* did not involve claims under Section 104(b)(4) and did not address Article III standing in the context of an "informational injury" at all, so it has no bearing on this issue. The plaintiffs in *Wit* brought claims for breach of fiduciary duty and denial of benefits premised on the plan administrator's use of guidelines for determining medical necessity that were allegedly inconsistent with the terms of coverage contained in their healthcare plans. 79 F.4th at 1077-78. The Ninth Circuit held the plaintiffs sufficiently alleged a concrete injury because the alleged reliance on guidelines that were inconsistent with plan terms "presents a material risk of harm to [p]laintiffs' interest in their contractual benefits." *Id*. at 1082. The interests that were allegedly harmed in *Wit* included the plaintiffs' "interest in the proper interpretation of their contractual benefits, inability to know the scope of coverage under their Plans, and denial of coverage requests." *Id*. at 1083. But there are no such interests at issue here—Plaintiffs do not claim that they need the IPS to "interpret" the Plan or the benefits available to them under the Plan, they do not claim that they are unaware of the scope of their benefits under the Plan, and they do not claim that they were denied any benefits. All Plaintiffs argue is that they should get to "peek" into the fiduciary process, which *might* enable them to craft a more plausible breach of fiduciary duty claim. That is not a harm that is cognizable under Article III.

Plaintiffs' reliance on *McFarlane v. First Unum Life Ins. Co.*, 274 F. Supp. 3d 150 (S.D.N.Y. 2017), and *Truong v. KPC Healthcare, Inc.*, 2024 WL 1984569 (C.D. Cal. May 3, 2024) ("*Truong I*"), is equally flawed. As an initial matter, *McFarlane* predates *TransUnion* and does not address the requirement that a plaintiff must show some "downstream" adverse effects attributable to the informational injury. *TransUnion*, 594 U.S. at 442. Moreover, the documents at issue in *McFarlane* were documents that "govern[ed] [the participant's] rights and responsibilities under

the plan." 274 F. Supp. 3d at 162. But Plaintiffs here concede that the IPS does not govern their rights or responsibilities—rather, they argue the IPS only governs the Committee's responsibilities vis-à-vis selecting and monitoring Plan investments. *E.g.*, ECF 113 at 14. As for *Truong I*, the parties in that case did not argue, and the court did not address, whether a purported informational injury under Section 104(b)(4) satisfied the injury prong of the Article III standing analysis. Instead, the defendants in that case argued only that the plaintiff's claim was not redressable because they did not possess the document sought. 2024 WL 1984569, at *4. That argument is not before this Court, so *Truong I* is inapposite. It is worth noting that *Truong* subsequently held at the summary judgment stage that the valuation report sought by the plaintiff was not subject to disclosure under Section 104(b)(4) because, even if it had "some connection" to plan benefits, the information contained in it only "hypothetically" could have affected the participant's benefits. *Truong v. KPC Healthcare, Inc.*, 2024 WL 4867558, at *5 (C.D. Cal. Sept. 9, 2024) ("*Truong II*"). And a "hypothetical" impact on plan benefits does not make a document an "'other instrument[] under which the plan is established or operated' as *Hughes* defined that phrase." *Id.*

Finally, Plaintiffs cannot satisfy causation. They argue their injury—failure to state a plausible fiduciary breach claim—is traceable to Defendants' withholding of the IPS because "their inability to know more information was connected to Defendants' alleged conduct." ECF 113 at 20 (cleaned up). But *Anderson* noted that ERISA already requires disclosure of all the information a plan participant needs to state a plausible claim challenging an allegedly imprudent investment. 137 F.4th at 1025-26; *see also Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 720 (2d Cir. 2013) ("ERISA imposes extensive disclosure requirements on plan administrators, thus giving plan beneficiaries (i.e., prospective plaintiffs) the opportunity to find out how the fiduciary invested the plan's assets."). These "extensive disclosures" provide all the information needed to state a plausible claim, 137 F.4th at 1026, and withholding the IPS cannot have caused Plaintiffs' alleged injury.

## IV. CONCLUSION

For all the foregoing reasons, and those enumerated in Defendants' Motion for Summary Judgment, the Court should grant Defendants' Motion for Summary Judgment.

Dated: January 30, 2026

MORGAN, LEWIS & BOCKIUS LLP

By /s/ Sean K. McMahan
Sean K. McMahan

Deborah S. Davidson (pro hac vice)
110 N. Wacker Drive, Suite 2800
Chicago, IL 60606-1511
Telephone: +312.324.1000
Facsimile: +312.324.1001
deborah.davidson@morganlewis.com

Sean K. McMahan (pro hac vice)
1717 Main Street, Suite 3200
Dallas, TX 75201-7347
Telephone: +1.214.466.4000
Facsimile: +1.214.466-4001
sean.mcmahan@morganlewis.com

Dylan Rudolph, Bar No. 278707
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: +1.415.442.1000
Fax: +1.415.442.1001
dylan.rudolph@morganlewis.com

Mathew J. McKenna (pro hac vice)
One Federal Street
Boston, MA 02110-1726
Telephone: +1.617.341.7700
Facsimile: +1.617.341-7701
mathew.mckenna@morganlewis.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2026, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

*Sean K. McMahan*
Sean K. McMahan