United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL PHILLIPS, et al.,

Plaintiffs,

v.

COBHAM ADVANCED ELECTRONIC SOLUTIONS, INC., et al.,

Defendants.

Case No. 23-cv-03785-EKL

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 106, 109

In this action brought under the Employee Retirement Income Security Act ("ERISA"), the parties filed cross-motions for summary judgment on Plaintiffs' sole remaining claim. Plaintiffs seek statutory penalties because Defendants refused to furnish an investment policy statement that describes the criteria for selecting investments offered through the Cobham 401(k) retirement plan ("Plan") in which Plaintiffs participated. Pls.' Mot. for Summ. J., ECF No. 106. Defendants contend that Plaintiffs lack Article III standing because they did not suffer a concrete injury that is traceable to Defendants' conduct. Defs.' Mot. for Summ. J., ECF No. 109. The Court reviewed the entire record and heard argument on the motions. For the following reasons, Defendants' motion for summary judgment is GRANTED, and Plaintiffs' motion is DENIED.

## I. BACKGROUND[1]

The procedural history of this case is extensive and unusual. A summary of the statutory framework, Plaintiffs' allegations, and the Court's rulings will provide important context.

[1] This Order relies exclusively on the procedural history of the case and the undisputed facts and evidence submitted by the parties. *See* Separate Statement, ECF No. 110. Citations to "Fact No." reference the undisputed facts proffered by Plaintiffs, and citations to "Add. Fact No." reference the undisputed facts proffered by Defendants. To the extent a party objects to evidence, but concedes that the facts are undisputed, the objections are not material.

### A. ERISA Statutory Framework

ERISA imposes a variety of requirements on administrators of plans that are covered by the statute, including retirement plans like the one at issue in this case. Some of ERISA's requirements are procedural while others are more substantive. One significant procedural requirement under ERISA § 104(b)(4) provides that: "The administrator [of a plan] shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or *other instruments under which the plan is established or operated*." 29 U.S.C. § 1024(b)(4) (emphasis added). Any plan administrator who "fails or refuses to comply with a request" for such information "may in the court's discretion be personally liable to such participant or beneficiary." *Id.* § 1132(c)(1). The purpose of the requirement to furnish plan documents is to "provide individual participants with information about the plan and benefits." *Hughes Salaried Retirees Action Comm. v. Adm'r of Hughes Non-Bargaining Ret. Plan*, 72 F.3d 686, 690 (9th Cir. 1995) (en banc); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989).

As for substantive requirements, ERISA imposes a duty of prudence on plan fiduciaries. 29 U.S.C. § 1104(a)(1). In carrying out the duty of prudence, a fiduciary must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B). A fiduciary has a "duty to exercise prudence in selecting investments at the outset" and "a continuing duty to monitor trust investments and remove imprudent ones." *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015). Because "the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, . . . courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022).

### B. Procedural History

Before bringing this lawsuit, Plaintiffs' counsel requested plan documents from Defendants pursuant to ERISA § 104(b)(4). Plaintiffs sent Defendants a letter dated April 28,

2022, requesting a variety of documents, including "investment policy statements . . . under which the Plan was established or operated." Fact No. 12. An investment policy statement ("IPS") is an optional document that a plan's investment committee may adopt to provide "guidelines concerning the selection, evaluation, and monitoring of Plan investment options." *Bracalente v. Cisco Sys., Inc.*, No. 22-cv-04417-EJD, 2024 WL 2274523, at *8 (N.D. Cal. May 20, 2024) ("*Bracalente II*"). On May 26, 2022, Defendants timely responded to this request and furnished some documents, but not the Plan's IPS. Fact Nos. 13-14. The parties engaged in follow-up correspondence, but Defendants never produced the IPS. *See* Fact Nos. 15-17. At the time, Defendants neither confirmed nor denied that an IPS existed for the Plan.

On July 28, 2023, Plaintiffs filed the original complaint in this action. *See* Compl., ECF No. 1. On October 13, 2023, Plaintiffs filed the first amended complaint. *See* First Am. Compl., ECF No. 24. After Defendants moved to dismiss that complaint, rather than opposing the motion, Plaintiffs filed a second amended complaint. Second Am. Compl., ECF No. 35 ("SAC"). In the first three complaints, Plaintiffs asserted a claim for breach of ERISA's fiduciary duty of prudence and a derivative claim for failure to monitor fiduciaries. The cornerstone of Plaintiffs' theory was that certain investments – the American Century TDFs – were imprudently selected and retained in the Plan because they underperformed relative to other investments. First MTD Order at 4, 13-14, ECF No. 53. Judge Edward J. Davila held that these allegations were insufficient as a matter of law because the American Century TDFs' poor performance, standing alone, did not establish that they were imprudent investments. *Id.* at 13-14 (first citing *Bracalente v. Cisco Sys., Inc.*, No. 22-cv-04417-EJD, 2023 WL 5184138, at *3 (N.D. Cal. Aug. 11, 2023) ("*Bracalente I*"); and then citing *White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2017 WL 2352137, at *20 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453 (9th Cir. 2018)).

On August 20, 2024, the case was reassigned to this Court. *See* Order Reassigning Case, ECF No. 57. Plaintiffs filed a third amended complaint. Third Am. Compl., ECF No. 56 ("TAC"). The new complaint asserted essentially the same allegations that the American Century TDFs underperformed relative to other investments. *Id.* ¶¶ 70-111; *see also* TAC (redlined version) at 24-35, ECF No. 68 (reflecting non-substantive amendments to these allegations).

The Court held that Plaintiffs' underperformance allegations were insufficient because Plaintiffs failed to compare the American Century TDFs to meaningful benchmarks. *See* Second MTD Order at 3, ECF No. 75. The Court also held that Plaintiffs' other allegations of imprudence were insufficient. *See id*. at 2, 4-5. The Court dismissed the third amended complaint with leave to amend, providing Plaintiffs with one final opportunity to cure the pleading deficiencies. *Id*. at 6.

On April 18, 2025, Plaintiffs filed the operative fourth amended complaint. Fourth Am. Compl., ECF No. 79 ("FAC"). Plaintiffs reasserted their claims for breach of the fiduciary duty of prudence and failure to monitor. *Id.* ¶¶ 234-241, 242-248. However, for the first time, Plaintiffs also asserted a claim for violation of ERISA § 104(b)(4) based on Defendants' failure to furnish the IPS in response to Plaintiffs' pre-suit document requests.[2] *Id.* ¶¶ 249-252. Defendants moved to dismiss all claims.

The Court granted Defendants' motion to dismiss Plaintiffs' claims for breach of the fiduciary duty of prudence and for failure to monitor with prejudice. *Phillips v. Cobham Advanced Elec. Sols., Inc.*, No. 23-cv-03785-EKL, 2025 WL 2689268, at *10 (N.D. Cal. Sep. 19, 2025). The Court held that Plaintiffs failed to allege a violation of the duty of prudence because Plaintiffs' theory of breach was legally untenable. Fundamentally, Plaintiffs claimed that Defendants "acted imprudently by making *long-term positive investments*" because they could have made other investments "that performed even better." *Phillips*, 2025 WL 2689268, at *9. However, because prudence is evaluated "prospectively, based on the methods the fiduciaries employed, rather than retrospectively, based on the results they achieved, it is not enough for a plaintiff simply to allege that the fiduciaries could have obtained better results – whether higher

[2] At the hearing on Defendants' motion to dismiss the third amended complaint, Defendants acknowledged that there is an IPS for the Plan. Fact No. 18. Plaintiffs requested production of the IPS and other materials through discovery requests. Pls.' Supp. Br. at 3, ECF No. 69. The Court denied the requests because "Plaintiffs' allegations [had] been dismissed twice for failure to plausibly state a claim," and the Court lacked discretion to permit discovery on the dismissed claims. *See* Second MTD Order at 5 (citing *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 n.7 (9th Cir. 2014)). The Court's ruling rested on the impropriety of permitting plausibility discovery. *See Mujica*, 771 F.3d at 593 n.7; *see also Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987); *Lloyd v. Facebook, Inc.*, No. 25-268, 2026 WL 2568656, at *1 (9th Cir. Aug. 31, 2026). The parties had not raised the issue of whether Defendants were required to furnish the IPS under ERISA § 104(b)(4).

United States District Court
Northern District of California

returns, lower risks, or reduced costs – by choosing different investments." *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1021 (9th Cir. 2025), *cert. granted*, 2026 WL 120679 (U.S. Jan. 16, 2026) (No. 25-498).

Moreover, the allegations in the complaint contradicted Plaintiffs' underperformance theory and precluded an inference that the American Century TDFs were imprudent investments. For example, the American Century TDFs outperformed the median of the Morningstar peer group of funds – the most appropriate benchmark, according to Plaintiffs – "every other year between 2017 and 2023." *Phillips*, 2025 WL 2689268, at *5 ("By outperforming the median, the American Century TDFs necessarily outperformed more than half of the TDFs in their peer group."). According to Plaintiffs' allegations, the American Century TDFs performed particularly well in years when the market experienced downturns. *Id*. at *5, *7 (explaining that the American Century TDFs were "generally more insulated from market volatility and performed better during down markets"). In sum, the Court concluded that:

> Plaintiffs' allegations of imprudence are fundamentally insufficient. Taken as a whole, at most, the complaint alleges that the American Century TDFs yielded lower returns than other investments at times, but also frequently performed above median – particularly during market downturns. These outcomes were consistent with the American Century TDFs' risk mitigation strategy and investment objectives. Plaintiffs have not alleged any facts to suggest that the Committee's investment strategy was beyond the "range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes*, 595 U.S. at 177. Although Plaintiffs might have preferred taking on more risk to chase higher potential returns, "ERISA fiduciaries are not required to adopt a riskier strategy simply because that strategy may increase returns." *Anderson*, 137 F.4th at 1024. The allegations in the fourth amended complaint do not suggest that the Committee acted imprudently in selecting or retaining the American Century TDFs within the Plan. *See id.* at 1021.

*Phillips*, 2025 WL 2689268, at *9.[3] The Court also dismissed Plaintiffs' claim for failure to monitor because it was derivative of the dismissed duty of prudence claim. *Id*.

[3] As an independent basis for dismissal, the Court also concluded that Plaintiffs compared the American Century TDFs to inapposite benchmarks. *Id.* at *4-8. However, even if the fourth amended complaint had adequately alleged that the Morningstar peer group and other metrics qualified as meaningful comparators, Plaintiffs' allegations failed to support an inference that the American Century TDFs underperformed relative to those comparators for the reasons recounted above.

However, the Court denied Defendants' motion to dismiss Plaintiffs' claim for failure to furnish the Plan's IPS. *Id*. at *10-12. At the motion-to-dismiss stage, the parties primarily disputed whether the IPS falls within the category of documents that a plan administrator must furnish pursuant to ERISA § 104(b)(4). The Ninth Circuit has not directly resolved this question. For the reasons stated in the motion to dismiss order, the Court concluded that Plaintiffs plausibly alleged that Defendants were required to furnish the IPS under the circumstances of this case. *Phillips*, 2025 WL 2689268, at *10-12. The Court instructed the parties to meet and confer and submit a proposed schedule and process for resolving the ERISA § 104(b)(4) claim. *See* ECF No. 96. The parties agreed that the ERISA § 104(b)(4) claim presented "a purely legal question," and they stipulated that "no discovery [was] necessary to resolve" the claim. *Id*. The parties then filed the cross-motions for summary judgment that are addressed below.

## II. LEGAL STANDARD

A court may grant summary judgment on any issue if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden of demonstrating that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may satisfy this burden in different ways depending on whether it has the burden of proof at trial. If the moving party bears the burden of proof at trial, it must cite to "particular parts of materials in the record" to demonstrate that no reasonable trier of fact could find for the non-moving party. Fed. R. Civ. P. 56(c)(1)(A). By contrast, if the non-moving party bears the burden of proof at trial, the moving party need only demonstrate that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325; *see also* Fed. R. Civ. P. 56(c)(1)(B).

Once the moving party has met its burden, the burden shifts to the non-moving party to designate specific facts showing that there is a genuine dispute. *Celotex*, 477 U.S. at 324. To carry this burden, the non-moving party must "do more than simply show that there is some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to survive summary judgment. *Anderson*, 477 U.S. at 252. Instead, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.*

In determining whether there is a genuine dispute of material fact, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011). The court does not "engage in credibility determinations or weigh evidence." *Munden v. Stewart Tit. Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021). "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001).

At summary judgment, the focus is not "on the admissibility of the evidence's form," but rather "on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule[] of Civil Procedure 56." *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001). An affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## III. DISCUSSION

The Court first addresses Defendants' motion for summary judgment because it raises the threshold question of whether Plaintiffs have met their burden to produce evidence that they have Article III standing with respect to the ERISA § 104(b)(4) claim. Because the undisputed facts establish that Plaintiffs lack Article III standing as a matter of law, and Plaintiffs offered no facts or evidence to the contrary, Defendants' motion is granted, and Plaintiffs' motion must be denied.

**A. Defendants' Motion**

A plaintiff bears the burden of establishing Article III standing for each claim and for each form of relief sought. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). To demonstrate Article III standing, a plaintiff "must show that she has suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). Because Article III standing is "an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," but in response to a motion for summary judgment, the plaintiff "must 'set forth' by affidavit or other evidence 'specific facts'" to support Article III standing. *Id.* (citation modified).

Here, Defendants argue that Plaintiffs lack Article III standing because there is no evidence that Defendants' failure to furnish the IPS caused a concrete injury. In response, Plaintiffs identify (or imply) three possible theories of Article III standing, but each theory asserts a purported injury that is either legally untenable or totally lacking in factual support.

The first theory of injury is that Defendants' "nondisclosure" of the IPS is enough, by itself, to constitute a concrete injury. Pls.' Reply at 3, ECF No. 113 ("Reply"). This argument is legally untenable. At most, Plaintiffs have established that Defendants were required, but failed, to furnish the IPS pursuant to ERISA § 104(b)(4). However, a plaintiff may not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Plaintiffs attempt to recast the procedural violation as an "informational injury" – that is, the loss of information that Congress deemed important for ERISA plan members to receive. *See* Reply at 20-21. But this reframing fails as well because Plaintiffs "have identified no downstream consequences from failing to receive the required information." *TransUnion LLC*, 594 U.S. at 442 (citation modified). An

"asserted informational injury that causes no adverse effects cannot satisfy Article III." *Id.* (citation modified); *cf. Pub. Int. Legal Found., Inc. v. Nago*, 174 F.4th 664, 670-73 (9th Cir. 2026) ("Adverse effects are needed to turn many forms of legal injury into an injury in fact sufficient for Article III standing.").

The second theory of injury is that Defendants' failure to furnish the IPS prevented Plaintiffs from making informed investment decisions and thereby interfered with their entitlement to benefits under the Plan. This theory may be legally cognizable, but it is devoid of factual or evidentiary support in this case.[4] It is undisputed that Plaintiffs Phillips and Franklin stopped investing in the Plan long before the document requests were made in April 2022. Add. Fact Nos. 17-18 (Phillips "withdrew his entire balance from the Plan on or around May 13, 2020," and Franklin "withdrew her entire balance from the Plan on or around September 18, 2020."). Therefore, even if Defendants had furnished the IPS in response to the April 2022 document requests, Phillips and Franklin would have had no use for the information contained in the IPS. They no longer invested in the Plan, and they had no need to consider changing their investments.

Plaintiff Paclik continued investing in the Plan for about a year after the document requests were made. Add. Fact No. 19 (Paclik "withdrew her entire balance from the Plan on or around May 1, 2023."). However, even if the Court made an adverse inference that the Plan investments

[4] Plaintiffs' cited authority addressed Article III standing at the pleading stage, and each case is consistent with the general principle that informational injury must cause some adverse effect – such as the loss of benefits under ERISA – to be actionable. *Truong v. KPC Healthcare, Inc.*, No. 23-cv-01384-SB-BFM, 2024 WL 1984569, at *9 (C.D. Cal. May 3, 2024) ("[W]ithholding of the requested valuation report in violation of ERISA prevents [plaintiff] from fully understanding the benefits to which she is entitled under the plan."); *Lundstrom v. Young*, No. 18-cv-2856-GPC, 2022 WL 15524624, at *15 (S.D. Cal. Oct. 27, 2022) ("An informational injury can constitute concrete harm under Article III so long as Plaintiff alleges actual harm resulting from the informational injury."); *McFarlane v. First Unum Life Ins. Co*., 274 F. Supp. 3d 150, 161-63 (S.D.N.Y. 2017) (holding that plaintiff plausibly alleged Article III standing where the "non-disclosure of plan documents has frustrated [plaintiff's] efforts to challenge the termination of . . . disability benefits"). The other main authority cited by Plaintiffs is *Wit v. United Behavioral Health*, 79 F.4th 1068 (9th Cir. 2023). However, *Wit* did not involve a claim for failure to furnish plan documents. Instead, the plaintiffs in *Wit* alleged that the defendant breached its fiduciary duty and improperly denied benefits. *Id.* at 1076-79. The plaintiffs "sufficiently alleged a concrete injury as to their fiduciary duty claim" by alleging that the defendant administered the plan in its own "financial self-interest and in conflict with" the terms of the plan. *Id*. at 1082. The plaintiffs also sufficiently alleged "a concrete injury as to the denial of benefits claim" by alleging an "arbitrary and capricious adjudication of benefits claims." *Id*. at 1083.

United States District Court
Northern District of California

were inconsistent with the IPS's criteria, there is no evidence that Paclik would have benefited from the information in the IPS. Plaintiffs did not submit a declaration by Paclik or any other evidence indicating that she lacked knowledge about her investment options under the Plan, or that she would have made different decisions if she had more information. To the contrary, it is undisputed that Plaintiffs received substantial and detailed information about the Plan's investment options, including the performance of the American Century TDFs. *See* Add. Fact Nos. 10-14. Plaintiffs received annual disclosures that "explained the investment objectives, strategies and risks for the American Century TDFs . . . . [and their] returns compared to an index benchmark." Add. Fact No. 10. The disclosures also "informed participants of their right to direct their own investments and . . . explained how to access additional information about the Plan's investment options." *Id.* Moreover, Plaintiffs received "quarterly Plan account statements that . . . detailed the returns and fees for each of Plaintiffs' chosen investments." Add. Fact No. 11. Finally, Plaintiffs were provided with other documents that explained their "rights and benefits under the Plan." Add. Fact Nos. 13-14. In sum, Plaintiffs received substantial information about the actual performance of the Plan's investments from which they could directly determine whether the American Century TDFs matched their investment goals. By contrast, an IPS reveals only the general criteria used to select, evaluate, and monitor investment options.

The final theory of injury is that Defendants' failure to furnish the IPS prevented Plaintiffs from plausibly stating a claim for breach of fiduciary duty. Assuming that dismissal of Plaintiffs' other claims in this action is a legally cognizable injury, it is not "fairly traceable" to Defendants' conduct. *Murthy*, 603 U.S. at 57. "To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that (1) the defendant was a fiduciary; (2) the defendant breached a fiduciary duty; and (3) the plaintiff suffered damages." *Bafford v. Northrop Grumman Corp*., 994 F.3d 1020, 1026 (9th Cir. 2021) (citation modified). As discussed above, the duty of prudence claim failed at the pleading stage because it rested on a legally untenable premise that plan fiduciaries are required to maximize returns, and that they should face liability for selecting less-volatile investments. *See Phillips*, 2025 WL 2689268, at *9. That is not the law, and Defendants' production of the IPS could not have saved Plaintiffs' claim.

Moreover, the allegations in the fourth amended complaint preclude an inference that Plaintiffs suffered damages from Defendants' investment in the American Century TDFs. According to the complaint, the American Century TDFs frequently outperformed the median of the group of funds that *Plaintiffs* identified as the best benchmark for measuring investment performance. FAC ¶¶ 73-75, 99-127. There is no basis to infer, much less evidence suggesting, that any Plaintiff suffered investment losses as a result of including the American Century TDFs in the Plan during the period that Plaintiffs invested in it. The failure to plausibly allege damages is an independent basis for dismissal that could not have been cured with information in the IPS.

In sum, Plaintiffs failed to produce evidence to support Article III standing for their sole remaining claim. The undisputed facts also confirm that Plaintiffs lack Article III standing. Accordingly, Defendants are entitled to summary judgment.

### B. Plaintiffs' Motion

Plaintiffs moved for summary judgment on their claim that Defendants violated ERISA § 104(b)(4). However, Defendants have established that Plaintiffs lack standing to pursue the ERISA § 104(b)(4) claim as a matter of law. Therefore, the Court lacks subject matter jurisdiction to award penalties or any other relief for Defendants' failure to furnish the IPS. Accordingly, Plaintiffs' motion for summary judgment is DENIED.[5]

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Defendants' motion for summary judgment is GRANTED. Plaintiffs' claim for failure to furnish documents in violation of ERISA § 104(b)(4) is DISMISSED for lack of standing.
2. Plaintiffs' motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated: September 30, 2026

Eumi K. Lee
United States District Judge

[5] Given Plaintiffs' lack of standing, it is immaterial whether Defendants' failure to furnish the IPS violated ERISA § 104(b)(4). Additionally, Defendants' evidentiary objections are immaterial. Even assuming that all facts presented by Plaintiffs at summary judgment are undisputed and adequately supported, they do not create a genuine dispute as to Article III standing.



United States District Court
Northern District of California